The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHAO CHEN, individually and on behalf
of all those similarly situated,

                                    Plaintiff,

        v.

THE GEO GROUP, INC., a Florida
corporation,

                                    Defendant.

Case No: 3-17-cv-05769

**GEO'S MOTION TO DISMISS CLASS
ACTION COMPLAINT FOR DAMAGES**

NOTE ON MOTION CALENDAR:
November 3, 2017

ORAL ARGUMENT REQUESTED

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

**Page**

MOTION TO DISMISS CLASS ACTION COMPLAINT FOR DAMAGES ......................................................................................... 1

A.   The Parties ...................................................................... 2

B.   Plaintiff's Allegations ..................................................... 3

I.   THE MINIMUM WAGE CLAIM IS PREEMPTED BY FEDERAL LAW ........ 5

A.   Preemption Principles ..................................................... 5

B.   The Federal Government Determines Whether And How Much Federal Immigration Detainees Are Paid ......................... 6

C.   The MWA Is Preempted By Federal Law ........................ 9

     1.   Express Preemption ............................................. 10

     2.   Field Preemption .................................................. 11

     3.   Conflict/Obstacle Preemption ............................. 14

II.  ALTERNATIVELY, PLAINTIFF FAILS TO STATE A CLAIM AGAINST GEO UNDER THE WASHINGTON MINIMUM WAGE ACT ...... 17

CONCLUSION .......................................................................... 23

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - i.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES:**

4

5

*Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wash. 2d 851, 281 P.3d
  289 (2012) ..................................................................................................17, 18

6

7

*Alvarado Guevara v. I.N.S.*, 902 F.2d 394 (5th Cir. 1990) .......................8, 19, 21, 23

8

*Arizona v. United States*, 567 U.S. 387 (2012) ...................................5, 6, 11, 13, 14

9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................4

10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................4

11

12

*Barker v. Riverside County Office of Educ.*, 584 F.3d 821 (9th Cir. 2009) ..............4

13

*Bijeol v. Nelson*, 579 F.2d 423 (7th Cir. 1978) .....................................................19

14

*Boyle v. United Tech. Corp.*, 487 U.S. 500 (1988) ................................................16

15

*Channer v. Hall*, 112 F.3d 214 (5th Cir. 1997) ....................................................19

16

17

*Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9th Cir. 2005).....................5

18

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000)...........................5, 14

19

*Donovan v. Tehco, Inc.*, 642 F.2d 141 (5th Cir. 1981) .........................................13

20

*In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049 (9th Cir. 2008).................................5

21

22

*Guevara v. I.N.S.*, 954 F.2d 733, 1992 WL 1029 (Fed. Cir. Jan. 6, 1992) ..............7, 12, 13, 20

23

*Hause v. Vaught*, 993 F.2d 1079 (4th Cir. 1993) ..................................................19

24

*Hines v. Davidowitz*, 312 U.S. 52 (1941).........................................................6, 14

25

*Inniss v. Tandy Corp.*, 141 Wash. 2d 517, 7 P.3d 807 (2000) ...............................17

26

*Jackson v. Siringas*, No. 12-15474, 2013 WL 3810301 (E.D. Mich. July 23,
  2013) ...................................................................................................................19

27

28

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - ii.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

*Jobson v. Henne*, 355 F.2d 129 (2d Cir. 1966) ........................................................19

*Keller v. Miri Microsystems LLC*, 781 F.3d 799 (6th Cir. 2015)..............................20

*Kilgore v. Shriners Hospitals For Children*, 190 Wash. App. 429, 360 P.3d 55
       (2015) ...........................................................................................................18

*Lozano v. City of Hazleton*, 620 F.3d 170 (3d Cir. 2010), *vacated and
       remanded on other grounds by City of Hazleton v. Lozano*, 131 S. Ct 2958
       (2011) ...........................................................................................................10

*Menocal v. The GEO Group, Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015) ...........20, 21, 22, 23

*Miller v. Dukakis*, 961 F.2d 7 (1st Cir. 1992) ..........................................12, 20, 22

*Nation v. City of Glendale*, 804 F.3d 1292 (9th Cir. 2015) ....................................14

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ........................................................4

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947).............................................5

*Stahl v. Delicor of Puget Sound, Inc.*, 148 Wash.2d 876, 64 P.3d 10 (2003) ...........17

*State v. Bobic*, 140 Wash. 2d 250, 996 P.2d 610 (2000)..........................................17

*State v. Carroll*, 81 Wash. 2d 95, 500 P.2d 115 (1972)..........................................17

*State v. GEO*, Pierce County Superior Court Case No. 17-2-11422-2, removal notice filed
       10/09/17......................................................................................................1, 3

*Toll v. Moreno*, 458 U.S. 1 (1982) ............................................................................6

*Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290 (1985) ....................20

*Tourscher v. McCullough*, 184 F.3d 236 (3d Cir. 1999) ..........................................20

*United States v. Rosenwasser*, 323 U.S. 360 (1945)................................................18

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1023 (9th Cir. 2013).........................6

*Villa v. Maricopa Cty.*, 865 F.3d 1224 (9th Cir. 2017 ..............................................4

*Villarreal v. Woodham*, 113 F.3d 202 (11th Cir. 1997)...............................18, 20, 22

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - iii.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

*Whyte v. Suffolk County Sheriff's Dep't*, 91 Mass. App. Ct. 1124, 2017 WL 2274618 (Mass. App. Ct. May 24, 2017).............................................................20, 22, 23

*Wisconsin Dept. of Ind. v. Gould Inc.*, 475 U.S. 282 (1986) ...................................13

*Wyeth v. Levine*, 555 U.S. 555 (2009) ..........................................................................9

*Xieng v. Peoples Nat'l Bank*, 120 Wash.2d 512, 844 P.2d 389 (1993) ...................18

**STATUTES:**

U.S. Const. art. I, § 8, cl. 4 ..........................................................................................6

U.S. Const. art. VI, cl. 2. ..............................................................................................5

8 U.S.C. § 1103 ..........................................................................................................6, 8

8 U.S.C. § 1225 ..........................................................................................................6, 8

8 U.S.C. § 1226 ..........................................................................................................6, 8

8 U.S.C. § 1226a ........................................................................................................6, 8

8 U.S.C. § 1231 ....................................................................................................6, 8, 15

8 U.S.C. § 1324a ................................................................................................10, 12, 14

8 U.S.C. § 1555 ....................................................................................................7, 12, 13

29 U.S.C. § 202 ............................................................................................................12

29 U.S.C. § 203(e)(1) ..................................................................................................17

29 U.S.C. § 203(g) ......................................................................................................17

