The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHAO CHEN, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC., a Florida corporation,<br><br>Defendant. | No. 3:17-cv-05769-RJB<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO JOIN REQUIRED GOVERNMENT PARTIES OR MOTION FOR JOINDER |

## I.   INTRODUCTION AND RELIEF REQUESTED

Defendant The GEO Group, Inc. ("GEO") moves to dismiss Plaintiff Chao Chen's lawsuit for the second time—this time by overstating the terms of its contract with the Department of Homeland Security and Immigration and Customs Enforcement ("ICE") and by arguing against relief that Mr. Chen has *not* in fact requested. Contrary to GEO's claims, its contract with ICE does not establish the ceiling for its operation of the Northwest Detention Center ("NWDC"), but rather the floor, vesting GEO along the way with broad discretion to shape the terms of the Voluntary Work Program ("VWP") against the backdrop of state and local laws with which GEO must expressly comply. Indeed, the contract calls for

PLTF.'S OPP. TO DEF.'S MOT. TO DISMISS FOR FAILURE TO JOIN (17-CV-05769-RJB) – 1

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1  GEO to pay VWP participants "*at least* $1.00 (USD) per day," Dkt. 45-3 at 8 (PBNDS 2011,
2  § 5.8.V.K), but does not otherwise limit the compensation that GEO may provide or its
3  ability to comply with the Washington Minimum Wage Act ("MWA"), RCW 49.46. GEO's
4  arguments about staffing ratios and the need for ICE-consent on all things offer a similarly
5  cribbed view of the contract that the Court must reject in the context of GEO's Rule 12(b)(7)
6
7  motion.[1]
8      So when GEO argues, in essence, that Mr. Chen's lawsuit seeks to rewrite the terms
9  of its contract with ICE, it has grossly misstated the relief sought by Plaintiff given that
10 GEO's duties under the contract and Washington law are coextensive and entirely consistent
11 with one another. GEO's argument for joinder, and thus dismissal, hinges on this fallacy and
12
13 is not worthy of credence, as ICE has no legal interest in the outcome of this matter and will
14 face no harms if the VWP participants at the NWDC are found to be *GEO's employees* for
15 purposes of state law and if GEO is ordered to pay back wages consistent with that law.
16     Accordingly, for the reasons set forth below, Mr. Chen requests that the Court deny
17 GEO's Motion to Dismiss or, alternatively, Motion for Joinder.
18              **II.   FACTUAL BACKGROUND**
19     GEO filed an almost identical motion to dismiss in the companion case, *State of*
20 *Washington v. The GEO Group Inc.*, Cause No. 3:17-cv-05806-RJB, Dkt. 51 (*Washington v.*
21 *GEO*). The State filed an able brief in opposition to GEO's motion. In the interests of brevity
22
23 and judicial economy, rather than repeating much of the same argument and authority,
24 Mr. Chen adopts by reference the State's brief in opposition, save for Sections II.A and III.A
25
26 [1] "In reviewing a Rule 12(b)(7) motion, a court must accept all factual allegations in the complaint as true and draw inferences in favor of the non-moving party." 5C Charles Alan Wright, Arthur Miller, *et al.*, 5C Fed. Prac. & Proc. Civ. § 1359 (3d ed.).

PLTF.'S OPP. TO DEF.'S MOT. TO
DISMISS FOR FAILURE TO JOIN
(17-CV-05769-RJB) – 2

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

which address the State's *parens patriae* action, and the parts of Section III.C, at 18:6-25, that relate specifically to the equitable nature of the State's claims. *Washington v. GEO,* Dkt. No. 53. Here, the fact-specific and purely legal arguments can readily be adopted because both actions flow from GEO's operation of the VWP at the NWDC, which necessarily entails the same contract(s) between ICE and GEO. Instead, Mr. Chen's opposition expands upon issues present in the State's brief and addresses arguments specific to the strictly monetary and retrospective nature of Plaintiff's claims.

Plaintiff further notes that while both he and the State seek to enforce the MWA, he is bringing this action on behalf of himself and other past VWP participants at the NWDC to recover back pay under the MWA. The relief sought by Plaintiff is monetary and retrospective in nature, and he has not asserted any claim for injunctive, declaratory, or other prospective relief.

### III. DISCUSSION

#### A. ICE And The Department Of Homeland Security Are Not Necessary Parties To This Action Under Fed. R. Civ. P. 19.

The arguments made by the State at Section III.B of its opposition brief apply with full force and effect to GEO's motion to dismiss in this case, and Plaintiff adopts and incorporates by reference that argument and authority in its entirety. Plaintiff makes the following additional points that demonstrate why ICE and Homeland Security are not necessary parties to this case and why the Court can completely provide the back pay relief sought by Plaintiff from GEO in their absence.

PLTF.'S OPP. TO DEF.'S MOT. TO DISMISS FOR FAILURE TO JOIN (17-CV-05769-RJB) – 3

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

### 1. There Is No Irreconcilable Conflict Between Plaintiff's Claim For Relief And GEO's Contract With ICE.

GEO's argument that ICE is a necessary party hinges on the assertion that providing back pay to detainee workers at the rates required by the MWA would conflict with its contractual obligations to ICE. This assertion is simply false.

At the risk of belaboring the point, GEO's contract with ICE limits the rate at which the agency will reimburse GEO for VWP labor to $1 per detainee per day. Dkt. 19 at 9.[2] However, neither the contract nor federal law caps payment to the detainees at $1 per day; rather, the contract merely sets that as the floor. Dkt. 45-3 at 8 (PBNDS, 2011 § 5.8(V)(K)) ("The compensation is *at least* $1.00 (USD) per day.") (emphasis added); *see also Id.* at § 5.8(I) (authorizing contractor to establish standards that "meet or exceed" the Performance Based National Detention Standards). In addition, the contract specifically requires GEO to comply with all applicable state laws and regulations. Dkt. 19 at 56. Therefore, Plaintiff's claim for back pay at the Washington minimum wage rate does not violate the provisions of GEO's contract.

GEO's further arguments are premised on the false assumption that the terms "employ" and "employee" have the same meaning in all contexts. Thus, GEO argues that it cannot be held liable for failing to pay detainees the required wages under the MWA because its contract with ICE forbids it from 'employing' detainees.[3]

---

[2] Plaintiff uses the term "contract" herein to refer both to GEO's specific contract with ICE and to the Performance Based National Detention Standards ("PBNDS") that are incorporated in that agreement.

[3] The actual language of the contract provision cited by GEO is a bit more opaque: "Detainees shall not be used to perform the responsibilities or duties of an employee of the Contractor." Dkt. 19 at 82. This suggests that the primary concern is that detainees not be used to supplant the minimum staffing and "detailed services" required of the GEO's employees under the contract, *see* Dkt. 19 at 47 (definition of "Contractor employee"), not that the detainees cannot be paid in accordance with state minimum wage laws for the work they are allowed to and in fact did perform.

PLTF.'S OPP. TO DEF.'S MOT. TO
DISMISS FOR FAILURE TO JOIN
(17-CV-05769-RJB) – 4

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

However, both Washington and federal courts have recognized that the terms "employ," "employee," and "employer" may have different meanings in different contexts, even when applied to the same parties to the same transaction. In *Anfinson v. FedEx Ground Package Sys., Inc.*, 244 P.3d 32, 42 (Wash. App. 2010), the Washington Court of Appeals held that the "economic realities" test controls construction of these terms under the MWA, even though the different "right to control" test applies to their interpretation under common law and the Washington Wage Rebate Act, RCW 49.52.050 & .070. In affirming the Court of Appeals, the Washington Supreme Court also indicated that the definition of these terms might differ between the MWA and another Washington labor statute, the Industrial Welfare Act, RCW 49.12. *See Anfinson v. FedEx Ground Package Sys., Inc.*, 281 P.3d 289, 294, 300 (Wash. 2012); *see also Anfinson*, 244 P.3d at 43-44 (discussing differing interpretation of "employee" and "employer" under California labor law compared to FLSA). Federal courts have likewise determined that the phrases "employ," "employee" and "employer" may have different meanings in different contexts, dependent on statutory language and purpose. *E.g.*, *Wascura v. Carver*, 169 F.3d 683, 685-86 (11th Cir. 1999) (discussing differing meaning of "employer" under FLSA, FMLA, Title VII, ADEA, and ADA); *Boucher v. Shaw*, 572 F.3d 1087, 1089-91 (9th Cir. 2009) (holding that managers were employers under FLSA but not under Nevada state law).

In this case, GEO has presented no support for its assumption that the term "employee" when used in its contract with ICE should be interpreted in *pari materia* with the definition of that term under the MWA. *Cf. Anfinson*, 244 P.3d at 44 (contract's denomination of workers as "independent contractors" was irrelevant to whether they were "employees" under the MWA); *Alexander v. FedEx Ground Package Sys. Inc.*, 765 F.3d 981,

PLTF.'S OPP. TO DEF.'S MOT. TO
DISMISS FOR FAILURE TO JOIN
(17-CV-05769-RJB) – 5

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

989 (9th Cir. 2014) (same under California law). There is good reason, moreover, to suppose that the purposes of the contractual provisions using that term, whatever they may be, are different from the MWA's intent to level the playing field between workers and employers, protect workers from employer overreaching, "encourage employment opportunities within the state," and "establish and enforce modern fair labor standards." RCW 49.46.005. Therefore, identifying detainee laborers in the VWP as employees for purposes of the MWA does not mean that GEO violated its contract by 'employing' them within the meaning of that agreement, much less that an award of back pay under the MWA would cause a retroactive breach of GEO's contract with ICE.

Finally, GEO argues that classifying the detainees as employees under the MWA would violate the staffing provisions of its contract by causing a change in staffing levels without prior approval by ICE. This assertion suffers from the same defect addressed above with respect to interpreting "employee" the same under both the MWA and the contract. Moreover, the staffing provision cited by GEO does not even use the word "employee"; rather, it refers to the "number, type, and distribution of staff." *See* Dkt. 19 at 55. Even semantically, classifying detainees as MWA employees would not affect "staff" under this provision. Finally, the staffing provisions appear concerned with maintaining minimum staffing levels to serve particular functions required under the contract. *Id.* at 55-56. There is nothing to suggest that providing back pay to detainees under the MWA would run afoul of these provisions or cause GEO to have breached its contract with ICE.

PLTF.'S OPP. TO DEF.'S MOT. TO DISMISS FOR FAILURE TO JOIN (17-CV-05769-RJB) – 6

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

### 2. GEO's Reliance on *Dawavendewa* and *Peabody* Is Misplaced Because Plaintiff Asserts Claims Solely For Retrospective Monetary Relief.

For the reasons stated above and in the State's opposition at pp. 8-10 and 15-16, *Dawavendewa* and *Peabody* do not support GEO's motion in this case.[4] Unlike those cases, the relief sought here—payment of immigration detainees consistent with the MWA—does not create an irreconcilable conflict between GEO's compliance with state law and performance of its contract with ICE. At most, it would affect the profitability of GEO's operations at the NWDC, but the impact of Plaintiff's claim on GEO's past profits does not make ICE or the Department of Homeland Security necessary or indispensable parties.

The inapplicability of *Dawavendewa* and *Peabody* is particularly clear with respect to Plaintiff's claim in this case. Both of those cases involved requests for injunctive relief that, if granted, would make it impossible for the defendant companies to comply with both the court's orders and the provisions of the leases they had signed. *Dawavendewa*, 276 F.3d at 115; *Peabody W. Coal Co.*, 610 F.3d at 108-82. Here, no such impossibility arises. As important, Plaintiff does not seek any injunctive relief, merely back pay for detainees who have already worked for GEO through the VWP. Regardless of the practical impact that a judgment might have on GEO's profitability or implementation of the VWP going forward, the participation of ICE or Homeland Security is not necessary in any way for GEO to provide the purely retrospective monetary relief sought by Plaintiff and the putative class in this case.[5]

---

[4] *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002); *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070 (9th Cir. 2010).

[5] Plaintiff seeks no compensation from ICE, but even if he did, GEO would be responsible under the contract for indemnifying ICE for any such award, rendering ICE unnecessary for the relief sought by Plaintiff. Dkt. 19 at 56.

PLTF.'S OPP. TO DEF.'S MOT. TO DISMISS FOR FAILURE TO JOIN (17-CV-05769-RJB) – 7

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

The purely retrospective nature of Plaintiff's claims also undermines GEO's argument that ICE is a necessary party for purposes of obtaining discovery. As Plaintiff has previously noted, workers are entitled to obtain back pay damages under the MWA whether or not they were documented and eligible to work legally in the United States at the time they performed the subject labor. *See Sandoval v. Rizzuti Farms, Ltd.*, CV-07-3076-EFS, 2009 WL 2058145 at *3 (E.D. Wash. July 15, 2009) (plain language of state law "lack[ed] any limitations based on immigration status or citizenship"); *see also Saucedo v. NW Mgmt. & Realty Servs.*, 12-CV-0478-TOR, 2013 WL 12097442 (E.D. Wash. Oct. 10, 2013) (immigration status is irrelevant to award of damages under Washington state labor protection law). Thus, the information that GEO claims is exclusively in the possession of ICE—including the work eligibility, security classifications, and similar information about individual detainees—is irrelevant to the resolution of Plaintiff's claim. The relevant information—which detainees worked on which days and for how many hours—is or should be in the possession of GEO, which ran the VWP and supervised the work of the detainees.

Moreover, even if ICE does possess some relevant information, that does not render it a necessary party, even if discovery of that information may be somewhat more complicated or time-consuming than from a private party. *See Brown v. United States,* 42 Fed. Cl. 538, 564 (Fed.Cl.1998) (a party is not "necessary" for Rule 19 purposes merely because the plaintiff needs to obtain evidence from it and the defendant would have to defend its actions at trial). GEO's assertion that it cannot even release detainee names and information without permission from ICE does not compel a contrary conclusion. Even if true, there are alternative means of addressing that situation if necessary. Individual-level data can be provided using anonymous identifiers for purposes of computing damages, and class notice

PLTF.'S OPP. TO DEF.'S MOT. TO
DISMISS FOR FAILURE TO JOIN
(17-CV-05769-RJB) – 8

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

and distribution of awards could be accomplished through *in camera* submissions to the Court, use of a confidential third party administrator, or by GEO itself pursuant to orders from the Court.

### 3. GEO's Reliance on the General Counsel Opinion Letters Is Misplaced.

GEO's reliance on two 25 year-old opinion letters from the Immigration and Naturalization Service's ("INS") General Counsel is equally unavailing for the simple reason that neither opinion addresses the definition of "employee" under the Washington MWA or whether a private contractor running a civil detention facility can be an "employer" under that law.

The first letter merely states that immigration detainees performing voluntary labor in an INS facility are not employees of the INS for purposes of invoking sanctions under the Immigration and Nationality Act. *See* INS General Counsel, *The Applicability of Employer Sanctions to Alien Detainees Performing Work in INS Detention Facilities,* Genco Op. No. 92-8 (INS), 1992 WL 1369347 (Feb. 26, 1992). The letter does not address the different definition of employee under the MWA, nor does it address the potential "employer" status of private contractors using detainee labor to perform essential functions in a privately run facility.[6]

---

[6] It is worth noting that the letter's analysis also tends to undermine GEO's preemption argument. It states:

> Further, the specific Congressional intent behind the passage of the employer sanctions provision of the Act was to deter illegal immigration by removing the lure of employment. Work performed by alien detainees is incident to their detention. Therefore, *this is certainly not the type of employment to which Congress referred as creating a magnet for illegal aliens*.

*Id*. (emphasis added). Notwithstanding GEO's fanciful contentions that undocumented immigrants may be lured to the United States by the prospect of being allowed to work in detention facilities, this analysis indicates that there is no conflict between the purposes of the federal immigration statutes and a finding that VWP participants are employees for purposes of state law.

PLTF.'S OPP. TO DEF.'S MOT. TO DISMISS FOR FAILURE TO JOIN (17-CV-05769-RJB) – 9

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

The second letter is even less relevant. It merely holds that the INS is authorized to spend appropriated funds to pay detainees for labor performed at a Naval Air Facility adjoining an INS processing center. *See* INS General Counsel, *Your CO 243-C Memorandum of November 15, 1991; DOD Request for Alien Labor,* Genco Op. No. 92-63 (INS), 1992 WL 1369402 (Nov. 13, 1992). It says nothing about the detainees' employee status under any state or federal law, nor about the rate of compensation that a private company would be required to pay such workers. *Id*. GEO's reliance on these letters to assert that detainees at the NWDC cannot be employees under the MWA lacks any support in the text or the cursory analysis in the letters themselves.

### B. The Action Should Proceed, In Equity and Good Conscience, Even In The Absence Of ICE.

Plaintiff incorporates by reference the arguments made by the State under Rule 19(b) at Section III.C of its brief. Like the State, Plaintiff does not seek any monetary or other relief against ICE or Homeland Security and does not seek to change or eradicate any part of GEO's contract with ICE. Nor does Plaintiff seek any injunctive relief that would affect the profitability of GEO's operations going forward or require it to modify prospectively its agreement with ICE. Rather, all the relief sought by Plaintiff can be provided by GEO alone. In addition, the Court has preserved GEO's affirmative defense of offset and counterclaim for unjust enrichment, enabling it to shape any award to Plaintiff and the putative class to avoid any undue prejudice to GEO to the extent required by the evidence and allowed by the law. And, if this lawsuit were dismissed, Plaintiff and the putative class members would have no recourse to obtain the wages that are due them for the work they performed under the MWA.

PLTF.'S OPP. TO DEF.'S MOT. TO DISMISS FOR FAILURE TO JOIN (17-CV-05769-RJB) – 10

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

**C. In The Alternative, The Court Should Deny Or Continue GEO's Motion Under Fed. R. Civ. P. 56(f).**

In bringing this motion, GEO has cited to its contract with ICE and the PBNDS, the declaration of its counsel and exhibits thereto, and various factual assertions that are lacking evidentiary support. The Court can and should deny GEO's motion, because ICE and Homeland Security are not necessary parties within the meaning of Rule 19 and because the action could proceed in equity and good conscience even if they were. However, should the Court find any validity to GEO's motion, it should deny or continue the motion under Fed. R. Civ. P. 56(f) in order to permit Plaintiff sufficient time to conduct discovery and take depositions concerning assertions of fact, such as the meaning of the staffing requirements and VWP reimbursement provisions of the contract, that may be relevant to the Court's determination. Due to the short time frame for responding to this motion and the early stage of this case, as well as GEO's general resistance to discovery to date, Plaintiff has not had adequate opportunity to take discovery on these issues. *See* Declaration of Jamal N. Whitehead ¶¶ 2-4; *see* Dkt. 45-4 (GEO's Resp. to Pltf.'s First Discovery Requests).

## IV. CONCLUSION

For the reasons stated above, the claims asserted in this case would not require GEO to breach its contract with ICE in order to comply with a judgment in favor of Plaintiff or the putative class. Nor is joinder of ICE or Homeland Security necessary to obtain essential evidence or provide the requested relief to the class. Therefore, GEO's motion should be denied.

DATED this 16th day of April, 2018.

SCHROETER GOLDMARK & BENDER

*s/ Adam J. Berger*

PLTF.'S OPP. TO DEF.'S MOT. TO DISMISS FOR FAILURE TO JOIN (17-CV-05769-RJB) – 11

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Adam J. Berger, WSBA #20714
Lindsay L. Halm, WSBA #37141
Jamal N. Whitehead, WSBA #39818
810 Third Avenue, Suite 500
Seattle, WA 98104
Tel: (206) 622-8000 ~ Fax: (206) 682-2305
berger@sgb-law.com
halm@sgb-law.com
whitehead@sgb-law.com

THE LAW OFFICE OF R. ANDREW FREE
Andrew Free (*Pro Hac Vice*)
P.O. Box 90568
Nashville, TN 37209
Tel: (844) 321-3221 ~ Fax: (615) 829-8959
andrew@immigrantcivilrights.com

SUNBIRD LAW, PLLC
Devin T. Theriot-Orr, WSBA # 33995
1001 Fourth Avenue, Suite 3200
Seattle, WA  98154-1003
Tel: (206) 962-5052 ~ Fax: (206) 681-9663
devin@sunbird.law

*Attorneys for Plaintiff*

PLTF.'S OPP. TO DEF.'S MOT. TO DISMISS FOR FAILURE TO JOIN (17-CV-05769-RJB) – 12

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Devin T. Theriot-Orr, WSBA # 33995<br>SUNBIRD LAW, PLLC<br>1001 Fourth Avenue, Suite 3200<br>Seattle, WA 98154-1003<br>Tel: (206) 962-5052<br>devin@sunbird.law<br><br>*Counsel for Plaintiff* | R. Andrew Free<br>THE LAW OFFICE OF R. ANDREW FREE<br>Admitted *Pro Hac Vice*<br>PO Box 90568<br>Nashville, TN 37209<br>Tel: (844) 321-3221<br>andrew@immigrantcivilrights.com<br><br>*Counsel for Plaintiff* |
| Joan K. Mell<br>III BRANCHES LAW, PLLC<br>1019 Regents Boulevard, Suite 204<br>Fircrest, WA 98466<br>Tel: (253) 566-2510<br>joan@3ebrancheslaw.com<br><br>*Attorney for Defendant* | Mark Emery<br>NORTON ROSE FULBRIGHT US LLP<br>799 9th Street, Suite 1000<br>Washington, D.C. 20001<br>Mark.emery@nortonrosefulbright.com<br><br>*Attorney for Defendant* |
| Andrea D'Ambra<br>NORTON ROSE FULBRIGHT US LLP<br>1301 Avenue of the Americas<br>New York, NY 10019<br>andrea.dambra@nortonrosefulbright.com<br><br>*Attorney for Defendant* | Charles A. Deacon<br>NORTON ROSE FULBRIGHT US LLP<br>300 Covent St.<br>San Antonio, TX 78205<br>Charles.deacon@nortonrosefulbright.com<br><br>*Attorney for Defendant* |

DATED at Seattle, Washington this 16th day of April, 2018.

*s/ Jamal Whitehead*
Jamal Whitehead
Schroeter Goldmark & Bender
810 Third Avenue, Suite 500
Seattle, WA 98104
Tel: (206) 622-8000
Fax: (206) 682-2305
whitehead@sgb-law.com

PLTF.'S OPP. TO DEF.'S MOT. TO DISMISS FOR FAILURE TO JOIN (17-CV-05769-RJB) – 13

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305