1
2
3
4
5

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

UGOCHUKWU GOODLUCK
NWAUZOR, FERNANDO AGUIRRE-
URBINA, individually and on behalf of all
those similarly situated,

                 Plaintiffs,

     v.

THE GEO GROUP, INC., a Florida
corporation,

                 Defendant.

No. 17-cv-05769-RJB

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

Note on Motion Calendar:
July 13, 2018

ORAL ARGUMENT
REQUESTED

PLTFS.' MOT. FOR CLASS CERT.
(17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................. 2

    A.   GEO's Implementation Of The Voluntary Work Program At The NWDC. ................................................................................... 2

    B.   GEO's Policies, Procedures, And Practices For The VWP Apply Uniformly To All Detainees At NWDC. .............................. 3

    C.   The Named Plaintiffs. .................................................................... 5

III. ARGUMENT ........................................................................................ 7

    A.   Rule 23 Class Certification Standard of Review. ......................... 7

    B.   Plaintiffs Satisfy The Rule 23 Class Certification Requirements. ............................................................................... 8

        1.   Numerosity ............................................................................ 8

        2.   Common Questions of Law and Fact Abound and Predominate. .................................................................... 10

        3.   Plaintiffs' Claims are Typical of the Class Claims. ........... 15

        4.   The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class. ........... 16

        5.   Plaintiffs' Proposed Class Satisfies the Superiority Requirement. ...................................................................... 19

IV.  CONCLUSION ................................................................................... 21

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

# TABLE OF AUTHORITIES

**Page**

**<u>Cases</u>**

*Alexander v. FedEx Ground Package Sys., Inc.*,
   765 F.3d 981 (9th Cir. 2014) ................................................................. 14

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) .............................................................................. 20

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946) ......................................................................... 14, 15

*Anfinson v. FedEx Ground Package Sys., Inc.*,
   281 P.3d 289 (Wash. 2012) ............................................................. 11, 12

*Blough v. Shea Homes, Inc.*,
   Case No. 2:12 Civ. 01493 RSM, 2014 WL 3694231 (W.D. Wash. July 23, 2014) ............ 9

*Brock v. Superior Care, Inc.*,
   840 F.2d 1054 (2d Cir. 1988) ................................................................. 12

*Connor v. Automated Accounts, Inc.*,
   202 F.R.D. 265 (E.D. Wash. 2001) .......................................................... 19

*Davis v. Astrue*,
   250 F.R.D. 476 (N.D. Cal. 2008) ............................................................. 17

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ............................................................... 7, 15

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
   242 F.R.D. 568 (W.D. Wash. 2007) ..................................................... 14, 17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1988) ............................................................ 10, 17

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .................................................................. 15

*Hopkins v. Cornerstone Am.*,
   545 F.3d 338 (5th Cir. 2008) .................................................................. 12

*In re Wash. Mut. Mortgage-Backed Secs. Litig.*,
   276 F.R.D. 658 (W.D. Wash. 2011) .......................................................... 10

*Jordan v. County of Los Angeles*,
   669 F.2d 1311 (9th Cir.1982) *vacated on other grounds by*
   459 U.S. 810 (1982) ............................................................................... 8

*Kamar v. Radio Shack Corp.*,
   254 F.R.D. 387 (C.D. Cal. 2008) aff'd sub nom.
   *Kamar v. RadioShack Corp.*, 375 F. App'x 734 (9th Cir. 2010) ...................... 11

PLTFS.' MOT. FOR CLASS CERT. - ii
(17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

## Table of Authorities, continued

**Page**

*Kirkpatrick v. Ironwood Commcn's, Inc.*,
    Case No. C05-1428JLR, 2006 WL 2381797 (W.D. Wash. Aug. 16, 2006) ........................ 8

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ............................................................................... 14

*McCluskey v. Trustees of Red Dot Corp. Emp. Stock Ownership Plan & Trust*,
    268 F.R.D. 670 (W.D. Wash. 2010) ....................................................................... 9

*Menocal v. GEO Grp., Inc.*,
    320 F.R.D. 258 (D. Colo. 2017) *aff'd*, 882 F.3d 905 (10th Cir. 2018) ...................... *passim*

*Mortimore v. Fed. Deposit Ins. Corp.*,
    197 F.R.D. 432 (W.D. Wash. 2000) ...................................................................... 20

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ............................................................................... 10

*Pugh v. Evergreen Hosp. Med. Ctr.*,
    177 P.3d 363 (Wash. App. 2013) .......................................................................... 14

*Ramos v. SimplexGrinnell LP*,
    796 F. Supp. 2d 346 (E.D.N.Y. 2011) ................................................................... 20

*Real v. Driscoll Strawberry Assocs.*,
    603 F.2d 748 (9th Cir. 1979) ............................................................................... 12

*Slayman v. FedEx Ground Package Sys., Inc.*,
    765 F.3d 1033 (9th Cir. 2014) .............................................................................. 13

*Toering v. EAN Holdings, LLC*,
    Case No. C 15-2016 JCC, 2016 WL 4765850 (W.D. Wash. Sept. 13, 2016) ........... 7, 8, 11

*Torres v. Mercer Canyons, Inc.*,
    835 F.3d 1125 (9th Cir. 2016) .............................................................................. 14

*Troy v. Kehe Food Distrib., Inc.*,
    276 F.R.D. 642 (W.D. Wash. 2011) ...................................................................... 14

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S.Ct. 1036 (2016) .................................................................................. 13, 14

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. &*
    *Serv. Workers Intern. Union AFL-CIO, CLC v. Conoco Phillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ................................................................................. 7

*Valentino v. Carter–Wallace, Inc.*,
    97 F.3d 1227 (9th Cir.1996) ................................................................................. 10

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ................................................................................. 8

## Table of Authorities, continued

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

**Page**

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................................................. 7, 10, 12

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) ................................................................................ 10

*Wyatt By & Through Rawlins v. Poundstone*,
  169 F.R.D. 155 (M.D. Ala. 1995) ........................................................................ 17

*Zeisel v. Diamond Foods, Inc.*,
  Case No. C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal. June 7, 2011) ........................... 7

## Statutes
RCW 49.46 ........................................................................................................... 1
RCW 49.46.010(k) ............................................................................................... 15

## Rules
Fed. R. Civ. P. 15(a)(3) ........................................................................................ 2
Fed. R. Civ. P. 23(a) ............................................................................................ 7
Fed. R. Civ. P. 23(a)(1) ........................................................................................ 8
Fed. R. Civ. P. 23(a)(3) ........................................................................................ 15
Fed. R. Civ. P. 23(a)(4) ........................................................................................ 16
Fed. R. Civ. P. 23(g)(1) ........................................................................................ 16
Fed. R. Civ. P. 23(b) ............................................................................................ 7
Rule 23 ............................................................................................................. 7, 8
Rule 23(a) ............................................................................................................ 8
Rule 23(a)(2) ...................................................................................................... 10
Rule 23(b)(3) ............................................................................................ 8, 7, 10, 19

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

## I.    INTRODUCTION

Defendant The GEO Group, Inc. ("GEO") owns and operates the Northwest Detention Center ("NWDC"), and uses civil immigration detainees participating in its Voluntary Work Program ("VWP"), like Plaintiffs Ugochukwu Goodluck Nwauzor and Fernando Aguirre-Urbina, to perform virtually all non-security functions in the facility. GEO pays these detainees $1.00 a day for their labor regardless of how many hours they actually work. Plaintiffs argue that an employment relationship exists between GEO and the detainees taking part in the VWP, and that GEO's practice of paying subminimum wages to these workers violates Washington's Minimum Wage Act ("MWA"), RCW 49.46 *et seq*.

Although the detainee workers have unique and varied backgrounds, the central legal questions in this case—whether GEO is an "employer" and the detainees are "employees" within the meaning of the MWA—are the same for all detainee workers and well-suited for class-wide resolution. First, certification is appropriate because the rights of hundreds or thousands of detainees can be resolved in one fell swoop, as part of a single, fair, and efficient proceeding. Second, common questions of fact and law abound given that Plaintiffs' claims and those of the putative class arise out of the same nucleus of facts involving GEO's administration of the VWP. Finally, the common issues in the case—the applicability of the MWA and whether GEO violated its mandates—predominate over any individualized issues.

Accordingly, Plaintiffs respectfully request that the Court certify this matter as a class action under Rule 23, defining the class as follows:

> All civil immigration detainees who participated in the Voluntary Work Program at the Northwest Detention Center at any time between September 26, 2014, and the date of final judgment in this matter.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

In addition, Plaintiffs respectfully request that the Court (1) designate them as Class Representatives, (2) appoint Schroeter Goldmark & Bender, the Law Office of R. Andrew Free, Sunbird Law PLLC, and Menter Immigration Law PLLC as Class Counsel, and (3) order that notice of this action be provided to the Class.

## II. FACTUAL BACKGROUND

### A. GEO's Implementation Of The Voluntary Work Program At The NWDC.

United States Immigration and Customs Enforcement ("ICE") contracts with various companies across the country to house civil immigration detainees awaiting removal proceedings in contractor-owned-and-operated detention facilities. GEO contracted with ICE to house up to 1,575 adult detainees at the NWDC on the Tacoma, Washington tide flats at any given time. Dkt. No. 19 (ICE Contract) at pp. 47-49; Dkt. No. 33 ("Answer") at ¶¶ 4.2-4.3.[1] The actual number of detainees varies from year-to-year, but between 2014 and 2017, the average daily population at NWDC was over 1,300. Declaration of Jamal Whitehead in Support of Mot. for Class Cert. ("Whitehead Decl."), Ex. 2 (ICE ERO Custody Management Division Facility List).

Under its contract with ICE, GEO agreed to maintain a detainee work program in which "[d]etainee labor shall be used in accordance with the detainee work plan developed by the Contractor, and will adhere to the ICE PBNDS [Performance-Based National Detention Standards] on Voluntary Work Program." ICE Contract at p. 86; *see id.* at p. 49. The VWP "provides detainees opportunities to work and earn money while confined…"

---

[1] Plaintiffs filed their First Amended Complaint on June 13, 2018, Dkt. No. 84, meaning that GEO's amended answer is due by June 27. *See* Fed. R. Civ. P. 15(a)(3). Although GEO has yet to serve its Amended Answer as of this filing, its original answer is still instructive regarding certain factual allegations.

PLTFS.' MOT. FOR CLASS CERT. - 2
(17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Whitehead Decl., Ex. 3 (2011 PBNDS) at § 5.8.I; *see also id.*, Ex. 4 (GEO's Resp. to Pltf.'s 1st IRFPs) at pp. 8-9. The contract also obligates GEO to comply with all applicable state and local work regulations in administering the VWP. 2011 PBNDS at § 5.8.II.5; ICE Contract at p. 86; Answer at ¶ 4.3.

The PBNDS articulates many common workplace standards, such as prohibiting discrimination, accommodating disabilities, and limiting work to "8 hours daily, 40 hours weekly." 2011 PBNDS at § 5.8.V.F, .G, and .K. It also outlines the terms of detainee compensation for the Voluntary Work Program:

> Detainees shall receive monetary compensation for work completed in accordance with the facility's standard policy. The compensation is *at least* $1.00 (USD) per day. The facility shall have an established system that ensures detainees receive the pay owed them before being transferred or released.

*Id.* at § 5.8.V.K (emphasis added); Answer at ¶ 4.7.

## B. GEO's Policies, Procedures, And Practices For The VWP Apply Uniformly To All Detainees At NWDC.

Upon entry to the NWDC, GEO issues each detainee a copy of its Detainee Handbook, which details the facility's "specific rules, regulations, policies, and procedures" concerning the VWP, among other things, which apply equally to all detainees. Whitehead Decl., Ex. 7 ("Handbook") at p. 4. GEO informs new detainees about the VWP as part of its orientation to the NWDC, *see* PBNDS at § 7.5 (Admission/Admissions Procedure), and makes "[e]very effort … to provide [detainees] an opportunity to participate in the voluntary work program." Handbook at p. 15. All detainees are eligible to work in the VWP, although restrictions may apply to the specific work assignments given depending on the detainee's risk classification. *Id.* at p. 7-8; *see also* Whitehead Decl., Ex. 4 (GEO's Resp. to Pltf.'s 1st IRFPs) at p. 9 ("A detainee would be eligible to participate in the [VWP] if the detainee were

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

detained at the NWDC and volunteered to participate."). And the process for requesting work through the VWP is uniform:

> You must complete a detainee request form indicating that you wish to participate in the voluntary work program and are encouraged to list any special skills or experience that you may have on the form. The form is routed to the Classification Officer. Prior experience and/or specialized skills are not a requirement for participation in the voluntary work program. However, medical staff must first physically clear detainees requesting to work in Food Services before that assignment can be made. Detainees who choose to participate in the voluntary work program are required to work according to an assigned work schedule.

Handbook at 15.

Once these requisites are met, and if a suitable job is available, GEO assigns a work schedule to the detainees participating in the VWP. *Id*. Work assignments uniformly involve cleaning, maintenance, and other service-type work, such as "Kitchen worker," "Recreation/Library/Barber," "Laundry," "Living area clean-up/janitorial," and "Evening workers (facility janitorial)." *Id*. at 9. GEO "provide[s] any necessary training to perform the job to which [detainees] are assigned," *id*., as well as any safety and other equipment associate with the tasks to be performed. PBNDS at § 5.8.V.N.

Detainees are not permitted to work outside the NWDC's grounds, and thus, cannot seek offsite employment during their detention. *See id*. at § 5.8.V.B ("In … [Contract Detention Facilities], low custody detainees may work outside the secure perimeter on facility grounds." (emphasis added)). Moreover, GEO prohibits detainees from running their own businesses while detained, subjecting detainees to penalties for "conducting a business," which the Handbook describes as a "Category IV" offense. Handbook at p. 24. GEO also maintains the right to remove any detainee from a work detail for "[u]nexcused or frequent absences or unsatisfactory work performance." *Id*. at p. 15; *see also* PBNDS at § 5.8.V.L.

PLTFS.' MOT. FOR CLASS CERT. - 4
(17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

GEO pays all detainees participating in the program at the NWDC the same amount—$1.00 per day—regardless of how many hours they actually work, and it calculates and pays wages earned on a daily basis. Handbook at p. 15. Between the 2010 and 2014 contract years, ICE reimbursed GEO for over a half-million VWP shifts at the NWDC, which was more than any other immigration detention facility in the nation. Whitehead Decl., Ex. 5 (SPC-CDF Voluntary Work Program Payments (Final) 02-12-15 – RIF) (documenting $564,396.00 in VWP payments by ICE for NWDC). GEO received reimbursement for over 127,000 detainee shifts—nearly 350 per day—in the 2013 and 2014 contract years alone. *Id*. According to GEO's Initial Disclosures, ICE's reimbursement increased to $157,913.00 in FY 2016, representing an average of 432 detainee VWP shifts each day. Whitehead Decl., Ex. 6 (GEO Rule 26 Disclosures) at p. 3.[2]

### C.    The Named Plaintiffs.

Plaintiff Ugochukwu Goodluck Nwauzor is a citizen of Nigeria, but the United States granted him asylum on January 24, 2017. Declaration of Ugochukwu Goodluck Nwauzor in Support of Plaintiffs' Motion for Class Certification ("Nwauzor Decl."), ¶ 2. ICE detained Mr. Nwauzor at the NWDC from approximately June 2016 until January 2017, while his asylum application was pending. *Id*. at ¶ 3. He is currently authorized to work in the United States. *Id*.

Plaintiff Fernando Aguirre-Urbina was born in Mexico, but has lived in the United States since he was about three-years old. Declaration of Fernando Aguirre-Urbina in

---

[2] According to GEO's Initial Disclosures, the corporation spent $7,636,984.00 on "room, clothing, food, laundry, utilities, etc." for detainees at the NWDC during FY2016. Whitehead Decl., Ex. 6 at p. 3 (calculating a $17.10 per hour damages offset against original named plaintiff). The federal government paid GEO at least $56.8 million for the previous contract year to perform this work, representing as much as a $49,000,000.00 profit to GEO at the expense of U.S. taxpayers. Dkt. No. 19 at pp. 6-7 (ICE Contract).

PLTFS.' MOT. FOR CLASS CERT. - 5
(17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Support of Plaintiffs' Motion for Class Certification ("Aguirre-Urbina Decl."), ¶ 2. Mr. Aguirre-Urbina is presently detained at the NWDC where he has been held since approximately September 2012. *Id.*

Both Mr. Nwauzor and Mr. Aguirre-Urbina learned about the Voluntary Work Program upon their entry to the NWDC and requested to take part in the program. Nwauzor Decl., ¶ 4; Aguirre-Urbina Decl., ¶ 3. Eventually, they received work assignments to perform various jobs at the NWDC. Nwauzor Decl., ¶ 5; Aguirre-Urbina Decl., ¶ 4. Mr. Nwauzor primarily cleaned the common showers within his pod in the afternoons following count time. Nwauzor Decl., ¶ 5. He worked virtually every day of his detention, usually for about an hour each shift. *Id.* at ¶ 5. Mr. Aguirre-Urbina has worked as a shower cleaner, dayroom cleaner, barbershop cleaner, food porter, juice server, in the kitchen, and picking up garbage outside the pods. Aguirre-Urbina Decl., ¶ 4. The amount of time he worked each day varied depending on the job, but could be up to four hours when he was working in the kitchen. *Id.* at ¶ 4.

GEO supervised and controlled all aspects of Mr. Nwauzor and Mr. Aguirre-Urbina's work, providing them with the training and the equipment they needed to perform their jobs at the NWDC. Nwauzor Decl., ¶ 6; Aguirre-Urbina Decl., ¶ 5. GEO did not, however, permit them to seek employment from another employer outside the walls of the NWDC during their detentions. Nwauzor Decl., ¶ 6; Aguirre-Urbina Decl., ¶ 5. Regardless of how many hours they worked in a day or week, GEO never compensated them more than $1 per day for their labor. Nwauzor Decl., ¶ 6; Aguirre-Urbina Decl., ¶ 5.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Plaintiffs estimate that hundreds of detainees, if not more, took part in the VWP during their detention under the same terms and conditions that applied to Mr. Nwauzor and Mr. Aguirre-Urbina. Nwauzor Decl., ¶ 8; Aguirre-Urbina Decl., ¶ 7.

## III.  ARGUMENT

### A.  Rule 23 Class Certification Standard of Review.

Plaintiffs seek certification under Rule 23 of the following class:

> All civil immigration detainees who participated in the Voluntary Work Program at the Northwest Detention Center at any time between September 26, 2014, and the date of final judgment in this matter.

In order for a class action to be certified, a plaintiff must establish the four prerequisites of Fed. R. Civ. P. 23(a)—numerosity, commonality, typicality, and adequacy of representation—and at least one of the alternative requirements of Fed. R. Civ. P. 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 346 (2011). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires a finding that common questions of law and fact predominate over questions affecting individual members, and that a class action is superior to other available means of fairly and efficiently adjudicating this controversy.

"Any doubts regarding the propriety of class certification generally should be resolved in favor of certification." *Zeisel v. Diamond Foods, Inc.*, Case No. C 10-01192 JSW, 2011 WL 2221113, *10 (N.D. Cal. June 7, 2011). Although "this inquiry may 'entail some overlap with the merits of the plaintiff's underlying claim[,] … the Court considers the merits only to the extent that they overlap with the requirements of Rule 23 and allow the Court to determine the certification issue on an informed basis." *Toering v. EAN Holdings, LLC*, Case No. C 15-2016 JCC, 2016 WL 4765850, *2 (W.D. Wash. Sept. 13, 2016) (*quoting Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,981 (9th Cir. 2011)); *see also United Steel,*

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

*Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Intern. Union AFL-CIO, CLC v. Conoco Phillips Co.*, 593 F.3d 802, 808-09 (9th Cir. 2010) ("[t]he court may not go so far … as to judge the validity of [the plaintiffs'] claims") (internal quotations omitted). Ultimately, the district court has broad discretion to certify a class. *Toering*, 2016 WL 4765850 at *2 (*citing Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009)).

As demonstrated below, Plaintiffs satisfy all the requirements of Rule 23(a) and (b)(3), and certification of the proposed class is appropriate. Indeed, courts have repeatedly certified claims involving Washington wage and hour violations as class actions. *See e.g., Toering*, 2016 WL 4765850 at *3, *5 (certifying minimum wage violations, noting such violations are "well suited for class-wide disposition"). And at least one other court has certified a similar class, albeit under federal statutory and common law theories of relief, as opposed to the state law statutory basis asserted here. *Menocal v. GEO Grp., Inc.,* 320 F.R.D. 258 (D. Colo. 2017), *aff'd*, 882 F.3d 905 (10th Cir. 2018) (certifying a class of detainees alleging that GEO was unjustly enriched by paying detainee workers participating in the VWP only $1 per day), *petition for cert. pending*.

**B.    Plaintiffs Satisfy The Rule 23 Class Certification Requirements.**

**1.    Numerosity.**

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Often, the number of class members by itself is sufficient to establish the impracticability of joining them as plaintiffs." *Kirkpatrick v. Ironwood Commcn's, Inc.*, Case No. C05-1428JLR, 2006 WL 2381797, *3 (W.D. Wash. Aug. 16, 2006) (*citing Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds by* 459

PLTFS.' MOT. FOR CLASS CERT. - 8
(17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

U.S. 810 (1982)). While there is no magic number for class certification, a class of at least 40 members is generally sufficient to satisfy the numerosity requirement. *Blough v. Shea Homes, Inc.*, Case No. 2:12 Civ. 01493 RSM, 2014 WL 3694231, at \*6 (W.D. Wash. July 23, 2014); *see also McCluskey v. Trustees of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 675 (W.D. Wash. 2010) (certifying a class of 27 members).

Here, even without a class list identifying the precise number of detainees taking part in the VWP,[3] the record demonstrates that at least 40 detainees took part in the program between September 26, 2014, and now. ICE reimbursed GEO for over 157,000 VWP shifts during FY2016 alone. Whitehead Decl., Ex. 6 (GEO Initial Disclosures). Historical data obtained from ICE show reimbursement of 127,000 VWP shifts in the 2013 and 2014 contract years. GEO's disclosures and ICE's data regarding the NWDC show the company used between 350 and 432 detainees to perform work in the VWP every day. Thus, the proposed class easily satisfies the numerosity requirement.

---

[3] Plaintiffs requested from GEO information about the number of detainees participating in the VWP at the NWDC between September 26, 2014, and the present, but GEO refused to provide such information, responding to Plaintiffs' interrogatory as follows:

> GEO objects to this Interrogatory on the grounds that a class has not been certified in this case and, as such, no class period has been set and Chen does not have standing at this time to seek redress of any alleged harm other than to himself. Further, GEO is unable to provide an accurate number of detainees who participated in the Voluntary Work Program at NWDC during an undefined period of time. Should a class be certified in this case at a later date, GEO is willing to meet and confer regarding additional information it will provide in response to this Interrogatory, subject to ICE approval and court orders.

Whitehead Decl., Ex. 4. GEO's responses to Plaintiffs' other attempts at class discovery were similarly opaque, but Plaintiffs will continue to confer with GEO's counsel in a good-faith effort to secure responsive information without resorting to motions practice.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

## 2.     Common Questions of Law and Fact Abound and Predominate.

Numerous courts have recognized that the commonality analysis of Rule 23(a)(2) and the predominance analysis under Rule 23(b)(3) are intertwined, so Plaintiffs address these inquiries together. *See, e.g., Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996) ("Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy.").

To satisfy Rule 23(a)(2), the "[p]laintiff must allege a 'common contention of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *In re Wash. Mut. Mortgage-Backed Secs. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011) (*quoting Dukes*, 131 S. Ct. at 2551). This does not mean, however, that plaintiffs need show that "every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is even a single common question, a would-be class can satisfy the commonality requirement…" *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks and citations omitted).

Relatedly, Rule 23(b)(3)'s predominance analysis focuses on "'the relationship between the common and individual issues.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1988)). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotations omitted). This is often the case where a plaintiff claims that an employer's policy or practice violates labor law; thus, "the key question for class certification

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

is whether there is a consistent employer practice that could be a basis for consistent liability." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008), aff'd sub nom. *Kamar v. RadioShack Corp.*, 375 F. App'x 734 (9th Cir. 2010); *see also Toering*, 2016 WL 4765850, at *4 (finding predominance where issue was whether local minimum wage ordinance applied to employer).

The primary common issues in this case—whether GEO is an "employer" and the detainee workers are "employees" under the MWA, and if so, whether GEO violated the MWA by failing to pay detainee workers the statutory minimum wage—predominate over any individualized issues. To begin, the foundational questions of whether a private detention facility contractor *can* be an employer of civil detainees under the MWA and whether the MWA is preempted by federal law are indisputably common and predominant questions that apply equally to all class members and can be answered at a single stroke. The same is true regarding the viability of GEO's conditional counter-claims for offset and unjust enrichment.

Beyond those questions, determining the existence of an employment relationship also necessarily involves common questions that predominate under the relevant factors adopted by Washington's Supreme Court to determine employee status under the MWA. *Anfinson v. FedEx Ground Package Sys., Inc.*, 281 P.3d 289, 299 (Wash. 2012). Under the "economic realities" test adopted by the Court, the central question is whether the detainee workers are: (a) economically dependent on GEO or, (b) in business for themselves. *Id.* In answering this question, courts consider such factors as:

1. the degree of the company's right to control how the work is performed;
2. the worker's opportunity for profit or loss depending on his managerial skill;
3. the worker's investment in equipment or materials required for the task;
4. whether the service rendered requires a special skill;
5. the degree of permanence of the working relationship;
6. whether the service rendered is an integral part of the company's business.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

*Id.* at 298-99 (*citing, e.g., Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748, 754 (9th Cir. 1979); *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988)). In this case, this is a question capable of being answered on a class-wide basis. That is to say, the "truth or falsity" behind the nature of the relationship between GEO and the detainee workers depends on factual predicates that are common to the class of detainee workers, *Dukes,* 564 U.S. at 350; namely:

- GEO's degree of control over the method, timing, and performance of detainee labor;
- The inability of detainee workers to alter their income beyond the standard payment of $1 per day regardless of skill, initiative, or any other factor;
- GEO's training and equipment furnished to detainee workers;
- GEO's restrictions on the ability of detainee workers to seek outside employment;
- GEO's control over the detainee workers' rate of pay;
- Detainee workers' integral role in GEO's operation and maintenance of the NWDC.

In the end, there is no dispute that the VWP is a standardized program run by GEO that applies the same rules and procedures to all detainee workers at NWDC. Indeed, all detainees are eligible to participate, work in the same universe of job classifications, receive the same level of direction and supervision from GEO, and the same pay. The relationship between GEO and the detainee workers in the VWP is the same for all participants, and individual differences in the specific jobs performed, time spent working, or other factors do not affect the basic and universal nature of the relationship.

Under nearly identical circumstances, the Tenth Circuit in *Menocal* affirmed the district court's decision to certify a class of detainee workers bringing forced labor and unjust enrichment claims against at GEO's Colorado facility because those claims were based on

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

the company's uniform policies and single common scheme in managing detainee labor. 882 F.3d 905, 916, 923 (2018) *reh'g & reh'g en banc denied* (Mar. 5, 2018). As the court wrote:

> Although the unjustness element requires "a fact-intensive inquiry," *Melat*, 287 P.3d at 847, the unjust enrichment class members intend to rely on facts that are shared amongst the class and thus are susceptible to class-wide proof. The class members "claim that GEO's retention of the benefit is unjust because GEO utilized a policy [of] paying extremely low wages to workers who were all detained, uniquely vulnerable as immigrants, and subject to GEO's physical control." Aplee. [*sic*] Br. at 48. They seek to establish the unjust nature of GEO's benefit based on "evidence of a common course of conduct by GEO—the uniform VWP and the uniform payments." *Id*. at 51. Because the class members' theory of unjustness depends on shared rather than individualized circumstances, the unjustness question is common to the class and does not defeat predominance. *See Tyson Foods*, 136 S. Ct. at 1045 ("[A] common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." (brackets and quotations omitted)).

*Id*. at 925. The same reasoning applies with equal or greater force to the MWA claims here.

Because there are central, common questions that predominate over any questions affecting only individual members, the commonality and predominance requirements of Rule 23 are satisfied.

a. *GEO's Anticipated Commonality/Predominance Arguments.*

GEO's anticipated objections to commonality and predominance do not withstand scrutiny.

First, GEO may argue that the *Anfinson* factors involve individualized inquiries about the circumstances of each detainee, but here, resolving the economic reality of the relationship between the detainee workers and GEO does not involve delving into subjective decision-making, managerial prejudice, differing levels of on-the-job independence, or any of the sorts of issues that can hinder class-wide adjudication, because GEO's policies and practices for the VWP were uniform. *See, e.g., Slayman v. FedEx Ground Package Sys., Inc.*,

PLTFS.' MOT. FOR CLASS CERT. - 13
(17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

765 F.3d 1033, 1048-49 (9th Cir. 2014) (applying economic realities test and upholding class certification because "our decision [on misclassification] does not rely on any individualized evidence"); *cf. Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 997 (9th Cir. 2014) (same, because company had right to control manner and means of drivers' work through uniform policy); *see also Troy v. Kehe Food Distrib., Inc.*, 276 F.R.D. 642 (W.D. Wash. 2011) (granting class certification for violations of state wage laws, distinguishing *Dukes* because no discretionary decisions by supervisors or "employee-by-employee" analysis was involved in defendant's company-wide classification of merchandisers). GEO has established and operated one VWP at the NWDC—not several. The differences in detainees' security classifications, the locations of work, and the backgrounds of detainee laborers are immaterial to the analysis and insufficient to defeat commonality or predominance.

Next, GEO may argue that calculating the number of hours that each detainee worked, wages already paid, or wages due will present individualized issues, but it is well established that "damage issues do not, as a rule, defeat class certification." *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007); *see also, Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)"); *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1134-35 (9th Cir. 2016) (same). Moreover, these issues can be addressed on a class-wide basis through use of GEO's own records of participation in the VWP and/or representative evidence pursuant to the burden-shifting approach of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1047 (2016); *Pugh v. Evergreen Hosp. Med.*

PLTFS.' MOT. FOR CLASS CERT. - 14
(17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

*Ctr.*, 177 P.3d 363, 368 (Wash. App. 2013) (recognizing applicability of *Anderson v. Mt. Clemens* approach under Washington law).

Finally, the defenses GEO has raised against Plaintiffs' claims are potentially dispositive questions that are undeniably common to the class, as GEO argues that detainees cannot be deemed employees under the MWA, either because of the exemption found at RCW 49.46.010(k) or through analogy to federal law under the Fair Labor Standards Act. The same is true of GEO's federal preemption arguments.

### 3.    Plaintiffs' Claims are Typical of the Class Claims.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quotation marks omitted).

Mr. Nwauzor and Mr. Aguirre-Urbina, like all members of the putative class, participated in the VWP at the NWDC and received subminimum wages for their labor. Like the other class members, Mr. Nwauzor and Mr. Aguirre-Urbina were economically dependent on GEO and subject to the company's policies and control. Their injuries are typical of the class they seek to represent and arise from GEO's failure to pay the prevailing minimum wage.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

GEO may argue that Plaintiffs' claims are typical, if at all, only of other detainees whose work assignments were confined to their own housing units or "pods." However, there is no material distinction under the MWA or the economic realities test between janitorial work performed by detainees in the pods and janitorial and service work performed in other areas of the facility. In all cases, GEO is capable of exercising the same degree of control; in all cases the detainees face the same restrictions on alternate employment; in all cases GEO provided all training and equipment, *see* Whitehead Decl., Ex. 4 (GEO's Resp. to Pltf.'s 1st IRFPs) at p. 15; and in all cases the work is essential to maintenance and operation of the facility, *see id*. at p. 9 ("In practice, the staff and detainees carry out daily activities to make sure the secure side of the facility is picked up and clean, people are well fed, well groomed, and physically active.") If anything, the fact that GEO could and did restrict Mr. Nwauzor and (sometimes) Mr. Aguirre-Urbina's work assignments demonstrates the authority it exercised over their labor, and the labor of all other VWP participants. Moreover, this argument founders on the extensive scope of Mr. Aguirre-Urbina's work history at the NWDC. He did not just perform janitorial work in his pod, but at various times worked in the kitchen, was a food porter between the kitchen and living units, and cleaned the barbershop and other areas of the detention facility. Aguirre-Urbina Decl., ¶ 4.

>    **4.**     **The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class.**

Before certifying the class, the Court must find that the named plaintiffs and their counsel will adequately represent the class. Fed. R. Civ. P. 23(a)(4) & (g)(1). "Resolution of two questions determines legal adequacy: (1) do the Named Plaintiffs and their counsel have any conflicts of interest with other Class Members and (2) will the Named Plaintiffs and their

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

counsel prosecute the action vigorously on behalf of the class?" *Grays Harbor*, 242 F.R.D. at 572 (*citing Hanlon*, 150 F.3d at 1020)).

Because Plaintiffs seek the same relief as all class members—back wages under the MWA—there are no potential conflicting interests. *Grays Harbor*, 242 F.R.D. at 572. Mr. Nwauzor and Mr. Aguirre-Urbina understand their obligation to vigorously pursue the class's interests and their fiduciary responsibility to represent other class members as fairly and adequately as they would represent and consider their own interests. Nwauzor Decl., ¶¶ 9-11; Aguirre-Urbina Decl., ¶¶ 8-10.

GEO has already and likely will continue to argue that Mr. Aguirre-Urbina is an inadequate class representative because of his mental health history. *See* Dkt. 79 (GEO's Opp. to Mot. to Am. Compl.) at pp. 1, 3-5. However, Defendant offers no evidence to suggest that Mr. Aguirre-Urbina cannot *currently* be a competent representative of the class and withstand the rigors of litigation. *See Davis v. Astrue,* 250 F.R.D. 476, 490 (N.D. Cal. 2008) (finding mentally disabled claimant was adequate class representative in suit concerning termination of disability benefits; "aside from the current mental [disabilities] … of the plaintiffs, there is no evidence to suggest that plaintiff cannot withstand the rigors of litigation."). Indeed, Defendant deposed Mr. Aguirre-Urbina on June 11 for over seven hours, and he represented the interests of the putative class admirably in the face of what can only be characterized, at a minimum, as extremely aggressive questioning. *See Wyatt By & Through Rawlins v. Poundstone,* 169 F.R.D. 155, 165 (M.D. Ala. 1995) (finding named plaintiffs were adequate representatives of persons in mental health institutions when, among other things, "[t]he mentally ill plaintiffs were all able to speak eloquently and forcefully at trial about their own experiences on behalf of the members of the class."). So that the Court

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

may evaluate Mr. Aguirre-Urbina's adequacy more closely, Plaintiffs have attached the entirety of his deposition transcript to counsel's declaration as an exhibit, and will provide a video recording of the proceedings as soon as it is received. Whitehead Decl., Ex. 8 (Aguirre-Urbina Tr.) and ¶ 17.

Plaintiffs are cognizant of the general rule against simply providing the Court with a lengthy deposition transcript rather than citing to pertinent sections of the proceedings. Plaintiffs take the unusual step in this instance, however, for three reasons. First, Plaintiffs anticipate that GEO will attempt to take certain statements in the deposition out of context in an attempt to challenge Mr. Aguirre-Urbina's adequacy. While Plaintiffs will address such assaults in their reply brief with pinpoint citations to the record, they cannot anticipate now which passages Defendant may cite, and wish to forestall any accusation that they are providing new evidence in a reply brief. Second, as the Court seems to have anticipated in rejecting Defendant's opposition to Plaintiffs' Motion to Amend, Mr. Aguirre-Urbina's ability to respond to defense questioning at deposition is one of the best tests of his adequacy, and the Court may wish to judge his capacity by reviewing the transcript as a whole. Third, Plaintiffs believe that in this instance, more than most, the content and quality of Mr. Aguirre-Urbina's responses must be viewed against the overtly hostile, argumentative, and disdainful nature of the questioning, which went on for over seven hours, and which can be best discerned in the videotape of the deposition.

Beyond ad hominem attacks on Mr. Aguirre-Urbina's mental status, GEO also will likely argue that Plaintiffs are inadequate class representatives because they are "unauthorized aliens." However, the MWA contains no limitations on recoverable damages on the basis of the legal status of the employee, as immigration status, alien, or any related

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

terms do not appear anywhere in the Act. Dkt. No. 28 (Order Den. GEO's Mot. to Dismiss) at p. 7. In any event, GEO undoubtedly would argue this same deficiency applies to virtually all members of the proposed class, so it cannot be a basis for finding the named Plaintiffs atypical or inadequate.

Finally, Schroeter Goldmark & Bender, the Law Office of R. Andrew Free, Sunbird Law PLLC, and Menter Immigration Law PLLC are also adequate to represent the class. Whitehead Decl.¶¶ 1-9; Declaration of R. Andrew Free (Dkt. No. 47); Declaration of Devin T. Theriot-Orr (Dkt. No. 46); Declaration of Meena Menter. Mr. Free has been appointed as class counsel in the *Menocal* case and others, and the attorneys from Schroeter Goldmark & Bender have been appointed class counsel in dozens of wage and hour class actions in state and federal courts. Many courts have appointed these firms as class counsel, finding that they meet the competence level required to represent a class.

Here, there is no adversity of interest between Plaintiffs and the proposed class, counsel is experienced; as such, the adequacy requirement is met.

## 5.    Plaintiffs' Proposed Class Satisfies the Superiority Requirement.

The Court should certify the class if it finds that a "class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "A class action may be superior if class litigation of common issues will reduce litigation costs and promote greater efficiency, or if no realistic alternative exists." *Connor v. Automated Accounts, Inc.*, 202 F.R.D. 265, 271 (E.D. Wash. 2001). A court must, in terms of fairness and efficiency, balance the merits of a class action against those of available alternative methods of adjudication. *See id.* For instance, a class action is appropriate if duplicative    lawsuits    with    potentially    inconsistent    results    would    be    avoided.

PLTFS.' MOT. FOR CLASS CERT. - 19
(17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

*Mortimore v. Fed. Deposit Ins. Corp.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000). In many ways, wage and hour claims are "perhaps the most perfect questions for class treatment." *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011), *vacated in part*, 773 F.3d 394 (2d Cir. 2014).

Given the potentially large number of class members and the multitude of common issues presented, use of the class device is the most efficient and fair means of adjudicating the claims that arise out of GEO's common practice of paying detainee workers subminimum wages. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources and promotes consistency and efficiency of adjudication. Indeed, determining class-wide status and liability under the MWA is far more efficient than litigating the same evidence showing the same economic relationship in hundreds, if not more, individual actions. Additionally, it is likely that most class members lack the resources and sophistication necessary to seek individual legal redress for GEO's pay practices and, without class treatment, would have no effective remedy for their injuries. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Menocal*, 882 F.3d at 915. These concerns are magnified in this instance by the fear of retaliation or adverse immigration consequences that could deter many current and former detainees from pursuing individual legal actions.

Nor does the State of Washington's lawsuit present a superior means for vindicating class members' claims for back wages. GEO may have unique defenses to the State's claims that would prevent any recovery, and the State's damages claims do not ensure that class members will receive the back wages Plaintiffs claim they are owed, even if the State prevails on the merits of its claims. Thus, while the State's suit may vindicate some of the

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

same legal rights and principles, it does not provide an adequate or superior substitute for obtaining the compensatory relief sought for the class in this case.

For these reasons, the superiority requirement is met.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court grant their motion to certify this matter as a class action.

DATED this 21st day of June, 2018.

SCHROETER GOLDMARK & BENDER

*s/ Jamal N. Whitehead*

Adam J. Berger, WSBA #20714
Lindsay L. Halm, WSBA #37141
Jamal N. Whitehead, WSBA #39818
810 Third Avenue, Suite 500
Seattle, WA 98104
Tel: (206) 622-8000 ~ Fax: (206) 682-2305
berger@sgb-law.com
halm@sgb-law.com
whitehead@sgb-law.com

THE LAW OFFICE OF R. ANDREW FREE
Andrew Free (*Pro Hac Vice*)
P.O. Box 90568
Nashville, TN 37209
Tel: (844) 321-3221 ~ Fax: (615) 829-8959
andrew@immigrantcivilrights.com

SUNBIRD LAW, PLLC
Devin T. Theriot-Orr, WSBA # 33995
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154-1003
Tel: (206) 962-5052 ~ Fax: (206) 681-9663
devin@sunbird.law

MENTER IMMIGRATION LAW, PLLC
Meena Menter, WSBA # 31870
8201 164th Ave NE, Suite 200
Redmond, WA 98052
Tel: (206) 419-7332
meena@meenamenter.com

*Attorneys for Plaintiff*

PLTFS.' MOT. FOR CLASS CERT. - 21
(17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2018, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

the following:

Devin T. Theriot-Orr, WSBA # 33995
SUNBIRD LAW, PLLC
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154-1003
Tel: (206) 962-5052
devin@sunbird.law

*Counsel for Plaintiff*

R. Andrew Free
THE LAW OFFICE OF R. ANDREW FREE
Admitted *Pro Hac Vice*
PO Box 90568
Nashville, TN 37209
Tel: (844) 321-3221
andrew@immigrantcivilrights.com

*Counsel for Plaintiff*

Joan K. Mell
III BRANCHES LAW, PLLC
1019 Regents Boulevard, Suite 204
Fircrest, WA 98466
Tel: (253) 566-2510
joan@3ebrancheslaw.com

*Attorney for Defendant*

Mark Emery
NORTON ROSE FULBRIGHT US LLP
799 9th Street, Suite 1000
Washington, D.C. 20001
Mark.emery@nortonrosefulbright.com

*Attorney for Defendant*

Andrea D'Ambra
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com

*Attorney for Defendant*

Charles A. Deacon
NORTON ROSE FULBRIGHT US LLP
300 Covent St.
San Antonio, TX 78205
Charles.deacon@nortonrosefulbright.com

*Attorney for Defendant*

Meena Menter
MENTER IMMIGRATION LAW PLLC
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
Tel: (206) 419-7332
meena@meenamenter.com

*Counsel for Plaintiff*

PLTFS.' MOT. FOR CLASS CERT. - 22
(17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

DATED at Seattle, Washington this 21st day of June, 2018.

*s/ Sheila Cronan*

Sheila Cronan, Paralegal
Schroeter Goldmark & Bender
810 Third Avenue, Suite 500
Seattle, WA 98104
Tel: (206) 622-8000
Fax: (206) 682-2305
cronan@sgb-law.com

PLTFS.' MOT. FOR CLASS CERT. - 23
(17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305