1

2

3

4

5

6

7

The Honorable Judge Bryan

8                    UNITED STATES DISTRICT COURT

9                    WESTERN DISTRICT OF WASHINGTON

10                             AT TACOMA

11   UGOCHUKWU GOODLUCK
     NWAUZOR, FERNANDO AGUIRRE-          Case No: 3:17-cv-05769-RJB
12   URBINA, individually and on behalf of all
13   those similarly situated,            **GEO'S MOTION TO DISMISS PLAINTIFFS'
                                          FIRST AMENDED COMPLAINT**
14        Plaintiffs,
                                          NOTE ON MOTION CALENDAR:
15                    v.                   July 20, 2018

16   THE GEO GROUP, INC., a Florida       ORAL ARGUMENT REQUESTED
17   corporation,

18        Defendant.[1]

19

20

21

22

23

24

25

26   _____

27   [1] Filed under a new caption per ECF Docket Nos. 83 and 84.

28   NWAUZOR ET AL. v. THE GEO GROUP, INC.                  III BRANCHES LAW, PLLC
     ECF CASE NO. 3-17-cv-05769                              Joan K. Mell
     GEO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT         1019 Regents Blvd. Ste. 204
                                                             Fircrest, WA 98466
                                                             253-566-2510 ph
                                                             joan@3brancheslaw.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

BACKGROUND ........................................................................... 2

STANDARDS OF REVIEW ........................................................... 3

ARGUMENT .............................................................................. 5

I.     GEO IS IMMUNE FROM SUIT UNDER *YEARSLEY* ......................................... 5

      A.     ICE Authorized GEO's Administration Of The VWP ................................. 7

      B.     ICE Validly Conferred The Authority To GEO To Administer The VWP ........................ 10

II.    THE MINIMUM WAGE CLAIM IS PREEMPTED BY FEDERAL LAW ....... 14

      A.     The Claim Is Field Preempted ......................................... 14

      B.     The Claim Is Conflict/Obstacle Preempted ........................... 16

III.   PLAINTIFFS FAIL TO STATE A WAGE CLAIM ........................... 18

IV.   THE CASE SHOULD BE DISMISSED FOR FAILURE TO JOIN THE PROPER FEDERAL AGENCIES ........................................ 20

      A.     Under Ninth Circuit Precedents, The Federal Agencies Are Required Defendants ................................. 21

      B.     The Federal Agencies Cannot Be Joined As Defendants ................ 23

      C.     Equity And Good Conscience Require That This Case Be Dismissed ...... 24

CONCLUSION ........................................................................ 24

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

i

**TABLE OF AUTHORITIES**

Page(s)

CASES:

*Alvarado Guevara v. I.N.S.*, 902 F.2d 394 (5th Cir. 1990)...........................................15, 16, 18

*Anfinson v. FedEx Ground Package Sys., Inc.*, 281 P.3d 289 (Wash. 2012)...........................18

*Arizona v. United States*, 567 U.S. 387 (2012) ........................................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................4

*Barker v. Riverside County Office of Educ.*, 584 F.3d 821 (9th Cir. 2009) ..............................4

*Bennett v. Frank*, 395 F.3d 409 (7th Cir. 2005)........................................................................19

*Boles v. Greeneville Hous. Auth.*, 468 F.2d 476 (6th Cir. 1972) .........................................20, 21

*Bromfield v. McBurney*, No. C07-5226RBL-KLS, 2008 WL 2746289 (W.D.
   Wash. July 8, 2008), *report and recommendation adopted by Bromfield v.
   McBurney*, 2008 WL 4426827 (W.D. Wash. Sept. 26, 2008) ............................................14

*Butters v. Vance Int'l, Inc.*, 225 F.3d 462 (4th Cir. 2000)........................................................5

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) .................................................1, 5, 6, 8

*Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9th Cir. 2005).....................................4

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) .................................................16

*Cunningham v. Gen. Dynamics Info. Tech.*, Inc., 888 F.3d 640
   (4th Cir. 2018)......................................................................1, 4, 5, 6, 7, 8, 10, 13

*Dawavendewa v. Salt River Proj. Agr. Imp. & Power Dist.*, 276 F.3d 1150 (9th
   Cir. 2002) ........................................................................................................20, 21, 22

*Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999)............................................................24

*EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070 (9th Cir. 2010)................................21, 22, 24

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

ii

*F.D.I.C. v. Meyer*, 510 U.S. 471 (1994)................................................................4, 24

*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014)....................................6

*Guevara v. I.N.S.*, 954 F.2d 733, 1992 WL 1029 (Fed. Cir. Jan. 6, 1992).........12, 16

*Hoffman Plastic Compounds, Inc., v. N.L.R.B.*, 535 U.S. 137 (2002)..........14, 15, 17

*Hopper v. John Doe Myers Rec. Coach NW Det. Ctr.*, No. C05-5680, 2006 WL
    2597915 (W.D. Wash. Sept. 8, 2006)..........................................................24

*In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049 (9th Cir. 2008)......................................4

*In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326 (4th Cir. 2014)..................4, 5, 6, 10, 13

*Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012)...............................................14

*McCowen v. Jamieson*, 724 F.2d 1421 (9th Cir. 1984)..............................................22

*Menocal v. The GEO Group, Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015).........18, 19

*Mudarri v. State*, 147 Wn. App. 590, 196 P.3d 153 (2008)........................................21

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001)..........................................................4

*NCNB Texas National Bank v. Cowden*, 895 F.2d 1488 (5th Cir. 1990)....................12

*State of Washington v. The GEO Group, Inc.*, No. 3:17-cv-05806-RJB (W.D.
    Wash. 2018)..................................................................................................9

*Udall v. Tallman*, 380 U.S. 1 (1965)..........................................................................12

*United States v. Mitchell*, 445 U.S. 535 (1980).........................................................24

*United States v. Mitchell*, 463 U.S. 206 (1983)...........................................................5

*United States v. Sweeny*, 418 F. Supp. 2d 492 (S.D.N.Y. 2006)..............................20

*United States v. Wood*, 925 F.2d 1580 (7th Cir. 1991)...............................................4

*Villa v. Maricopa Cty.*, 865 F.3d 1224 (9th Cir. 2017)................................................4

NWAUZOR ET AL. v. THE GEO GROUP, INC.        III BRANCHES LAW, PLLC
ECF CASE NO. 3-17-cv-05769                          Joan K. Mell
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT   1019 Regents Blvd. Ste. 204
                                                       Fircrest, WA 98466

iii

                                                      253-566-2510 ph
                                               joan@3brancheslaw.com

*Whyte v. Suffolk Cty. Sheriff's Dep't*, 91 Mass. App. Ct. 1124, 2017 WL
    2274618 (Mass. App. May 24, 2017) ...............................................................18

*Wilbur v. Locke*, 423 F.3d 1101 (9th Cir. 2005), *abrogated on other grounds*
    *by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010)..................................21

*Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940) ...........................1, 4, 5, 6, 7, 8, 10, 13

**STATUTES:**

U.S. Const. art. VI, cl. 2 .................................................................................14

8 U.S.C. § 1103 ..........................................................................................2, 11

8 U.S.C. § 1182 ..............................................................................................15

8 U.S.C. § 1225 ................................................................................................2

8 U.S.C. § 1226 ................................................................................................2

8 U.S.C. § 1231 ..........................................................................................2, 11

8 U.S.C. § 1324a ............................................................................................14

8 U.S.C.  § 1555(d) .......................................................................11, 12, 15, 16, 17

29 U.S.C. § 203 ..............................................................................................18

42 U.S.C. § 18083 ............................................................................................7

47 U.S.C. § 227 ................................................................................................7

Dep't of Justice Appropriation Act, 1979, Pub. L. No. 95-431, 92 Stat. 1021
    (Oct. 10, 1978) ........................................................................................11

Wash. Rev. Code § 49.46.010.....................................................................18, 19

**REGULATIONS AND ADMINISTRATIVE MATERIALS:**

DHS, Office of Inspector Gen., *Treatment of Immigration Detainees* (OIG-07-
    01) (Dec. 2006) ........................................................................................11

NWAUZOR ET AL. v. THE GEO GROUP, INC.          III BRANCHES LAW, PLLC
ECF CASE NO. 3-17-cv-05769                       Joan K. Mell
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT   1019 Regents Blvd. Ste. 204
                                                   Fircrest, WA 98466
iv                                            253-566-2510 ph
                                         joan@3brancheslaw.com

ICE, *Progress in Implementing 2011 PBNDS Standards, Fiscal Year 2016 Report* (2017) .............................................................................................11

INS General Counsel, *Your CO 243-C Memorandum of November 15, 1991; DOD Request for Alien Labor*, General Counsel Op. No. 92-63, 1992 WL 1369402 (Nov. 13, 1992) ...........................................................11, 15, 17

INS General Counsel, *The Applicability of Employer Sanctions to Alien Detainees Performing Work in INS Detention*, General Counsel Op. No. 92-8 (INS), 1992 WL 1369347 (Feb. 26, 1992) ....................................12, 15, 17

U.S. Citizenship & Immigration Servs., OMB No. 1615-0047, Employment Eligibility Verification (2018) ...............................................................14

Wash. Dep't of Corrections Policy 700.100 ...................................................19

**RULES:**

Fed R. Civ. P. 12 ..............................................................................3, 4, 5, 14

Fed. R. Civ. P. 19 .................................................................................20, 21

**OTHER AUTHORITIES:**

7 Wright & Miller, Fed. Prac. & Proc. § 1609 .............................................20

Performance-Based Nat'l Detention Standards 2011 ...........................2, 3, 8, 10, 11, 16, 17, 22

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

v

The Department of Homeland Security and U.S. Immigration and Customs Enforcement (DHS/ICE), by policy and contract, require that The GEO Group (GEO) administer the Voluntary Work Program (VWP) at Northwest Detention Center (NWDC). DHS/ICE validly conferred the authority on GEO to administer the VWP that pays detainees $1 per day to participate. The First Amended Complaint contains no allegations that GEO acted without ICE's authorization for the $1 per day rate. Nor do Plaintiffs allege that DHS/ICE lacked a statutory basis to validly confer authority to GEO to administer the VWP at the $1 per day rate. When a federal contractor acts in a manner that is authorized by the federal agency with which it contracts, and the federal agency validly conferred the authority, the contractor holds derivative sovereign immunity from suit. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21-22 (1940); *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672-73 (2016); *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 643 (4th Cir. 2018). Therefore, this suit should be dismissed either for lack of subject matter jurisdiction because GEO has *Yearsley* immunity, or alternatively for failure to state a claim that survives the *Yearsley* doctrine.

Plaintiffs' amended complaint also suffers from the problems already identified by GEO. First, the state minimum wage claim is preempted by federal immigration law. Federal law prohibits this Court from recognizing the employment relationship between GEO and detainees that the Plaintiffs allege, and Congress has kept for itself the issue of detainee payment. Second, Washington's Minimum Wage Act (MWA) does not apply to voluntary institutional maintenance by non-citizens detained in federal facilities. Plaintiffs ask this Court not only to ignore every case holding that similar parties are not employees under the Fair Labor Standards Act (FLSA), but also to turn a blind eye to the State of Washington's own practices in exempting

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

1

prisoners and detainees. Third, the case should be dismissed because Plaintiffs have not named ICE as a party. ICE is a required party because this suit is fundamentally based on the Plaintiffs' interpretation of the contract between ICE and GEO for operation of NWDC. Plaintiffs ask the Court to interpret the contract in a manner that departs from ICE's own understanding of its statutory authorities (which is entitled to deference), and to ICE's and GEO's understanding of the relevant law. Because ICE cannot be joined, equity and good conscience warrant dismissal.

This case uses state law to attack federal law and a federal agency's policies that govern the care of federal immigration detainees in federal custody, and federal agencies' partnerships with contractors. And it does so by unfairly threatening a contractor with damages for carrying out lawful, national standards and policies that rest on decades of settled law. The Court should recognize that ICE detainees have no minimum wage rights while detained and dismiss this case.

## BACKGROUND

Pursuant to federal statute, DHS/ICE operate immigration detention facilities that house aliens while they await either removal from the United States or decisions on their immigration proceedings. 8 U.S.C. §§ 1103, 1225, 1226, 1231. DHS/ICE operates many of its own Service Processing Centers (SPCs). DHS/ICE also contracts with companies for detention facility services as Contract Detention Facilities (CDF) and with state and local governments for services at publicly-owned facilities via Intergovernmental Service Agreements (IGSAs). All facilities are subject to the same DHS/ICE policies, including the Performance-Based National Detention Standards 2011 (PBNDS) (www.ice.gov/detention-standards/2011).

Section 5.8 of the 2011 PBNDS requires ICE facilities—whether operated by ICE or by contractors—to make the VWP available to detainees and sets rules for its administration.

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

2

PBNDS 5.8 specifies that "compensation is at least $1.00 (USD) per day." PBNDS § 5.8.V.K. ICE requires GEO to "manage a detainee work program" in accordance with the PBNDS. ICE-GEO Contract, ECF 19 at 82 ("Detainee labor…will adhere to the ICE PBNDS on Voluntary Work Program"). "The detainee work plan must be voluntary, and may include work or program assignments for industrial, maintenance, custodial, service or other jobs." *Id.* The ICE-GEO contract provides: "Detainee Volunteer Wages for the Detainee Work Program. Reimbursement for this line item will be at the actual cost of $1.00 per day per detainee. Contractor shall not exceed the amount shown without prior approval by the Contracting Officer." *Id.* at 5.

Plaintiffs allege that detainees at NWDC are "employees" and GEO is their "employer" for purposes of the MWA. Plaintiffs seek to represent a class of current and former detainees who challenge GEO's alleged "practice of paying subminimum wages to Plaintiffs and the proposed class members" as violating the MWA. First Am. Class Action Compl. ("FAC"), ECF 84, ¶ 6.3. Plaintiffs seek damages for lost wages for themselves and a class of "all civil immigration detainees who perform or have performed work for GEO at NWDC at any time during the three years prior to the filing of the initial complaint and thereafter." *Id.* at ¶ 5.1. Plaintiffs do not seek injunctive or declaratory relief relating to DHS/ICE's policies in the PBNDS or underlying federal law; they seek only damages from GEO as DHS/ICE's contractor. *Id.* at § VII (Prayer for relief). Plaintiffs do not allege that GEO exceeded its authorization from DHS/ICE. Nor do they allege that DHS/ICE lacked authority to validly confer on GEO the authority to administer the VWP at $1 per day rates to participate.

**STANDARDS OF REVIEW**

A motion to dismiss under Federal Rule 12(b)(6) "tests the legal sufficiency of a claim."

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

3

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *Villa v. Maricopa Cty.*, 865 F.3d 1224 (9th Cir. 2017). A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In making this assessment, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the plaintiff. *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). The Court is not, however, bound to accept the plaintiff's legal conclusions, and a plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Federal preemption can support a motion to dismiss. *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1227 (9th Cir. 2005).

A party may move for judgment on the pleadings, applying the same standards as Rule 12(b)(6), "[a]fter the pleadings are closed—but early enough not to delay the trial." Fed. R. Civ. P. 12(c). Under Rule 12(c), a district court "may also take judicial notice of matters of public record" without converting the motion into one for summary judgment. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

*Yearsley* immunity is jurisdictional and thus properly raised under Federal of Civil Procedure 12(b)(1). *Cunningham*, 888 F.3d at 650; *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 344-46 (4th Cir. 2014); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

4

immunity is jurisdictional in nature."). Alternatively, GEO moves to dismiss under Rule 12(b)(6) and/or Rule 12(c) for failure to state a claim for which relief may be granted.

## ARGUMENT

## I. GEO IS IMMUNE FROM SUIT UNDER *YEARSLEY*.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The United States is immune from suit unless a statute says otherwise. *Campbell-Ewald*, 136 S. Ct. at 672. Through derivative sovereign immunity, agents of the sovereign may also be protected from liability for carrying out the sovereign's will. *Yearsley*, 309 U.S. at 20-21; *In re KBR, Inc.*, 744 F.3d at 341–43 (reading *Yearsley* to mean that private employees should receive immunity from suit when they perform the same functions as government employees). This immunity derives from "the government's unquestioned need to delegate governmental functions," and the acknowledgement that "[i]mposing liability on private agents of the government would directly impede the significant governmental interest in the completion of its work." *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000). "[G]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." *Campbell-Ewald*, 136 S. Ct. at 672 (quotation omitted).

In *Yearsley*, a landowner asserted a claim for damages when part of his land was washed out after a private contractor built dikes on the Missouri River under its contract with the federal government. The Supreme Court held that the contractor was not answerable to the landowner, because "the work which the contractor had done in the river bed was all authorized and directed

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

5

by the Government of the United States" and "performed pursuant to the Act of Congress." 309 U.S. at 20. Where the federal government's "authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress," the Court explained, "there is no liability on the part of the contractor" who performed as the government directed. *Id.* at 20-21. The Court contrasted *Yearsley* to cases where a government agent had "exceeded his authority" or the authority "was not validly conferred." *Id.* at 21.

More recently in *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), the Ninth Circuit held that *Yearsley* immunity did not apply when a company that contracted with the Navy was sued for violations of the Telephone Consumer Protection Act (TCPA). The Ninth Circuit described *Yearsley* immunity as "a narrow rule regarding claims arising out of property damage caused by public works projects." *Id.* at 879. But on appeal the Supreme Court expressly disagreed, noting that what was "[c]ritical in *Yearsley* was not the involvement of public works, but the contractor's performance in compliance with all federal directions." *Campbell-Ewald*, 136 S. Ct. at 673 & n.7. The key is that "[q]ualified immunity reduces the risk that contractors will shy away from government work." *Id.* at 673.

*Yearsley* immunity applies to GEO as a contractor providing services to the federal government. "[A] government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization." *Cunningham,* 888 F.3d at 646 (citing *In re KBR,* 744 F.3d at 342; *Yearsley*, 309 U.S. at 20-21). Both of these elements are met here, and GEO has immunity from Plaintiffs' claim.[2]

_____

[2] GEO answered and conditionally counterclaimed after filing this motion to preserve all defenses without prejudice to a favorable ruling on this motion to dismiss, which would moot its counterclaims and defenses.

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

6

## A. ICE Authorized GEO's Administration Of The VWP.

Recent case law shows that GEO meets the first prong of the *Yearsley* test. The Fourth Circuit applied this test in April—post-dating GEO's motion to dismiss the original complaint—to dismiss a claim against a federal contractor. In *Cunningham*, defendant General Dynamics Information Technology (GDIT) was held to have derivative sovereign immunity based on its contractual work for the U.S. Department of Health and Human Services, Centers for Medicare & Medicaid Services (CMS). 888 F.3d at 643. The Affordable Care Act (ACA) directed CMS to establish a system to keep applicants informed about their eligibility for enrollment in a qualified health plan. *Id.* at 643-44 (citing 42 U.S.C. § 18083). To do so, CMS contracted with GDIT to operate a call center supporting CMS programs. *Id.* at 644. Under the contract, GDIT was required to calls people to tell them they could buy health insurance through the ACA's exchanges. *Id.* CMS authorized GDIT to use an autodialer to make the calls, provided a script for each call, and provided a list of phone numbers to call. *Id.* The contract also required GDIT "maintain a corporate compliance program" that included "[a]n internal monitoring and auditing function to help ensure compliance with statutes [and] regulations," and "[a]n enforcement and disciplinary process to address violations of applicable statutes [and] regulations ...." *Id.*

CMS sent GDIT millions of telephone numbers and directed GDIT to call some of them, including plaintiff Cunningham's. *Id.* GDIT called Cunningham and left a message containing CMS's script. *Id.* Cunningham alleged that he received the phone call without having given his prior consent, in violation of the TCPA, *see* 47 U.S.C. § 227(b)(1)(A)(3), and brought a putative class action on behalf of all persons who received calls under the CMS program. *Id.* GDIT sought to dismiss the case for lack of subject matter jurisdiction under *Yearsley*. *Id.*

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

7

The Fourth Circuit concluded that the United States and its agencies had immunity from suit under the statute. *Id*. at 645 (citing *Campbell–Ewald*, 136 S.Ct. at 672). Consequently, GDIT "would also be immune from liability for making this phone call if derivative sovereign immunity applies." *Id*. The Fourth Circuit held that GDIT was entitled to such immunity. Id. at 646-48. The ACA directed CMS to establish a system to keep applicants informed about their eligibility for enrollment in a qualified health plan. CMS contracted with GDIT to do this. CMS provided GDIT with the phone numbers and permitted the use of an autodialer. The autodialer called Cunningham and left a voicemail with the exact script CMS had provided to GDIT. Therefore, "[q]uite plainly, GDIT performed exactly as CMS directed." *Id*. at 647.

Importantly, Cunningham argued that a provision of the CMS-GDIT contract required GDIT "to follow applicable laws, and that by failing to independently obtain prior consent from each name on the list provided by CMS to ensure compliance with the TCPA," such that GDIT "violated the contract, requiring this Court to find that CMS did not authorize GDIT's actions." *Id*. at 647-48. The Fourth Circuit found this argument "unavailing": because GDIT "adhered to the terms of its contract with CMS," the court "conclude[d] that the government authorized GDIT's actions, satisfying step one of the *Yearsley* analysis." *Id*.

So too here. GEO implements and administers the VWP as authorized and directed by ICE's contractual requirements. The ICE-GEO contract specifically requires the VWP. ICE-GEO Contract, 82. PBNDS 5.8 makes the VWP an "expected outcome" and "expected practice" under the contract, and PBNDS 5.8.V.K specifically states that the facility operator—whether at ICE's own SPC facilities or contracted CDF and IGSA facilities—shall pay "at least $1 per day," thereby authorizing the payment of $1 per day per detainee. ICE requires that every VWP

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

8

participant sign a form prior to working in the VWP, and that form acknowledges that the detainee volunteers to work for $1 per day. 2014 ICE Detainee Handbook, ECF 61, Exh. B, 17. During the period for which Plaintiffs seek to certify a class, ICE's National Detainee Handbook unambiguously told all detainees in their facilities that "compensation will be $1 per day." *Id.* Thus, GEO is authorized to administer the VWP at $1 per day rates per detainee participant.

The ICE-GEO Contract confirms this authorization by setting the reimbursement rate for VWP pay to detainees at $1 per day. ICE-GEO Contract, 5. The contract expressly provides that GEO "shall not exceed" the rate of $1 per day without the approval of ICE's Contracting Officer. *Id.* By crediting detainees $1 per day per detainee, therefore, GEO does exactly what ICE authorizes. Indeed, in the State of Washington's case against GEO, this Court recognized a causal nexus between ICE's reimbursement rate and the payment of $1 per day:

> The Court finds that the causal nexus is satisfied at this stage of the case, under the theory that GEO pays detainees $1 per day based on a rate compensated by the Government. Under this theory, GEO's compensation rate is an "action under" a federal officer ***because it is taken pursuant to the ICE-GEO Contract, and GEO compensates detainees at that rate because of GEO's contract with ICE***.

Order at 4, *State of Washington v. The GEO Group, Inc.*, No. 3:17-cv-05806-RJB (W.D. Wash. Dec. 13, 2017) (emphasis added). The Court correctly recognized that GEO adopts the $1 per day rate "because" of GEO's contract with ICE.

Notably, the FAC contains ***no*** allegation that GEO acts outside of ICE's authorization when it administers the VWP, or that it failed to follow ICE's directions. Thus, even drawing all inferences in favor of the plaintiffs, the complaint fails to allege that VWP payments are made without ICE's authorization. Paragraph 4.3 alleges that "GEO's contract with ICE requires GEO to comply with state and local laws," but this is inaccurate. The ICE-GEO contract provides that

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

9

"[t]he detainee work program shall not conflict with any other requirements of the contract and must comply with all *applicable* laws and regulations." ICE-GEO Contract, 82 (emphasis added). While Plaintiffs claim (and GEO disputes) that Washington minimum wage law applies, Plaintiffs do not, and cannot, allege that GEO exceeds *ICE*'s delegated authority by the $1 per day rate. The $1 per day amount is expressly authorized by PBNDS 5.8.V.K, and is exactly the amount reimbursed under the ICE-GEO Contract. Indeed, DHS audited GEO's compliance with compensation provision of PBNDS 5.8 and concluded that GEO complied with its policy *because* detainees receive monetary compensation for work performed through a $1.00 daily stipend. Under DHS quality controls, GEO could be fined for not upholding PBNDS 5.8's requirements. ICE-GEO Contract, A-1. Even assuming the $1 daily rate is a floor rate, it is a rate that conforms to ICE policy, which is uniform across the Nation. No state jurisdictions pay minimum wage to detainees workers, including Washington, and Plaintiffs had no reasonable expectation that GEO would pay minimum wage without ICE's authorization.

GEO acts within DHS/ICE's authorization by administering the VWP at the $1 per day per detainee rate for VWP participation, satisfying *Yearsley*'s first element.

**B.      ICE Validly Conferred The Authority To GEO To Administer The VWP.**

GEO also meets the second prong of the *Yearsley* test. Government authorization is "validly conferred" if Congress had the power to grant authorization, and then Congress "authorized the government agency to perform a task and empowered the agency to delegate that task to the contractor." *Cunningham*, 888 F.3d at 646-647; *see also In re KBR*, 744 F.3d at 342; *Yearsley*, 309 U.S. at 20-21. *Nothing* in the FAC alleges that DHS/ICE lacks Congressional authorization to operate the VWP or that DHS/ICE did not validly delegate that task to GEO.

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

10

Therefore, on the face of the FAC, GEO satisfies *Yearsley*'s second element.

It is clear that ICE has the authority to require GEO to administer the VWP in contract facilities and to reimburse GEO for an amount of $1 per day per detainee. The Secretary of Homeland Security and Attorney General have broad authority, delegated in many instances to ICE, to create policy to govern immigration generally, and specifically to spend money to operate detention facilities. *See*, *e.g.*, 8 U.S.C. § 1103(a)(3) (Secretary "shall establish such regulations … and perform such other acts as [she] deems necessary for carrying out [her] authority under the provisions of this chapter"); 8 U.S.C. § 1231(g) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal...the Attorney General may expend from the appropriation "Immigration and Naturalization Service—Salaries and Expenses"…amounts necessary to…operate facilities…necessary for detention."). Congress has assumed congressional oversight over the conditions of detention, including the VWP, by mandating training on PBNDS standards and compelling timely implementation of updated standards. *See* ICE, *Progress in Implementing 2011 PBNDS Standards, Fiscal Year 2016 Report*, at 1 (2017). The PBNDS were written in collaboration with the American Bar Association (ABA) and immigrant advocacy groups to provide uniform standards to govern all types of detention facilities. *Id.* at 2-3; DHS, Office of Inspector Gen., *Treatment of Immigration Detainees*, at 2 (OIG-07-01) (Dec. 2006). Further, Congress has specifically authorized the appropriation of money for an "allowance" to detainees for work performed while in detention. 8 U.S.C. § 1555(d). Subsequent Congressional bills until 1979 appropriated an amount "not in excess" of $1 per day. *See*, *e.g.*, Dep't of Justice Appropriation Act, 1979, Pub. L. No. 95-431, 92 Stat. 1021, 1027 (Oct. 10, 1978).

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

11

In the view of courts and INS's General Counsel—more than a decade after Congress ceased to expressly appropriate funds—8 U.S.C. § 1555(d) continues to authorize the $1 daily allowance. INS General Counsel, *Your CO 243-C Memorandum of November 15, 1991; DOD Request for Alien Labor*, General Counsel Op. No. 92-63, 1992 WL 1369402 (Nov. 13, 1992) (noting that discontinuance of annual appropriation of $1 daily allowance "does not abrogate [agency] authority to pay aliens for labor performed while in [agency] custody" and "the [agency] retains authority to expend appropriated funds to pay aliens for labor performed while in custody"); *see also* INS General Counsel, *The Applicability of Employer Sanctions to Alien Detainees Performing Work in INS Detention Facilities*, General Counsel Op. No. 92-8, 1992 WL 1369347 (Feb. 26, 1992) (noting that at ICE and contract facilities, "[t]he allowance paid to a detainee for work performed is specifically provided for by 8 U.S.C. § 1555(d) and currently limited by Congress to $1 per day"); *Guevara v. I.N.S.*, 954 F.2d 733, 1992 WL 1029, *2 (Fed. Cir. Jan. 6, 1992) ("Congress provided that under certain circumstances aliens who are lawfully detained pending disposition may be paid for their volunteer labor. The wage level is a matter of legislative discretion."). Furthermore, the INS General Counsel concluded that detainees are not "employees" because "[a] detainee performs work for institution maintenance, not compensation." *Applicability of Employer Sanctions*, 1992 WL 1369347, at *1.

These opinions regarding the federal agency's understanding of its own statutory authority and delegated power warrant the Court's deference. *Udall v. Tallman*, 380 U.S. 1, 16 (1965) ("When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration."); *NCNB Texas National Bank v. Cowden*, 895 F.2d 1488, 1494 (5th Cir. 1990) ("[S]ubstantial

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

12

deference to an agency's determination of its authority may be appropriate."). The agency opinions unequivocally state that valid authority to pay $1 per day for detainee work comes from Congress, and that detainees are not "employees" of ICE's detention facilities, public or private.

That is where the inquiry should end. Critically, the "validity" element of the second prong of the *Yearsley* test does ***not*** involve delving into the merits of the plaintiff's claim that state law requires a minimum wage. The only issue is whether DHS/ICE has authority to validly confer on GEO the power to administer the VWP that pays $1 per day. In *Cunningham*, the Fourth Circuit held that GDIT satisfied this second prong because it was undisputed that GDIT made the call to the plaintiff "pursuant to CMS's statutory mandate to administer the ACA and keep applicants informed about their eligibility for enrollment in a qualified health plan." 888 F.3d at 648. Nonetheless, Cunningham argued that the government cannot "validly confer" the authority "to engage in conduct that violates the law," and that CMS could not validly confer authority to GDIT that violated the TCPA. But the Fourth Circuit held that this interpretation "misinterprets the scope of *Yearsley*'s second step" because "[t]he question is not whether informing applicants of their enrollment eligibility violated the law, but rather whether Congress had the authority to assign GDIT to complete that task." *Id.* (citing *Yearsley*, 309 U.S. at 20; *In re KBR*, 744 F.3d at 342, 344 n.7). Indeed, "[t]he purpose of *Yearsley* immunity is to prevent a government contractor from facing liability for an alleged violation of law, and thus, ***it cannot be that an alleged violation of law per se precludes Yearsley immunity***." *Id.* at 648-49 (emphasis added). Therefore, the court "reject[ed] Cunningham's overinclusive interpretation of what constitutes a 'valid conferral' of authority under this prong." *Id.* at 649.

Because ICE validly conferred statutory authority to administer the VWP at a rate of $1

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

13

per day to participating detainees, *Yearsley*'s second element is satisfied. The amended complaint should be dismissed for lack of subject matter jurisdiction over GEO, or, alternatively, dismissed with judgment entered for GEO because GEO cannot be sued under *Yearsley*.

## II. THE MINIMUM WAGE CLAIM IS PREEMPTED BY FEDERAL LAW.

In the event the Court does not dismiss on immunity grounds, GEO also seeks dismissal on other grounds. GEO recognizes that the Court has issued prior rulings, but an amended complaint supersedes the original complaint and renders it without legal effect. *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012). GEO respectfully requests this Court's fresh consideration of its current arguments regarding preemption by federal law and the inapplicability of Washington's MWL. *See, e.g.*, *Bromfield v. McBurney*, No. C07-5226RBL-KLS, 2008 WL 2746289, at *2 (W.D. Wash. July 8, 2008), *report and recommendation adopted by Bromfield v. McBurney*, 2008 WL 4426827, at *1 (W.D. Wash. Sept. 26, 2008) ("As [plaintiff] has now filed a new, amended complaint, the GEO defendants once again are entitled to challenge the validity thereof under [Rule] 12(b)(6).").

### A. The Claim Is Field Preempted.

Field preemption arises whenever Congress, acting within its powers, occupies the field of law that governs a case. *See Arizona v. United States*, 567 U.S. 387, 401-02 (2012); U.S. Const. art. VI, cl. 2. Congress has undoubted power over immigration and has occupied the field of alien employability: aliens cannot be hired by any employer that knows they are illegal. 8 U.S.C. § 1324a(a). This provision, first enacted as part of the Immigration Reform and Control Act ("IRCA"), is "a comprehensive scheme prohibiting the employment of illegal aliens in the United States." *Hoffman Plastic Compounds, Inc., v. N.L.R.B.*, 535 U.S. 137, 147 (2002). Under

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

14

IRCA, all job applicants must prove their work eligibility by offering proper documentation.  *See* U.S. Citizenship & Immigration Servs., OMB No. 1615-0047, Employment Eligibility Verification (2018).  Indeed, aliens become ***inadmissible*** to the United States by falsely claiming to be citizens in order to secure jobs, or by misrepresenting any material fact to secure work authorization.  8 U.S.C. § 1182(a)(6)(C).  Only aliens who have proper work authorization may be employed, which grants them labor protections such as those created by the FLSA.

Plaintiffs' claim is subject to field preemption because their theory would allow states to wholly sidestep IRCA by extending labor laws to cover unemployable aliens.  Plaintiffs' claim injects Washington's MWA into the federal system by asserting an employer-employee relationship under state law that cannot exist under federal law.  As courts have universally recognized, immigration detainees, like inmates and pretrial detainees, are not subject to the FLSA.  *See, e.g.*, *Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 396-97 (5th Cir. 1990).  Similarly, immigration detention facilities do not violate IRCA when detainees participate in voluntary work programs because such programs are not employment.  *Applicability of Employer Sanctions*, 1992 WL 1369347, at \*2.  State law cannot ***create*** labor benefits that are unrecognized by the FLSA because they are prohibited by IRCA.  Holding otherwise would undercut IRCA: it would allow states to authorize alien employment despite Congress's "comprehensive scheme prohibiting the employment of illegal aliens in the United States." *Hoffman Plastic Compounds*, 535 U.S. at 147.

Indeed, Plaintiffs' claim is still more clearly preempted in the detention context because Congress has addressed this very issue: by enacting 8 U.S.C. § 1555(d), Congress arrogated to itself the question of what "allowance" would be paid to immigration detainees.  *DOD Request*

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

15

*for Alien Labor*, 1992 WL 1369402[3]; *Applicability of Employer Sanctions*, 1992 WL 1369347; *Guevara*, 1992 WL 1029, at *2. Detainees who work in voluntary programs like the one ICE requires GEO to operate at NWDC are paid from funds appropriated by Congress and allocated to ICE, which delegates the administration of the VWP to contractors at CDFs like NWDC. While detainees may feel that $1 per day is too low, the relevant fact is that under federal law this payment is an "allowance" paid "for work performed;" it is not a competitive wage. 8 U.S.C. § 1555(d). FLSA precedents underscore this point. *E.g.*, *Alvarado Guevara*, 902 F.2d at 396-97. As discussed, ICE has long relied on that provision to authorize programs, like the VWP, that aim to reduce detainee idleness and reduce operational costs, and has subjected it to specific state laws only. *See* PBNDS, § 5.8, II.1-4; *id.* § 5.8, II.5 (subjecting VWP only to "applicable … state and local ***work safety*** laws…") (emphasis added). But the agency has never concluded that state minimum wage laws apply; it has considered the rate to be set by Congress.

Consequently, Plaintiffs seek to use state law to preempt federal law: adopting the Plaintiffs' interpretation of state labor law will either upend a decades-old Congressional statute regulating immigration detainees or nullify a comprehensive federal ban on employing aliens. Because neither result is constitutional, Plaintiffs' claim is subject to field preemption.

### B. The Claim Is Conflict/Obstacle Preempted.

Even when a state law is not subject to express or field preemption, it may still be preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363,

---

[3] As argued above, the INS General Counsel's opinions that detainee workers are not facility "employees," and that the pay rate is $1 per day deserve deference as the interpretation of the statute by those charged with carrying out.

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

16

373 (2000). Courts should "examin[e] the federal statute as a whole" and "identify[] its purpose and intended effects" to assess whether state law poses such an obstacle. *Id.*

Plaintiffs' claim should be dismissed because it will plainly—and intentionally—stand as an obstacle to Congress's purposes. First, through IRCA, Congress enacted a comprehensive prohibition on alien employment. *Hoffman Plastic Compounds*, 535 U.S. at 147. That prohibition prevents GEO from employing any detainee who lacks work authorization, which plainly includes many, if not all, detainees at NWDC. By granting "backpay" to detainees, however, this Court will "trivialize [federal] immigration laws" by extending employment protections to aliens who are unemployable. *See id.* at 150. Importantly, the amended complaint contains ***no*** allegation that the Plaintiffs were authorized to be GEO's employees under federal law. Therefore, the Court cannot infer authorization to work for GEO. Compelling GEO to treat detainees as "employees" when federal law forbids it creates a direct conflict. It inverts the relationship between state and federal law by allowing state minimum wage law, rather than IRCA, to determine whether an alien can be an employee.

This obstacle becomes still clearer in light of Congress's creation of an allowance for aliens in precisely this context. Through 8 U.S.C. § 1555(d), Congress unambiguously signaled that detainees that perform work may be paid an "allowance" that ***Congress*** sets, thereby leaving no role for state laws or federal contractors to set or adjust the rates of pay for work performed by detainees. Section 1555(d) is the building block for the VWP. ICE has understood that its own authority to pay detainees arises from Congress, and, consistent with FLSA precedents and IRCA, that detainee work does not create an employment relationship with a detention facility. *DOD Request for Alien Labor*, 1992 WL 1369402; *Applicability of Employer Sanctions*, 1992

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

17

WL 1369347. PBNDS 5.8's policy that "compensation is at least $1.00 (USD) per day" stems directly from the purposes and objectives of Congress. Further, the ICE-GEO contract expressly provides that GEO "shall not exceed" the rate of $1 per day without ICE's approval. But Plaintiffs allege that state law alone creates an employment relationship between detainees and facilities, and determines the rate of pay. This imposition of state law will fundamentally alter the VWP: how it functions, what it costs, and whether ICE can continue to use it as an expected practice in its detention facilities. Thus, state law creates an obstacle to the power of the Attorney General, DHS, and ICE—charged by Congress with the operation of federal immigration detention—to obey state law mandates, at the expense of federal law.

## III. PLAINTIFFS FAIL TO STATE A WAGE CLAIM.

Even were the MWA not preempted by federal law, it still would not apply to Plaintiffs' claim. The MWA is based on the FLSA. *Anfinson v. FedEx Ground Package Sys., Inc.*, 281 P.3d 289, 298 (Wash. 2012). Both statutes include definitions of "employee" and "employ." *Compare* 29 U.S.C. § 203(e)(1) ("[T]he term 'employee' means any individual employed by an employer.") *and* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work.") *with* Wash. Rev. Code § 49.46.010(3) ("'Employee' includes any individual employed by an employer…") *and* Wash. Rev. Code § 49.46.010(2) ("'Employ' includes to permit to work."). Unsurprisingly, then, the Washington Supreme Court has recognized that the MWA should be interpreted to follow the FLSA unless a party shows some contrary legislative intent. *Anfinson*, 281 P.3d at 298. The FLSA does not apply to immigration detainees who perform some work inside a facility. *Alvarado Guevara*, 902 F.2d at 396-97; *see also Menocal v. The GEO Group, Inc.*, 113 F. Supp. 3d 1125, 1129 (D. Colo. 2015); *Whyte v. Suffolk Cty. Sheriff's Dep't*, 91 Mass.

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

18

App. Ct. 1124, 2017 WL 2274618, at *2 (Mass. App. May 24, 2017).

By its own terms, the MWA shows that the Washington Legislature did not intend the MWA to apply to federal immigration detainees. Despite its broad definition of "employee," the MWA excludes not only inmates but also residents and patients of any "state, county, or municipal correctional, detention, treatment or rehabilitative institution" from coverage. Wash. Rev. Code § 49.46.010(3)(k); *see also Menocal*, 113 F. Supp. 3d 1129 (finding state **prison** wage exemption grounds to dismiss Colorado wage claim against GEO). These detainees and other institutional residents are paid for their work only what the state government authorizes. *See, e.g.*, Wash. Dep't of Corrections Policy 700.100. Like the VWP, such programs are not intended to provide a living wage but to help regulate behavior and lower institutional costs. *See id.*

In light of these policies and the underlying statute, the Washington Legislature plainly did not intend for the MWA to extend to federal immigration detainees any more than it intended the MWA to cover other institutional residents. The Legislature's failure to explicitly exempt federal immigration detainees from the MWA—whether detained in a facility operated by ICE or a contractor—indicates nothing but the state's recognition of the federal government's power to set standards for detention and related expenditures. And as the Seventh Circuit recognized in confronting a similar claim under the FLSA, Congress's decision not to create an "express exception for prisoners" in the FLSA was likely no decision at all: no exception was included probably because "the idea was too outlandish to occur to anyone when the legislation was under consideration by Congress." *Bennett v. Frank*, 395 F.3d 409, 410 (7th Cir. 2005). So too here.

The Washington Legislature has apparently never considered the VWP to violate the MWA. Plaintiffs do not allege that Washington's Department of Labor and Industries ("L&I"),

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

19

the state agency tasked with enforcing the MWA, has ever sought to enforce the MWA against GEO or ICE with respect to the VWP at any time.  Nor do they allege (and GEO is unaware of) any investigations, complaints, or any other actions of any kind that L&I has taken with respect to Plaintiffs' claim or any similar one.  There is no evidence that the Washington Legislature or L&I considers the MWA to reach beyond the FLSA in this context.  Any extension of the law to federal detainees held by government contractors must come from the Washington Legislature, not this Court.

## IV.    THE CASE SHOULD BE DISMISSED FOR FAILURE TO JOIN THE PROPER FEDERAL AGENCIES.

If a person required to be joined under Rule 19(a) is absent, the Court must order the plaintiff to join the absent party.  Fed. R. Civ. P. 19(a)(2).  Here, joinder is not feasible due to the Federal Government's sovereign immunity, and the case cannot continue in equity and good conscience.  Fed. R. Civ. P. 19(b).  The Court is familiar with the factors.  Fed. R. Civ. P. 19(b)(1)-(4); *Dawavendewa v. Salt River Proj. Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1161-63 (9th Cir. 2002).

However, Rule 19 also requires a burden shifting approach, which the Court did not properly apply in its prior ruling on joinder.  A movant must make a *prima facie* showing that an absent party is required to be joined.  *Boles v. Greeneville Hous. Auth.*, 468 F.2d 476, 478 (6th Cir. 1972); *United States v. Sweeny*, 418 F. Supp. 2d 492, 499 (S.D.N.Y. 2006); *see also* 7 Wright & Miller, Fed. Prac. & Proc. § 1609.  If the movant makes a sufficient showing, the nonmovant bears the burden to negate it.  *Boles*, 468 F.2d at 478.  If the nonmovant does not, the court should either dismiss the case or, if possible, order the plaintiff to amend its claim to join

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

20

the absent party.  *See id.*

### A. Under Ninth Circuit Precedents, The Federal Agencies Are Required Defendants.

In *Dawavendewa*, the plaintiff sought to enjoin hiring preferences by a lessee that were allegedly illegal under federal law.  276 F.3d at 1153.  The defendant lessee argued that a Native American tribe—the owner of the land and the defendant's lessor—was required to join the action because the hiring practices underlying the case were required by the defendant's lease with the tribe.  *Id.* at 1153-54.  The Ninth Circuit held that the court could not accord complete relief without adding the tribe.  *Id.* at 1155-56.  The court reasoned that even if the plaintiff won his claim against the defendant lessee, the non-party tribe would not be bound by that judgment. *Id.* at 1155.  Thus, the tribe would be free to simply terminate the defendant's lease and enter a new lease with a new party that again required the hiring terms that the plaintiff claimed were illegal.  *Id.* at 1155-56.  Because this would undercut the plaintiff's relief "even if victorious," the tribe was a required party under Rule 19(a)(1)(A).  The Ninth Circuit concluded that it was a "fundamental principle" that "*a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract.*"  *Id.* at 1157 (emphasis added); *see also Wilbur v. Locke*, 423 F.3d 1101, 1113 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010); *Mudarri v. State*, 147 Wn. App. 590, 196 P.3d 153 (2008) (attack on contract requires joinder of parties to the contract).

A party faces inconsistent obligations when sued for actions taken in performance of a contract and the contractual counterparty is absent.  In *EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070 (9th Cir. 2010), the EEOC filed a suit against a coal company, claiming that the company engaged in preferential hiring practices that violated federal law.  *Id.* at 1074.  But

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

21

those practices were required under its lease with the Native American nations ("Nation") that owned the land, and had also been approved by the Department of the Interior ("DOI"). *Id.* at 1074-75. The Nation was a required party to the action because a judgment against the coal company in the absence of the Nation would put the company "between the proverbial rock and a hard place—comply with the injunction prohibiting the hiring preference policy or comply with the lease requiring it." *Id.* at 1078 (quoting *Peabody*, 400 F.3d 774; *Dawavendewa*, 276 F.3d at 1156). The DOI was also deemed a required party under Rule 19—even though not a party to the lease—because the provision had been added to the lease at its direction. *Id.* at 1080-82.

The Ninth Circuit has also found a federal agency to be a required party when a plaintiff sues a defendant for conduct in accord with the absent agency's policies. In *McCowen v. Jamieson*, 724 F.2d 1421 (9th Cir. 1984), a state agency was sued to enjoin certain practices relating to its distribution of food stamps. *Id.* at 1422. The Ninth Circuit held that the federal agency was a required party because the state agency had been merely "following the direction of the [federal agency] in applying a modification of the administrative regulations." *Id.* at 1424. Because the "thrust of the action [wa]s against the [federal] agency's interpretation of its own regulations, naming subordinates as defendants in the action d[id] not negate the [federal agency's] indispensability." *Id.*

These binding authorities make DHS and ICE required parties. As discussed, ICE's policies—the PBNDS—apply to all federal immigration detention facilities, whether operated by ICE itself or by contractors. Therefore, all facilities, whether run by ICE, GEO, or other contractors, are required to offer the VWP. This lawsuit essentially seeks to rewrite the ICE-

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

22

GEO contract and the policies that the contracts require GEO to follow. Here, a ruling that VWP participants are GEO's "employees" would place GEO in a clear conflict: there is no way for GEO to simultaneously comply with such an order, its contractual obligations to administer the VWP, and the contractual (and federal statutory) prohibition on hiring illegal aliens. ICE-GEO Contract, 57, 63-66, 82. Further, a judgment that detainees that have been participating in the VWP at a contract facility are "employees" of the facility, that the facility their "employer," and that state minimum wage law controls VWP pay would not bind ICE, but it would increase the cost of offering the VWP far in excess of what DHS/ICE contemplated when it set work policies and entered into contracts for the operation of facilities. Imposing an employment relationship between detainees and GEO would interfere directly with employer-like decisions that ICE reserves for itself. *See*, *e.g*., ICE-GEO Contract, ECF 19 at 82 ("It will be ***the sole responsibility of ICE*** to determine whether a detainee will be allowed to perform on voluntary work details and at what classification level") (emphasis added). It would erase a line between detainees and employers that ICE expressly drew in the contract. *Id*. ("Detainees shall not be used to perform the responsibilities or duties of an employee of the Contractor"). It would introduce a state law employment relationship and minimum wage requirement that is antithetical to the agency's own interpretation of its statutory authority that informs the VWP policy and the terms of ICE's contracts for facility management. *See supra* at 11-12, 15-16. ICE is a required party.

### B. The Federal Agencies Cannot Be Joined As Defendants.

However, federal agencies are immune from suit unless Congress has specifically authorized suits against them. "It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

23

define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (alterations omitted). Thus, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (quoting *Meyer*, 510 U.S. at 475). Like any other federal agency, ICE is protected by sovereign immunity apart from any express statutory waiver. *See, e.g.*, *Hopper v. John Doe Myers Rec. Coach NW Det. Ctr.*, No. C05-5680, 2006 WL 2597915 (W.D. Wash. Sept. 8, 2006) (ICE properly dismissed from suit for damages and injunctive relief on sovereign immunity grounds). A *state* law cannot waive the *federal government's* sovereign immunity.

### C. Equity And Good Conscience Require That This Case Be Dismissed.

Equity and good conscience require dismissal because judgment for Plaintiffs without ICE's joinder would subject GEO to substantial prejudice. In *Peabody*, the Ninth Circuit held that a plaintiff's money damages claim could not justly proceed without joining the federal agency because the defendant's liability was incurred only by following the agency's policies. The defendant's "only sin, if indeed it was a sin, was to comply with [a contract provision] inserted in its lease at the insistence of [a federal agency]. It would be profoundly unfair for a court to award damages against [defendant] while allowing [defendant] no redress against the government." *Peabody*, 610 F.3d at 1084. So too here: Plaintiffs seeks backpay that GEO was allegedly required to pay for VWP participation, based on a theory that is contrary to ICE and GEO's own understanding of the relevant statutory authority, VWP policies, and their contracts.

### CONCLUSION

The Court should dismiss the First Amended Complaint for lack of subject matter jurisdiction, or dismiss the complaint and enter judgment that Plaintiffs are entitled to no relief.

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

24

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

Dated: June 27, 2018

**III BRANCHES LAW, PLLC**


By: /s/ Joan K. Mell
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 (p)
281-664-4643 (f)
joan@3brancheslaw.com

**NORTON ROSE FULBRIGHT US LLP**
Charles A. Deacon
300 Convent St.
San Antonio, Texas 78205
Telephone: (210) 270-7133
Facsimile: (210) 270-7205
charlie.deacon@nortonrosefulbright.com

**NORTON ROSE FULBRIGHT US LLP**
Mark Emery
799 9th Street NW, Suite 1000
Washington, DC 20001-4501
Telephone: (202) 662-0210
Facsimile: (202) 662-4643
mark.emery@nortonrosefulbright.com

**ATTORNEYS FOR DEFENDANT THE GEO GROUP, INC.**

NWAUZOR ET AL. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

25

# CERTIFICATE OF SERVICE

I, Mark Emery, hereby certify as follows:

I am over the age of 18, a resident of Washington, DC, and not a party to the above

action. On June 27, 2018, I electronically filed the above GEO's Motion to Dismiss Plaintiffs'

First Amended Complaint with the Clerk of the Court using the CM/ECF system and served via

Email to the following:

Schroeter, Goldmark & Bender          The Law Office of R. Andrew Free
Adam J. Berger, WSBA No. 20714        Andrew Free

Lindsay L. Halm, WSBA No. 37141       P.O. Box 90568
Jamal N. Whitehead, WSBA No. 39818    Nashville, TN 37209

810 Third Avenue, Suite 500           andrew@immigrationcivilrights.com
Seattle, WA 98104

berger@sgb-law.com
halm@sgb-law.com

whitehead@sgb-law.com

Sunbird Law, PLLC                     Norton Rose Fulbright US LLP
Devin Theriot-Orr                     Charles A. Deacon (Pro Hac Vice)

1001 Fourth Avenue, Suite 3200        300 Convent St.
Seattle, WA 98154                     San Antonio, TX 78205

devin@sunbird.law                     charlie.deacon@nortonrosefulbright.com
Norton Rose Fulbright US LLP          Norton Rose Fulbright, LLP

Mark Emery (Pro Hac Vice)             Andrea D'Ambra (Pro Hac Vice)

799 9th St. NW, Suite 1000            1301 Avenue of the Americas
Washington, DC 20001-4501             New York, NY 10019

(202)-662-0210                        andrea.dambra@nortonrosefulbright.com
mark.emery@nortonrosefulbright.com

I certify under penalty of perjury under the laws of Washington that the above

information is true and correct.

DATED this 27th day of June, 2018 at Washington, DC.

     /s/ Mark Emery

NWAUZOR ET AL. v. THE GEO GROUP, INC.                              III BRANCHES LAW, PLLC
ECF CASE NO. 3-17-cv-05769                                          Joan K. Mell
GEO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT         1019 Regents Blvd. Ste. 204
                                                                   Fircrest, WA 98466
                          26                                       253-566-2510 ph
                                                                   joan@3brancheslaw.com