1

2

3

4

5

The Honorable Robert J. Bryan

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UGOCHUKWU GOODLUCK
NWAUZOR, and FERNANDO AGUIRRE-
URBINA, individually and on behalf of all
those similarly situated,

        Plaintiffs/Counter-Defendants,

    v.

THE GEO GROUP, INC., a Florida
corporation,

        Defendant/Counter-Plaintiff.

No.  3:17-cv-05769-RJB

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO
DENY CLASS CERTIFICATION

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................... 1

III.  DISCUSSION ...................................................................................................... 3

      A.    Standard Of Review. ............................................................................... 3

      B.    Plaintiffs' Claim Satisfies The Requirements Of Rule 23. ..................... 5

              1.    Commonality And Predominance. ............................................... 5

                      *a.*    *GEO's preemption defense presents a common*
                                 *and predominant issue of law.* ................................. 5

                      *b.*    *GEO has not demonstrated any material,*
                                 *individualized questions regarding the employee*
                               *status of VWP participants at the NWDC.* ............ 12

               2.    Numerosity. .................................................................................. 14

               3.    Typicality And Adequacy. ........................................................... 15

IV.  CONCLUSION ................................................................................................... 15

PLTF'S OPP. TO DEF.'S MOT. TO DENY
CLASS CERT. (3:17-cv-05769-RJB) – Page  – i

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

## <u>TABLE OF AUTHORITIES</u>

2                                                                           **Page**

**Cases**

3

*Abel Verdon Const. v. Rivera*,
4     348 S.W.3d 749 (Ky. 2011) ..................................................................... 8

5     *Anfinson v. FedEx Ground Package Sys.*,
      281 P.3d 289 (Wash. 2012)................................................... 6, 13, 14

6     *Asylum Co. v. D.C. Dep't of Emp. Servs.*,
      10 A.3d 619 (D.C. 2010) ....................................................................... 8
7
      *Bessette v. Avco Finan. Servs.*,
8     279 B.R. 442 (D.R.I. 2002) ................................................................... 4

9     *Coma Corp. v. Kansas Dep't. of Labor*,
      154 P.3d 1080 (Kan. 2007) .................................................................... 8

10    *Correa v. Waymouth Farms, Inc.*,
      664 N.W.2d 324 (Minn. 2003) .............................................................. 8
11
      *Dowling v. Slotnik*,
12    712 A.2d 396 (Conn. 1998) ................................................................... 8

13    *Grocers Supply, Inc. v. Cabello*,
      390 S.W.3d 707 (Tex. App. 2012) ......................................................... 7

14    *Hopkins v. Cornerstone Am.*,
      545 F.3d 338 (5th Cir. 2008) ................................................................. 6
15
      *I.B. ex rel. Fife v. Facebook, Inc.*,
16    905 F. Supp. 2d 989 (N.D. Cal. 2012) .................................................. 4

17    *Khorrami v. Lexmark Int'l Inc.*,
      No. CV 07-1671 DDP, 2007 WL 8031909 (C.D. Cal. Sept. 13, 2007)............................... 4

18    *Lyons v. Comcox, Inc.*,
      718 F. Supp. 2d 1232 (S.D. Cal. 2009)............................................. 4, 5
19
      *Madeira v. Affordable Housing Found., Inc.*,
20    469 F.3d 219 (2d Cir. 2006).................................................................... 7

21    *Mendoza v. Zirkle Fruit Co.*,
      No. CS-00-3024-FVS, 2000 WL 33225470 (E.D. Wash. Sept. 27, 2000) ........................... 7

22    *Meyer v. Receivables Performance Mgmt., LLC*,
      C12-2013RAJ, 2013 WL 1914392 (W.D. Wash. May 8, 2013) .......................... 3

23    *Pineda v. Kel-Tech Const., Inc.*,
      832 N.Y.S.2d 386 (N.Y. Sup. Ct. 2007) ............................................... 8
24
      *Real v. Driscoll Strawberry Assocs.*,
25    603 F.2d 748 (9th Cir.1979) .................................................................. 6

26    *Reyes v. Van Elk, Ltd.*,
      148 Cal.App.4th 604 (2007) ............................................................. 8, 9

PLTF'S OPP. TO DEF.'S MOT. TO DENY
CLASS CERT. (3:17-cv-05769-RJB) – Page  – ii

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

**Table of Authorities, continued**

**Page**

*Rosa v. Partners in Progress, Inc.*,
    868 A.2d 994 (N.H. 2005) .......................................................................... 8

*Rosales v. FitFlop USA, LLC*,
    882 F. Supp. 2d 1168 (S.D. Cal. 2012) ...................................................... 4

*Salas v. Sierra Chem. Co.*,
    327 P.3d 797 (Cal. 2014) ............................................................. 8, 9, 10, 12

*Sanchez-Penunuri v. Longshore*,
    7 F. Supp. 3d 1136 (D. Colo. 2013) ............................................................ 9

*Sandoval v. Rizzuti Farms, Ltd.*,
    CV-07-3076-EFS, 2009 WL 2058145 (E.D. Wash. July 15, 2009) ............. 7

*Thorpe v. Abbott Lab., Inc.*,
    534 F. Supp. 2d 1120 (N.D. Cal. 2008) ...................................................... 4

*Tietswoth v. Sears, Roebuck & Co.*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ...................................................... 4

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ...................................................................... 3

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................. 14

*Whittlestone, Inc. v. Hand-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ...................................................................... 4

**Statutes**
8 U.S.C. § 1324(c) ........................................................................................... 9
8 U.S.C. § 1324a(a)(1)(A) ............................................................................... 9
8 U.S.C. § 1324a(a)(2) ..................................................................................... 9
8 U.S.C. § 1324a(h)(2) ..................................................................................... 7
18 U.S.C. § 1546(b) ....................................................................................... 11
RCW 49.46.010 ................................................................................................ 6
RCW 49.46.090 ................................................................................................ 7

**Rules**
Fed. R. Civ. P. 12 ............................................................................................. 3
Fed. R. Civ. P. 12(b)(6) ................................................................................. 3,4
Fed. R. Civ. P. 12(f) ...................................................................................... 3, 4
Fed. R. Civ. P. 23(a) ........................................................................................ 5
Fed. R. Civ. P. 23(a)(2) ............................................................................... 5, 14
Fed. R. Civ. P. 23(b)(3) ............................................................................... 5, 14

**Other Authorities**
William B. Rubenstein, 3 *Newberg on Class Actions* § 7:22 (5th ed.) .................... 3

PLTF'S OPP. TO DEF.'S MOT. TO DENY
CLASS CERT. (3:17-cv-05769-RJB) – Page  – iii

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

## I.   INTRODUCTION

Over two months have passed since Defendant The GEO Group, Inc. ("GEO") moved preemptively to deny class certification on Plaintiffs' Washington Minimum Wage Act ("MWA") claim. Its motion lacked merit from the beginning but many of its arguments— namely, the multiple *ad hominem* attacks against former named plaintiff Chao Chen and his adequacy as class representative—have been rendered moot by Mr. Chen's withdrawal as a party to this action and the substitution of new plaintiffs in his stead. Despite these changes that bear heavily on the issue of class certification, GEO has refused to withdraw or update its motion, necessitating this response.

The remaining parts of GEO's motion are equally stale as GEO merely reprises its preemption arguments from its first motion to dismiss, which this Court has already denied. Indeed, GEO continues to labor under the tautological misconception that because the Immigration Reform and Control Act ("IRCA") penalizes employers who knowingly employ unauthorized immigrants, the Voluntary Work Program ("VWP") participants cannot be found to be within GEO's employ under the MWA even though these workers provide the kitchen, laundry, janitorial, and other services essential to keep the Northwest Detention Center ("NWDC") running. GEO is wrong about the law, but even assuming for argument's sake that it was not, its argument presents a common and predominant issue in this lawsuit demonstrating its suitability for class certification and dictating denial of the present motion.

## II.   STATEMENT OF FACTS

Rather than providing a statement of facts as part of its motion, GEO offers "background" about federal law governing alien removal and work authorization that is simply irrelevant. Dkt. No. 69 (Mot.) at pp. 2-8. It is likely that many detainees at NWDC

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

were not work eligible or authorized within the parameters of U.S. immigration law, but Plaintiffs have moved to certify a class comprising *all* detainees who participated in the VWP during the statutory limitations period, not just those detainees who were authorized to work by immigration authorities. *See* Dkt. No. 86 (Class Cert. Mot.).

Moreover, GEO's background statement largely ignores the principal question in this case: whether an employment relationship existed between GEO and the VWP participants under the MWA, as determined by the economic realities test used by Washington courts. To the extent GEO makes some superficial arguments regarding the predominance of individual questions relating to this issue, Plaintiffs address those in Section III.B.1, below.

Finally, all facts and argument about Mr. Chen are now moot given his withdrawal. As detailed more fully in Plaintiffs' Motion for Class Certification, the current Plaintiffs do not suffer from the same deficiencies in typicality and adequacy alleged by GEO against Mr. Chen. Mr. Nwauzor was granted asylum by the United States after presenting himself at the Mexican border and being detained by ICE. *See* Dkt. No. 88 (Nwauzor Decl.). He has since become a hardworking member of the community and was recently named employee of the month by the hotel where he works. Mr. Aguirre-Urbina arrived in the United States when he was about three years-old, has been in detention for over five years since pleading guilty and serving time for a non-violent drug charge, and has worked in the VWP throughout the NWDC, including jobs both inside and outside his residential pod. *See* Dkt. No. 89 (Aguirre-Urbina Decl.).

PLTF'S OPP. TO DEF.'S MOT. TO DENY
CLASS CERT. (3:17-cv-05769-RJB) – Page  – 2

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

## III.   DISCUSSION

2

### A.      Standard Of Review.

3       Although most class certification decisions are made upon a motion by the plaintiff, a

4   defendant may file a motion seeking a ruling that a class cannot be certified. *Vinole v.*

5   *Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009). However, the prospects

6   for success on such a motion prior to the end of discovery are dim, as "many courts simply

7   deny [anti-certification motions] outright on the grounds that the plaintiff is entitled to

8   discovery on class certification issues." William B. Rubenstein, 3 *Newberg on Class Actions*

9   § 7:22 (5th ed.) (collecting cases); *see Vinole*, 571 F.3d at 942 ("Although a party seeking

10  class certification is not always entitled to discovery on the class certification issue, we have

11  stated that the propriety of a class action cannot be determined in some cases without

12  discovery, and that the better and more advisable practice for a District Court to follow is to

13  afford the litigants an opportunity to present evidence as to whether a class action was

14  maintainable." (internal quotations omitted)).

15

16       Those courts that do consider anti-certification motions before the end of discovery

17  apply Rule 12 procedures. *Newberg on Class Actions* § 7:22. This is because a defendant

18  moving preemptively to deny class certification seeks a ruling on the pleadings alone. *See*

19  *Meyer v. Receivables Performance Mgmt., LLC,* C12-2013RAJ, 2013 WL 1914392, at *2

20  (W.D. Wash. May 8, 2013) ("For purposes of this [anti-certification] motion only, the court

21  assumes that it is in some cases proper to attack class allegations at the pleading stage,

22  whether via a Rule 12(b)(6) motion to dismiss, a Rule 12(f) motion to strike, or some other

23  means.").

24

25

26

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Thus, whether conceptualized as a Rule 12(f) motion to strike class allegations or a Rule 12(b)(6) motion to dismiss, defendants bear the burden of proof on an anti-certification motion. *Id.* ("To prevail at the pleading stage, a defendant would have to show that it is not plausible that evidence consistent with the allegations of the plaintiff's complaint would support class certification."). When ruling on a preemptive motion to deny class certification, "the Court takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to plaintiff." *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010). The court may not resolve disputed factual or legal issues in deciding a motion to strike. *Whittlestone, Inc. v. Hand-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "At this stage, the burden is not on the party seeking class certification, rather, as the non-moving party, all reasonable inferences must be construed in her favor." *Bessette v. Avco Finan. Servs.*, 279 B.R. 442, 451 (D.R.I. 2002). A court may strike class allegations only where it determines "from the face of the pleadings that a class is not certifiable as a matter of law" because there are "no factual or legal issues to be resolved." *Lyons v. Comcox, Inc.*, 718 F. Supp. 2d 1232, 1236 (S.D. Cal. 2009). Motions to strike class allegations are disfavored because "a motion for class certification is a more appropriate vehicle" for testing the validity of class claims. *Lyons*, 718 F. Supp. 2d at 1235-36 (quoting *Thorpe v. Abbott Lab., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008)); *Khorrami v. Lexmark Int'l Inc.*, No. CV 07-1671 DDP, 2007 WL 8031909, at *2 (C.D. Cal. Sept. 13, 2007).[1]

---

[1] Some district courts within this circuit have denied motions to strike class allegations as "premature." *See, e.g.*, *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012) (describing the motion to strike as "premature" and "a way to circumvent Rule 23"); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1012 (N.D. Cal. 2012) (denying motion to strike class allegations as "premature" and stating that defendant "must present its challenges to class certification in opposition to Plaintiffs' motion for class certification").

PLTF'S OPP. TO DEF.'S MOT. TO DENY
CLASS CERT. (3:17-cv-05769-RJB) – Page – 4

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

Under these standards, GEO's motion must be denied. Aside from the moot attacks on Mr. Chen, the motion rests entirely on the assumption that Plaintiffs' claim is preempted by IRCA, which is both a common and predominant question and a "legal issue[] to be resolved." *Lyons,* 718 F. Supp. 2d at 1236.

**B.     Plaintiffs' Claim Satisfies The Requirements Of Rule 23.**

As stated above, it is GEO's burden on this motion to show that Plaintiffs cannot satisfy the requirements of Fed. R. Civ. P. 23(a) or (b)(3). Not only does GEO fail to carry this burden, in many ways, its motion supports the conclusion that the rule's requirements are met.

**1.     Commonality And Predominance.**

*a.     GEO's preemption defense presents a common and predominant issue of law.*

GEO practically acknowledges the existence of commonality under Rule 23(a)(2) and predominance under Rule 23(b)(3) in the first pages of its motion. According to GEO, "there are likely no members of [the] putative class who could have been employed by GEO." Mot. at 2-3. Even so, GEO spends most of the remainder of its motion arguing against the tide of this proposition by asserting that individualized questions exist regarding whether particular detainees were eligible and authorized to work in the United States during their detention at NWDC. But GEO's initial statement more correctly captures a common and predominant question in this case—whether an employment relationship *could* arise between GEO and the detainee workers under the Washington Minimum Wage Act even if the detainees did not have work authorization under federal law. Regardless of the outcome of this question, its common nature and common answer to the entire class supports class certification, and denial of Defendant's anti-certification motion.

1    Put another way, the bulk of GEO's commonality/predominance arguments rest on a

2    reiteration of its IRCA preemption arguments that have already been rejected by this Court.

3    Dkt. No. 28 (Order Denying GEO's 1st Mot. to Dismiss) at 6-13. Even if the Court were to

4    revisit this issue, it would constitute a "legal issue[] to be resolved" that would be common to

5    the class and would not support a denial of class certification. Equally important is the fact

6    that GEO's preemption argument is simply wrong on its merits.

7    As Plaintiffs explained in their opposition to GEO's first motion to dismiss, employee

8    status under the MWA and recovery of back wages for time already worked does not depend

9    on citizenry, lawful residency, or work authorization under federal law. *See* Dkt. No. 15 at 5-

10   15. The MWA itself does not make any reference to citizenry or work authorization in its

11   definitions of "employ" or "employee" and instead defines "employee" broadly to include

12   "*any* individual employed by an employer." RCW 49.46.010 (emphasis added). Similarly,

13   none of the factors under the economic realities test used to determine employee status under

14   the MWA references citizenship or work authorization. *See Anfinson v. FedEx Ground*

15   *Package Sys.*, 281 P.3d 289, 299-300 (Wash. 2012). Rather those factors, including the

16   employer's right to control, the worker's opportunity for profit or loss depending on

17   managerial skill, relative investment in equipment and supplies, permanence of working

18   relationship, and whether the work is integral to the employer's business, focus on the actual

19   facts of the relationship of worker to business, regardless of legal authorization. *Id.* (citing

20   *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) and *Real v. Driscoll*

21   *Strawberry Assocs.*, 603 F.2d 748, 754 (9th Cir.1979)).[2]

22
---

[2] GEO incorrectly cites to the eight-part test in the jury instruction that the *Anfinson* Court found flawed. Mot. at 19; *see Anfinson,* 1 P.3d at 300 (rejecting eight-factor test used erroneously in jury instruction; adopting the

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

In addition, IRCA neither preempts the MWA nor precludes a finding of an employment relationship here, because IRCA preempts only state laws that impose "civil or criminal sanctions" on employers for engaging in conduct prohibited by IRCA. 8 U.S.C. § 1324a(h)(2). Requiring payment of minimum wages for work already performed is not a sanction; rather, it is a remedy available to employees, without regard to immigration status, to recover monetary damages from employers who fail to pay the State's minimum wage. RCW 49.46.090. *See Mendoza v. Zirkle Fruit Co.*, No. CS-00-3024-FVS, 2000 WL 33225470, *11 (E.D. Wash. Sept. 27, 2000) (finding IRCA's 'civil or criminal sanctions' provision does not apply to claims for civil money damages), *rev'd on other grounds*, 301 F.3d 1163 (9th Cir. 2002); *Sandoval v. Rizzuti Farms, Ltd.*, CV-07-3076-EFS, 2009 WL 2058145 (E.D. Wash. July 15, 2009) (barring discovery of immigration status as irrelevant to claims for uncompensated wages under state law); *Madeira v. Affordable Housing Found., Inc.*, 469 F.3d 219, 240 (2d Cir. 2006) ("Compensatory damages for personal injury do not reasonably equate to sanctions."); *Grocers Supply, Inc. v. Cabello*, 390 S.W.3d 707, 715 (Tex. App. 2012) (lost wages are not sanctions). For this reason, GEO's assertion that "federal law expressly prohibit[s]" creation of an employment relationship under state law is fundamentally flawed. Mot. at 16. IRCA may penalize employers who knowingly employ undocumented immigrants, but it does not and cannot prohibit the creation of an employment relationship where the facts meet the standards of the economic realities test.

---

economic realities test, which "results in a more inclusive definition of employee than does the right-to-control test."). The Court's rejection of that test, which included the subjective understanding of the parties as a factor to be considered, reinforces the fact that it is the reality of the working relationship, rather than any nomenclature or legal trappings, that determines employee status.

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

Finally, rather than standing as an obstacle to IRCA's purposes, enforcing the MWA against employers advances both IRCA's objectives and the MWA's goals of protecting workers and maintaining minimum wage standards in the community. If employers are allowed to underpay undocumented workers without fear of liability under the MWA, they will have incentive to skirt IRCA's requirements. Applying the MWA to undocumented workers will reduce this incentive and will open new avenues of enforcement that will serve IRCA's purposes by allowing private rights of action under the MWA even where the governmental authorities lack the resources or incentive to pursue penalties under IRCA.

It is for these reasons that the courts have consistently found that IRCA does not preempt state wage laws, particularly when recovery is sought by undocumented laborers for work already performed. *See Coma Corp. v. Kansas Dep't. of Labor*, 154 P.3d 1080, 1083-86 (Kan. 2007) (holding IRCA does not preempt the Kansas Wage Payment Act); *Reyes v. Van Elk, Ltd.*, 148 Cal.App.4th 604, 616 (2007) (same as to California's prevailing wage law); *Pineda v. Kel-Tech Const., Inc*., 832 N.Y.S.2d 386, 393 (N.Y. Sup. Ct. 2007) (same as to New York prevailing wage law). Indeed, with respect to both state wage laws and labor laws more generally, courts have consistently and overwhelmingly reached the opposite conclusion. *E.g.*, *Salas v. Sierra Chem. Co.*, 327 P.3d 797, 805-06 (Cal. 2014) (holding IRCA does not preempt—expressly or impliedly—California law applying labor protections to all persons regardless of immigration status); *Abel Verdon Const. v. Rivera*, 348 S.W.3d 749 (Ky. 2011) (same as to worker's compensation law); *Asylum Co. v. D.C. Dep't of Emp. Servs.*, 10 A.3d 619, 630-34 (D.C. 2010) (same); *Rosa v. Partners in Progress, Inc.*, 868 A.2d 994, 1000, 1002 (N.H. 2005) (same); *Correa v. Waymouth Farms, Inc.*, 664 N.W.2d 324, 329 (Minn. 2003) (same); *Dowling v. Slotnik*, 712 A.2d 396, 403 (Conn. 1998) (same).

PLTF'S OPP. TO DEF.'S MOT. TO DENY
CLASS CERT. (3:17-cv-05769-RJB) – Page  – 8

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

Indeed, a little more than two weeks ago, another federal court reached just this conclusion in a detainee labor case pending against GEO in the Central District of California. The court denied GEO's motion to dismiss a detainee's claim for wages under the California Minimum Wage Law and found the law was not preempted by IRCA. Citing *Salas* and *Reyes* (as well as this Court's earlier order on GEO's motion to dismiss against the State of Washington's related case), the court wrote:

> The Court finds the reasoning in these cases persuasive. IRCA focuses on the employer's conduct. Under IRCA, employers are prohibited from hiring an unauthorized alien for employment in the United States, or continuing to employ the alien knowing he or she is or has become unauthorized with respect to such employment. 8 U.S.C. §§ 1324a(a)(1)(A), 1324a(a)(2). By contrast, the only IRCA sanctions applicable to the unauthorized alien are for the knowing or reckless use of false documents to obtain employment. See 8 U.S.C. § 1324(c). IRCA does not forbid undocumented aliens from seeking or maintaining employment. Therefore the alleged conflict is not so apparent here, where the unauthorized alien has not committed an IRCA violation, and the employment relationship stems from an employer's alleged knowing violation of IRCA prohibitions. Once the employer has committed IRCA violations, there is no conflict with California's MWL in compensating the unauthorized alien at the minimum wage rate for work performed. The Court recognizes the inherent tension in permitting an unauthorized alien to advance a claim for wages when the worker's very employment is prohibited. However, doing so merely ensures that the employer does not unfairly benefit from the undocumented worker's labor. To allow an employer to benefit from hiring unauthorized workers and paying them lower wages would discourage employer compliance with both federal immigration and state laws more than would a benefit award for the undocumented worker. While Plaintiff's detained status presents an additional aspect to his claim, the Court finds no distinction based on detention in IRCA. The Court concludes Plaintiff's MWL claim is not preempted.

*Novoa v. The GEO Group, Inc.*, No. EDCV 5:17-cv-02514 JGB (SHKx), Order on Motion to Dismiss at 7-8 (C.D. Cal. June 21, 2018).

GEO's citations to *Sanchez-Penunuri v. Longshore*, 7 F. Supp. 3d 1136, 1145-46 (D. Colo. 2013) (Mot. at 6), and *Salas*, 327 P.3d at 807 (Mot. at 10), are not to the contrary. *Sanchez-Penunuri* involved a habeas petition in which the federal government argued that the

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

immigration detainee had named the wrong respondent because he did not name the local warden of the facility where he was detained. In rejecting this argument, the court held the governing regulation did not grant local wardens the authority to release detainees and noted that this restriction made perfect sense because ICE often subcontracts operation of detention facilities to state and local governments and private corporations. The authority of the local wardens of such facilities is limited to the power granted them under the contracts with ICE and does not extend to the power to release detainees without ICE approval. The case says nothing about the plenary powers of the state when applying its wage laws to a private company like GEO. Moreover, the fact that ICE remains the "legal custodian" of detainees is irrelevant to the claims in this case. GEO is the one who controls detainee workers, assigns and directs their work, gives them supplies, and relies on their labor to run and profit from its facility. Whether or not ICE is their legal custodian, it is GEO that Plaintiffs allege is their employer.

*Salas* is even less helpful to GEO. In *Salas*, a worker sued for damages for retaliatory discharge and failure to provide reasonable accommodations. Although the California Supreme Court found that IRCA effectively barred recovery of post-termination lost wages for any time after the employer discovered the worker's undocumented status, it reached the opposite conclusion with respect to lost wages between the time of the allegedly wrongful termination and the time when the employer learned of the undocumented status. In other words, the Court cut off damages for the period when the worker *would not* have been employed, in that case, because of legal infirmity, although the same principle would have applied had the worker ceased to be employable for any reason, like death or physical

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

disability. But the Court allowed damages under state law for when the worker *would* have been employed, even though not legally authorized to work. As the Court explained:

> Far less stringent, however, is federal immigration law's approach to unauthorized alien workers. Although Congress made it a crime for an unauthorized alien to use false documents to obtain employment (18 U.S.C. § 1546(b)), Congress did not impose criminal sanctions on unauthorized aliens merely for seeking or engaging in unauthorized work. As the high court recently pointed out, "Congress made a deliberate choice not to impose criminal penalties on aliens who seek, or engage in, unauthorized employment," as this "would be inconsistent with federal policy and objectives." (*Arizona v. United States*, *supra*, ___ U.S. at p. ___, 132 S.Ct. at p. 2504.)

> California's Senate Bill No. 1818 expressly makes the worker protection provisions of state employment and labor laws available to all workers "regardless of immigration status." The protections thus extend even to those unauthorized aliens who, in violation of federal immigration law, have used false documents to secure employment....

> Furthermore, not allowing unauthorized workers to obtain state remedies for unlawful discharge, including prediscovery period lost wages, would effectively immunize employers that, in violation of fundamental state policy, discriminate against their workers on grounds such as disability or race, retaliate against workers who seek compensation for disabling workplace injuries, or fail to pay the wages that state law requires. The resulting lower employment costs would encourage employers to hire workers known or suspected to be unauthorized aliens, contrary to the federal law's purpose of eliminating employers' economic incentives to hire such workers by subjecting employers to civil as well as criminal penalties.... It would frustrate rather than advance the policies underlying federal immigration law to leave unauthorized alien workers so bereft of state labor law protections that employers have a strong incentive to "look the other way" and exploit a black market for illegal labor. Accordingly, after comparing the likely effects of applying and not applying state labor and employment law protection to unauthorized alien workers, we conclude that Senate Bill No. 1818, insofar as it makes available to such workers the remedy of prediscovery period lost wages for unlawful termination in violation of the FEHA, does not frustrate the purpose of the federal Immigration Reform and Control Act of 1986, and thus is not preempted.

PLTF'S OPP. TO DEF.'S MOT. TO DENY
CLASS CERT. (3:17-cv-05769-RJB) – Page – 11

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

*Salas*, 327 P.3d at 808-09 (citations omitted). This reasoning is even more applicable where, as here, back pay damages are sought for work that has *already* been performed, rather than damages for lost wages due to the denial of the opportunity to work.

In short, GEO's argument that individual questions about work eligibility and work authorization predominate because "employability is essential to their recovery," is fundamentally flawed. Mot. at 11. Even if it were not wrong on the merits, however, it would still present a common and predominant question for the proposed class, which includes *all* detainees who participated in the VWP at the NWDC, regardless of work authorization status.

> b.  *GEO has not demonstrated any material, individualized questions regarding the employee status of VWP participants at the NWDC.*

GEO's remaining arguments regarding commonality and predominance are equally deficient.

First, GEO suggests the fact that detainees are assigned risk categories, which in turn affects the types of jobs that a detainee can perform within the VWP, creates individualized questions and negates the possibility that GEO can be deemed an employer. *See* Mot. at 8, 21. However, many employers operate under government-imposed limitations on which workers can be employed for which jobs. FedEx cannot hire an individual who does not have a CDL as a truck driver; a law firm cannot hire someone to practice law who has not passed the bar. But the fact that these individuals might be hired as freight loaders or paralegals instead does not make them any less the employees of their respective employers. And in this case, whether a detainee worked solely in their pod as a porter or cleaner, or outside their pod

as a janitor, cook, or barber, is a distinction without a difference. The precise location or nature of the work is not material to the *Anfinson* economic reality factors.

Second, GEO argues that it does not have the same scope of authority to "hire" or "fire" as other employers in the marketplace. *See* Mot. at 19-20. To begin, this assertion does not undermine commonality or predominance or augur against class certification since there is no indication that the scope of GEO's authority, however broad or narrow it may be, differs from class member to class member. Moreover, both the underlying facts and the legal significance of GEO's assertions are far from clear. The declarations of Mr. Nwauzor and Mr. Aguirre-Urbina indicate that GEO maintained a wait list for positions in the VWP and decided who received what job, which are indicia of control over "hiring." *See* Nwauzor Decl. (Dkt. No. 88), ¶5; Aguirre-Urbina Decl. (Dkt. No. 89), ¶4. The possibility that the scope of this control may have been constrained in various ways is not dispositive, because it is the reality of the relationship when the participants actually worked that controls. Similarly, GEO retains the authority to deny participation in the VWP to particular detainees (*i.e.*, to "fire") if they fail to perform their assigned jobs satisfactorily, do not show up on time, or do not adhere to required dress or grooming standards. *See* Dkt. No. 87-7 at 16, 27-28 (Detainee Handbook). The fact that ICE may release some detainees is no different than other employers dealing with workers who quit or move away. *See* Mot. at 19.

Third, GEO alleges that there are differences in "training and equipment" from detainee to detainee and job to job that create individualized questions without really explaining or supporting this assertion. *See* Mot. at 20. It is beyond question that in the tightly controlled confines of the NWDC, GEO provides all the equipment needed for any of the VWP jobs, whether it be knives for cooks in the kitchen, mops for dayroom porters, or

PLTF'S OPP. TO DEF.'S MOT. TO DENY
CLASS CERT. (3:17-cv-05769-RJB) – Page  – 13

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

carts and garbage bags for trash collectors. Similarly, while particular detainees may need more or less training on a particular task depending on their prior work experience, the same is true with respect to any employer, and does not change the fact that it was GEO that provided all training required for any given detainee to perform the tasks GEO assigned to them under the VWP.

In sum, the named Plaintiffs allege the same injury (being paid $1 per day, rather than the state minimum wage) giving rise to the same legal claim (for back wages as employees under the MWA). Their claims (that they are GEO's employees under the *Anfinson* economic realities test) and GEO's defenses (that the MWA is preempted and that GEO cannot be deemed an employer) are common and predominant across the class and lend themselves to common answers. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011) (commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury" and "[t]heir claims must depend on a common contention"). GEO has not and cannot show that the requirements of Rules 23(a)(2) and 23(b)(3) have not been met by the proposed class.

### 2.    Numerosity.

GEO's argument regarding numerosity rests on the same flawed proposition as its commonality and predominance argument: only work-authorized individuals may recover under the MWA. In fact, the class as Plaintiffs have defined it constitutes hundreds, if not thousands of individuals, as explained in Plaintiffs' Motion for Class Certification (Dkt. No. 86) at 8-9.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

### 3.     Typicality And Adequacy.

2      GEO's typicality and adequacy arguments rely either on factual allegations regarding

3  Mr. Chen's character and activities that are now moot or premised on the same mistaken

4  IRCA preemption arguments addressed above. Plaintiffs only note that Mr. Aguirre-Urbina

5  worked in multiple VWP jobs throughout the facility. Aguirre-Urbina Decl. (Dkt. No. 89),

6
   ¶4. Although this range of participation is not necessary to satisfy either typicality or

7
   adequacy for the reasons explained above and in Plaintiffs' Motion for Class Certification,

8
   Dkt. No. 86 at 16, it provides further support for the conclusion that the named Plaintiffs

9
   have claims typical of all the class members and can adequately represent the entire class.

10

11                    ## IV.   CONCLUSION

12      For the reasons stated above, and in Plaintiffs' pending motion for class certification,

13  the Court should deny Defendant's Motion to Deny Class Certification.

14
       DATED this 9th day of July, 2018.

15

16                    SCHROETER GOLDMARK & BENDER

17                    *s/ Jamal Whitehead*
                      _____
18                    Adam J. Berger, WSBA #20714
                      Lindsay L. Halm, WSBA #37141
19                    Jamal N. Whitehead, WSBA #39818
                      810 Third Avenue, Suite 500
20                    Seattle, WA 98104
                      Tel: (206) 622-8000 ~ Fax: (206) 682-2305
21                    berger@sgb-law.com
                      halm@sgb-law.com
22                    whitehead@sgb-law.com

23                    THE LAW OFFICE OF R. ANDREW FREE
                      Andrew Free (*Pro Hac Vice*)
24                    P.O. Box 90568
                      Nashville, TN 37209
25                    Tel: (844) 321-3221 ~ Fax: (615) 829-8959
                      andrew@immigrantcivilrights.com

26

PLTF'S OPP. TO DEF.'S MOT. TO DENY
CLASS CERT. (3:17-cv-05769-RJB) – Page  – 15

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SUNBIRD LAW, PLLC
Devin T. Theriot-Orr, WSBA # 33995
1001 Fourth Avenue, Suite 3200
Seattle, WA  98154-1003
Tel: (206) 962-5052 ~ Fax: (206) 681-9663
devin@sunbird.law

MENTER IMMIGRATION LAW, PLLC
Meena Menter, WSBA # 31870
8201 164th Ave NE, Suite 200
Redmond, WA 98052
Tel: (206) 419-7332
meena@meenamenter.com

*Attorneys for Plaintiff*

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

## CERTIFICATE OF SERVICE

2          I hereby certify that I electronically filed the foregoing with the Clerk of the Court

3    using the CM/ECF system, which will send notification of such filing to the following:

4
     Devin T. Theriot-Orr, WSBA # 33995          R. Andrew Free
5    SUNBIRD LAW, PLLC                            THE LAW OFFICE OF R. ANDREW FREE
     1001 Fourth Avenue, Suite 3200              Admitted *Pro  Hac Vice*
6    Seattle, WA  98154-1003                      PO Box 90568
     Tel: (206) 962-5052                          Nashville, TN 37209
7    devin@sunbird.law                            Tel: (844) 321-3221
                                                  andrew@immigrantcivilrights.com
8    *Counsel for Plaintiff*
                                                  *Counsel for Plaintiff*
9

10   Joan K. Mell                                 Mark Emery
     III BRANCHES LAW, PLLC                       NORTON ROSE FULBRIGHT US LLP
11   1019 Regents Boulevard, Suite 204           799 9th Street, Suite 1000
     Fircrest, WA 98466                           Washington, D.C. 20001
12   Tel: (253) 566-2510                          Mark.emery@nortonrosefulbright.com
     joan@3brancheslaw.com
13                                                *Attorney for Defendant*
     *Attorney for Defendant*
14

15   Andrea D'Ambra                               Charles A. Deacon
     NORTON ROSE FULBRIGHT US LLP                 NORTON ROSE FULBRIGHT US LLP
16   1301 Avenue of the Americas                 300 Covent St.
     New York, NY 10019                           San Antonio, TX 78205
17   andrea.dambra@nortonrosefulbright.com        Charles.deacon@nortonrosefulbright.com
18   *Attorney for Defendant*
                                                  *Attorney for Defendant*
19

20   Meena Menter
     MENTER IMMIGRATION LAW PLLC
21   8201 164th Ave. NE, Suite 200
     Redmond, WA 98052
22   Tel: (206) 419-7332
     meena@meenamenter.com
23
     *Counsel for Plaintiff*
24

25

26

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

DATED at Seattle, Washington this 9th day of July, 2018.

2

*s/ Jamal Whitehead*

3

Jamal Whitehead

Schroeter Goldmark & Bender

4

810 Third Avenue, Suite 500

Seattle, WA  98104

5

Tel: (206) 622-8000

Fax: (206) 682-2305

6

whitehead@sgb-law.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLTF'S OPP. TO DEF.'S MOT. TO DENY
CLASS CERT. (3:17-cv-05769-RJB) – Page  – 18

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305