---

The Honorable Robert J. Bryan

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

| | |
|---|---|
| UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, INC., a Florida corporation,<br><br>Defendant. | No. 17-cv-05769-RJB<br><br>REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |

REPLY IN SUPPORT OF PLTFS.' MOT. FOR CLASS CERT. (17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

## I. INTRODUCTION

The parties have filed cross motions concerning class certification, and Plaintiffs have already addressed many of GEO's arguments against class treatment in their recently filed opposition to Defendant's motion to deny class certification. *See* Dkt. Nos. 69 (Def.'s Mot. to Deny Class Cert.), 86 (Pltfs.' Mot. to Cert. Class), and 94 (Pltfs.' Opp. to Def.'s Mot. to Deny Class Cert.). Because GEO's opposition to the instant motion raises little in the way of new arguments or authority—certainly, none that are compelling—Plaintiffs forgo a tit-for-tat rebuttal and incorporate their earlier briefing by reference.[1] Several issues raised by GEO's opposition, however, merit special attention, which Plaintiffs address below.

## II. LEGAL ARGUMENT

### A. Standard of Review.

GEO urges the Court to analyze the merits of the case, arguing that Plaintiffs cannot maintain a class action because federal law preempts their Minimum Wage Act (MWA) claim. Dkt. No. 95 (Opp.) at 3, 10, and 22. Setting aside the fact that the Court has already rejected GEO's preemption arguments (Dkt. No. 28; Order Denying GEO's 1st Mot. to Dismiss), the class certification stage is not the time for a minitrial on the merits. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

---

[1] In particular, Plaintiffs incorporate all of their opposition to Defendant's anti-certification motion (Dkt. No. 94), and their opposition to Defendant's first motion to dismiss concerning federal preemption of the MWA and the plausibility of such a claim (Dkt. No. 15).

REPLY IN SUPPORT OF PLTFS.' MOT. FOR CLASS CERT. (17-cv-05769-RJB) - 1

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Here, there are no merits-based issues that weigh against class certification, and GEO's claims to the contrary only underscore the common, predominant questions to be resolved by the Court.

### B. Common Issues Abound and Predominate.

Common questions are plenty in this case, and they predominate over any questions affecting individual members of the putative class. GEO unwittingly emphasizes this fact by describing work authorization as a "threshold matter" to recovery (Opp. at 10). Even if this were true—*it is not*—the disposition of this "threshold question," as GEO puts it (Opp. at 3), is a significant aspect of the case that is capable of resolving the rights of many Voluntary Work Program (VWP) participants at once. This issue alone is sufficient to satisfy the Court's inquiry under Rule 23(a)(2) and (b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." (internal quotations omitted)). Plaintiffs also address GEO's preemption argument in their opposition to GEO's anti-certification motion, which Plaintiffs incorporate here. No. 94 at 5-12.

#### 1. The economic realities test can be applied on a classwide basis.

GEO points to superficial differences between VWP participants to undermine commonality and predominance, but as Plaintiffs have previously explained, these differences are immaterial in determining the overarching economic relationship between GEO and its detainee workforce. Dkt. No. 94 at 12-14.

REPLY IN SUPPORT OF PLTFS.' MOT. FOR CLASS CERT. (17-cv-05769-RJB) - 2

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

GEO offers a slightly new wrinkle to this argument in its opposition to the instant motion, arguing that because VWP participants hold different job classifications, Plaintiffs cannot "prove that participation in each task under each classification constitutes 'employment.'" Opp. at 12. This argument, however, demonstrates a fundamental misunderstanding of the "economic realities" test adopted by Washington courts, under which the principle inquiry is whether the detainee workers are economically dependent on GEO or in business for themselves. *Anfinson v. FedEx Ground Package Sys., Inc.,* 281 P.3d 289, 299 (Wash. 2012). The factors considered in answering this question speak to the actual nature of the relationship between the parties; thus, it makes no difference whether a detainee was assigned to cleaning the bathrooms or the kitchen, as GEO's authority to make job assignments, control job performance, and set the rate of pay, among other indicia of dependence, remain the same regardless of the individual job assignments. *See id.* at 298-299. Put another way, GEO's degree of control and the detainees' dependence remain constant—however broad or narrow—across the different job assignments at NWDC, and GEO has offered no evidence indicating otherwise.

GEO also accuses Plaintiffs of "conveniently omit[ting] one relevant factor identified in *Anfinson—*the parties beliefs about the nature of their relationship" (Opp. at 13), but it is in fact GEO that misrepresents the holding of the case. The Washington Supreme Court, in affirming the Court of Appeals, *rejected* the subjective belief of the parties as a relevant inquiry under the economic realities test. *Anfinson,* 281 P.3d at 299-300. The Court of Appeals' opinion in *Anfinson* provides the clearest statement on this issue, as the court considered and rejected the eight-factor jury instruction proposed by the defendant and given by the trial court. *Anfinson v. FedEx Ground Package Sys., Inc.*, 244 P.3d 32, 41-43 (Wash.

REPLY IN SUPPORT OF PLTFS.' MOT. FOR CLASS CERT. (17-cv-05769-RJB) - 3

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Ct. App. 2010), *aff'd*, 281 P.3d 289 (Wash. 2012). The method of payment and subjective belief of the parties about the nature of the employment relationship were the seventh and eight factors, but the appellate court found their inclusion to be erroneous as "neither … is considered in the economic realities test." *Id.* at 42 (2010).

Finally, GEO's claim that Plaintiffs offer no proof of a uniform program is easily belied by the evidence adduced to date—namely, the detainee handbook, the PBNDS, GEO's contract with ICE, the declarations of the named plaintiffs, and even the declaration of NWDC's associate warden Ryan Kimble (Dkt. No. 97), which all describe uniform policies and a common scheme for managing detainee labor within the VWP. Plaintiffs expect to learn more about GEO's specific practices as discovery continues, but enough information has come to light on which to rest a finding that the requirements of Rule 23(a)(2) and (b)(3) have been met. *See Gonzales v. Arrow Fin. Servs. LLC,* 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007), *aff'd*, 660 F.3d 1055 (9th Cir. 2011) ("[D]oubts regarding the propriety of class certification should be resolved in favor of certification." (internal quotations omitted)).

### 2. Individualized inquiries about damages do not undercut the Court's commonality and predominance considerations.

GEO argues that individual damage assessments predominate over common questions of liability, thus rendering class certification inappropriate (Opp. at 14-18), but courts "in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations and a recent dissenting decision of four Supreme Court Justices characterized the point as 'well nigh universal.'" 2 W. Rubenstein, *Newberg on Class Actions* § 4:54 (5th ed.) (collecting cases). This is especially true in wage and hour class actions in which individual damage calculations are often formulaic and based on representative evidence. *See Leyva v. Medline Indus. Inc.*, 716

REPLY IN SUPPORT OF PLTFS.' MOT. FOR CLASS CERT. (17-cv-05769-RJB) - 4

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

F.3d 510, 513-14 (9th Cir. 2013) ("The only individualized factor that the district court identified was the amount of pay owed. In this circuit, however, damage calculations alone cannot defeat certification." (internal quotations omitted)); *see also Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("[T]he amount of damages is invariably an individual question and does not defeat class action treatment."). GEO's protests otherwise are unconvincing.

First, assuming *arguendo* that GEO lacks records by which to determine the precise number of hours worked—a fact that is far from certain given GEO's resistance to class discovery[2]—class members are entitled to a "just and reasonable inference" about the amount and extent of work performed upon a showing that they were improperly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). This is so because when an employer violates its statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the "remedial nature of [the FLSA] and the great public policy which it embodies ... militate against making" the burden of proving uncompensated work "an impossible hurdle for the employee." *Id.* at 687. Instead, the burden shifts "to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-688. Plaintiffs will undoubtedly carry this burden if the MWA is found to apply to the detainee workers, as there is no dispute that VWP participates received the subminimum wage of $1 per day.

---

[2] For example, GEO may possess or maintain schedules, assignment sheets, sign-in/out sheets, and payroll records that could reveal the number of hours worked and jobs performed or at least the days on which a given VWP participant worked.

REPLY IN SUPPORT OF PLTFS.' MOT. FOR CLASS CERT. (17-cv-05769-RJB) - 5

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Second, it is not necessary for each class member to testify about their hours worked or back wages owed to satisfy the damages inquiry because representative testimony from a subset of class members about the amount of time it took to accomplish particular tasks will suffice. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1046-47, 194 L. Ed. 2d 124 (2016) (citing *Mt. Clemens*, 328 U.S. at 687-88); *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66-68 (2nd Cir. 1997) (representative testimony of 39 of approximately 1,500 employees was adequate to support an award of back wages for all of the employees); *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 472–73 (11th Cir. 1982) (23 employees testified; back wages awarded to 207 employees); *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir. 1973); *McLaughlin v. DialAmerica Mktg., Inc.*, 716 F.Supp. 812, 824–25 (D.N.J. 1989) (testimony of 43 witnesses confirmed existence of violations for approximately 350 non-testifying employees); *Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F. Supp. 860, 868 (S.D.N.Y. 1984) (29 employees testified by deposition; backwages awarded to over 200 employees).

The Supreme Court endorsed the use of representative proof from sampling to demonstrate the predominance of common issues in *Tyson Foods,* 136 S. Ct. at 1046-47. At issue was the defendant employer's failure to pay overtime wages to a putative class of employees for donning and doffing protective gear. *Id.* at 1042-45. Because the employer did not maintain time records for the activity at issue, the employees relied upon an expert witness's study, which estimated average donning-and-doffing times for certain groups of employees based on his videotaped observations, to show that some members of the putative class had worked compensable yet uncompensated overtime hours. *Id.* at 1043-44. In approving this model of proof, the Court held that employee-specific inquiries were

REPLY IN SUPPORT OF PLTFS.' MOT. FOR CLASS CERT. (17-cv-05769-RJB) - 6

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

unnecessary and would not lead to the conclusion that individualized issues predominated over the common question of whether donning-and-doffing time was compensable under the law. *Id.* at 1046.

Here, the putative class may rely upon representative testimony about how long various tasks took to complete, such as cleaning the dayroom or the bathrooms within the pods. Or, like the putative class in *Tyson Foods,* Plaintiffs may rely upon video observation, time motion studies, and electronic entry system records to create statistical evidence concerning damages obviating the need for individualized inquiry. Under either scenario, the putative class will proffer evidence sufficient to trigger a "just and reasonable inference" under *Mt. Clemens.*

Third, even if GEO's records, or lack thereof, prevented the parties from precisely ascertaining damages for individual VWP participants, Plaintiffs may still establish a common, predominant issue on damages by showing the aggregate damage suffered by the class. *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1140, 95 Fed. R. Serv. 3d 1022 (9th Cir. 2016) (holding, in the certification context, that a "method of establishing liability for underpayment in the aggregate is a permissible means of proceeding" and noting that where the defendant "has allegedly failed to keep adequate accounting records specific to each employee, class members may be compelled to resort to an aggregate method of proving wage underpayment."). Plaintiffs can establish aggregate damages—GEO's total liability to the class—by calculating how long it would take to do *all* of the VWP jobs on a given day or within a given week, and extrapolate to determine GEO's total liability and each class members' proportionate share of damages.

REPLY IN SUPPORT OF PLTFS.' MOT. FOR CLASS CERT. (17-cv-05769-RJB) - 7

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

GEO relies upon *Babineau v. Fed. Express Corp.*, 576 F.3d 1183 (11th Cir. 2009) and *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) to argue against the weight of the aforementioned authority, but these cases are easily distinguished. In *Babineau*, a broad class of hourly employees alleged state law claims for breach of contract and quantum meruit. The breach of contract claim rested on allegations that the plaintiffs performed unpaid work during breaks and were encouraged, as a matter of policy, to arrive early or stay late, and did not receive payment for so called "gap periods" (time intervals between their manual punch in or out times and their scheduled start or end time). The Eleventh Circuit held that certifying the claims was improper under Rule 23(b)(3) because individualized factual inquiries about whether employees actually worked without compensation for gap periods and breaks would "swamp" any issues that were common to the proposed class. 576 F3d. at 1191-95. In other words, individualized inquiries predominated over common questions with respect to liability, not damages, and weighed heavily against certification. *Id.*

Unlike *Babineau*, in which denial of class certification turned on employee-specific questions about liability, class certification is warranted here because the central question concerning liability—whether VWP participants were GEO's employees within the meaning of the MWA—predominates over individual inquiries. Any individualized questions about damages can be resolved by the means discussed above.

GEO's reliance upon *Comcast* is similarly misplaced. In *Comcast*, the plaintiffs, alleging antitrust violations, had identified four practices they claimed created anti-competitive pricing in the relevant market and had introduced an expert's report setting forth a methodology for measuring damages on a classwide basis. 569 U.S. at 29-32. The trial court held that only one of the four practices could give rise to classsswide liability in the

REPLY IN SUPPORT OF PLTFS.' MOT. FOR CLASS CERT. (17-cv-05769-RJB) - 8

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

case, and found the expert's damages model to still be relevant because its methodology did not depend on the presence of all four of the challenged practices. *Id*. The Supreme Court reversed the trial court's finding, holding that the plaintiffs' damages model was based on all four challenged practices rather than tethered specifically to the one that the district court had accepted, and thus, that the "model f[ell] far short of establishing that damages [were] capable of measurement on a classwide basis." *Id.* at 34. In other words, the problem in *Comcast* was a mismatch between the plaintiffs' certified liability theory and their damages model.

Here, by contrast, Plaintiff's theory about liability is perfectly congruent with the damages sought—payment of all hours worked at the statutory minimum wage rate.

### 3. GEO asks the Court to consider factors outside the economic realities test.

GEO repeatedly argues that the VWP was created to reduce detainees' "idle time" and that the program lacks any "quality-control and efficiency measures" (Opp. at 16-18, 19-20), but the facts underpinning these arguments, not to mention the legal import of these assertions, remain unclear. To start, neither the motivation behind working nor quality and efficiency of the work performed are factors under the economic realities test. Indeed, the employer's motivation behind offering work and the employee's subjective reason for working—whether it be to stave off boredom or to buy more and better food, hygiene items, and to pay for phone calls with family, as was the case with Mr. Nwauzor and Mr. Aguirre-Urbina—make no difference in assessing whether an employee should be paid for the work actually performed. *See* Nwauzor Decl. (Dkt. No. 88) at ¶7; Aguirre-Urbina Decl. (Dkt. No. 89) at ¶6. The same is true of slow or "bad" work—it is still work for which employees are entitled to be paid. In any event, as Plaintiffs' argue in their opposition to GEO's anti-

REPLY IN SUPPORT OF PLTFS.' MOT.
FOR CLASS CERT. (17-cv-05769-RJB) - 9

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

certification motion, GEO's recourse for unsatisfactory work was to "fire" VWP participants in underperforming roles or to reassign them elsewhere. *See* Dkt. No. 94 at 13.

Moreover, Plaintiffs will rely on representative evidence and perhaps statistical or time-motion evidence to determine the length of time needed to complete any given job; this approach to damages will eliminate any concerns about "overcompensating" workers who worked inefficiently.

Finally, to the extent quality-control and efficiency are relevant considerations, they are common considerations that further demonstrate this action's suitability for class certification.

### C. GEO's Argument Against Superiority is Premised on its Faulty Claims About Commonality and Predominance.

GEO's argument about superiority rests on the same faulty proposition as its commonality and predominance argument: individualized issues about damages preclude certification. Plaintiffs address this assertion in Section II.B, above. The fact remains that, given the number of potential class members, their relative lack of resources, access to counsel, and the multitude of common issues, that a class action is the superior means to fairly and efficiently adjudicate this case. *See* Fed. R. Civ. P. 23(b)(3).

### D. GEO's Argument Against Typicality Is Impermissibly Based Upon The Merits of Plaintiffs' Claim.

GEO's argument against typicality relies on the same faulty arguments about preemption addressed above in Section II.B, and in Plaintiff's opposition to GEO's anti-certification motion. Like all members of the putative class, Mr. Nwauzor and Mr. Aguirre-Urbina participated in the VWP and received less than the statutory minimum wage for their

REPLY IN SUPPORT OF PLTFS.' MOT. FOR CLASS CERT. (17-cv-05769-RJB) - 10

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

work. They suffered the same injuries as other class members and are subject to the same defenses by GEO. In this way, their claims are typical of the class they seek to represent.

### E. Plaintiff Aguirre-Urbina Will Fairly and Adequately Represent the Class.

GEO takes several comments made by Mr. Aguirre-Urbina during his deposition out of context to argue that he is an inadequate class representative because "he has admitted that he does not particularly care about the only issue in this case." Opp. at 23. This is a specious argument, as the transcript from his deposition is rife with references to recovering backwages on behalf of himself and others. *See, e.g.,* Aguirre-Urbina Tr. (Dkt. No. 87-8) at 32:15-17 ("The purpose of today? The purpose of today is, I believe, that because I am in a civil detention, that I deserve to be paid at least minimum wage."); 33:16-17 ("My main purpose would be to make a difference. So I would like to make a difference for others like me."); 186:15-16 ("I think I should get paid more. To me, I'm an employee here."); 274:3-6 ("As I stated, what I want to see is change and equality. To me, as I said, this is a civil detention. It is not a jail. There needs to be change, and we need to be paid a minimum wage."). Clearly, Mr. Aguirre-Urbina understands the basic claim of the case and his obligation to other class members and is prepared to do what is necessary to prosecute the claim for the class.

### F. GEO's Argument Against Numerosity Conflicts With Its Arguments Against Commonality, Predominance, and Superiority.

GEO steadfastly refuses to acknowledge the numerosity of the putative class. This is true even as GEO argues essentially that the vastness of the putative class and alleged individualized concerns make a finding of commonality, predominance, and superiority impossible. GEO has not and cannot reconcile these divergent positions, as the requirements of Rule 23(a)(1) are easily met here.

REPLY IN SUPPORT OF PLTFS.' MOT. FOR CLASS CERT. (17-cv-05769-RJB) - 11

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

### G. *Menocal* is Persuasive Authority.

GEO argues against the persuasiveness of the Tenth Circuit's decision in *Menocal*, claiming that the district court had already dismissed the plaintiffs' minimum wage claim because the VWP participants were not employees. Opp. at 24. While this is true, the grounds for dismissal are clearly distinguishable as the district court in *Menocal* analyzed the Colorado Minimum Wage Order, which had been previously interpreted to exempt inmates and prisoners from coverage. 113 F. Supp. 3d 1125, 1129 (D. Colo. 2015). Moreover, the court found that GEO was not an employer within the meaning of the Colorado statute because it did not fall into any of the four industries to which the law applied. *Id.* at 1129-31. No such carve outs to coverage apply to civil immigration detainees under the Washington MWA. *See* Dkt. No. 28 at 14 (Order Denying Def.'s 1st Mot. to Dismiss; "At least based on the pleadings, it is plausible that the Plaintiff, arguably, comes within the State definition of "employee," and is not subject to any existing statutory exception."). The fact that this Court correctly distinguished *Menocal*'s ruling on the merits of the two different state minimum wage act claims does not make the Tenth Circuit's affirmance of class certification any less persuasive here.

### III. CONCLUSION

Plaintiffs respectfully request that the Court grant their motion to certify this matter as a class action.

DATED this 13th day of July, 2018.

SCHROETER GOLDMARK & BENDER

*s/ Jamal N. Whitehead*
Adam J. Berger, WSBA #20714
Lindsay L. Halm, WSBA #37141
Jamal N. Whitehead, WSBA #39818

REPLY IN SUPPORT OF PLTFS.' MOT. FOR CLASS CERT. (17-cv-05769-RJB) - 12

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

810 Third Avenue, Suite 500
Seattle, WA 98104
Tel: (206) 622-8000 ~ Fax: (206) 682-2305
berger@sgb-law.com
halm@sgb-law.com
whitehead@sgb-law.com

THE LAW OFFICE OF R. ANDREW FREE
Andrew Free (*Pro Hac Vice*)
P.O. Box 90568
Nashville, TN 37209
Tel: (844) 321-3221 ~ Fax: (615) 829-8959
andrew@immigrantcivilrights.com

SUNBIRD LAW, PLLC
Devin T. Theriot-Orr, WSBA # 33995
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154-1003
Tel: (206) 962-5052 ~ Fax: (206) 681-9663
devin@sunbird.law

MENTER IMMIGRATION LAW, PLLC
Meena Menter, WSBA # 31870
8201 164th Ave NE, Suite 200
Redmond, WA 98052
Tel: (206) 419-7332
meena@meenamenter.com

*Attorneys for Plaintiff*

REPLY IN SUPPORT OF PLTFS.' MOT.
FOR CLASS CERT. (17-cv-05769-RJB) - 13

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Devin T. Theriot-Orr, WSBA # 33995
SUNBIRD LAW, PLLC
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154-1003
Tel: (206) 962-5052
devin@sunbird.law
*Counsel for Plaintiff*

R. Andrew Free
THE LAW OFFICE OF R. ANDREW FREE
Admitted *Pro Hac Vice*
PO Box 90568
Nashville, TN 37209
Tel: (844) 321-3221
andrew@immigrantcivilrights.com
*Counsel for Plaintiff*

Joan K. Mell
III BRANCHES LAW, PLLC
1019 Regents Boulevard, Suite 204
Fircrest, WA 98466
Tel: (253) 566-2510
joan@3ebrancheslaw.com
*Attorney for Defendant*

Mark Emery
NORTON ROSE FULBRIGHT US LLP
799 9th Street, Suite 1000
Washington, D.C. 20001
Mark.emery@nortonrosefulbright.com
*Attorney for Defendant*

Andrea D'Ambra
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
andrea.dambra@nortonrosefulbright.com
*Attorney for Defendant*

Charles A. Deacon
NORTON ROSE FULBRIGHT US LLP
300 Covent St.
San Antonio, TX 78205
Charles.deacon@nortonrosefulbright.com
*Attorney for Defendant*

Meena Menter
MENTER IMMIGRATION LAW PLLC
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
Tel: (206) 419-7332
meena@meenamenter.com
*Counsel for Plaintiff*

DATED at Seattle, Washington this 13th day of July, 2018.

*s/ Sheila Cronan*
SHEILA CRONAN, Paralegal
Schroeter Goldmark & Bender
810 Third Avenue, Suite 500
Seattle, WA 98104
Tel: (206) 622-8000
cronan@sgb-law.com

REPLY IN SUPPORT OF PLTFS.' MOT. FOR CLASS CERT. (17-cv-05769-RJB) - 14

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305