1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UGOCHUKWU GOODLUCK
NWAUZOR, FERNANDO AGUIRRE-
URBINA, individually and on behalf of all
those similarly situated,

                              Plaintiffs,

        v.

THE GEO GROUP, INC., a Florida
corporation,

                              Defendant.

No. 17-cv-05769-RJB

**PLAINTIFFS' OPPOSITION TO
GEO'S MOTION TO DISMISS THEIR
FIRST AMENDED COMPLAINT**

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

I.      Introduction      .      .      .      .      .      .      .      .      3

II.     Statement of Facts      .      .      .      .      .      .      .      4

III.    Legal Standard      .      .      .      .      .      .      .      5

IV.     Argument      .      .      .      .      .      .      .      .      6

        A. GEO's Motion to Dismiss Based on Extrinsic Evidence About
        Disputed Contract Terms Must Be Converted into a Motion for
        Summary Judgment.      .      .      .      .      .      .      6

        B. GEO Is Not Entitled to Derivative Sovereign Immunity Because
        Neither *Yearsley* Element Is Satisfied.      .      .      .      .      7

            1.  GEO's Contract with ICE Requires Compliance With—and
            Does Not Authorize Violation of—Washington's Minimum
            Wage Law.      .      .      .      .      .      .      .      8

            2.  ICE Cannot Validly Confer GEO Authorization to Violate the
            Washington Minimum Wage Law by Paying $1 Per Day.   .      12

        C. The Law of the Case Forecloses GEO's Remaining Grounds for
        Dismissal. .      .      .      .      .      .      .      .      15

V.      Conclusion      .      .      .      .      .      .      .      .      17

Certificate of Service  .      .      .      .      .      .      .      .      18

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969

# I.    INTRODUCTION

If Defendant The GEO Group, Inc. ("GEO")'s third motion to dismiss seems like "déjà vu all over again,"[1] there's good reason for it. Once again, GEO seeks summary dismissal using unsworn facts extrinsic to Plaintiffs' complaint. Once again, GEO attempts an early exit based on a shaky contract interpretation that assumes what it sets out to prove. And once again, GEO omits key contract terms that undercut its contentions. Though the company has suddenly discovered its contract with U.S. Immigration and Customs Enforcement ("ICE") purportedly cloaks it with the immunity of the sovereign, the same fatal flaws that doomed its prior motions to dismiss doom this one as well.

GEO's contract with ICE neither immunizes the company from suit nor deprives this Court of jurisdiction over Plaintiffs' minimum wage claims. The contract does not set or authorize a rate GEO must pay the detained immigrants who work for the company at the Northwest Detention Center ("NWDC"). Rather, it specifies a reimbursement rate ICE will pay GEO. Moreover, even if the contract did authorize GEO to violate Washington's minimum wage law by paying detained immigrants only $1 per day, such authorization would not confer derivative sovereign immunity on GEO because it is not pursuant to a valid delegation of authority by Congress to ICE. Congress possesses the sole authority to set the rate detained immigrants will

---

[1] Though oft attributed to quintessential American aphorist and pretty good baseball player Yogi Berra, the saying's provenance is actually a bit murkier. *See* Victor Mather and Katie Rogers, "Behind the Yogi-isms: Those Said and Unsaid," The New York Times (Sept. 23, 2015) *available at* https://www.nytimes.com/2015/09/24/sports/yogi-berra-yogi-isms-quotes-explored.html.

PLTFS' OPP. TO DEF.'S MOT. TO
DISMISS 1ST AM. COMPL.
(17-cv-05769-RJB ) - 3

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969

be paid. It has not done so since 1978. Nor has Congress delegated to ICE the power to do so. GEO's newfound derivative sovereign immunity defense fails.

In addition to its new defense, GEO rehashes its old ones. But because it does not even acknowledge that this Court's prior, reasoned decisions on the merits constitute the law of the case, the company makes no attempt to explain why the Court should ignore that doctrine and allow re-litigation of its prior claims. It should not. GEO's motion to dismiss should be denied, or, in the alternative converted to a motion for summary judgment.

## II. STATEMENT OF FACTS

GEO injects the motion with disputed factual assertions outside the four corners of the complaint. Dkt. No. 91. For example, GEO makes the following disputed, mostly unsworn factual averments extrinsic to Plaintiffs' Complaint:

- "DHS operates many of its own Service Processing Centers (SPCs)." Dkt. 91 at 2.

- "All facilities are subject to the same DHS/ICE policies, including the Performance-Based National Detention Standards 2011 (PBNDS)." Dkt. 91 at 2.

- "GEO implements and administers the VWP as authorized and directed by ICE's contractual requirements." Dkt. 91 at 8.

- "ICE requires that every VWP participant sign a form prior to working in the VWP, and that form acknowledges that the detainee volunteers to work for $1 per day." Dkt. 91 at 9 (citing ICE National Detainee Handbook, Dkt. 61, Exh. B, 17).

- "During the period for which Plaintiffs seek to certify a class, ICE's National Detainee Handbook unambiguously told all detainees in their facilities that 'compensation will be $1 per day.'" Dkt. 91 at 9 (citing Dkt. 61 at 17).

- "Indeed, DHS audited GEO's compliance with compensation provision of PBNDS 5.8 and concluded that GEO complied with its policy because detainees receive monetary compensation for work performed through a $1.00 daily stipend." Dkt. 91 at 10.[2]

---

[2] *Cf.* Department of Homeland Security, Office of Inspector General, "ICE's Inspection and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance of Systemic

PLTFS' OPP. TO DEF.'S MOT. TO
DISMISS 1ST AM. COMPL.
(17-cv-05769-RJB ) - 4

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969

- "Even assuming the $1 daily rate is a floor rate, it is a rate that conforms to ICE policy, which is uniform across the Nation."[3] Dkt. 91 at 10.

### III. LEGAL STANDARD

Rule 12(b)(6) and (c) are virtually interchangeable. In deciding a Rule 12(c) motion, courts apply the same standards applicable to a Rule 12(b)(6) motion. *Cafasso, U.S. ex. Rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011) ("Rule 12(c) is functionally identical to Rule 12(b)(6) and that the same standard of review applies to motions brought under either rule.") (cleaned up). On review of Defendant's 12(b)(6) motion, the Court's task "is necessarily a limited one," concerned with "only whether the complaint states a claim upon which relief can be granted," and not whether Plaintiffs will ultimately prevail on the merits. *Mohamed v. Jeppesen Dataplan, Inc.,* 614 F.3d 1070, 1100 (9th Cir. 2010) (internal quotations omitted). In making this determination, the Court must accept all well-pleaded allegations of material fact as true, and draw all reasonable inferences in favor of Plaintiffs. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.,* 135 F.3d 658, 661 (9th Cir. 1998). Plaintiffs need not plead a specific legal theory in his complaint, so long as Defendant "receives notice as to what is at issue in the lawsuit." *Elec. Const. & Maint. Co., Inc. v. Maeda Pac. Corp.,* 764 F.2d 619, 622 (9th Cir. 1985). "[C]ourt[s] should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it

---

Improvements," OIG-18-67 (Jun. 26, 2018) *available at* https://www.oig.dhs.gov/sites/default/files/assets/2018-06/OIG-18-67-Jun18.pdf

[3] *Cf.* GEO Second Supplemental Response to Plaintiffs' Request for Admission No. 2, *Menocal v. The GEO Group, Inc.,* No. 1:14-cv-002887-JLK (D. Colo. Jul. 21, 2017), attached hereto as Exhibit A; GEO South Texas Detention Facility Pay Spreadsheets and Invoices, from ICE 2013FOIA32547, attached hereto as Exhibit B; GEO LaSalle Detention Facility Detainee Handbook (2016), attached hereto as Exhibit C.

is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions." *Id.* at 623.

In contrast, a Rule 12(b)(1) motion may be based on extrinsic evidence, but most courts *deny* such motions where there is a dispute concerning the facts underpinning the subject matter jurisdiction, and those facts are "inextricably intertwined" with the merits of the plaintiff's claims. In such cases, the defendant must proceed under Rule 12(b)(6) or Rule 56, and "the court should resolve the relevant factual disputes *only after appropriate discovery.*" *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (emphasis added); *see In re Wilshire Courtyard,* 729 F.3d 1279, 1284 (9th Cir. 2013) ("[W]e bear in mind the general rule that when the question of jurisdiction and the merits of the action are intertwined, dismissal for lack of subject matter jurisdiction is improper." (internal quotations omitted)).

Thus, the Court must deny a motion to dismiss where, as is the case here, the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## IV.   ARGUMENT

### A. GEO's Motion to Dismiss Based on Extrinsic Evidence Regarding Disputed Terms of its Contract Must Be Denied or Converted into a Motion for Summary Judgment.

GEO seeks dismissal of this case based on what it says are the terms of its contract with ICE. Dkt. 91, GEO Mot. to Dismiss at 1-3 8-11, 16, 18, 20, 22-24 (citing or discussing ECF 19). Summary dismissal of this action based on a redacted contract that is extrinsic to Plaintiffs' Complaint does not comport with the requirements of Rule 12(d). The Court should therefore deny GEO's motion without prejudice, or alternatively, treat it as one for summary judgment

PLTFS' OPP. TO DEF.'S MOT. TO
DISMISS 1ST AM. COMPL.
(17-cv-05769-RJB ) - 6

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969

and afford Plaintiffs the opportunity to conduct discovery and present all material pertinent to the motion.

**B.  GEO IS NOT ENTITLED TO DISMISSAL BASED ON DERIVATIVE SOVEREIGN IMMUNITY BECAUSE NEITHER *YEARSLEY* ELEMENT IS SATISFIED.**

Derivative sovereign immunity is unavailable to GEO because, on the record before this Court, neither element required for the defense is present. To be immune from suit under *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), a contractor bears the burden of demonstrating: (1) the federal government authorized the contractor's allegedly unlawful action; and (2) the federal government validly conferred such authorization. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 673 (2016).

As to the first element, GEO relies on an interpretation of contract provisions that this Court previously found too ambiguous to support dismissal. The meaning of GEO's contract with ICE—and thus, the extent of its authorization from the federal government—is in dispute. This Court has twice concluded dismissal without affording the opportunity to conduct discovery as to the contract's meaning would be improper. GEO's third attempt at dismissal based on the same interpretation of an ambiguous contract should similarly be rejected.

As to the second element, even if the ICE-GEO contract authorizes payment of less than the minimum wage, such authority is invalid. Congress last appropriated funds and set the rate for detainee labor in 1978. Congress has never delegated to the agency the authority to set the rate for detainee wages. Accordingly, no valid Congressional authorization exists that would allow ICE to set any rate of pay for detainees, much less $1 per day in violation of Washington's minimum wage law. Consequently, GEO is not entitled to derivative sovereign immunity.

1.  **GEO's Contract Requires Compliance With—and Does Not Authorize Violation of—Washington's Minimum Wage Law.**

GEO's motion to dismiss based on derivative sovereign immunity must be denied because the first prong of the *Yearsley* test—authorization by the federal government to perform the allegedly unlawful conduct—is absent here. A motion to dismiss is not the proper vehicle to adjudicate claims and defenses based on interpretation of ambiguous contract provisions. "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (quoting *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000)). On the other hand, ambiguities in the language of a contract, which cannot be resolved in the absence of extrinsic evidence, preclude a motion to dismiss. *Vanguard Integrity Professionals, Inc. v. Team Gordon, Inc.*, 2008 WL 11342701, at *2 (C.D. Cal. 2008). Similarly, when a party relies on extrinsic evidence to demonstrate a contact is ambiguous, dismissal is improper. *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1191 (N.D. Cal. 2012) (citing *A. Kemp Fisheries, Inc. v. Castle & Cook, Inc.*, 852 F.2d 493, 496, n.2 (9th Cir. 1988)).

GEO claims it is immune from suit because its contract with ICE authorizes payment of just $1/day to detained immigrants at the NWDC. Dkt. 91, Mot. at 10. The company attempts to convert the "reimbursement" rate of $1 per day per worker that ICE agrees to pay GEO into a federal authorization for GEO to pay detained immigrants the same amount. Dkt. 91 at 8-9. GEO makes this claim despite other relevant provisions of the ICE contract that require GEO to operate according to the most current legal constraints, including "applicable federal, state, and local labor laws and costs," and, in the event of a conflict between contract requirements, to apply "the most stringent standard." Dkt. 19 at 46-48.

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969

As this Court previously observed, the $1/day reimbursement provision on which GEO relies in the present motion:

> [C]an be interpreted in at least two different ways: In Defendant's view, ICE's reimbursement rate is also [a] limit on detainee rate of pay; in Plaintiff's view, ICE's reimbursement rate limits the amount reimbursed to GEO but does not limit the detainee rate of pay. Interpretation of this clause remains an open question.

Order Denying Mot. to Dismiss for Failure to Join, Dkt. 67 at 5. *See also*, Order Granting Motion for Leave to Amend, Dkt. 83 ("The futility argument . . . assumes a certain interpretation of the GEO-ICE contract."); Tr. of Apr. 24, 2018 Hearing on GEO Mot. to Dismiss for Failure to Join at 49:6-9 ("THE COURT: Well, you know, I don't think we're talking here about reimbursement rates. We're talking about how much you have to pay. And that may or may not be the same as the reimbursement rate.") (attached as Ex. D). This Court should again reject GEO's attempt to secure dismissal by relying on extrinsic evidence to the support its preferred interpretation of ambiguous contract language. *See* Dkt. 29, Order Denying GEO Mot. to Dismiss, Dkt. 67, Order Denying Mot. to Dismiss for Failure to Join, Dkt. 83, Order Granting Leave to Amend.

Attempting to avoid a repeat of this Court's prior rulings, GEO now relies on *Cunningham v. General Dynamics Information Technology, Inc.*, 888 F.3d 640 (4th Cir. 2018). This attempt is unavailing. In *Cunningham*, the plaintiff asserted *Yearsley* immunity did not apply because the government contractor violated the Telephone Consumer Protection Act (TCPA), as well as a contract provision requiring it to "follow applicable laws." 888 F.3d at 647. The Fourth Circuit contrasted this situation with the government contractor's actions in *Campbell-Ewald*. *Id.* at 648 (citing 136 S. Ct. at 667). Both cases involve suits under the TCPA against private contractors who contacted individuals on behalf of federal government agencies using a list of

names the government provided. In *Cunningham*, the agency did not direct the contractor to obtain consent from individuals in compliance with the TCPA. 888 F. 3d at 647. On the other hand, in *Campbell-Ewald*, the contract expressly provided that TCPA compliance was the contractor's responsibility, and the agency's approval of lists containing the recipients depended on the contractor first investigating and obtaining their consent. *Id.* at 648 (citing 136 S. Ct. at 674-74). Both cases resolved the derivative sovereign immunity question on summary judgment and after discovery. *See Campbell-Ewald*, 136 S. Ct. at 673-74; *Cunningham*, 888 F.3d at 647. The contractor in *Cunningham* enjoyed derivative sovereign immunity, while the contractor in *Campbell-Ewald* did not.

GEO's situation is unlike that of either contractor. In both *Cunningham* and *Campbell-Ewald*, the government instructed the contractor to contact individuals, a task that ultimately triggered TCPA claims. Here, the federal government has not set, authorized, or approved a specific rate of pay for GEO to compensate detained immigrants at the NWDC. Rather, it set the reimbursement rate payable by ICE to GEO, and specified that GEO must continuously ascertain and abide by most stringent applicable federal, state, or local labor laws. The specific performance authorization and instructions the federal government blessed in both cases are therefore absent from GEO's contract.

Moreover, the Ninth Circuit has consistently "held that derivative sovereign immunity, as discussed in *Yearsley*, is limited to cases in which a contractor 'had no discretion in the design process and completely followed government specifications.'" *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (quoting *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008)). Recently, in *Salim v. Mitchell*, 268 F. Supp. 3d 1132, 1148-50 (E.D. Wash. 2017), the court applied this principle to deny defendants'

PLTFS' OPP. TO DEF.'S MOT. TO DISMISS 1ST AM. COMPL.
(17-cv-05769-RJB ) - 10

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969

motion for summary judgment on derivative sovereign immunity in a case arising out of the CIA's enhanced interrogation program following the 9/11 attacks. Defendants, two psychologists who contracted with CIA, claimed derivative sovereign immunity when sued by victims of the enhanced interrogation program. As with GEO here, the psychologists argued that they were merely carrying out the CIA's directions. However, the court found that questions of fact existed whether the psychologists in fact played a significant role in designing the program, which would take them out of scope of the derivative sovereign immunity defense:

> As Defendants are requesting summary judgment on this issue, the facts are viewed in a light favorable to the non-movant Plaintiffs. The finder of fact could conclude Defendants Mitchell and Jessen had a significant role in the design of the Program. A jury could find they were not acting merely and solely as directed by the Government.

*Salim*, 268 F. Supp. 3d at 1150. (citing *Cabalce*, 797 F.3d at 732). So too here. There are open questions regarding GEO's participation in the design of the VWP at the NWDC, including what jobs were performed, what compensation was paid, and how the VWP related to the overall operational support of the detention facility. Moreover, given GEO's demonstrable ability to seek authorization for and pay higher detainee wages notwithstanding the $1 day reimbursement level at is other facilities, *see* Ex. A-C, GEO's role in designing the pay rate at the NWDC is relevant to its derivative sovereign immunity defense. Under these circumstances, GEO cannot claim derivative sovereign immunity as a matter of law and undisputed fact.

Because GEO cannot satisfy the first *Yearsley* element its motion to dismiss based on derivative sovereign immunity should be denied.

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969

**2. ICE Cannot Validly Confer GEO Authorization to Violate the Washington Minimum Wage Law By Paying Plaintiffs $1 Per Day.**

GEO's derivative sovereign immunity defense also fails because if the ICE contract authorized GEO to pay Plaintiffs only $1 per day, such authorization would be legally invalid. ICE lacks Congressional authority to set a detainee wage rate. 8 U.S.C. § 1555(d), ICE's sole source of statutory authority for the payment of allowances to detained immigrants for work performed, expressly reserves for Congress the power to set the rate of such payments. Congress has not done so since 1978. Nor has Congress delegated the authority to set that rate. In the face of this clear statutory text and Congressional inaction, the agency's gap-filling would be *ultra vires* if it were interpreted to impose or authorize a rate of detainee pay, as GEO asserts, rather than a rate of reimbursement to federal contractors, as Plaintiffs argue.

"Authorization is 'validly conferred' on a contractor if Congress authorized the government agency to perform a task and empowered the agency to delegate that task to the contractor, provided it was within the power of Congress to grant the authorization." *Cunningham*, 888 F.3d at 646-47 (citing *Yearsley*, 309 U.S. at 20). Here, no such Congressional authorization exists, so GEO's *Yearsley* defense fails.

Though GEO points to a number of statutory detention authorities, the one governing detainee wages is 8 U.S.C. § 1555(d). It provides:

> Appropriations now or hereafter provided for the Immigration and Naturalization Service shall be available for payment of . . . (d) payment of allowances (at such rate as may be specified from time to time in the appropriation Act involved) to aliens, while held in custody under the immigration laws, for work performed[.]

Congress enacted Section 1555(d) in 1950. 64 Stat. 380 (1950). While Section 1555(d) ensures money will be available to pay detained immigrants for the work they perform, it leaves to Congress the question of how much to pay them.

PLTFS' OPP. TO DEF.'S MOT. TO
DISMISS 1ST AM. COMPL.
(17-cv-05769-RJB ) - 12

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969

As this Court previously observed:

Section 1555(d) authorizes congressional appropriations for "payment of allowances [to detainees]...for work performed," but payment is limited to "*such rate as may be specified from time to time in the appropriation Act involved*." § 1555(d) (emphasis added). Under this section, Congress arguably speaks to detainee wages when Congress appropriates payment of allowances to detainees for work performed, but although § 1555(d) is still in effect, Congress has not specified any rate for detainee work since fiscal year 1979. At that time, Congress appropriated funds for "payment of allowances (at a rate not in excess of $1 per day)...for work performed." PL 95–431 (HR 12934), PL 95–431, Oct. 10, 1978, 92 Stat 1021 (emphasis added). At least since fiscal year 1979, Congress has abandoned direct appropriations payment of allowances, despite its awareness of how to do so. *See, e.g.*, Consolidated Appropriations Act, 2016, PL 114–113, December 18, 2015, 129 Stat 2242, 2497.

. . .

Congress could delegate the authority to create a framework regulating detainee wages to ICE, but Defendant has not made this showing. The question remains then, where the $1 per day detainee wage rate comes from, if not from Congress, and the only answer is the Voluntary Work Program. However, the Voluntary Work Program is an ICE policy with no preemptive force at law.

*Chen v. The GEO Grp., Inc.*, 287 F. Supp. 3d 1158, 1165-66 (W.D. Wash. 2017). The Court's lucid analysis applies equally here.

While GEO suggests that ICE and legacy INS simply picked up where Congress left off in 1978, basic federal appropriations law yields a different conclusion. "As a general rule of thumb, appropriations acts are generally in force during the fiscal year of the appropriation and do not work a permanent change in the substantive law." *Seattle Audubon Soc'y v. Evans*, 952 F.2d 297, 304 (9th Cir. 1991); *see also Natural Resources Defense Council v. U.S. Forest Service*, 421 F.3d 797, 806 n. 19 (9th Cir. 2005). 31 U.S.C. § 1301. *See also Smithsfork Grazing Ass'n v. Salazar*, 564 F.3d 1210, 1216 (10th Cir. 2009) (collecting cases). Nothing in the FY1978 appropriations language provided that the rate "not to exceed $1 per day" was

PLTFS' OPP. TO DEF.'S MOT. TO
DISMISS 1ST AM. COMPL.
(17-cv-05769-RJB ) - 13

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969

intended to be permanent or exceed that particular year's authorization. Dep't of Justice Appropriation Act, 1979, Pub. L. No. 95-431, 92 Stat. 1021, 1027 (Oct. 10, 1978).

Similarly, GEO has made no showing beyond the conclusory statements in unpublished agency interpretations that Congress delegated to the agency the power to set a detainee wage rate. Those interpretations are not entitled to any form of deference because Congress has left no gap for the agency to fill. *See generally Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Consequently, the agency fails *Chevron* Step Zero. *See* Cass Sunstein, "Chevron Step Zero," 92 VA. L. REV. 187 (2006)

In essence, GEO presumes ICE's authority to set a detainee wage rate from the ongoing availability of appropriations to pay wages. However, "[a]gency authority may not be lightly presumed." *Michigan v. E.P.A.*, 268 F.3d 1075, 1082 (D.C. Cir. 2001). "Were courts to presume a delegation of power absent an express withholding of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well." *Id.* (quoting *Ethyl Corp. v. E.P.A.*, 51 F.3d 1053,1060 (D.C. Cir. 1995)). Thus, courts should not "presume a delegation of power based solely on the fact that there is not an express withholding of such power." *Michigan*, 268 F.3d at 10-82 (quoting *American Petroleum Institute v. E.P.A.*, 52 F.3d 1113, 1119-20 (D.C. Cir. 1995)).

Congress is free to delegate the authority in Section 1555(d) to the agency to set the detainee wage rate. It has not done so. There is simply no evidence that in 1979, Congress suddenly delegated to the INS the authority vested in 8 U.S.C. § 1555(d) to set the detainee pay. And there is ample evidence, in the form of three decades of unbroken Congressional practice, that prior to 1979, Congress thought it was its job to set the rate. Thus, while it is certainly true that Section 1555(d) requires funds to be available to ICE for the payment of

PLTFS' OPP. TO DEF.'S MOT. TO DISMISS 1ST AM. COMPL.
(17-cv-05769-RJB ) - 14

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969

detainee wages, it is equally true that the rate Congress set in 1978 expired in 1979, and as a result, no Congressionally mandated rate exists.

To the extent GEO claims the PBNDS, the ICE National Detainee Handbook, or ICE's contract with GEO for the NWDC authorizes a $1 per day rate, such authorization is devoid of valid, Congressionally delegated authority. Consequently, the second *Yearsley* element is lacking, and GEO is not entitled to derivative sovereign immunity.

## C. The Law of the Case Forecloses GEO's Remaining Grounds for Dismissal.

GEO dedicates 10 pages of its newest filing to restating arguments this Court already thoroughly considered and rejected. Indeed, GEO has previously made lengthy arguments about preemption, Plaintiffs' failure to state a claim under the MWA, and Plaintiffs' failure to join ICE as a necessary party. *Compare* Opp. at 14-16 (preemption argument; § II) *with* Dkt. No. 8 (GEO's 1st Mot. to Dismiss) at 5-14; *compare* Opp. at 18-20 (failure to state a claim under MWA; § III) *with* Dkt. No. 8 at 17-23; *compare* Opp. at 20-24 (failure to join necessary party; § IV) *with* Dkt. No. 51 (GEO's 2nd Mot. to Dismiss) at 2-11; *see* Dkt. Nos. 29 (Order Denying Def.'s 1st Mot. to Dismiss) and 67 (Order Denying Def.'s 2nd Mot. to Dismiss).

This Court's prior decisions on these issues are the law of the case. Under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible,* 983 F.2d 152, 154 (9th Cir.) (*cert. denied* 508 U.S. 951 (1993)). The law of the case doctrine "is a judicial invention designed to aid in the efficient operation of court affairs." *U.S. v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (quoting *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir. 1990)). A district court abuses its discretion in applying the law of the case only where (1) the first decision was clearly erroneous; (2) an

PLTFS' OPP. TO DEF.'S MOT. TO
DISMISS 1ST AM. COMPL.
(17-cv-05769-RJB ) - 15

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969

intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. *Lummi Indian Tribe*, 235 F.3d at 452-53 (citing *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998). None of these factors exists here.

Because GEO does not acknowledge the law of the case doctrine, it advances no legitimate basis for the Court to disturb it. Instead, the company states only that "an amended complaint supersedes the original complaint," and that "fresh consideration" is warranted. Dkt. 91 at 12. GEO fails, however, to explain what matters the Court overlooked or misapprehended that would register in favor of essentially reversing the Court's earlier rulings. *See* Local Rules W.D. Wash. LCR 7(h)(2) ("[Motions for reconsideration] shall point out with specificity the matters which the movant believes were overlooked or misapprehended by the court, any new matters being brought to the court's attention for the first time, and the particular modifications being sought in the court's prior ruling."); *see also Woischke v. Astrue,* C07-5704-RJB-KLS, 2008 WL 4162516, at *4 (W.D. Wash. Sept. 3, 2008) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case."). This is because there are no material differences between GEO's previous motions to dismiss and the legal issues GEO raises in the instant motion. As such, the Court should deny the remainder of GEO's latest motion to dismiss.

In the event the Court is nonetheless inclined to revisit its prior decisions notwithstanding the law of the case doctrine, rather than retreading the same ground covered in their previous filings explaining the hollowness of GEO's arguments, Plaintiffs incorporate by specific reference their entire oppositions to GEO's first and second motions to dismiss. Dkt. Nos. 15, 62.

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969

1    Plaintiffs also note in addition that since this Court issued its ruling denying GEO's motion

2    to dismiss, two additional federal courts have concluded that state minimum wage laws are not

3    preempted, and detained immigrants could plausibly state a claim under those laws. *Owino v.*

4    *CoreCivic, Inc.*, 2018 WL 2193644 (S.D. Cal. May 14, 2018); *Novoa v. The GEO Grp., Inc.*,

5    2018 WL 3343494 (C.D. Cal. Jun. 21, 2018).

6        GEO's reheated motion to dismiss claims this Court previously allowed to proceed should

7    be denied.

## V.    CONCLUSION

For the foregoing reasons and those set forth in this Court's prior, well-reasoned decisions,

Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint must be denied, or

alternatively, converted into a motion for summary judgment affording Plaintiffs an

opportunity to conduct discovery and present all pertinent materials to the Court.

DATED this 16th day of July, 2018.


LAW OFFICE OF R. ANDREW FREE


/s/ R. Andrew Free
Counsel for Plaintiffs

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969

# CERTIFICATE OF SERVICE

I certify that I caused to be served in the manner noted below a copy of the foregoing pleading on the following individual(s):

Adam J Berger
SCHROETER GOLDMARK & BENDER
810 3RD AVE
STE 500
SEATTLE, WA 98104

Andrea D'Ambra
NORTON ROSE FULBRIGHT US LLP (NY)
1301 AVENUE OF THE AMERICAS
NEW YORK, NY 10019

Charles A Deacon
NORTON ROSE FULBRIGHT US LLP (SAN ANTONIO)
300 CONVENT ST
STE 2100
SAN ANTONIO, TX 78205

Mark Emery
NORTON ROSE FULBRIGHT US LLP (DC)
799 9TH STREET
STE 1000
WASHINGTON, DC 20001

R Andrew Free
LAW OFFICE OF R. ANDREW FREE
PO BOX 90568
NASHVILLE, TN 37209

Lindsay Halm
SCHROETER GOLDMARK & BENDER
810 3RD AVE
STE 500
SEATTLE, WA 98104

Joan K Mell
III BRANCHES LAW PLLC
1019 REGENTS BLVD STE 204
FIRCREST, WA 98466

PLTFS' OPP. TO DEF.'S MOT. TO
DISMISS 1ST AM. COMPL.
(17-cv-05769-RJB ) - 18

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969

Meena Pallipamu Menter
MENTER IMMIGRATION LAW PLLC
8201 164TH AVENUE NE, STE 200
SEATTLE, WA 98052

Devin T Theriot-Orr
SUNBIRD LAW PLLC
1001 4TH AVENUE
STE 3200
SEATTLE, WA 98154

Jamal N Whitehead
SCHROETER GOLDMARK & BENDER
810 3RD AVE
STE 500
SEATTLE, WA 98104


DATED:       July 16, 2018 at Nashville, Tennessee

/s/ R. Andrew Free
_____
R. Andrew Free

Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
(844) 321-3221x1 (615) 829-8969