The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated.<br><br>       Plaintiff,<br>v.<br><br>THE GEO GROUP, INC.,<br><br>       Defendant. | Case No. 3:17-cv-05769-RJB<br><br>**DECLARATION OF JOAN K. MELL ATTACHING DECLARATION OF TAE D. JOHNSON ASSISTANT DIRECTOR, CUSTODY MANAGEMENT DIVISION, ERO-ICE-DHS** |

I, Joan K. Mell, make the following statement under oath subject to penalty of perjury under the laws of the United States and the State of Washington:

Attached is a true and correct copy of the Tae D. Johnson Declaration received on August 1, 2018 at 4:42 p.m. from Ann Rose, Associate Legal Advisor, Government Information Law Division, Office of the Principal Legal Advisor, U.S. Immigration and

///

///

NWAUZOR et al. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769-RJB
DECLARATION OF JOAN K. MELL ATTACHING DECLARATION OF
TAE D. JOHNSON ASSISTANT DIRECTOR, CUSTODY MANAGEMENT
DIVISION ERO-ICE-DHS – 1

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

Customs Enforcement for use in this litigation.

This information is true and correct to the best of my abilities.

Dated this 1st day of August, 2018 at Fircrest, WA

III Branches Law, PLLC

_____
Lawyer for The Geo Group, Inc.

NWAUZOR et al. v. THE GEO GROUP, INC.
ECF CASE NO. 3-17-cv-05769-RJB
DECLARATION OF JOAN K. MELL ATTACHING DECLARATION OF
TAE D. JOHNSON ASSISTANT DIRECTOR, CUSTODY MANAGEMENT
DIVISION ERO-ICE-DHS – 2

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph
joan@3brancheslaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STATE OF WASHINGTON,

                 Plaintiff,

v.

THE GEO GROUP, INC.,

                 Defendant.

Case No.: 3:17-cv-05806-RJB

DECLARATION OF TAE D. JOHNSON ASSISTANT DIRECTOR, CUSTODY MANAGEMENT DIVISION, ENFORCEMENT AND REMOVAL OPERATIONS (ERO) UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE) DEPARTMENT OF HOMELAND SECURITY (DHS)

I, Tae D. Johnson, make the following statement under oath subject to the penalty of perjury pursuant to the laws of the United States and the State of Washington:

1. My name is Tae D. Johnson. I am competent to testify in these matters in that I am over the age of majority and I am familiar with the subjects discussed herein.

2. I am a member of the Senior Executive Service serving as the Assistant Director, Custody Management Division, Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security (DHS), in Washington, D.C. I have held this position since January 2, 2011. My current work address is: 500 12th Street Southwest, Washington, D.C. 20536.

DECLARATION OF TAE JOHNSON
ENFORCEMENT AND REMOVAL OPERATIONS
UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT
1 of 8

3. I hold a Bachelor of Science degree in accounting from Salisbury University in Salisbury, Maryland.

4. In 1992, I began my federal career in Salisbury, Maryland with the former Immigration and Naturalization Service (INS). For the past 20 years, I have served as a detention enforcement officer, a supervisory detention enforcement officer, a supervisory immigration enforcement agent and deportation officer with INS and ICE.

5. Since 2011, while at ICE headquarters, I have served as a Unit Chief of the detention standards compliance unit, as Chief of Staff for the Office of Detention Policy and Planning, as Special Assistant to the Assistant Secretary for ICE, and as Deputy Chief of Staff for the Executive Associate Director for ERO.

6. In my current position as Assistant Director, I oversee and direct the Custody Management Division, which provides policy and oversight for the administrative custody of more than 41,000 detainees daily and roughly 375,000 detainees annually. The Custody Management Division oversees and manages ICE detention operations to provide for the safety, security and care of detainees in ICE custody. The ICE detention system consists of more than 250 local and state facilities operating under intergovernmental service agreements, contract detention facilities, ICE-owned facilities and facilities operated by the Bureau of Prisons.

7. ICE arranges for detention services through three primary types of arrangements. Service Processing Centers (SPCs) are government-owned facilities and are operated directly by ICE. Contract Detention Facilities (CDFs) are contractor-owned-and-operated facilities at which ICE has contracts with private services providers. Intergovernmental Service Agreements (IGSAs) are agreements between ICE and a state or political subdivision of a state, such as a local government. (8 U.S.C. §1103(11)(A)). Sometimes the state or political subdivision then enters into a subcontractor agreement for a private contractor to operate the facility.

8. Northwest Detention Center (NWDC) in Tacoma, Pierce County, Washington is a CDF, and is within my chain of authority. NWDC operates pursuant to a performance-based contract, which is a results-oriented method of contracting focused on outputs, quality, and outcomes.

Performance-based contracts do not designate *how* a contractor is to perform the work, but rather establishes the expected outcomes and results that the government expects. It is then the responsibility of the contractor to meet the government's requirements at the price the vendor quoted. The NWDC contract is also a firm-fixed price contract, which means that GEO responded to the government's requirements by quoting fully burdened rates (i.e. bed day rate, transportation rate, etc.) at which it would perform the requirements outlined in the contract's Performance Work Statement (PWS). When contracting for detention services in the Seattle Field Office region, ICE sought a firm-fixed price performance-based contract for a full-service facility that would provide the safe and secure detention, transportation, detention management, and ancillary services for up to 1,575 adult detainees.

9. I am aware that the State of Washington filed a lawsuit, *State v. GEO*, U.S. District Court Western District of Washington ECF Case No. 3:17-cv-05806-RJB, making certain wage-related claims against ICE's contractor, The GEO Group, INC. (GEO). I am also aware that in a related action, *Nwauzor v. GEO*, U.S. District Court Western District of Washington, ECF Case No. 3:17-cv-05806-RJB, ICE detainees filed a class action lawsuit against GEO alleging an entitlement to minimum wages for participating in the VWP.

10. Aliens whom ICE officers and agents arrest for civil immigration violations are those for whom ICE has probable cause to believe are removable from the United States.[1] When an individual is detained in ICE custody, ICE provides for their care and custody under the agency's detention standards. These standards provide for the health and welfare of ICE's detainees.[2] ICE ensures its custodial supervision obligations are met through a set of standards and inspections to ensure all types of its facilities implement and adhere to ICE's

---

[1] See generally 8 U.S.C. § 1357 (2018); see also, 8 U.S.C. § 1101(a)(3), "[t]he term "alien" means any person not a citizen or national of the United States."
[2] See, e.g., https://www.ice.gov/factsheets/facilities-pbnds

DECLARATION OF TAE JOHNSON
ENFORCEMENT AND REMOVAL OPERATIONS
UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT
3 of 8

contractual requirements and detention standards. The agency's first set of national detention standards were originally issued in September 2000 to facilitate safe, secure, and humane conditions of confinement, access to legal representation and safe and secure operations across the detention system. The standards established consistency of program operations and management expectations, accountability for compliance and a culture of professionalism.

11. One of the many aspects of ICE's detention standards is the Voluntary Work Program. Among other purposes, the VWP enables detainees to receive an allowance of no less than $1 per day that they can then save or spend on commissary items. The purpose of the Voluntary Work Program of the 2011 Performance-Based National Detention Standards (PBNDS)[3] is to provide detainees opportunities to work and earn money while detained, subject to the number of work opportunities available and within the constraints of the safety, security, and good order of the facility. The intent of the Voluntary Work Program is to reduce the negative impact of confinement through decreased idleness, improved detainee morale, and fewer disciplinary incidents. Money earned through the program also allows detainees to buy commissary goods, and pay for phone calls, etc."

12. ICE administers the VWP in its own Services Processing Centers ("SPCs") and according to the PBNDS. According to the NWDC contract with ICE, GEO should manage a detainee work program.[4] The contract states that Detainee labor shall be used in accordance with the detainee work plan developed by the Contractor, in this case GEO, and will adhere to the ICE

---

[3] The Performance-Based National Detention Standards (PBNDS) establishes consistent conditions of confinement, program operations, and management expectations to ensure a safe and secure a detention environment for staff and detainees in the ICE detention system.
[4] See ICE/GEO NWDC Contract.

PBNDS on the Voluntary Work Program.[5] The contract also states that "[d]etainee labor shall be used in accordance with the detainee work plan developed by the Contractor and will adhere to the ICE PBNDS on Voluntary Work Program. The detainee work plan must be voluntary, and may include work or program assignments for industrial, maintenance, custodial, services, or other jobs...Detainees shall not be used to perform the responsibilities or duties of an employee of the Contractor."[6]

13. Under a 1950 law codified at 8 U.S.C. § 1555(d), ICE is authorized to pay "allowances (at such rate as may be specified from time to time in the appropriation Act involved) to aliens, while held in custody under the immigration laws, for work performed." The Agency receives an appropriation from which it can make these payments. The amount of the payments was most recently specified in the appropriations act for Fiscal Year 1979, which set it at a maximum of $1 per day. Pub. L. No. 95-431. Congress set this rate in 1979 and has not adjusted it since. Per the terms of the contract, as well as the authority provided above, the reimbursement for the Voluntary Work Program is $1.00 per day per detainee. The PNBDS also provides that detainees who participate in the VWP shall receive no less than $1 per day for their participation. ICE reimburses GEO $1 per day per detainee for the VWP, the amount to which GEO is entitled under the contract, and pursuant to the authority provided above. Per PBNDS, GEO then pays the detainee directly. This is the same rate that ICE provides to detainees in its own SPC facilities.

14. The NWDC contract states "the contractor shall comply with all applicable federal, state, and local laws...".[7] Additionally, within the VWP section of the NWDC contract, the contract

---

[5] See *Id.*
[6] See *Id.*
[7] See *Id.*

DECLARATION OF TAE JOHNSON
ENFORCEMENT AND REMOVAL OPERATIONS
UNITES STATES IMMIGRATION AND CUSTOMS ENFORCEMENT
5 of 8

states that "the detainee work program shall not conflict with any other requirements of the contract and must comply with all applicable laws and regulations."[8]

15. ICE involved stakeholders to develop its PBNDS. The workgroup relied upon national correction standards from the American Correctional Association ("ACA"). State and local jails similarly follow ACA standards.

16. PBNDS, including Standard 5.8 that describes the expected outcomes and practices of the VWP, reflect performance standards for ICE detention.

17. ICE audits NWDC for PBNDS compliance, including compliance with VWP objectives and protocols. ICE reports to Congress its efforts to implement and enforce PBNDS standards at NWDC and other facilities. ICE's enforcement of PBNDS has been a priority given ICE's commitment to the fair and humane treatment of ICE detainees.

18. ICE's series of detention standards apply to all types of ICE processing facilities. Regardless of which type of facility arrangement ICE selects, all detainees at all ICE facilities are at all times in the lawful custody of ICE. Accordingly, ICE relies on its contractors to perform in accord with contract requirements at contract facilities. At the NWDC, ICE occupies a significant portion of the facility unrelated to GEO's detention services to fulfill its operational objectives to include its federal immigration courts. ICE has unfettered access to the secure areas and the detainees. The NWDC is subject to DHS audits, third party inspections, and civil rights inspections. Detainees have access to hotlines Monday thru Friday during waking hours by which they can report complaints about VWP participation, other tasks assigned to them, or any other facility related grievances. ICE reviews and

---

[8] See *Id.*

resolves detainee complaints that ICE receives, according to its established procedures and protocols, which includes any complaints about the VWP or detainee work at the NWDC.

19. NWDC has implemented and conforms to current PBNDS. The PBNDS requires that detainees receive at least $1.00 (USD) per day for work performed in the VWP.

20. ICE employs a full-time detention services manager at NWDC whose primary responsibility is to ensure the facility is in compliance with the PBNDS requirements, including those related to the VWP.

21. ICE also employs a contracting officer's representative ("COR") who works full-time at NWDC. The COR's primary duty is to monitor GEO's performance to ensure that all of the technical requirements under the contract are met by the delivery date or within the period of performance, and at the price or within the estimated cost stipulated in the contract.

22. With GEO's monthly invoice, GEO's Assistant Warden for Administration at the NWDC provides the COR an itemization of participants in the VWP, which includes detainee number, name, date of participation, work performed, and amount paid. The COR reviews this itemization and the corresponding totals of $1.00 per day per participant. The COR verifies that the line item on the invoice matches the proper contract line item number for the VWP on the contract. If the supporting paperwork for the entire invoice meets ICE standards, the COR signs the invoice to approve payment.

23. GEO may not otherwise expend the funds allocated for the reimbursement for the $1 per day allowance for detainee participation in the VWP. If a detainee participates in the VWP, the $1 per day allowance must be provided to the detainee. Per the PBNDS, the facility shall have an established system that ensures detainees receive the pay owed them before being transferred or released.

24. The NWDC contract set the quantity of $1.00 reimbursements at 114,975 per option year. GEO shall not exceed that quantity without prior approval by the contracting officer. This approval can be sought by GEO and would be memorialized through a bi-lateral contract modification.

25. The $1.00 per day allocation and reimbursement rate for VWP participation is consistent with national detention standards applied similarly at state and local levels where ICE detainees often are placed.

I declare, under penalty of perjury under 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED: August 1, 2018

TAE D. JOHNSON
Assistant Director
Custody Management Division
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement