The Honorable Robert J. Bryan

1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

8

9 | UGOCHUKWU GOODLUCK NWAUZOR,
FERNANDO AGUIRRE-URBINA,

10 | individually and on behalf of all those
similarly situated,

Case No. 3:17-cv-05769-RJB

11 |
**DEFENDANT THE GEO GROUP, INC.'S**
**OPPOSITION TO PLAINTIFFS' MOTION**
**TO AMEND NOTICE PLAN [ECF NO. 209]**

Plaintiffs/Counter-Defendants,

12

v.

13

THE GEO GROUP, INC.,

14
**NOTE ON MOTION CALENDAR:**
December 27, 2019

Defendant/Counter-Claimant.

15

16      Defendant The GEO Group, Inc. ("GEO") submits its memorandum in opposition to

17  Plaintiffs' motion to amend the notice plan. ECF 209.

18                                    **INTRODUCTION**

19      This Court previously resolved the issue of class notice. Now, mere days before the close

20  of discovery, Plaintiffs seek to change the notice plan and, in doing so, limit the number of

21  putative class members who receive notice of this action. Incredulously, Plaintiffs now also argue

22  that, despite it being their burden to bear the costs of class notice, Defendant must do so. The

23  underlying basis for Plaintiffs' argument is that the putative class members are transient, and as

24  immigrants, do not have social security numbers. Plaintiffs have known since they initiated this

25  action, and since they requested that this Court approve a notice plan including direct mail, that

26  the putative class members would be transient, not identifiable by a social security number, and

27  therefore unlike a typical wage and hour collective with easily available and discernible contact

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND NOTICE PLAN
(3:17-CV-05769-RJB) – PAGE 1

51144613;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1   information. Nonetheless, Plaintiffs sought certification of a class. It is unreasonable for Plaintiffs

2   to now avoid their obligation to notify those same members of the class based upon information

3   that has been known to Plaintiffs since the time the original notice plan was approved. The Court

4   should not entertain this eleventh hour request.

5   **PROCEDURAL HISTORY**

6   This Court certified the following class on August 6, 2018:

7   All civil immigration detainees who participated in the Voluntary Work
    Program at the Northwest Detention Center at any time between September
8   26, 2014, and the date of final judgment in this matter. ECF 114.

9   In its Order, the Court directed the parties to confer about a class notice plan and present a joint

10  proposal to the Court. Consistent with the Court's order, the parties submitted Plaintiffs' Proposed

11  Notice Plan on January 9, 2019, that proposed effectuating notice utilizing a third party

12  administrator, through the following methods: (1) long form notice by mail to class members

13  residing in the United States; (2) publication of short form notices by radio and print to class

14  members residing outside of the United States; (3) creation of a dedicated class website accessible

15  to people within and outside of the United States; (4) the sophisticated use of internet banner ads

16  on various social media and web platforms within and outside of the United States; and (5) a

17  dedicated toll-free phone number. ECF 138. In Plaintiffs' proposed notice, they stated that "once

18  finalized, this Proposed Notice Plan will provide the 'best notice practicable under the

19  circumstances'" *Id.* Plaintiffs also acknowledged that "[m]any of the Class Members reside

20  outside of the United States, with incomplete or unreliable address information making

21  notification by direct mail difficult." *Id.*

22  GEO also clarified that the release of a class list would be subject to the entry of a

23  protective order, and ICE approval (which at the time was difficult to obtain, as there was an

24  ongoing federal government shutdown).  On February 5, 2019, this Court approved a long form

25  notice template for direct mailing. ECF 142. On March 25, 2019, this Court entered a protective

26  order. ECF 163. GEO continued to work to obtain ICE's approval for releasing the class list and

27  submitted a Joint Status Report to the Court indicating that GEO would be able to provide

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND NOTICE PLAN
(3:17-CV-05769-RJB) – PAGE 2

51144613;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1  Plaintiffs with the class list by April 12, 2019. ECF 165. At the same time, Plaintiffs requested

2  additional information from GEO (that was not anticipated in the original notice plan) including,

3  detainee addresses for both before and after detention, telephone numbers, email addresses, and

4  alien registration numbers. *Id.*

5  In response to the Joint Status Report, the Court set a deadline for GEO to produce the

6  class list (April 12, 2019) and a deadline for GEO to supplement its class list (April 29, 2019).

7  ECF 166. The Court also ruled that the class list should include the additional address information

8  Plaintiffs sought in the Joint Status Report "if any is available." *Id.* Consistent with the Court's

9  order, GEO produced a class list to Plaintiffs <u>over six months ago</u>.  And, just recently, in an effort

10  to streamline notice, GEO worked with ICE to identify the individuals on the class list who are

11  currently detained, including the addresses of the facilities at which they are detained. Thus,

12  Plaintiffs have a class list that consists of all addresses that GEO and ICE are able to identify.

13  To GEO's knowledge, Plaintiffs have not worked with a class administrator to identify

14  whether the addresses provided by ICE and GEO can be narrowed using the National Change of

15  Address system.[1] Indeed, this approach is frequently used in class actions and often narrows the

16  number of missing or incomplete addresses. *See e.g., Yue v. Conseco Life Ins. Co.*, No. CV 11-

17  09506 AHM SHX, 2013 WL 5289743, at *5 (C.D. Cal. Mar. 6, 2013) (utilizing National Change

18  of Address in notice process); *Bolton v. U.S. Nursing Corp.*, No. C 12-04466 LB, 2013 WL

19  2456564, at *5 (N.D. Cal. June 6, 2013) (same); *Sandoval v. Tharaldson Employee Mgmt., Inc.*,

20  No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *3 (C.D. Cal. June 15, 2010) (utilizing

21  National Change of Address database to narrow the missing or out-of-date addresses). And, for

22  Plaintiffs' claims that they worked with a consulting expert to cull through the data, GEO cannot

23  speak to that: no data expert has been disclosed and GEO is unaware of what specific attempts the

24  data expert made to narrow the dataset (nor are those attempts detailed in Plaintiffs' motion).

25  While Plaintiffs argue that the class list is unwieldy, GEO's own review of the class list

26
27  [1]The U.S. Postal service maintains the National change of Address database and tracks individuals who have moved.  *See* NCOA Processing, Experian, *available at* https://www.edq.com/services/ncoa-processing/.

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND NOTICE PLAN
(3:17-CV-05769-RJB) – PAGE 3
51144613;3

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

does not square with Plaintiff's' analysis. As an initial matter, Plaintiffs sought address information for before and after each individual was in detention. ECF 165. Thus, by their own request, Plaintiffs received multiple addresses for each individual. Many of the addresses (which are self-reported) either provide that the individual is in ICE custody, list a foreign address, or have the same address listed twice under both the "Mailing Address" and "Home Address" fields collected by ICE. As provided for in the original notice plan, the parties only agreed to send notice to United States addresses, so all foreign addresses can be quickly eliminated by a Third Party Administrator (or Plaintiffs). Thereafter, the listed addresses for the Northwest Detention Center (and other ICE facilities) that are now outdated can be easily eliminated[2] because GEO has affirmatively identified (through ICE) the 130 individuals who are still in detention, and where they are detained. However, regardless of whether it is culled, the class list contains sufficient information to provide direct notice to a large percentage of the class.

## ARGUMENT

### A.   Direct Mail is the Most Effective Method of Notice, and Without it, Many Putaitve Class Members Will Not Receive Notice.

In an effort to provide best notice under the circumstances, the parties created a comprehensive notice plan that included direct notice by mail, publication notice, and social media notice. ECF 138. The parties also agreed that a website would be set up to allow class members to obtain additional information about the lawsuit, or easily opt out. *Id*. Direct notice is mandated where contact information can be obtained through reasonable effort. *Ostrowski v. Amazon.com, Inc.*, No. C16-1378-JCC, 2016 WL 4992051, at *2 (W.D. Wash. Sept. 16, 2016) (quoting *Eisen*, 417 U.S. at 175–77). Thereafter, "including a generalized publication of a Notice to class members serves the worthy purpose of supplementing direct mailings in the event that an

---

[2] From GEO's own assessment of the spreadsheet, Plaintiffs can easily remove all addresses for 1623 East J Street (the Northwest Detention Center) or those that state "DHS Custody." From GEO's counsel's review of the data, it has found that doing so eliminates nearly 5,000 addresses. Eliminating incomplete, or blank address lines eliminates another 13,000+ addresses. A class administrator, trained in working with these types of data sets, could easily winnow down the list to a manageable and effective set of addresses.

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND NOTICE PLAN
(3:17-CV-05769-RJB) – PAGE 4
51144613;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1   absent class member's address is misidentified, is changed, or is otherwise unavailable." *In re*

2   *Potash Antitrust Litig.*, 161 F.R.D. 411, 413 (D. Minn. 1995).

3        Notice by direct mail was the only direct method of notice the parties agreed to. They did

4   not agree to directly contact putative class members by email or text message—as those forms of

5   contact are not readily available for the class. To accomplish direct notice, both GEO and ICE

6   have expended significant efforts collecting the addresses requested by Plaintiffs. While GEO

7   concedes the list is not perfect, imperfection does not justify depriving individuals of notice.

8   *Parrish v. Manatt, Phelps & Phillips*, *LLP*, No. C 10-03200 WHA, 2010 WL 5141848, at *5

9   (N.D. Cal. Dec. 13, 2010) ("Class actions are most useful but imperfect devices."). From the

10  outset, Plaintiffs have anticipated that the address data would not be perfect. ECF 138. With

11  these considerations in mind, the class list indisputably contains addresses for a substantial

12  number[3] of class members. ECF 209 at 3 ("the class list contains an average of about 5.1

13  addresses for each class member"). The fact that the proposed class is transient does not justify

14  forgoing mailed notice. *See e.g., Desio v. Russell Rd. Food & Beverage, LLC*, No.

15  215CV01440GMNCWH, 2017 WL 4349220, at *5 (D. Nev. Sept. 29, 2017) (providing for

16  notice by mail to dancers even though they were "transient."). As Plaintiffs note in their motion,

17  the concern they have is *too many* addresses, not too few. Yet, Plaintiffs requested all address

18  data for each individual, and as noted above, the additional addresses can be easily narrowed.[4]

19  Thus, direct mail, coupled with the other methods of notice the parties have agreed to, is the best

20  notice possible. *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("Under the

21  circumstances of this case, when all class members are known in advance, the Court finds that

22  the method of direct mail notice to each class member's last known address—and a second

23  notice if the first was returned as undeliverable—was the best practicable notice.")

24

25

26  [3] On April 29, 2019, GEO, through its counsel Kristin Asai, sent Plaintiffs' counsel a class list that included detainee names, inmate numbers, A-numbers, and the most recent address information that was received from ICE. In its transmittal email, GEO noted that ICE could not find <u>any</u> information for <u>only three individuals</u>.

27  [4] Indeed, it does not appear that Plaintiffs have even taken the initial step of removing foreign addresses.

---

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND NOTICE PLAN
(3:17-CV-05769-RJB) – PAGE 5

51144613;3

As for the individuals who are detained, it is not clear how Plaintiffs envision providing them notice at all in the absence of notice by direct mail. It is highly unlikely that individuals who are in ICE custody will have access to social media banners or radio ads. While Plaintiffs propose that notice could be posted in GEO facilities "where class members are known to congregate," they do not provide any information about (1) whether ICE would permit such a posting, and (2) whether the posting would be as effective as individually mailed notice. Indeed, GEO believes that individually mailed notice that makes clear the notice is not from GEO or ICE would be more effective for the detained individuals. Notice that is posted in the common area may be disregarded as information from GEO or ICE. And, given the many different housing units within each facility, it is unclear where the notice would be posted. Would it be posted in every dorm, regardless of whether there were class members in the dorm? Or, would it only be posted in some dorms with the risk of discord between detainees who are afforded an opportunity to view the notice and those who are not? Likewise, posting notice may cause confusion among the many individuals who may not be eligible to join the class. Further, posting notice in the facility could lead to some detainees joining the Voluntary Work Program simply to become members of the class. Thus, mailed notice is the better avenue for detained individuals—particularly where GEO and ICE have already expended significant efforts to provide Plaintiffs with information about those who remain in detention.

Additionally, the case law Plaintiffs cite to for the proposition that mailed notice is not necessary in this case, is inapposite. In *Cohorst v. BRE Prop., Inc.*, the "Claims Administrator provided individual notice to 1,111,222 potential class members (using six different servers) which after three different e-mail blasts resulted in a 95.35% receipt rate." 2011 WL 7061923, *6 (S.D. Cal. 2011). As a result of the effective email campaign, and the significant number of class members, the Court concluded it was not necessary to send notice via US Mail, where doing so would be less effective than email. *Id.* Here, ICE does not routinely collect phone numbers or email addresses of detainees. Instead, ICE routinely collects detainees' addresses. And, the

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND NOTICE PLAN
(3:17-CV-05769-RJB) – PAGE 6
51144613;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1   number of putative class members here does not come close to the large numbers in *Cohorst*.

2   Thus, mailed notice is the best available under the circumstances.

3          Likewise, *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d

4   935, 940 (10th Cir. 2005), does not provide support for Plaintiff's' position. Plaintiffs claim that

5   *DeJulius* "uph[eld] [a] notice plan even though notice was sent to brokerage houses and not

6   directly to class." ECF 209 at 5. Rather, in *DeJulius* the district court approved a plan that it

7   found to be the best notice practicable under the circumstances that included direct mail.

8   Specifically, the "court ordered that notice packets should be mailed to all Sprint shareholders in

9   the class within ten days, to the extent those persons were identifiable by Sprint records."

10  *DeJulius*, 429 F.3d at 939. In complying with the court's order, "56,078 packages were mailed . .

11  . directly to potential class members." *Id.* at 940. Thus, rather than supporting Plaintiffs position,

12  *DeJulius* demonstrates that mailing notice is proper, and that here, it would be much less

13  burdensome than it was in *DeJulius*.

14  **B.    Plaintiffs Have Not Shown Exceptional Circumstances That Would Justify Shifting
        the Cost of Notice.**

15

16         In general, "a plaintiff must initially bear the cost of notice to the class," unless there are

17  exceptional circumstances justifying departure from the general rule. *Eisen v. Carlisle &

18  Jacquelin*, 417 U.S. 156, 178 (1974). "[C]ourts must not stray too far from the principle

19  underlying [Eisen] that the representative plaintiff should bear all costs relating to the sending of

20  notice because it is he who seeks to maintain the suit as a class action." *Oppenheimer Fund, Inc.

21  v. Sanders*, 437 U.S. 340, 359, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Occasionally, "'the district

22  court has some discretion' in allocating the cost of complying with an order concerning class

23  notification." *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1143 (9th Cir. 2009). A court

24  may only shift that cost to the defendant in the rare case of an "exceptional circumstance" or in

25  the event that the plaintiff has demonstrated success on the merits. *Eisen*, 417 U.S. at 178. At the

26  end of the case, of course, the district court can allocate the cost of identifying and giving notice

27  to class members "as it would any other item of costs." *In re Nissan Motor Corp. Antitrust*

---

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND NOTICE PLAN
(3:17-CV-05769-RJB) – PAGE 7

51144613;3

1     *Litigation*, 552 F.2d 1088, 1102 (5th Cir.1977). Here, Plaintiffs have not demonstrated success on

2     the merits, nor exceptional circumstances that would justify cost-shifting.

3            Cost-shifting is not appropriate where a plaintiff has not established that the case involves

4     exceptional circumstances. *Beeson v. Med-1 Sols., LLC*, No. 1:06CV1694SEB-JMS, 2008 WL

5     4809958, at *2 (S.D. Ind. Oct. 24, 2008). Here, Plaintiffs point to two circumstances that are not

6     exceptional, nor do they justify cost shifting. First, Plaintiffs point to the range of costs involved

7     in providing notice generally—regardless of whether notice is mailed or not. Plaintiffs argue that

8     these costs are "unduly expensive." ECF 209 at 3. Plaintiffs offer a range with the low-end costs

9     being over $800,000 less than the high-end costs. While they do not provide any of the estimates

10    so that this Court (or GEO) may understand the large range, it does not appear that the costs

11    offered by Plaintiffs actually address the specific issue for which they argue justifies shifting the

12    costs to GEO: the mailed notice. Instead, a review of Plaintiffs' motion shows that they base the

13    cost of mailed notice on the price of mailing notice to a single address—not the specific

14    circumstances at issue here. While Plaintiffs speculate that the costs of mailing notice here could

15    be "double or triple" their estimates, they again provide no support for this supposition. Nor do

16    Plaintiffs indicate whether any of their estimates include costs for culling the address list, or

17    otherwise ensuring that mailings are only sent to deliverable addresses. Indeed, Plaintiffs cannot

18    establish "extraordinary circumstances" based upon the expense of providing notice when they do

19    not provide any of the underlying estimates, or the costs that they believe are in excess of what

20    was originally submitted to the Court.  In sum, Plaintiffs have not established that the figures they

21    cite in their motion are different from those in any other proceeding where the Plaintiff bears the

22    burden of notice.

23           Furthermore, the mere fact that multiple addresses were provided for each individual does

24    not justify cost shifting. Plaintiffs explicitly sought more than one address for each individual. In

25    response, the Court ordered GEO to provide those addresses, if available. ECF 166. GEO worked

26    with ICE to provide Plaintiffs with all address fields.  Thus, Plaintiffs cannot now rely upon the

27    additional addresses they requested as a reason to shift the costs of notice. As GEO has described

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND NOTICE PLAN
(3:17-CV-05769-RJB) – PAGE 8
51144613;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1  above—the list can easily be culled to eliminate duplicates, non-U.S. addresses, and the addresses

2  of ICE detention centers. Accordingly, this Court should not shift the cost of notice to GEO.

3  **C.**    **Plaintiffs' Proposed Notice Is Not Adequate.**

4      Should this Court eliminate mailed notice, it should order Plaintiffs to revise and re-draft

5  their proposed publication notice. As an initial matter, the publication notice states that the only

6  way a class member can opt-out is by mailing physical correspondence to the class administrator.

7  ECF 210 ("you may send a letter to the address below. . . "). This is both inaccurate and

8  misleading.  It does not explain that an individual may opt-out by using the website set up for the

9  class, by email, by fax, or even by asking class counsel for assistance. *Rosas v. Sarbanand Farms,*

10  *LLC*, No. C18-0112-JCC, 2019 WL 859225, at *5 (W.D. Wash. Feb. 22, 2019) (ordering multiple

11  methods for individuals to opt-out, including the ability to contact class counsel directly). In

12  contrast, the long-form class notice informs class members that they can opt-out via mail, email,

13  or fax. ECF 142. At the same time, the proposed notice eliminates key admonitions on the notice,

14  and instead has the scope of the class defined twice on the publication—including a bolded

15  section in the center of the page. This is inadequate.

16      The long form notice included the following disclaimer prominently at the top:

17        The Court has not decided whether GEO did anything wrong. There is no

18        money available now, and no guarantee there will be. However, your legal rights are affected, and you have a choice to make now. ECF 142.

19  By removing this critical admonition[5], the notice that Plaintiffs now propose (in lieu of the long

20  form notice) does not alert individuals of the status of this case. Rather, it implies that individuals

21  who opt-out will be excluded from a sum certain in this case, by stating, "[i]f you ask to be

22  excluded from the Class, you cannot get any money or benefits from this lawsuit . . ." ECF 210-1.

23  In comparison, the long form notice provides, "If you ask to be excluded and money or benefits

24  are later awarded, you won't share in those…" ECF 142. It bolsters this explanation by affirming,

25  "[n]o money or benefits are available now because the Court has not yet decided whether GEO

26

27  [5] In the long-form notice, this admonition appears again, in greater detail under the heading: "Has the Court Decided who is right?"

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND NOTICE PLAN
(3:17-CV-05769-RJB) – PAGE 9
51144613;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

did anything wrong, and the two sides have not settled the case. There is no guarantee that money or benefits ever will be obtained." *Id.* Thus, as currently drafted, Plaintiffs' proposed notice inaccurately frames putative class members potential to collect damages.

Likewise, Plaintiffs have changed the language approved in the long form notice that explains the lawsuit. The proposed notice provides, "[t]he lawsuit is about whether GEO owes backwages to people who participated in the Voluntary Work Program." ECF 210-1. This once again places the emphasis squarely on potential damages—and not the actual facts of the case. In contrast, the long form notice answers the question "[w]hat is this lawsuit about?" with the following:

> This lawsuit is about whether GEO, as the owner and operator of the Northwest Detention Center, is an "employer" and whether the Class Members are "employees" under the Washington Minimum Wage Act. And if so, whether GEO violated the Act by failing to pay Class Members the minimum hourly wage under Washington law for work performed under the $1-a-day Program. GEO denies the allegations made in the lawsuit.

Again, the notice proposed by Plaintiffs eliminates GEO's position from its posting and improperly focuses on potential damages—which may mislead class members. Accordingly, if the long form notice is not sent by mail, Plaintiffs' proposed publication notice must be revised. GEO has great concern over Plaintiffs' last minute attempts to short-cut, to their advantage, the Court-approved notice language. As currently drafted, it is both misleading and inadequate.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to amend the notice plan should be denied.

///
///
///
///
///
///
///

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND NOTICE PLAN
(3:17-CV-05769-RJB) – PAGE 10
51144613;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1    Respectfully submitted, this 23rd day of December, 2019.

2                              By: *s/ Colin L. Barnacle*

3                              **AKERMAN LLP**
                              Colin L. Barnacle (Admitted *pro hac vice*)
4                              Ashley E. Calhoun (Admitted *pro hac vice*)
                              Adrienne Scheffey (Admitted *pro hac vice*)
5                              Allison N. Angel (Admitted *pro hac vice*)
                              1900 Sixteenth Street, Suite 1700
6                              Denver, Colorado 80202
                              Telephone:  (303) 260-7712
7                              Facsimile:   (303) 260-7714
                              Email:  colin.barnacle@akerman.com
8                              Email:  ashley.calhoun@akerman.com
                              Email:  adrienne.scheffey@akerman.com
9                              Email:  allison.angel@akerman.com

10
                              By: *s/ Joan K. Mell*
11
                              **III BRANCHES LAW, PLLC**
12                             Joan K. Mell, WSBA #21319
                              1019 Regents Boulevard, Suite 204
13                             Fircrest, Washington 98466
                              Telephone:  (253) 566-2510
14                             Facsimile:   (281) 664-4643
                              Email:  joan@3brancheslaw.com
15

16                             *Attorneys for Defendant The GEO Group, Inc.*

17

18

19

20

21

22

23

24

25

26

27

---

DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND NOTICE PLAN
(3:17-CV-05769-RJB) – PAGE 11

51144613;3

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1

## PROOF OF SERVICE

2       I hereby certify on the 23rd day of December, 2019, pursuant to Federal Rule of Civil

3   Procedure 5(b), I electronically filed and served the foregoing **DEFENDANT THE GEO**

4   **GROUP, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO AMEND NOTICE**

5   **PLAN** via the Court's CM/ECF system on the following:

6   **SCHROETER GOLDMARK & BENDER**
    Adam J. Berger, WSBA #20714
7   Lindsay L. Halm, WSBA #37141
    Jamal N. Whitehead, WSBA #39818
8   Rebecca J. Roe, WSBA #7560
    810 Third Avenue, Suite 500
9   Seattle, Washington 98104
    Telephone:  (206) 622-8000
10  Facsimile:   (206) 682-2305
    Email:  hberger@sgb-law.com
11  Email:  halm@sgb-law.com
    Email:  whitehead@sgb-law.com
12  Email:  roe@sgb-law.com

13  **THE LAW OFFICE OF R. ANDREW FREE**
    Andrew Free (Admitted *Pro Hac Vice*)
14  P.O. Box 90568
    Nashville, Tennessee 37209
15  Telephone:  (844) 321-3221
    Facsimile:   (615) 829-8959
16  Email:  andrew@immigrantcivilrights.com

17  **OPEN SKY LAW PLLC**
    Devin T. Theriot-Orr, WSBA #33995
18  20415 72nd Avenue S, Suite 100
    Kent, Washington 98032
19  Telephone:  (206) 962-5052
    Facsimile:   (206) 681-9663
20  Email:  devin@openskylaw.com

21  **MENTER IMMIGRATION LAW, PLLC**
    Meena Menter, WSBA #31870
22  8201 164th Avenue NE, Suite 200
    Redmond, Washington 98052
23  Telephone:  (206) 419-7332
    Email:  meena@meenamenter.com

24
    *Attorneys for Plaintiffs*
25

26              *s/ Nick Mangels*
                Nick Mangels
27

PROOF OF SERVICE
(3:17-CV-05769-RJB) – PAGE 12

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

51144613;3