# EXHIBIT A



Western Washington Office
615 Second Avenue
Suite 400
Seattle, Washington 98104

PHONE: 206-587-4009  TOLL-FREE: 800-445-5771  FAX: 206-587-4025  WEB: www.nwirp.org  EMAIL: info@nwirp.org

September 11, 2019

Jamal Whitehead
Schroeter Goldmark & Bender
810 Third Avenue, Suite 500
Seattle, WA 98104

  *Re:* *Nwauzor et al. v. The GEO Group, Inc.*, No. 17-cf-5769-RJB (W.D. Wash.)

Dear Mr. Whitehead,

  I have been retained by your firm to provide expert testimony regarding various aspects of the U.S. immigration process. My opinions are found below as well as statements about my qualifications, litigation background, and compensation.

## I. QUALIFICATIONS

  I am familiar with the U.S. immigration process through my work as a staff attorney for the Northwest Immigrant Rights Project ("NWIRP"), which is a non-profit organization that provides direct representation to individuals who are applying for political asylum, family visas, lawful status under the Violence Against Women Act, and naturalization or citizenship. NWIRP also defends individuals who are placed in removal proceedings (deportation proceedings) and provides legal orientation sessions to persons detained at the Northwest Detention Center ("NWDC") in Tacoma, Washington. Since 2006, I have served as Director of NWIRP's Asylum Unit.

  In addition to my work with NWIRP, I serve as the Director of the Immigration Law Clinic at the University of Washington School of Law. The Law Clinic represents low-income individuals with a wide variety of immigration issues, including detained asylum-seekers, appeals of removal orders, special immigrant juveniles seeking to adjust to lawful permanent resident status, and complex naturalization applications and appeals.

Mr. Whitehead
September 11, 2019
Page 2

I graduated from Harvard Law School and hold a certificate in refugee studies from the University of Oxford. After law school, I clerked for the Honorable Marsha J. Pechman, U.S. District Court Judge for the Western District of Washington, and worked as an associate at Gibbs Houston Pauw, an immigration law firm, in Seattle, Washington.

## II.   FACTUAL BACKGROUND

The GEO Group, Inc. ("GEO") owns and operates the NWDC in Tacoma, Washington, which is a facility housing detainees who are the subject of civil immigration proceedings. NWDC is a 1,500-bed facility, making it one of the largest immigration facilities in the United States. Detained persons at NWDC await legal proceedings to determine whether they will be deported or allowed to remain in the United States. These proceedings can sometimes take years to conclude.

In the meantime, many detained persons participate in the Voluntary Work Program ("VWP") at NWDC, performing various non-security functions at the facility.[1] The jobs performed by VWP participants include work that is broadly classified as janitorial and maintenance, kitchen, barber, and laundry.[2] GEO pays these detainees $1.00 a day for their labor regardless of how many hours they actually work.[3]

Plaintiffs argue that an employment relationship exists between GEO and the detained persons taking part in the VWP, and that GEO's practice of paying subminimum wages to these workers violates Washington's Minimum Wage Act ("MWA"), RCW 49.46 et seq.[4]

## III.   OPINIONS

Generally, the U.S. government may not remove a noncitizen who is present in the United States without a removal order. There are several ways that the U.S. government may obtain a removal order, but detainees at the NWDC usually either have an active removal proceeding under 8 U.S.C. § 1229a, or already have a final order of removal from an earlier

---

[1]   First Am. Compl., ¶¶ 4.2-4.7.
[2]   *Id.* at ¶¶ 4.4-4.5.
[3]   *Id.* at ¶ 4.7.
[4]   *Id.* at ¶¶ 4.2-4.12, 6.1-6.4.

Mr. Whitehead
September 11, 2019
Page 3

proceeding. An individual may be placed in a removal proceeding by the U.S. government upon the filing of a "Notice to Appear" with an Immigration Court, such as the Tacoma Immigration Court which is housed at the NWDC. *See* 8 U.S.C. § 1229(a).

In a removal proceeding, a noncitizen has the right to contest the charges of removability and seek any relevant relief from removal for which he or she may be eligible. In the event of an adverse decision before the immigration court, the detainee may seek administrative review at the Board of Immigration Appeals ("BIA"), which may grant relief in its own right, remand the case back to the immigration court, or dismiss the appeal. If the detainee loses at the BIA, he or she may file a Petition for Review before the appropriate U.S. Court of Appeals pursuant to 8 U.S.C. § 1252(a)(1). The Court of Appeals has authority to grant a stay of removal upon a motion by the detainee. *See Nken v. Holder*, 556 U.S. 418 (2009). Additionally, in cases where the immigration court grants lasting relief to a noncitizen, the Department of Homeland Security may appeal the grant of relief to the Board of Immigration Appeals.

Detention at NWDC may not be punitive, and thus differs from detention following conviction of a crime. *See Wong Wing v. United States*, 163 U.S. 228 (1896). Detainees at the NWDC come from a variety of different backgrounds. Some entered without being admitted, others lawfully entered and overstayed their visas. Detainees also include lawful permanent residents or other persons with lawful status whom the government asserts are subject to removal from the United States. Additionally, there are asylum-seekers detained at the NWDC who lawfully presented themselves at the border to apply for asylum. Also present at NWDC are individuals who already have a removal order, but who the government may not remove due to a pending appeal from an Immigration Judge removal proceeding, or a pending asylum-related[5] protection claim.

Immigration Court removal proceedings include two types of hearings: master calendar hearings and individual calendar hearings. Master calendar hearings are similar to arraignments and generally have 20-35 individuals. At the master calendar, some detainees may not oppose removal and may receive a final removal order at their initial hearing. Others may request

---

[5] "Asylum-related" includes both asylum under 8 U.S.C. § 1158, as well as withholding of removal under 8 U.S.C. § 1253(b)(3) and protection pursuant to the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 8 C.F.R. §§ 208.18, 1208.18.

Mr. Whitehead
September 11, 2019
Page 4


continuances to obtain counsel or locate supporting documents for their case. When a case is ready for a final hearing, the Immigration Judge will set the case to an individual calendar hearing. These hearings may be so that the detainee may contest the charge of removal or may be for the detainee to seek a decision on an application for lasting relief from removal.

According to data gathered by the Transactional Records Access Clearinghouse[6] ("TRAC"), the government sought to remove detainees at the NWDC on the basis of a criminal ground of removal in only 10.7% of the cases at the Tacoma Immigration Court in FY2019.[7] In the remaining cases, the government was not relying on any prior criminal conviction as the basis for seeking to remove the detainee from the United States.

Figures from TRAC establish that individuals in removal proceedings at the Tacoma Immigration Court obtained relief in 23.7% of all cases in FY2019.[8] This includes both grants of permanent relief, such as permanent residence and asylum-related protections, as well as cases where the charges of removal were dismissed for other reasons, resulting in the release of the detainee.

Detainees at the NWDC may or may not be authorized to work lawfully in the United States. As previously noted, some detainees are lawful permanent residents ("LPR") who are detained while their removal proceedings are pending. An LPR is authorized to work in the United States incident to status and does not need to seek an Employment Authorization Document ("EAD") from the U.S. government, including when they are detained and challenging removal. 8 C.F.R. § 274a.12(a)(1). Additionally, many detainees at the NWDC who are seeking lasting relief from removal are eligible to apply for an EAD based on their pending relief application. *See generally* 8 C.F.R. § 274a.12(c)(8), (9), (10).

---

[6] TRAC is a data gathering, data research, and data distribution organization at Syracuse University, which obtains and publishes statistics relating to Immigration Court cases and processing. TRAC may be accessed at https://trac.syr.edu/.

[7] https://trac.syr.edu/phptools/immigration/charges/deport_filing_charge.php, accessed on Sept. 10, 2019.

[8] https://trac.syr.edu/phptools/immigration/court_backlog/deport_outcome_charge.php, accessed Sept. 10, 2019.

Mr. Whitehead
September 11, 2019
Page 5

A noncitizen may seek an EAD by filing Form I-765 with USCIS and paying the appropriate filing fee (presently, $410), although for some categories of applications the fee is waived. The form must be completed in English, and if an interpreter is used, the interpreter must also fill out a section of the form and sign to indicate that the interpretation provided was true and correct. An applicant must include passport photos as well as photocopies of relevant documentation establishing that they have a pending application that qualifies for a work permit. Work permit applications in almost all eligibility categories are taking many months to adjudicate, with the current exception of initial asylum-based work permits. Detainees without attorneys may find it difficult to complete this process, particularly if English is not their first language.

As a practical matter, in my experience very few detainees ever apply for work authorization while detained because they are not able to work outside the NWDC. Additionally, as noted below, some detainees are not likely to receive a decision on their EAD application until after their immigration case is concluded.

Removal proceedings before the Tacoma Immigration Court take, on average, 111 days to be completed by the Immigration Court.[9] Importantly, however, this figure does not include any administrative appeals or judicial review. If there is an appeal by either side, the case will continue until it is resolved either by the Board of Immigration Appeals or the relevant U.S. Court of Appeals.

While the removal proceedings are ongoing, detainees[10] may seek a bond hearing. At the bond hearing, detainees may establish eligibility for release if they can demonstrate that they are not a danger to the community or a flight risk.[11] *See Matter of Patel*, 15 I. & N. Dec. 666 (BIA 1972). Generally, however, a detainee may only have one bond hearing absent a showing of changed circumstances. *See* 8 C.F.R. § 1003.19(e). In FY 2019, there were 2,668 bond hearings

---

[9] https://trac.syr.edu/phptools/immigration/court_backlog/court_proctime_outcome.php. accessed Sept. 10, 2019.

[10] Certain classes of detainees, however, are ineligible to be released on bond. For example, the statute does not provide a bond hearing for certain individuals who are alleged to be removable based on criminal convictions. 8 U.S.C. § 1226(c).

[11] In cases of prolonged detention, the burden may shift to ICE to show that detention is necessary.

Mr. Whitehead
September 11, 2019
Page 6

in Tacoma.[12] Bond was granted in 1,181 (44%) of those cases, and the average bond was $15,000.[13] Bond was denied, so that the person was held in detention without any opportunity for release on bond, in 1487 (56%) of cases.[14] If a detainee is not released on bond, the only other avenues to seek release from detention are for the U.S. government to voluntarily release the individual, for example on an order of supervision or parole. A small number of detainees succeed in challenging the legality of their detention by filing a writ of *habeas corpus* before a U.S. District Court.

## IV. PRIOR TESTIMONY

To the best of my recollection, I have not testified nor submitted declarations in any cases in the last four years, except for cases where I have been counsel or co-counsel.

## V. COMPENSATION

I do not charge for my time as an attorney at NWIRP. However, when we prevail in litigation, we may seek attorney's fees. I recently sought and obtained fees of $450 an hour, which I believe to be at or under the market rate for an immigration attorney with my level of experience. I relied both on reports of other attorneys in the field as well as the Laffey Matrix to arrive at this conclusion. I am working on this matter at the rate of $450 per hour.

I reserve the right to modify or supplement this report if I learn of additional material or information that impacts my analysis.

Sincerely,

*[signature]*

Christopher Strawn

---

[12] https://trac.syr.edu/phptools/immigration/bond/, accessed Sept. 11, 2019.
[13] *Id.*
[14] *Id.*