Dep't of Justice Appropriations Authorization Act, 1979,
    Pub. L. No. 96-132, § 2(10), 93 Stat. 1040, 1042 (1979) ...................................7

Dep't of Justice Appropriation Act, 1979,
    Pub. L. No. 95-431, 92 Stat. 1021 (Oct. 18, 1978) ..............................................7

Wash. Rev. Code § 49.46.005 *et seq*.............................................................................1

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - iv.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wash. Rev. Code § 49.46.010 ........................................................................17, 18

Wash. Rev. Code § 49.46.020 ......................................................................3, 4, 30

**REGULATIONS:**

Washington Dep't of Corrections Policy 700.100 ................................................18

**RULE:**

Federal Rule of Civil Procedure 12(b)(6) ......................................................1, 4, 5

**OTHER AUTHORITIES:**

Washington Attorney General Memorandum, Oct. 2, 2015 ...................................3

Chao Xing Chen, A039 001 115 (BIA Aug. 2, 2017) ..........................................3

INS, Your CO 243-C Memorandum of November 15, 1991; DOD Request for
      Alien Labor, General Counsel Op. No. 92-63, 1992 WL 1369402 (Nov. 13,
      1992) ...............................................................................................................7

Performance-Based Nat'l Detention Standards 2011 ......................................8, 15

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - v.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1    **MOTION TO DISMISS CLASS ACTION COMPLAINT FOR DAMAGES**

2        The GEO Group, Inc. ("GEO") moves to dismiss the Plaintiff's complaint for failure to

3    state a claim under Federal Rule of Civil Procedure 12(b)(6).

4                                    **INTRODUCTION**

5

6        This suit—bearing a suspicious connection to a similar, recently-filed suit by the

7    Washington Attorney General—peddles a politicized, but meritless, theory that a federal

8    contractor that temporarily houses federal immigration detainees must pay the detainees a state

9    minimum wage for participating in the federally mandated voluntary work programs.

10       The claim that GEO, as a federal contractor, must pay federal immigration detainees

11   according to Washington's Minimum Wage Act ("MWA"),[1] is preempted by federal law, which

12   exclusively determines whether, and how much, federal immigration detainees are paid for work

13   done while in detention.  Congress, by statute and through delegated power, has reserved for

14   itself the determination of what detainees are paid for work in detention.  As courts have

15   uniformly reinforced for decades through precedents interpreting the Federal Labor Standards

16   Act ("FLSA"), detainees (like prison inmates) are not "employees," and the $1 daily rate is not

17   contrary to federal minimum wage requirements because detainees already receive necessities

18   such as food, shelter, clothing, medical, dental and psychiatric care by virtue of their detention.

19   Compelling federal contractors to pay detainees a minimum wage would cause the contractors to

20   have to pass on greater costs, in excess of the allowances set by Congress and directed by ICE's

21   contracts with the facilities.  The federal government has a strong interest in the uniformity of the

22   administration of voluntary work programs at its facilities, including those operated by federal

---

[1] Wash. Rev. Code §§ 49.46.005 *et seq.*

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 1

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

contractors, and those programs cannot be subjected to a patchwork of state minimum wage regimes.

Even assuming for the sake of argument that the MWA claim is not preempted, Mr. Chen fails to state a claim under the MWA that can be granted.  The MWA was structured based on the FLSA, and therefore terms such as "employee" are interpreted in light of FLSA precedents, which uniformly hold that detainees are not entitled to a minimum wage because they are outside the scope of who and what Congress intended to protect under the FLSA.  The MWA expressly exempts residents of state detention facilities, and, understandably, by its terms it does not mention federal immigration detainees.  As other courts have held, however, limited state law exemptions for detainees or inmates should be extended, in light of FLSA precedents, to exclude federal immigration detainees from the definition of 'employee."  Mr. Chen and the putative class members are not "employees" under the MWA and GEO is not their "employer", and therefore Mr. Chen fails to state a complaint on which relief may be granted.

## BACKGROUND

### A.    The Parties.

Since 2004, U.S. Immigration and Customs Enforcement ("ICE") has entrusted GEO to provide detention facility services at the Northwest Detention Center ("NWDC") in Tacoma, Washington.[2]  Through a complex statutory, regulatory, and contractual relationship with ICE, GEO operates the facility, which houses persons detained by, and in the custody of ICE.[3]

---

[2] The GEO Group, Inc., Tacoma ICE Processing Center (https://www.geogroup.com/FacilityDetail/FacilityID/71); Complaint, Exhibit 1, at ¶ 4.2.
[3] Complaint at ¶ 4.3.

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 2

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

Plaintiff Chao Xing Chen is a citizen of the People's Republic of China, who alleges that he has been a lawful permanent resident of the United States since the 1980s and lives in Renton, Washington.[4]  In 2002, Mr. Chen was convicted of crimes of assault, possession of firearms and felony harassment.[5]  This conviction arose after Mr. Chen, in 2001, confronted his ex-girlfriend with a knife, held her throat and threatened to kill her; days later, he approached her with a handgun, and as she drove away, he shot at her, missing her vehicle.  In 2010, an immigration judge determined that Mr. Chen was subject to removal and ordered his removal.[6]  Mr. Chen states that he was detained at NWDC from October 2014 to February 2016.[7]

Through the office of Washington Attorney General Robert Ferguson, Mr. Chen requested a pardon for his crimes.[8]  In 2016, Washington's Governor granted Mr. Chen a full pardon.  His removal order has since been vacated and removal proceedings reopened.  He is not now detained.  Following on the heels of a similar lawsuit filed in state court by Attorney General Ferguson on September 20, 2017,[9] Mr. Chen filed this suit as a putative class action on September 26, 2017.

### B.    Plaintiff's Allegations.

Mr. Chen alleges that detainees at NWDC are "employees" and GEO is their "employer" for purposes of the MWA.  Mr. Chen seeks to become the representative of a class of current and former detainees who challenge GEO's alleged "practice of paying subminimal wages to

---

[4] Complaint at ¶ 3.1.
[5] *See* Chao Xing Chen, A039 001 115 (BIA Aug. 2, 2017) (https://www.scribd.com/document/357071399/Chao-Xing-Chen-A039-001-115-BIA-Aug-2-2017).
[6] Washington Legislature, Journal of the Senate at 20 (February 13, 2017) (http://leg.wa.gov/Senate/SDJ/Documents/2017/SJ_17_036.pdf).
[7] Complaint at ¶ 3.1.
[8] *See* Washington Attorney General Memorandum, Oct. 2, 2015 (http://www.governor.wa.gov/sites/default/files/2015DecemberCPB-Notice-of-Hearing.pdf).
[9] *State of Washington v. The GEO Group, Inc.*, No. 17-2-11422-2 (Sup. Ct. Pierce County).

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 3

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

Plaintiff and the proposed class members" that violates the MWA.[10]  Alleging that GEO pays

detainees $1 per day, and that the state minimum wage is $11, he seeks "damages for lost wages"

for himself and a class of "all civil immigration detainees who perform or have performed work

for GEO at NWDC at any time during the three years prior to the filing of this complaint and

thereafter."[11]  Mr. Chen does not seek any injunctive or declaratory relief; he seeks purely money

damages for himself and a class, as well as attorney's fees and interest.[12]

### STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

sufficiency of a claim."[13]  "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[14]  A claim

is facially plausible if the plaintiff has pled "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."[15]  In making this

assessment, the Court accepts all facts alleged in the complaint as true, and makes all inferences

in the light most favorable to the non-moving party.[16]  The Court is not, however, bound to

accept the plaintiff's legal conclusions.[17]  While detailed factual allegations are not necessary,

the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the

elements of a cause of action."[18]  Courts do not "accept as true allegations that are merely

---

[10] Complaint at ¶ 6.3.
[11] Complaint at ¶ 5.1.
[12] Complaint at § VII (Prayer for relief).
[13] *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).
[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Villa v. Maricopa Cty.*, 865 F.3d 1224 (9th Cir. 2017).
[15] *Id*. (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).
[16] *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).
[17] *Iqbal*, 556 U.S. at 678.
[18] *Twombly*, 550 U.S. at 555.

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 4

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

conclusory, unwarranted deductions of fact, or unreasonable inferences."[19]  A court may grant a motion to dismiss under Rule 12(b)(6) based on a defendant's preemption defense.[20]

## ARGUMENT

## I.  THE MINIMUM WAGE CLAIM IS PREEMPTED BY FEDERAL LAW.

### A.  Preemption Principles.

The Supremacy Clause provides a clear rule that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any state to the Contrary notwithstanding."[21]  Under this principle, Congress has the power to preempt state law.[22]  "There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision.[23]  Additionally, states are "precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance," which "can be inferred from a framework of regulation 'so pervasive ... that Congress left no room for the States to supplement it' or where there is a 'federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'"[24]  State laws are also preempted "when they conflict with federal law," including where the challenged state law

---

[19] *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).
[20] *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1225 (9th Cir. 2005).
[21] U.S. Const. art. VI, cl. 2.
[22] *Arizona v. United States*, 567 U.S. 387, 399 (2012); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("A fundamental principle of the Constitution is that Congress has the power to preempt state law.").
[23] *Arizona*, 567 U.S. at 399.
[24] *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

CHEN v. THE GEO GROUP, INC.                                III BRANCHES LAW, PLLC
ECF CASE NO. 3-17-cv-05769                                        Joan K. Mell
GEO'S MOTION TO DISMISS - 5                              1019 Regents Blvd. Ste. 204
                                                                 Fircrest, WA 98466
                                                                   253-566-2510 ph
                                                             joan@3brancheslaw.com

1  "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

2  Congress."[25]

3  **B.    The Federal Government Determines Whether And How Much Federal**

4  **Immigration Detainees Are Paid.**

5  "The Government of the United States has broad, undoubted power over the subject of

6  immigration" and "[t]he federal power to determine immigration policy is well settled."[26]  The

7  supremacy of the national power in the general field of foreign affairs, including power over

8  immigration, naturalization and deportation, is made clear by the Constitution."[27]  This power

9  includes Congress' broad authority, which it has delegated to DHS and ICE, to detain aliens

10 pending removal or a removal hearing, or to detain certain categories of aliens.[28]  These

11 agencies, in turn, have authority to contract with private sector entities, such as GEO, to provide

12 secure facilities,[29] and broad administrative discretion.[30]

13

14 Congress, by statute and through delegated authority, determines when and how much

15 federal immigration detainees are paid for work, if at all.  In a statute enacted in 1950, and

16 unchanged today, Congress provided that:

17

18 Appropriations now or hereafter provided for the Immigration and Naturalization Service
shall be available for payment of . . . (d) payment of allowances (at such rate as may be
19 specified from time to time in the appropriation Act involved) to aliens, while held in
custody under the immigration laws, for work performed . . .[31]

20

21

22 _____

23 [25] *Id.*  at 399 (citations omitted).

[26] *Id.* at 394.

24 [27] *Hines v. Davidowitz*, 312 U.S. 52, 62 (1941); *Toll v. Moreno*, 458 U.S. 1, 10 (1982); U.S. Const. art. 1, § 8 cl. 4
("To establish an uniform Rule of Naturalization"); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1023 (9th Cir.
25 2013) (power over immigration also rests significantly on federal government's "inherent power as a sovereign to
control and conduct relations with foreign relations").

26 [28] *See* 8 U.S.C. §§ 1225, 1226, 1226a, 1231.

[29] 8 U.S.C. § 1231(g).

27 [30] 8 U.S.C. § 1103.

[31] 8 U.S.C. § 1555(d).

28 CHEN v. THE GEO GROUP, INC.                                    III BRANCHES LAW, PLLC
ECF CASE NO. 3-17-cv-05769                                         Joan K. Mell
GEO'S MOTION TO DISMISS - 6                                  1019 Regents Blvd. Ste. 204
                                                                        Fircrest, WA 98466
                                                                         253-566-2510 ph
                                                                     joan@3brancheslaw.com

From 1950 to 1979, Congress specially authorized "payment of allowances . . . to aliens, while held in custody under the immigration laws, for work performed."  The appropriations bills for this time period authorized reimbursement for the VWP program "at a rate not in excess of $1.00 per day."[32]  After the 1979 appropriation, Congress ceased specifically appropriating monies for the VWP program, opting instead to provide more general appropriations authorization.[33]  Under this more general authority, INS (and now ICE) retained authority to reimburse VWP detainees, but without the requirement that "Congress [] set the rate of compensation for each fiscal year."[34]  Congress was aware of the use of voluntary detainee labor, and through Section 1555(d), "Congress provided that under certain circumstances aliens who are lawfully detained pending disposition may be paid for their volunteer labor. The wage level is a matter of legislative discretion."[35]  Congress has exercised that discretion to set the rate for volunteer detainee labor at only $1 per day.

As noted, Congress has also delegated broad authority to agencies not only to detain aliens,[36] but also to contract with private sector entities, such as GEO, to provide secure facilities.[37]  Those federal agencies have broad discretion to determine how to carry out their

---

[32] *See, e.g.*, Dep't of Justice Appropriation Act, 1979, Pub. L. No. 95-431, 92 Stat. 1021, 1027 (Oct. 18, 1978).
[33] *See* Dep't of Justice Appropriations Authorization Act, 1979, Pub. L. No. 96-132, § 2(10), 93 Stat. 1040, 1042 (1979).
[34] *See* INS, Your CO 243-C Memorandum of November 15, 1991; DOD Request for Alien Labor, General Counsel Op. No. 92-63, 1992 WL 1369402, *1 (Nov. 13, 1992) (citing 93 Stat. at 1042) (noting that discontinuance of annual appropriation of $1 daily allowance "does not abrogate [INS/ICE] authority to pay aliens for labor performed while in [INS/ICE] custody" and "the [INS/ICE] retains authority to expend appropriated funds to pay aliens for labor performed while in custody").
[35] *Guevara v. I.N.S.*, 954 F.2d 733, 1992 WL 1029, *2 (Fed. Cir. Jan. 6, 1992).
[36] *See* 8 U.S.C. §§ 1225, 1226, 1226a, 1231.
[37] 8 U.S.C. § 1231(g); 8 U.S.C. § 1103.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

duty to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."[38]  ICE has selected GEO's NWDC as an appropriate place to operate.

In operating the NWDC, GEO is contractually required to follow the 2011 Performance Based National Detention Standards ("PBNDS").  The PBNDS provides, as an "Expected Practice," that "[d]etainees shall be provided the opportunity to participate in a voluntary work program."[39]  The policy provides specific details on how the VWP is to be administered.  It specifically provides that "[d]etainees shall receive monetary compensation for work completed in accordance with the facility's standard policy," and that compensation is "at least $1.00 (USD) per day."[40]  Thus, the alleged payment of $1 per day for VWP participation is consistent with ICE standards.[41]  This policy does not require that compensation adhere to the minimum wage of any state.

Demonstrating the degree to which Congress (and the federal agencies to which it has delegated power) control the field of payment of detainee activities, the $1 per day allowance has withstood legal challenges for decades, including challenges by federal detainees who have sought a minimum wage under the FLSA.  In *Alvarado Guevara v. I.N.S.*,[42] immigration detainees challenged the $1 daily rate, claiming that they were entitled to the federal minimum wage for work in grounds, maintenance, cooking, laundry, and other services.  The Fifth Circuit

---

[38] 8 U.S.C. § 1231(g).
[39] PBNDS, § 5.8.V.A ("Voluntary Work Program) (https://www.ice.gov/doclib/detention-standards/2011/pbnds2011.pdf).
[40] PBNDS, § 5.8.V.K; *see also* ICE National Detainee Handbook, at 12 (https://www.ice.gov/sites/default/files/documents/Document/2017/detainee-handbook.PDF).
[41] Complaint at ¶ 4.7.  Whether the alleged "compensating" of detainees in the form of food would comply with ICE standards, Complaint at ¶ 4.8, would likewise be a question of federal law that is not raised by this lawsuit.
[42] 902 F.2d 394, 395 (5th Cir. 1990).

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 8

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

noted that, despite this "apparent exchange of money for labor," the detainees were not "employees" under the FLSA.  Specifically, "it would not be within the legislative purpose of the FLSA to protect [the detainees]," because "[t]he congressional motive for enacting the FLSA," was to protect the "standard of living" and "general well-being" of the worker in American industry.[43]  Because detainees are "removed from American industry," they are "not within the group that Congress sought to protect in enacting the FLSA."[44]  As discussed further below, courts have uniformly concluded that federal immigration detainees are not "employees" for purposes of minimum wage laws.

**C.    The MWA Is Preempted By Federal Law.**

"[T]he purpose of Congress is the ultimate touchstone in every preemption case."[45]  As discussed in the prior section, Congress has used direct statutory authority to reserve for itself the determination of whether and how much federal immigration detainees will be paid, and it has delegated broad authority to federal agencies to administer work programs (including through private contractors like GEO).  Nowhere has Congress provided any indication that state minimum wage laws were intended to create an employer-employee relationship between federal immigration detainees and government contractors, or to set wage rates for them.  To the contrary, Congress and the courts have made it overwhelmingly clear that detainees are ***not*** to be beneficiaries of a minimum wage because they are already provided necessities while in detention.  Moreover, subjecting federal immigration detention to a patchwork of state minimum

---

[43] *Id*. at 396 (citations omitted).
[44] *Id.*
[45] *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 9

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

wage laws would conflict with federal interests.  Washington's MWA is preempted by federal law in three ways: (1) express preemption; (2) field preemption and (3) obstacle preemption.

### 1.    Express Preemption.

In 1986, Congress enacted the Immigration Reform and Control Act ("IRCA"), which "clearly made the regulation of the employment of unauthorized aliens a central concern of federal immigration policy."[46]  IRCA made it unlawful "to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien … with respect to such employment."[47]  Under a subsection of the same statute, entitled "Preemption," Congress stated that "[t]he provisions of this section preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens."[48]

GEO does not employ the detainees at the NWDC in its custody.  However, under the interpretation of the MWA in Mr. Chen's complaint, which would compel GEO, as an alleged "employer," to pay a minimum wage to immigration detainees, the MWA would create a civil sanction against GEO as an entity that "employ[s]" the unauthorized aliens at the NWDC and make GEO allegedly liable for "damages for lost wages."[49]  Thus, the statute comes within the scope of state laws that are expressly preempted by Congress.

---

[46] *Lozano v. City of Hazleton*, 620 F.3d 170, 206 (3d Cir. 2010), *cert. granted, judgment vacated sub nom. City of Hazleton v. Lozano*, 131 S. Ct 2958 (2011).
[47] 8 U.S.C. § 1324a(a)(1)(A).
[48] 8 U.S.C. § 1324a(h)(2).
[49] Complaint § VII.2

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 10

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1

### 2. Field Preemption.

States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance.[50]  The intent to displace state law altogether can be inferred from a framework of regulation "so pervasive ... that Congress left no room for the States to supplement it" or where there is a "federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."[51]

In *Arizona*, the Supreme Court concluded that "[f]ederal law makes a single sovereign responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders."[52]  In that case, the Supreme Court specifically concluded that Congress had occupied the field of alien registration, such that the State of Arizona's registration statute was preempted.  Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards, and that "[w]here Congress occupies an entire field, as it has in the field of alien registration, even complementary state regulation is impermissible."[53]  The basic premise of field preemption is that States may not enter, in any respect, an area the federal government has reserved for itself.[54]

In the same way, Congress has preempted the field of immigration detention, including payment of detainees.  Congress, by statute and through delegated authority, determines where immigrant detainees are housed, and regulates their conditions of detention through extensive

---

[50] *Arizona*, 567 U.S. at 399 (citation omitted).
[51] *Id.*
[52] *Id.* at 401-02.
[53] *Id.*
[54] *Id.* at 402.

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 11

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

regulations and policies.  Congress determines whether unauthorized aliens can be employed by any person,[55] and if detainees work while in detention in federal custody while awaiting a removal decision, Congress determines whether, and how much, detainees are paid.  "Congress provided that under certain circumstances aliens who are lawfully detained pending disposition may be paid for their volunteer labor," and that "wage level is a matter of legislative discretion."[56]  Congress made the decision to appropriate monies for "payment of allowances (at such rate as may be specified from time to time in the appropriation Act involved) to aliens, while held in custody under the immigration laws, for work performed."[57]  Thus, Congress has arrogated for itself the determination of what rate would be paid to detainees.  To date, the only "rate" at which Congress has ever specified payment to detainees for volunteer work is $1 per day.[58]

If Congress intended that federal immigration detainees would be paid a state minimum wage, it could have stated that directly rather than appropriating $1 per day.  Or Congress could have made detainees "employees" under the FLSA.  To the contrary, and despite the FLSA's remarkably broad reach, the FLSA does not deem federal detainees to be "employees."  Indeed, Congress has made the contrary determination that the "the minimum wage is not needed to protect the [detainees'] well-being and standard of living."[59]  "[A]n employee under the FLSA is one who finds employment in the business of others out of economic necessity," but detainees

---

[55] *See, e.g.,* 8 U.S.C. § 1324a.
[56] *Guevara v. INS*, 954 F.2d 733, 1992 WL 1029, *2 (Fed. Cir. Jan. 6, 1992).
[57] 8 U.S.C. § 1555(d).
[58] *See supra* at 7.
[59] *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992); *see* 29 U.S.C. § 202(a) (congressional finding and declaration of policy).

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 12

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

"are both confined and provided for" in detention facilities.[60]   "Because they volunteer and do not seek employment out of any economic necessity, [detainees] are not employees within the meaning of the FLSA."[61]

Given Congress' direct arrogation of the issue of detainee pay, and that fact that even federal minimum wage does not reach federal immigration detainees, Congress did not intend for states to define the employer-employee relationship and set payment rates for federal immigration detainees.   In *Arizona*, the Supreme Court noted that, consistent with the notion that there is a single sovereign in charge of keeping track of aliens, the preemption doctrine did not tolerate a situation in which "every State could give itself independent authority to prosecute federal registration violations, 'diminish[ing] the [Federal Government]'s control over enforcement' and 'detract[ing] from the 'integrated scheme of regulation' created by Congress.'"[62]   Likewise, here, if the Court were to recognize that Mr. Chen (with or without his purported class) could compel a federal contractor like GEO to pay a state minimum wage, it would allow the states to enter an area the federal government has claimed for itself.   Congress would lose control over its own determination (under Section 1555(d) and through delegated policymaking through DHS and ICE) whether and how much detainees are paid.   The suit would undermine Congress' intent to exclude detainees from the regular workforce that may need to benefit from a minimum wage in order to obtain the necessities of life.   Congress controls the field, and federal law preempts the MWA.

---

[60] *Guevara v. I.N.S.*, 954 F.2d 733, 1992 WL 1029, *1 (quoting *Donovan v. Tehco, Inc.*, 642 F.2d 141 (5th Cir. 1981)).
[61] *Id.*
[62] *Id.* at 402 (quoting *Wisconsin Dept. of Ind. v. Gould Inc.*, 475 U.S. 282, 288-289 (1986)).

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 13

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

**3.      Conflict/Obstacle Preemption.**

Obstacle preemption arises when a challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[63]  "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects."[64]

Mr. Chen's claim alleges that NWDC detainees were (or are) "employees," and GEO their "employer" by "employ[ing] the detainee workers by engaging, suffering, or permitting them to work on its behalf."[65]  Although the Complaint acknowledges that GEO contracts with ICE "for the detention of adult civil detainees,"[66] it does not grapple with the fact that GEO, like other persons or corporation, is forbidden from hiring such detainees as "employees."[67]  Accordingly, it is inaccurate to conclude that detainees were GEO's "employees."  The Complaint alleges an employer-employee relationship between detainees and facility operators that does not exist in federal law, and is contrary to federal law.

There is obstacle preemption here because there is a "federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."[68]  The federal government has a clear interest in how it carries out its purpose and objective to "arrange for appropriate places of detention for aliens detained pending removal or a decision on

---

[63] *Crosby*, 530 U.S. at 373, 120 S.Ct. 2288 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)); *Nation v. City of Glendale*, 804 F.3d 1292, 1297 (9th Cir. 2015).
[64] *Crosby*, 530 U.S. at 373, 120 S.Ct. 2288.
[65] Complaint ¶ 4.6.
[66] Complaint at 4.3.
[67] 8 U.S.C. § 1324a.
[68] *Arizona*, 567 U.S. at 399.

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 14

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

removal."[69]   ICE utilizes detention facilities across the United States and commonly contracts

with private companies such as GEO to provide detention services at various locations.[70]

Among the duties that ICE's contracts prescribe for federal contractors is the administration of

the VWP.  The PBNDS make the VWP an expected practice, authorizing the payment of $1 per

day.[71]  Through its contract with ICE, GEO is reimbursed at a rate of $1 per day, which cannot

be changed without ICE's contracting officer's approval.  If the MWA were to apply, GEO

would be put in the impossible place of having to pay at least $11 per hour for detainee

participation under the MWA, while only being reimbursed for that $1 per day rate.

Applying state minimum wage law creates a clear conflict between state law and the

federal interests of ICE in operating the national detention system.  The structure of federal

government contracting for detention facility services clearly precludes enforcement of state

laws on the same subject.  ICE has not entered into contracts for detention services with the

expectation that the contractors will be paying state minimum wages for VWP participation, and

no such expenses have been factored in by ICE or the contractors.  It is contrary to the federal

interests in uniformity for the national detention system to become a balkanized patchwork of

state laws, some of which make federal immigration detainees the "employees" of federal

contractors entitled to a particular minimum wage, and in other states, not.  As discussed, the

answer under FLSA minimum wage law has been uniform: detainees are not entitled to a

---

[69] 8 U.S.C. § 1231(g).
[70] ICE Detention Facility Locator (https://www.ice.gov/detention-facilities).
[71] PBNDS, § 5.8.V (https://www.ice.gov/doclib/detention-standards/2011/pbnds2011.pdf).  *See also* ICE National Detainee Handbook, at 12 (https://www.ice.gov/sites/default/files/documents/Document/2017/detainee-handbook.PDF).

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 15

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1  minimum wage because their necessities are already taken care of; the answer should not differ

2  from state to state.

3       Federal interest are impacted because federal contractors could not continue to operate

4  under a contract in which the financial terms so dramatically changed to require payment of a

5  state minimum wage to detainees.  In *Boyle v. United Technologies Corp.*,[72] the Supreme Court

6  recognized a federal interest in a state lawsuit brought by a plaintiff against a private contractor

7  under a procurement contract.   As the court reasoned, "[t]he imposition of liability on

8  Government contractors will directly affect the terms of Government contracts: either the

9  contractor will decline to manufacture the design specified by the Government, or it will raise its

10  price.   Either way, the interests of the United States will be directly affected."[73]   The Court

11  explained that as with a claim against a federal official, a claim against an independent contractor

12  "implicated the same interest in getting the Government's work done."[74]   Likewise, were a court

13  to conclude that GEO must pay thousands of detainees a minimum wage, it would significantly

14  affect the prices that GEO would have charge for its services, and impact what ICE (and

15  ultimately, federal taxpayers) must pay to federal contractors to obtain the services that ICE

16  needs to carry out its duties.   Applying state minimum wage law creates an obstacle to ICE's

17  purposes and objectives, and the state law is preempted by federal law.   Mr. Chen's claim should

18  be dismissed.

---

[72] 487 U.S. 500 (1988).
[73] *Id.* at 507.
[74] *Id.* at 505.

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 16

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1  **II.    ALTERNATIVELY, PLAINTIFF FAILS TO STATE A CLAIM AGAINST GEO**
2  **UNDER THE WASHINGTON MINIMUM WAGE LAW.**

3          Even if the MWA were not preempted by federal law, it should be interpreted in light of

4  federal law.  As discussed, it is well established under federal law that federal immigration

5  detainees are not "employees" for minimum wage purposes and not entitled to a minimum wage.

6  In fact, courts have uniformly held that detainees can lawfully be paid $1 per day for VWP

7  participation and not paid at all for performance of certain housekeeping chores.

8

9          The Washington Supreme Court has repeatedly recognized that the "MWA is based on

10  the Fair Labor Standards Act of 1938."[75]   The definitions of "employee" and "employ" are

11  functionally identical under the two acts.[76]  In the absence of a contrary legislative intent, when a

12  state statute is "taken 'substantially verbatim' from [a] federal statute, it carries the same

13  construction as the federal law and the same interpretation as federal case law."[77]

14

15          The MWA expressly excludes "Any resident, inmate, or patient of a state, county, or

16  municipal correctional, detention, treatment or rehabilitative institution."

17  RCW § 49.46.010(3)(k).  Thus, a resident of a state, county or municipal detention institution is

18  not entitled to the minimum wage that Mr. Chen claims GEO should pay him.  It makes perfect

19  sense that Washington's own statute would not specifically address whether *federal* immigration

20  detainees in an ICE-contracted facility would be exempted from the MWA, for there is no reason

21

22

23  _____

24  [75] *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wash. 2d 851, 868, 281 P.3d 289, 298 (2012)  (citing *Stahl v. Delicor of Puget Sound, Inc.*, 148 Wash.2d 876, 885, 64 P.3d 10 (2003)); *Inniss v. Tandy Corp.*, 141 Wash.2d 517, 523, 7 P.3d 807 (2000) (en banc).

25  [76] *Compare* 29 U.S.C. § 203(e)(1) ("[T]he term 'employee' means any individual employed by an employer."), *with* Wash. Rev. Code § 49.46.010(3) ("'Employee' includes any individual employed by an employer ...."); *compare*

26  *also* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."), *with* Wash. Rev. Code § 49.46.010(2) ("'Employ' includes to permit to work.").

27  [77] *Anfinson*, 174 Wash. 2d at 868 (citing *State v. Bobic*, 140 Wash.2d 250, 264, 996 P.2d 610 (2000) (quoting *State v. Carroll*, 81 Wash.2d 95, 109, 500 P.2d 115 (1972))).

28  CHEN v. THE GEO GROUP, INC.                                    III BRANCHES LAW, PLLC
    ECF CASE NO. 3-17-cv-05769                                          Joan K. Mell
    GEO'S MOTION TO DISMISS - 17                              1019 Regents Blvd. Ste. 204
                                                                      Fircrest, WA 98466
                                                                       253-566-2510 ph
                                                                    joan@3brancheslaw.com

1  that the Washington legislature would even consider the possibility that its law would be used to

2  compel a federal contractor to pay federal detainees a state law minimum wage.  Accordingly, no

3  court appears to have interpreted whether the exemption would extend to federal detainees.

4      However, the Court can and should look to decisions interpreting the FLSA to conclude

5  that federal detainees would not be "employees" and GEO not an "employer" under the statute.[78]

6  Congress enacted the FLSA to eliminate "in industries engaged in commerce or in the production

7  of goods for commerce, ... labor conditions detrimental to the maintenance of the minimum

8  standard of living necessary for health, efficiency, and general well-being of workers" because

9  such conditions "constitute[] an unfair method of competition in commerce[.]"[79]  Washington's

10  minimum wage law, like the FLSA, has the same remedial purpose of protecting against " 'the

11  evils and dangers resulting from wages too low to buy the bare necessities of life and from long

12  hours of work injurious to health.'"[80]

13      That rationale is inapplicable to a detention facility, and therefore Washington exempts

14  residents of state, county or municipal detention facilities from its own minimum wage laws.[81]

15  Inmates in the custody of the Washington Department of Corrections ("DOC") are provided

16  "opportunities to support the daily operation and maintenance" of state facilities, but they are

17  compensated at fraction of the minimum wages that Chen demands GEO pay federal detainees:

---

[78] *Anfinson*, 174 Wash. 2d at 868;  *Kilgore v. Shriners Hospitals For Children*, 190 Wash.App. 429, 360 P.3d 55 (2015) (when construing the MWA, courts "may consider interpretations of comparable provisions of the [FLSA] as persuasive authority"); *Xieng v. Peoples Nat'l Bank*, 120 Wash.2d 512, 531, 844 P.2d 389 (1993) (in the absence of adequate state authority, federal authority is persuasive).

[79] 29 U.S.C. § 202(a); *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).

[80] *Anfinson*, 174 Wash. 2d at 870 (quoting *United States v. Rosenwasser*, 323 U.S. 360, 361, 65 S.Ct. 295, 89 L.Ed. 301 (1945) (quoting S. Rep. No. 884, at 4, 75th Cong., 1st Sess. (Wash. 1937))).

[81]  As noted, Washington's MWA expressly exempts residents of state, county or municipal detention institutions from minimum wage protections.  RCW 49.46.010(3)(k).

CHEN v. THE GEO GROUP, INC.                                    III BRANCHES LAW, PLLC
ECF CASE NO. 3-17-cv-05769                                                Joan K. Mell
GEO'S MOTION TO DISMISS - 18                                   1019 Regents Blvd. Ste. 204
                                                                                    Fircrest, WA 98466
                                                                                    253-566-2510 ph
                                                                                    joan@3brancheslaw.com

1   Washington DOC "Work Ethic Program" 700.100 (capping compensation at $55 per month, or

2   less than 32 cents per hour, based on a 40-hour week*); see also* 790.100 (outlining DOC's "Work

3   Ethic Program" that is "designed to reduce recidivism and lower the cost of corrections in

4   compliance with RCW" and does not pay, but may reduce jail sentence).[82]   The federal

5   government pays GEO to provide the necessities for detainees housed at the NWDC.   Detainees

6   may be required to perform certain housekeeping chores for no pay,[83] and detainees are paid by

7

8   GEO (which is reimbursed by ICE) for the $1 per day allowance for VWP participation.[84]

9       As discussed, the courts have upheld this arrangement for decades.   In *Alvarado*,[85] the

10  Fifth Circuit upheld the $1 daily rate for voluntary work against an immigration detainee's

11  challenge.   The court reasoned that detainees were not "employees" under the FLSA, and "it

12

13  would not be within the legislative purpose of the FLSA to protect [the detainees]," because

14  "[t]he congressional motive for enacting the FLSA," was to protect the "standard of living" and

15

16

17  _____

[82] http://www.doc.wa.gov/information/policies/default.aspx?show=700

18  [83] It is well settled that federal detainees can constitutionally be required to perform some housekeeping chores
    without any pay at all.   *See Channer v. Hall*, 112 F.3d 214, 219 (5th Cir. 1997) (holding that "the federal

19  government is entitled to require a communal contribution by an INS detainee in the form of housekeeping tasks");
    *Hause v. Vaught*, 993 F.2d 1079, 1081, 1085 (4th Cir. 1993) (holding that pretrial detainees may be required to

20  "assist in cleaning the common areas of their cell-block"); *Bijeol v. Nelson*, 579 F.2d 423, 424-25 (7th Cir. 1978)
    (holding that a pretrial detainee "may constitutionally be compelled to perform simple housekeeping tasks in his or

21  her own cell and community areas"); *Jobson v. Henne*, 355 F.2d 129, 131-32 (2d Cir. 1966) (explaining that
    detained patients may be required to perform "chores of a normal housekeeping type and kind"); *Jackson v.*

22  *Siringas*, No. 12-15474, 2013 WL 3810301, at *10 (E.D. Mich. July 23, 2013) ("[R]equiring a pretrial detainee to
    help clean his living unit, including common areas, does not amount to involuntary servitude as prohibited by the

23  Thirteenth Amendment.").
    [84] Other exclusions from the term "employee" under MWA may also apply, and GEO reserves the right to seek

24  dismissal of the Complaint under these exclusions at a later date.   *See, e.g.*, Wash. Rev. Code § 49.46.10 (d)
    (excluding "[a]ny individual engaged in the activities of an educational, charitable, religious, state or local

25  governmental body or agency, or nonprofit organization where the employer-employee relationship does not in fact
    exist or where the services are rendered to such organizations gratuitously."); *see also*   Wash. Rev. Code

26  § 49.46.10(j) (excluding "[a]ny individual whose duties require that he or she reside or sleep at the place of his or
    her employment or who otherwise spends a substantial portion of his or her work time subject to call, and not

27  engaged in the performance of active duties").
    [85] 902 F.2d at 395.

28  CHEN v. THE GEO GROUP, INC.                                    III BRANCHES LAW, PLLC
    ECF CASE NO. 3-17-cv-05769                                          Joan K. Mell
    GEO'S MOTION TO DISMISS - 19                                  1019 Regents Blvd. Ste. 204
                                                                      Fircrest, WA 98466
                                                                       253-566-2510 ph
                                                                     joan@3brancheslaw.com

"general well-being" of the worker in American industry.[86]   Because detainees are "removed from American industry," they are "not within the group that Congress sought to protect in enacting the FLSA."[87]   The conclusion that detainee minimum wage claims are outside the scope of the FLSA is even more forceful given that the U.S. Supreme Court has consistently construed the FLSA "liberally to apply to the furthest reaches consistent with congressional direction, … recognizing that broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency."[88]

Other courts have uniformly held that detainees are not entitled to a minimum wage under the FLSA or state law, frequently reasoning that detainees need no minimum wage because they are already provided with necessities during the course of their detention.[89]   In   the *Menocal* case, which is still being litigated in Colorado federal court, the district court judge concluded that the immigrant detainees at GEO's Aurora facility were not "employees" entitled to minimum wage protection under the Colorado Minimum Wage Order.[90]   The district court found it persuasive that the Colorado minimum wage law, like the FLSA, "was not intended to

---

[86] *Id.* at 396 (citations omitted).
[87] *Id.*
[88] *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985).  The FLSA definition of "employee" is "strikingly broad."  *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 804, 806 (6th Cir. 2015).
[89] *See, e.g.*, *Guevara*, 954 F.2d 733, 1992 WL 1029, *1-2; *Miller*, 961 F.2d at 8-9 ("the minimum wage is not needed to protect the [detainees'] well-being and standard of living"); *Tourscher v. McCullough*, 184 F.3d 236, 243-44 (3rd Cir. 1999) (pretrial detainee not an employee entitled to minimum wage under FLSA because, like a prisoner, his standard of living is protected and the work "bears no indicia of traditional free-market employment"); *Villarreal*, 113 F.3d at 206-07 (pretrial detainees performing translation services for prison not employees under FLSA; "detention facilities provide pretrial detainees with their everyday needs such as food, shelter, and clothing"); *Whyte v. Suffolk County Sheriff's Dep't*, 91 Mass. App. Ct. 1124, 2017 WL 2274618, at *1-2  (Mass. App. Ct. May 24, 2017) (unpublished) (affirming dismissal of ICE detainee's claim for minimum wage and unjust enrichment); *Menocal v. The GEO Group, Inc.*, 113 F. Supp. 3d 1125, 1129 (D. Colo. 2015) (granting motion to dismiss ICE detainee claim for minimum wage at GEO facility).
[90] *Menocal*, 113 F. Supp. 3d at 1129.  In *Menocal*, detainees alleged that they were entitled to a minimum wage under Colorado law.  This claim was dismissed.  The Court did not dismiss a claim for unjust enrichment and violation of the Trafficking Victims Protection Act.  The merits of those claims have not yet been reviewed on appeal by the Tenth Circuit.

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 20

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

be extended to those working in government custody."[91]    Additionally, Colorado law exempted "inmates and prisons" from the wage laws because they were not employees under Colorado law.[92]    The court agreed with GEO that this exemption extended to detainees: "[a]though immigration detainees appear to fall under the broad definition of 'employee' … so do prisoners," and Colorado had interpreted the "employee" not to include prisoners.[93]    And, "immigration detainees, like prisoners, do not use their wages to provide for themselves," and therefore the purposes of state minimum wage laws does not apply to them.[94]    The court found persuasive the Fifth Circuit's reasoning in *Alvarado* that even the FLSA's broad definition of "employee" was not intended to cover immigration detainees "because the congressional motive for enacting the FLSA," like the Colorado law, was to protect the "standard of living" and "general well-being" of the worker in American industry.[95]

The same reasoning that resulted in dismissal of the minimum wage claim in *Menocal* applies here: detainees like Mr. Chen were provided with necessities during the time they were at NWDC.    They were not forced to go into the labor market and obtain a wage to provide for themselves.    The wage laws are therefore inapplicable to them.    The Washington law, like Colorado's law, did not specifically address federal immigration detainees, but the district court in *Menocal* had no difficulty concluding that the minimum wage laws do not apply by reference to FLSA precedents and the limited purposes of the Colorado law.    Washington's law excludes "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention,

---

[91] *Id.* (citing *Alvarado*, 902 F.2d at 396).
[92] *Id.*
[93] *Id.*
[94] *Id.*
[95] *Id.* (quoting *Alvarado*, 902 F.2d at 396).

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 21

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

treatment or rehabilitative institution," and that exception should be construed, accordingly the purposes of the law, to exclude federal immigration detainees housed at the NWDC.

Similarly, a Massachusetts appellate court recently affirmed the dismissal of a claim by an ICE detainee that he was entitled to a minimum wage under Massachusetts' law for work performed.[96]  The plaintiff ("Whyte") was a citizen of Jamaica and permanent resident of the United States.  ICE detained Whyte and placed him in custody for immigration removal proceedings at a facility operated by the Suffolk County sheriff's department under a contract with ICE.  While at the Suffolk County house of correction, Whyte signed up for a voluntary inmate work program and received one dollar per day in wages for performing janitorial work inside the house of correction.  Like the *Menocal* court, the Massachusetts court was "guided in the interpretation of our wage laws by Federal case law interpreting the [FLSA]."[97]  As that court concluded, "[f]ederal decisions consistently recognize that minimum wage and overtime laws intended to apply to work in the national economy do not apply to incarcerated individuals employed within the prison walls."[98]  The appellate court found "no reason why [plaintiff] Whyte's status as a detainee should result in a different outcome from Federal cases," which have excluded inmate or detainee labor within a facility "because the primary goals of the FLSA—ensuring a basic standard of living and preventing wage structures from being undermined by unfair competition in the marketplace—do not apply in that context."[99]  Thus,

---

[96] *Whyte*, 2017 WL 4231182, at *1.
[97] *Id.*  Not surprisingly, the court found "no Massachusetts authority interpreting the wage laws that treats inmates or detainees as employees."  *Id.*
[98] *Id.* (citing *Miller*, 961 F.2d at 8-9; *Villarreal*, 113 F.3d at 207).
[99] *Id.*

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 22

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1   "[t]he rationale of the Federal cases is equally applicable to the Massachusetts wage laws at issue

2   here."[100]

3

4       There is no reason for the MWA to be interpreted differently than in *Menocal* or *Whyte*.

5   The Washington legislature has no authority to nor has it ever contemplated extending

6   entitlements for Washington citizens to a select population whose status is controlled by federal

7   law.  It is reasonable to interpret the same FLSA intent to exclude federal immigration detainees

8   from the definition of "employee," and doing so would maintain uniformity between the MWA

9   and the FLSA, on which the former is based.

10

11                          **CONCLUSION**

12      For the above stated reasons, the Complaint should be dismissed in its entirety.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____

28   [100] *Id.* (citing and discussing *Alvarado*, 902 F.2d at 395-96).

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 23

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1   Dated: October 9, 2017

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III BRANCHES LAW, PLLC**

By: _____
Joan K. Mell, WSBA #21319
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 (p)
281-664-4643 (f)
joan@3brancheslaw.com

**NORTON ROSE FULBRIGHT US LLP**
Charles A. Deacon
300 Convent St.
San Antonio, Texas 78205
Telephone: (210) 270-7133
Facsimile:  (210) 270-7205
charlie.deacon@nortonrosefulbright.com

**NORTON ROSE FULBRIGHT US LLP**
Mark Emery
799 9th Street NW, Suite 1000
Washington, DC  20001-4501
Telephone: (202) 662-0210
Facsimile: (202) 662-4643
mark.emery@nortonrosefulbright.com

**ATTORNEYS FOR DEFENDANT THE
GEO GROUP, INC.**

CHEN v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS - 24

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

**CERTIFICATE OF SERVICE**

I, Joseph Fonseca, hereby certify as follows:

I am over the age of 18, a resident of Pierce County, and not a party to the above action. On October 9, 2017, I electronically filed the above GEO's Motion to Dismiss Class Action Complaint For Damages, with the Clerk of the Court using the CM/ECF system and served via Email to the following:

Schroeter, Goldmark & Bender
Adam J. Berger, WSBA No. 20714
Lindsay L. Halm, wSBA No. 37141
Jamal N. Whitehead, WSBA No. 39818
810 Third Avenue, Suite 500
Seattle, WA 98104
berger@sgb-law.com
halm@sgb-law.com
whitehead@sgb-law.com

The Law Office of R. Andrew Free
Andrew Free
P.O. Box 90568
Nashville, TN 37209
andrew@immigrationcivilrights.com

Sunbird Law, PLLC
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154
devin@sunbird.law

Norton Rose Fulbright US LLP
Charles A. Deacon(Pro Hac Vice To Be File)
300 Convent St.
San Antonio, TX 78205
(210)-270-7133
charlie.deacon@nortonrosefulbright.com

Norton Rose Fulbright US LLP
Mark Emery (Pro Hac Vice To Be Filed)
799 9th St. NW, Suite 1000
Washington, DC 20001-4501

GEO'S MOTION TO DISMISS CLASS ACTION COMPLAINT FOR DAMAGES
Case No. 3:17-cv-05769-RJB

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

(202)-662-0210
mark.emery@nortonrosefulbright.com

I certify under penalty of perjury under the laws of the State of Washington that the above information is true and correct.

DATED this 9th day of October, 2017 at Fircrest, Washington.

Joseph Fonseca, Paralegal

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph