The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated, | No.  3:17-cv-05769-RJB |
| Plaintiffs, | **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| v. | NOTE ON MOTION CALENDAR: JANUARY 24, 2020 |
| THE GEO GROUP, INC., a Florida corporation, | ORAL ARGUMENT REQUESTED |
| Defendant. | |

PLTFS.' MOT. FOR SUMM. J.
(3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................... 1

II.  FACTUAL BACKGROUND ..................................................................... 2

    A.  GEO owns and operates the Northwest Detention Center, and contracts with ICE to house civil immigration detainees. .............................. 2

    B.  ICE required GEO to "develop" and "manage" the Voluntary Work Program at the NWDC in accordance with ICE regulations and State and Local Laws. ........................................ 3

    C.  ICE has little involvement with the day-to-day operation of the VWP, as GEO alone hires, assigns, trains, supervises, pays, and terminates detainee workers. ............................................... 5

III.  LEGAL ARGUMENT ............................................................................. 9

    A.  Standard of review. ..................................................................... 9

    B.  GEO is an "employer" under the MWA and the Class Members are its "employees." ............................................................... 10

        1.  GEO directly supervised and controlled the detainees' work. ....................................................................... 11

        2.  Detainee workers worked on GEO's premises using only GEO supplies. ............................................... 11

        3.  Detainee workers have no opportunity for profit or loss. ................. 11

        4.  Working in the VWP required no pre-existing skill and initiative. ............................................................ 12

        5.  The working relationship between GEO and the detainee workers is permanent. ....................................... 12

        6.  Detainee workers are integral to GEO's operations at NWDC. ......................................................... 13

    C.  GEO's contract with ICE does not prevent GEO from paying detainee workers the Washington Minimum Wage. .............................. 14

    D.  GEO's counterclaim and affirmative defense for "Offset/Unjust Enrichment" should be dismissed because GEO contracted with ICE—and received payment—for the benefits it now seeks to disgorge from Plaintiffs. ............................................. 15

IV.  CONCLUSION ..................................................................................... 19

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Anfinson v. FedEx Ground Package Sys., Inc.,*
    281 P.3d 289 (Wash. 2012)...............................................................passim

*Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.,*
    810 P.2d 12 (Wash. Ct. App. 1991) ..............................................................16

*Becker Family Builders Co-Plaintiffs Grp. v. F.D.I.C.,* 09-cv-5477-RJB,
    2010 WL 3720284 (W.D. Wash. Sept. 17, 2010) ...........................................16

*Carpenters Health & Sec. Tr. of W. Washington v. Nw. Interior Specialties,* LLC,
    3:16-CV-05166-RJB, 2017 WL 1166154 (W.D. Wash. Mar. 29, 2017) ...........................9

*Evan v. Luster,*
    928 P.2d 455 (Wash. Ct. App.1996) ..............................................................18

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.,*
    970 F.2d 1138 (2d Cir. 1992)...............................................................9

*Lynch v. Deaconess Med. Ctr.,*
    776 P.2d 681 (1989) ............................................................... 16, 17

*Sullivan v. Massachusetts Mut. Life Ins. Co.,*
    611 F.2d 261 (9th Cir. 1979) ...............................................................9

*Synergy Greentech Corp. v. Magna Force, Inc.,* 15-cv-5292-BHS,
    2016 WL 3906908 (W.D. Wash. July 19, 2016) ..............................................17

*Tanedo v. E. Baton Rouge Parish Sch. Bd.,* No. SA CV-10-01172 JAK,
    2011 WL 5447959 (C.D. Cal. Oct. 4, 2012) ..................................................18

*Torres-Lopez v. May,*
    111 F.3d 633 (9th Cir. 1997)...............................................................11

*Young v. Young,*
    191 P.3d 1258 (2008) ...............................................................16

<u>**Statutes**</u>
RCW 49.46.005(1) ...............................................................1
RCW 49.46.010(2) ...............................................................10
RCW 49.46.010(3) ...............................................................10
RCW 49.46.010(4) ...............................................................10

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

**Other Authorities**

Restatement (First) of Restitution § 1 (1937) ........................................................16
Restatement (First) of Restitution § 110 (1937) ...................................................17
Restatement (Third) of Restitution and Unjust Enrichment § 2(1)  (2011)..........................16
Restatement (Third) of Restitution and Unjust Enrichment § 25 (2011) ........................17, 18

**Miscellaneous**

Washington Pattern Jury Instructions 330.90 (7th ed.)........................................11
GEO Group History Timeline, https://www.geogroup.com/history_timeline ........................2

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

# I.   INTRODUCTION

The Washington Minimum Wage Act has real meaning to those working in this State, and the beneficiaries of its promise include what its plain language conveys: "*any individual permitted to work by an employer*"[1] shall enjoy the "minimum standards of employment within the state of Washington." RCW 49.46.005(1). For a host of reasons, this guarantee is of "vital and imminent concern" to the people of Washington. *Id*. Even so, GEO would undercut the minimum wage guarantee for civil immigration detainees working at its Northwest Detention Center, arguing that they are not "employees."

Washington courts look to the "economic realities" of the situation to determine whether an employment relationship exists. And most, if not all, of the relevant factors are met here, as GEO's control over the civil immigration detainees working in the Voluntary Work Program (VWP) is near absolute—just like the benefits GEO derives from their labor. Instead, to hide from liability, GEO argues essentially that its contract with U.S. Immigration and Customs Enforcement (ICE) requires GEO to pay the detainee workers less. Whether this defense carries the day—and it does not—is a legal question for the Court to decide, not a jury.

Consequently, Plaintiffs move for summary judgment seeking a ruling as a matter of law that GEO violated the Washington Minimum Wage Act, and dismissing GEO's offset defense and counterclaim.

---

[1] *Anfinson v. FedEx Ground Package Sys., Inc.*, 281 P.3d 289, 297 (Wash. 2012).

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

## II.    FACTUAL BACKGROUND

### A.    GEO owns and operates the Northwest Detention Center, and contracts with ICE to house civil immigration detainees.

GEO is a global, for-profit corporation providing correctional, detention, and community reentry services.[2] In November 2005, GEO acquired the Northwest Detention Center (NWDC)[3] in Tacoma, Washington. Ex. A (Sept. 2017 ACA Welcome Book) at 3.[4] GEO contracts with U.S. Immigration and Customs Enforcement (ICE) to provide "detention management services[,] including the facility, detention officers, management personnel, supervision [and] manpower…" at NWDC. Ex. B (GEO-ICE Contract or the "Contract") at 45. The majority of the detained persons at NWDC are from Central and South America, and the average stay lasts about 85 days but can span years. Ex. A at 3; Ex. E (Aguirre-Urbina Dep.) at 8:2-8 (six years in detention). Detained persons are held in administrative custody as they await immigration status review by ICE, but detention at NWDC is "nonpenal [and] nonpunitive" in nature. Ex. F (James Black Op-Ed); *see* Ex. G (Delacruz Dep.) at 15:17-16:8; Ex. H (Johnson Dep.) 15:12-18; Ex. I (Tracy Dep.) at 27:9-17; Ex. J (ACA Reaccreditation Audit (Sept. 2017)) at 2.

Under the Contract, GEO promised to furnish detention services and bed-space for up to 1,575 men and women through the year 2026 in return for $700,292,089.08. Ex. B at 2, 42. The total payment is based on a "bed-day rate" for each detained person at NWDC that is "inclusive of [GEO's] direct costs, indirect costs, overhead and *profit* necessary to provide the

---

[2] GEO Group History Timeline, https://www.geogroup.com/history_timeline (last visited, December 23, 2019).

[3] Sometime last year, GEO changed the name of the facility to "Northwest ICE Processing Center." Ex. K (Scott Dep.) at 17:13-24. But ownership of the facility has not changed.

[4] All exhibits are attached to the accompanying Declaration of Jamal N. Whitehead, filed in support of Plaintiffs' Motion for Summary Judgment.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1  detention and food service" at NWDC. Ex. B at 46 (emphasis added); Ex. C (GEO 30(b)(6)

2  Dep.) at 33:7-22, 36:4-37:2. Between 2014 and 2018, GEO averaged yearly profits of about

3  $10,000,000 at the NWDC. Ex. C (GEO 30(b)(6) Dep.)  at 64:11-67:9; Ex. D (Facility

4  Financial Summary).

5  **B.    ICE required GEO to "develop" and "manage" the Voluntary Work Program at the NWDC in accordance with ICE regulations and State and Local Laws.**

6

7         The Contract required GEO to perform all services in accordance with ICE's

8  Performance-Based National Detention Standards (PBNDS). Ex. B (ICE-GEO Contract) at 45.

9  The PBNDS is a set of national detention standards developed by ICE to ensure that all entities

10 it contracts with for detention services meet baseline standards for maintaining safe, secure,

11 and "humane" facilities. Ex. R (T. Johnson Decl.) at ¶ 10. The PBNDS does "not designate

12 how [GEO] is to perform the work, but rather establishes the expected outcomes and results

13 that the government expects. It is then the responsibility of [GEO] to meet the government's

14 requirements at the price the vendor quoted." *Id.*

15        Among other things, the Contract required GEO to "develop" and "manage" a detainee

16 work program in line with the PBNDS and "*all* applicable laws and regulations.*" Ex. B at 82

17 (emphasis added); Ex. R (T. Johnson Decl.) at ¶¶ 11-12. Other parts of the Contract amplified

18 this requirement, instructing GEO at least twice more that it must comply with all applicable

19 *federal, state, and local laws* and standards. *Id.* at 43-44, 52, 82 ("The detainee work program

20 shall not conflict with any other requirements of the contract and must comply with all

21 applicable laws and regulations."). And if any ambiguities arose, the Contract required GEO

22 to apply the "most stringent" standard. *Id.* at 52.

23

24

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Detained persons working within the work program—the Voluntary Work Program or VWP—are paid for their labor. The 2008 PBNDS set VWP compensation at "$1.00 per day." Ex. L (2008 PBNDS § 5.8 - VWP) at 4. But ICE revised the compensation standards in the 2011 PBNDS requiring GEO to pay workers "*at least* $1.00 (USD) per day." Ex. M (2011 PBNDS § 5.8 - VWP) at 407 (emphasis added). The 2019 revised standards retain the "at least" language.[5] Following the 2011 revision to the PBNDS, GEO's two Classification Officers at NWDC wrote a memorandum to the facility's assistant warden advising him that "compensation is now at least $1.00 however doesn't [sic] say we don't have the option to pay more if we like." Ex. O (Classification Memo). ICE concurred with this reading of the 2011 PBNDS and wrote the associate warden separately: "According to the standard there is a minimum compensation of $1.00 however; there is no maximum." Ex. P (Aug. 27, 2014, Email, Howard to McHatton, *et al.*). GEO's corporate designee confirmed at deposition that "The *minimum* amount – as read, the compensation is at least one dollar per day." Ex. C (GEO 30(b)(6) Dep.)  at 94:12-25 (emphasis added).

GEO now admits that it "has the option to pay more than $1 per day to detainee workers for work performed in the VWP," Ex. U (GEO's RFA Resp.) at RFA No. 67, and in fact, sometimes pays more than $1 at NWDC and some of its other facilities. *Id.* at RFA Nos. 56, 58-59, 60; *see* Ex. C (GEO 30(b)(6) Dep.)  at 95:2-96:15. Yet GEO rarely exercises its discretion to pay more, *id.* at 95:2-96:15, and argues that the Contract and PBNDS—nothing else—command it to pay detainee workers $1 per day only. Ex. C (GEO 30(b)(6) Dep.)  at 92:2-23.

---

[5] Ex. N (2019 PBNDS § 5.8 - VWP) at 177.

PLTFS.' MOT. FOR SUMM. J. – 4
(3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

**C.    ICE has little involvement with the day-to-day operation of the VWP, as GEO alone hires, assigns, trains, supervises, pays, and terminates detainee workers.**

GEO's classification unit manages the VWP at NWDC. Ex. X (Singleton Dep.) at 15:4-18, 21:3-14; Ex. V (Heye Dep.) at 20:9-22:4, 23:19-24:1; *see* Dkt. No. 70 (Heye Decl.) at ¶ 1.16. ICE is not directly involved in the day-to-day operation of the VWP, Ex. V (Heye Dep.) at 24:2-26:3, 28:8-14, 54:22-61:21, and plays no role in assigning detainee workers to their individual work assignments. Ex. I (Tracy Dep.) at 84:13-16; Ex. H (Johnson Dep.) at 64:15-17; Ex. C (GEO 30(b)(6) Dep.) at 83:22-85:17. GEO created "job descriptions" for the various detainee worker assignments, which specify "job titles," "work areas," "specific work duties," "normal work hours," "special requirements," and reasons for "termination." Ex. X (Singleton Dep.) at 67:13-68:19; Ex. C (GEO 30(b)(6) Dep.) at 72:18-73:20; Ex. Y (various jobs). The job descriptions are made available to detained persons, and they may request specific work assignments by completing a "kite." Ex. V (Heye Dep.) at 61:22-62:23; Ex. I (Tracy Dep.) at 54:7-19.

Broadly speaking, detainee jobs are "industrial, maintenance, custodial, service, or other jobs," *Id.* at 82, and specific work assignments include kitchen and laundry workers, barbers, and various janitorial roles. Ex. S (GEO Policy and Procedure Manual – 5.1.2 Voluntary Work Program); *see* Ex. C (GEO 30(b)(6) Dep.) at 74:6-18. Detainee workers may also staff temporary work details as the need arises. Ex. S (GEO Policy 5.1.2) at 2.

GEO's classification officers review the kites and make work assignments as they become available. *Id.*; Ex. S (GEO Policy 5.1.2) at 3-4. "Classification level, attitude, behavior, and physical ability to perform the job" are factors GEO considers when selecting detainee workers. Ex. S. (GEO Policy 5.1.2) at 3; Ex. I (Tracy Dep.) at 52:10-18. GEO retains discretion

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

over who to hire within the VWP. *Id.* From there, GEO's classification officers create a "roster" or schedule of detainee workers outlining when and where detainee workers are authorized to work. Ex. V (Heye Dep.) at 64:3-24; Ex. Z (Oct. 22, 2015 Detainee Worker Roster).

Once hired, GEO provides detainee workers on-the-job training covering all performance aspects of the job assignment as well as all applicable health and safety regulations. Ex. I (Tracy Dep.) at 33:18-34:8, 38:2-10, 41:8-23; Ex. G (Delacruz Dep.) at 47:24-50:16, 55:20-56:4, 97:14-19; Ex. II (Detainee Handbook) at 15 ("You will be provided any necessary training to perform the job to which you are assigned…."). Detainee workers with prior skill or experience had no opportunity to earn more money or for profit or loss. Ex. C (GEO 30(b)(6) Dep.)  at 87:24-88:6; Ex. I (Tracy Dep.) at 34:9-34:23; 53:5-20, 60:4-7, 66:13-67:3, 73:19-23; Ex. G (Delacruz Dep.) at 79:18-21, 84:16-20, 97:4-8; Ex. H (Johnson Dep.) at 33:21-34:1, 51:13-18, 54:10-18. GEO also provides all equipment and materials necessary for VWP jobs, including uniforms for the kitchen workers. Ex. I (Tracy Dep.) at 32:24-33:17, 41:25-42:14, 59:11-17, 61:6-8, 73:24-74:2, 75:11-13; 79:9-11; Ex. H (Johnson Dep.) at 51:3-51:12, 55:6-14; Ex. G (Delacruz Dep.) at 79:22-24, 84:21-85:1, 114:25-116:5.

GEO personnel are responsible for directing and supervising the work of detainee workers. Ex. I (Tracy Dep.) at 21:5-24:2, 31:12-32:9, 37:9-18, 39:4-16, 40:2-41:5; Ex. G (Delacruz Dep.) at 21:14-23:1, 33:2-7, 74:22-75:3ˌ 82:4-84:8; Ex. H (Johnson Dep.) at 20:9-20, 27:14-30:23, 32:1-18, 47:1-15, 71:20-24. In fact, this was listed among the "Primary Duties and Responsibilities" for GEO personnel. Ex. BB (Sergeant Job Description), Ex. CC (Food Service Supervisor Job Description) at 2; Ex. DD (Food Service Detention Officer Job Description); Ex. EE (Janitor Job Description); Ex. FF (Maintenance Technician Job Description); *see* Ex. I (Tracy Dep.) at 19:14-20:23; Ex. G (Delacruz Dep.) at 20:14-21:7.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

ICE plays no direct role in managing or supervising detainee workers. Ex. I (Tracy Dep.) at 45:18-46:18, 84:13-20; Ex. G (Delacruz Dep.) at 74:15-21; Ex. H (Johnson Dep.) at 37:20-43:20.

Detainee workers may not deviate from GEO's direction or training, their specific work duties, work area, or the equipment or supplies provided by GEO. Ex. I (Tracy Dep.) at 34:25-37:8, 49:6-25, 56:21-57:24, 59:1-10, 61:23-62:5, 63:3-64:1, 74:3-19, 74:22-75:10, 75:14-20; Ex. G (Delacruz Dep.) at 39:3-41:4, 79:15-17, 79:25-80:8, 88:1-12, 96:24-97:3, 97:9-13; Ex. H (Johnson Dep.) at 50:9-51:2, 52:9-22, 53:20-54:3, 54:24-55:1. In the case of the kitchen detainee workers, GEO conducts regular hygiene inspections to ensure that the workers comply with all applicable safety standards. Ex. G (Delacruz Dep.) at 113:2-114:23.

"Detainees participating in the volunteer work program are required to work as scheduled," and "[u]nexcused absences from work or unsatisfactory work performance" will result in "removal" from the VWP. Ex. S (GEO Policy 5.1.2) at 4-5. In other words, GEO may fire detainee workers for cause. Ex. I (Tracy Dep.) at 51:20-52:3, 64:14-66:12, 73:8-18, 76:3-17; 80:22-24; Ex. G (Delacruz Dep.) at 94:2-96:17; Ex. H (Johnson Dep.) at 46:6-25, 55:19-57:3, 58:21-59:11 Detainee workers acknowledge the same by signing GEO's required "volunteer work program agreement," which details GEO's baseline expectations for detainee workers. Ex. Q (Volunteer Work Program Agreement). The detainee worker job descriptions also list the specific grounds for "termination," including failure to follow staff instructions and unsatisfactory work performance. Ex. Y (Various Detainee Worker Job Descriptions); Ex. GG (Various Detainee Kitchen Worker Job Descriptions).

At the conclusion of each shift, GEO staff complete a "Daily Detainee Worker Pay Sheet," evaluating and "affirming" whether "the job was completed, [the] detainee maintained

PLTFS.' MOT. FOR SUMM. J. – 7
(3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

a good attitude, and the detainee began work on time." Ex. I (Tracy Dep.) at 82:22-84:12; Ex. AA (Detainee Worker Pay Sheet). So, for example, if a detainee worker failed to complete their assigned task satisfactorily, GEO staff may withhold their signature from this form. Ex. H (Johnson Dep.) at 69:2-70:8. And without a completed detainee worker pay sheet, detainee workers are not paid. *Id.*

About 470 detained persons work in the VWP at NWDC each day. Ex. V (Heye Dep.) at 93:10-98:19, Ex. W (Detainee Worker Average Hours Spreadsheet). In all the, average detainee shift lasts 1.72 hours. *Id.;* Ex. C (GEO 30(b)(6) Dep.)  at 17:16-20:22. GEO pays the detainee workers the day after their shift through the Keefe Banking System, depositing their pay in their commissary account. Ex. V (Heye Dep) at 115:7-116:12 After GEO pays the detainees, it then seeks reimbursement from ICE for the amounts paid. Ex. C (GEO 30(b)(6) Dep.)  at 91:9-92:1; Ex. T (GEO Bills to ICE).

The detainee workers make an "important contribution to maintaining [the] facility." Ex. Q (Volunteer Work Program Agreement); Ex. I (Tracy Dep.) at 81:3-82:2; Ex. H (Johnson Dep.) at 48:23-49:2. For one thing, GEO has no one else to perform the janitorial, barbershop, and laundry services the detainee workers provide at NWDC. Ex. I (Tracy Dep.) at 60:11-61:8; 62:9-11, 67:11-70:20, 75:21-76:2, 80:25-81:2; Ex. H (Johnson Dep.) at 51:22-52:4, 60:17-61:12. For another, the detainee workers—as many as 33 working on one of three shifts— assist in serving over 34,000 meals per week at NWDC. Ex. G (Delacruz Dep.) at 90:3-92:2, 120:23-123:25. Without the detainee labor, these meals would be prepared by GEO's kitchen staff of 13 people, three of whom carry administrative roles. *Id.* at 44:24-45:24. Without the detainee workers—for instances in the event of a prolonged detainee worker strike—GEO would have to require overtime for its existing personnel, secure workers from other GEO

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1   facilities, or hire third-party contractors to continue operating the NWDC. Ex. C (GEO

2   30(b)(6) Dep.) at 77:17-81:12, 89:5-90:18.

3       To summarize, GEO alone hires, assigns, trains, supervises, and terminates detainee

4   workers. Ex. C (GEO 30(b)(6) Dep.) at 83:22-88:20; Ex. G (Delacruz Dep.) at 125:8-126:20;

5   Ex. I (Tracy Dep.) at 88:3-89:2.

6                   **III.     LEGAL ARGUMENT**

7       **A.     Standard of review.**

8       This Court knows the summary judgment standard well: "[s]ummary judgment is

9   proper only if the pleadings, discovery, affidavits, and any other materials on file show that

10  there is no genuine issue as to any material fact." *Carpenters Health & Sec. Tr. of W.*

11  *Washington v. Nw. Interior Specialties*, LLC, 3:16-CV-05166-RJB, 2017 WL 1166154, at *1

12  (W.D. Wash. Mar. 29, 2017). To defeat summary judgment, the nonmoving party must present

13  specific, significant probative evidence, not simply "some metaphysical doubt." *Id.*

14      The legal effect or construction of a contract is a question of law that properly may be

15  determined on a summary-judgment motion when the parties' intentions are not in issue.

16  *Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 970 F.2d 1138, 1147 (2d Cir.

17  1992), judgment aff'd on other grounds, 510 U.S. 86 (1993).

18  In fact, when a contract is unambiguous on its face, the parol-evidence rule bars the use of

19  outside evidence to dispute its terms, and summary judgment is particularly appropriate.

20  *Sullivan v. Massachusetts Mut. Life Ins. Co.,* 611 F.2d 261, 264 (9th Cir. 1979). Thus, when

21  there is no genuine issue as to the meaning of a contract, the mere assertion that ambiguity or

22  divergent intent exists will not prevent summary judgment from being entered. *See id.; Harris*

23  *Trust and Sav. Bank,* 970 F.2d at 1147.

24

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1    Here, the undisputed factual record shows that this case is ripe for summary disposition.

2    **B.    GEO is an "employer" under the MWA and the Class Members are its "employees."**

3    The MWA states in pertinent part that an "employee" is "any individual employed by

4 an employer..." RCW 49.46.010(3). And "[a]n '[e]mployer' is any individual or entity 'acting

5 directly or indirectly in the interest of an employer in relation to an employee.'" *Anfinson*, 281

6 P.3d at 297 (quoting RCW 49.46.010(4)). And "'[e]mploy' includes to permit work." *Id.*

7 (quoting RCW 49.46.010(2)). The Washington Supreme Court has held that "[t]aken together,

8 these statutes establish that, under the MWA, an employee includes any individual permitted

9 to work by an employer. *This is a broad definition*." *Id.* (emphasis added). The "liberal

10 construction" of the MWA augurs in favor of coverage for "employee[s]." *Id.* at 299.

11    To determine whether in fact a person is an "employee" under the MWA, Washington

12 uses the "economic-dependence test." *Id.* at 299-300. The Washington Pattern Jury Instruction

13 on employee status outlines the following factors in making this determination:

14        1)   Right to control, and degree of control exercised by [GEO] over [Plaintiffs];

15        2)   the extent of the relative investments of [Plaintiffs] and [GEO];

16        3)   the degree to which [Plaintiffs'] opportunity for profit or loss is determined by [GEO];

17        4)   the skill and initiative required in performing the job;

18        5)   the degree of permanence of the working relationship; and

19        6)   whether the service rendered is an integral part of [GEO's] business.

20 Wash. Pattern Jury Instr. Civ. WPI 330.90 (7th ed.), Employee Versus Independent Contractor

21 (Minimum Wage Act) (citing *Anfinson*). This list of factors is nonexclusive, and no single

22 factor is dispositive. *Id.* However, all of the factors are satisfied here.

23

24

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1.   **GEO directly supervised and controlled the detainees' work.**

Under its Contract with ICE, GEO was charged with developing and managing a detainee work program. And while the program must adhere to ICE standards—as well as local and State laws—GEO carries out the day-to-day work of the operation. GEO creates the job descriptions for the detainee worker positions, evaluates whether detainee workers are suitable for a given job, approves shift locations and length, trains detainee workers, manages and directs the work, evaluates whether the work has been performed satisfactorily, signs off on the completion of the work, "removes" or "terminates" bad workers, and handles all aspects of payroll. GEO's control is absolute, and to argue otherwise is to argue that GEO does not run a secure detention facility. There is no genuine dispute on this point.

2.   **Detainee workers worked on GEO's premises using only GEO supplies.**

Members of the class worked at NWDC exclusively, and not offsite, using only GEO supplies and equipment. GEO's investment in the "equipment and facilities" directly reflects The Class Members' economic dependence on GEO as the entity that furnishes the supplies, equipment, and place where the work is performed. *Torres-Lopez v. May*, 111 F.3d 633, 640-41 (9th Cir. 1997). This factor is undisputed.

3.   **Detainee workers have no opportunity for profit or loss.**

GEO caps detainee worker pay at $1 per day, and as captured perfectly by one GEO's former sergeants at deposition, Class Members have zero opportunity for profit or loss depending on their skill and experience:

> **Q:**   Now, the medical cleaners, could they make more money if they were excellent cleaners?
>
> **A:**   Compensation for any job in the facility is one dollar per day, whether they are an excellent cleaner, not such a good cleaner, they

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

have been cleaning for 50 years, if this is the first day they picked
up a mop, compensation is one dollar per day, not more, not less.

Ex. I (Tracy Dep.) at 66:13-19; Ex. C (GEO 30(b)(6) Dep.) at 87:24-88:6 ("Q: Everyone is

paid the same, regardless of their skill and experience? A: Yes."). This factor is undisputed as

well.

### 4.      Working in the VWP required no pre-existing skill or initiative.

While many detainee workers were skilled laborers outside NWDC, the general

janitorial, kitchen, and laundry work performed in the VWP required no pre-existing skill or

initiative. Ex. II (Detainee Handbook) at 15 ("Prior experience and/or specialized skills are not

a requirement for participation in the voluntary work program."); *see* Ex. Y (describing various

VWP jobs as "UNSKILLED"). Instead, GEO provided on-the-job training to all those who

wanted to work. There is no dispute over this factor.

### 5.      The working relationship between GEO and the detainee workers is permanent.

GEO has operated the VWP at NWDC for the entirety of the class period (2014 to

present), and approximately 470 detainee workers take part in the program daily, with the

average shift lasting 1.72 hours. Ex. W (Detainee Worker Average Hour Spreadsheet). The

working relationship between GEO and the detainee workers will last as long as GEO operates

the VWP and so long as detainee workers are permitted to work and continue to volunteer for

the program. Moreover, it is generally anticipated that an individual detainee assigned to a

particular work detail will continue to perform that job indefinitely; detainees are not simply

assigned to jobs willy-nilly from one day to the next. This factor is satisfied.

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

### 6.    Detainee workers are integral to GEO's operations at NWDC.

GEO acknowledges that detainee workers make an "important contribution" to maintaining and operating NWDC. Each day, hundreds of workers cook, clean, and do laundry at NWDC to keep the facility running. For example, GEO employs two (maybe three) janitors that clean the non-secured areas of the facility, but the pods—where the detainees live—the kitchen, the laundry room, recreational areas, barbershop, and hallways in the 1,500-bed facility are cleaned exclusively by detainee workers. If detainee labor were removed from the equation—say in the event of a prolonged worker stoppage—GEO would need to authorize overtime for its existing workforce, bring in outside personnel, or hire third-party vendors, or all of the above. This factor is satisfied as well.

Finally, from the larger standpoint of economic dependence, it is worth reiterating that working in the VWP is the only way detainees can earn money for themselves to buy supplemental toiletries and food from the commissary, pay for telephone calls, or do anything else that requires money. Indeed, detainees are specifically prohibited from undertaking any other commercial activity or operating any side businesses. Ex. II (Detainee Handbook) at 22, 24 ("conducting a business" is barred and may lead to detainee discipline). While their basic necessities of food and shelter might already be met, their ability for any other economic gain is solely through the GEO-run VWP.

There is no *genuine* dispute of material fact concerning the nature of the relationship between GEO and the detainee workers: it is one of employer and employee. As such, the Court should grant summary judgment in favor of Plaintiffs on their MWA claim.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

**C.      GEO's contract with ICE does not prevent GEO from paying detainee workers the Washington Minimum Wage.**

Despite the existence of an employer-employee relationship between GEO and the detainee workers, GEO argues that its contract with ICE prevents it from paying the VWP participants more than $1 per day.[6] Even if GEO had not already conceded that it has discretion to pay more,[7] the Court should grant summary judgment finding that GEO's contract with ICE does not act as a barrier to compliance with the MWA.

The PBNDS requires Voluntary Work Program participants to be paid at "*at least* $1 per day." Thus, by the plain language of the PBNDS, this rate constitutes a floor, not a ceiling. And because the Contract also directs GEO to comply with *all* applicable laws and regulations, GEO must comply with the MWA.

GEO will likely argue that the contract reimburses GEO $1 per day for each detainee worker shift, but the reimbursement rate does not dictate what GEO must pay the detainee workers in the first instance. Granted, compliance costs associated with paying detainee workers the minimum wage may reduce GEO's profit margin on the NWDC Contract, but as it has done in the past, GEO may request an equitable adjustment under its contract with ICE seeking more money. *See* EX HH (GEO's Equitable Adjustment Request to ICE).

Rather than acting as a bar to compliance, the plain language of GEO's Contract with ICE grants GEO the discretion to pay detainee workers more than $1 per day and directs GEO to comply with all applicable state laws, including the MWA.

---

[6] At deposition, GEO's 30(b)(6) designee testified that the GEO-ICE Contract and the PBNDS, which the Contract incorporates by specific reference, provide the sole authority for GEO's belief that it may only pay detainee workers $1 per day. Ex. C (30(b)(6) Dep.) at 92:2-23
[7] Ex. U (GEO's RFA Resp.) at RFA No. 67.

PLTFS.' MOT. FOR SUMM. J. – 14
(3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

2

**D.   GEO's counterclaim and affirmative defense for "Offset/Unjust Enrichment" should be dismissed because GEO contracted with ICE—and received payment—for the benefits it now seeks to disgorge from Plaintiffs.**

3

4

5

6

7

8

9

10

GEO asserted identical counterclaims and affirmative defenses for offset and unjust enrichment in this action and the now-consolidated case brought by the State of Washington. *Compare* Dkt. No. 92 (GEO's Ans. to Pltfs.' 1ˢᵗ Am. Compl.) *with* Dkt. No. 34, *Washington v. GEO*, No. 17-cv-5806-RJB (W.D. Wash. Dec. 20, 2017) (GEO's Ans. to State's Compl.). The Court dismissed GEO's counterclaim against the State, Dkt. No. 44, *State's Case* (Feb. 28, 2018), and GEO voluntarily withdrew its offset affirmative defense. Dkt. No. 124, *Washington v. GEO*, No. 17-cv-5806-RJB (W.D. Wash. Sept. 14, 2018). Yet GEO maintains both the defense and counterclaim here. But under the circumstances, GEO can establish neither.[8]

11

12

13

14

15

16

17

18

19

20

GEO's argument goes like this: because it provides "basic necessities to all detainees housed at NWDC, … includ[ing] food, shelter, clothing, bedding, recreation, and entertainment" (referred to hereafter as "basic necessities"), it is entitled to an offset of costs incurred caring for Class Members and operating the VWP. Dkt. No. 92. But GEO does not provide these basic necessities out of a sense of altruism or with an expectation of recouping its costs from the detainees—it is paid handsomely by ICE to do so as part of a nine-figure contract that is "inclusive of [GEO's] direct costs, indirect costs, overhead and *profit* necessary to provide the detention and food service" to detained persons at NWDC. Ex. B at 46 (emphasis added). And GEO is reimbursed by ICE for the $1-a-day payments it makes to detainee workers.

21

22

23

24

---

[8] As the Court previously noted, GEO's "counterclaim overlaps substantially with the Affirmative Defense." Dkt. No. 40 (Order on Pltfs.' Mot. to Dismiss). Because there is no meaningful distinction between the counterclaim and affirmative defense, Plaintiffs treat them as one in this motion.

On these undisputed facts, GEO is not entitled to restitution from the Class for housing and other expenses because GEO contracts with ICE to provide these services and has already been paid in full by ICE. This is not unjust enrichment of the Class at GEO's expense.

Unjust enrichment occurs only "when one retains money or benefits which in justice and equity belong to another." *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12, 18 (Wash. Ct. App. 1991). "The three elements of an unjust enrichment claim are: 1) a benefit conferred upon the [counterclaim-] defendant by the [counterclaim-] plaintiff; 2) an appreciation or knowledge by the [counterclaim-] defendant of the benefit; and 3) the acceptance or retention by the [counterclaim-] defendant of the benefit *under such circumstances as to make it inequitable* for the [counterclaim-] defendant to retain the benefit without the payment of its value." *Becker Family Builders Co-Plaintiffs Grp. v. F.D.I.C.*, 09-cv-5477-RJB, 2010 WL 3720284, at *5 (W.D. Wash. Sept. 17, 2010) (emphasis added) (citing *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008)); *see* Dkt. No. 40 at 4.

Here, GEO cannot satisfy the tripartite elements of unjust enrichment. First, while GEO has provided the Class Members and other detainees with a benefit—basic necessities during detainment—this fact standing alone is not sufficient to warrant restitution. *Lynch v. Deaconess Med. Ctr.*, 776 P.2d 681, 683 (1989) ("[T]he mere fact that a person benefits another is not sufficient to require the other to make restitution." (citing Restatement (First) of Restitution § 1 *Comment a.* (1937)); *see* Restatement (Third) of Restitution and Unjust Enrichment § 2(1) (2011) ("The fact that a recipient has obtained a benefit without paying for it does not of itself establish that the recipient has been unjustly enriched.").

Second, the Class Members were involuntarily detained and the "benefits" at issue were thrust upon them with neither right of refusal nor say concerning the type or quality of the

food, shelter, clothing, bedding, recreation, and entertainment for which GEO now seeks restitution. Forcing Class Members to pay for the value of the basic necessities provided to them during their involuntary detention would be an inequitable forced exchange.

Third, and weighing most heavily against GEO, it is not *inequitable* for Class Members to retain the value of the basic necessities because GEO furnished them freely as part of its independent contractual obligation to ICE to provide such necessities to detainees at NWDC. The Restatement of Restitution is instructive here:

> A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person.

Restatement (First) of Restitution § 110 (1937).[9] A later edition of the Restatement illustrates this principle thusly:

> [W]hen A confers a benefit on B as the performance of A's contract with C, C's failure to render the performance promised to A does not necessarily mean that B has been enriched at A's expense; nor does it mean that any enrichment of B is necessarily unjust.

Restatement (Third) of Restitution and Unjust Enrichment § 25, *comment b* (2011).[10] This is in part to avoid a "forced exchange" in which the conferring party seeks restitution for a benefit voluntarily given to a recipient that had no opportunity to refuse the benefit. *Id.; see id.* at §§ 2(3)-(4), and *comments d* and *e*. Moreover, "[l]iability in restitution will not subject the

---

[9]  Courts often look to the guiding principles of the Restatement of Restitution to decide what is equitable under the circumstances. *See, e.g., Synergy Greentech Corp. v. Magna Force, Inc.,* 15-cv-5292-BHS, 2016 WL 3906908, at *2 (W.D. Wash. July 19, 2016) (citing the Restatement of Restitution as persuasive authority for analyzing unjust enrichment claim); *Lynch,* 776 P.2d at 683 (same).
[10]  Of course, there is no allegation here that ICE failed to perform on its Contract with GEO. If, as the Restatement provides, the Class would not have been unjustly enriched at GEO's expense even if ICE failed to pay GEO, it is all the more clear there is no unjust enrichment where GEO has already been paid.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1  defendant to an obligation from which it was understood by the parties that the defendant

2  would be free." *Id.* at § 25(2)(c).

3      Moreover, unlike the scenarios described in the Restatement in which the party confers

4  a benefit upon another as part of its contractual obligation to a third party who *fails* to uphold

5  its end of the bargain, ICE has paid GEO a king's ransom to provide immigration detainees

6  with basic necessities. Importantly, GEO does not allege nor do the facts show that GEO

7  entered the contract with ICE by fraud or that it rendered basic necessities to the Class

8  Members by mistake. Likewise, there is no evidence that GEO entered the contract with ICE

9  expecting remuneration of any kind from the detainees. Thus, in balancing the equities, GEO's

10  counterclaim and affirmative defense for restitution of the basic necessities provided to Class

11  Members and other civil immigration detainees fails.

12      Finally, to the extent the Court finds that GEO violated the MWA as a matter of law,

13  GEO cannot recover on its counterclaim. Under longstanding principles of equity, a party

14  cannot use the doctrine of unjust enrichment to recover losses incurred as part of an illegal

15  transaction. *See, e.g., Evan v. Luster*, 928 P.2d 455, 458 (Wash. Ct. App.1996); *Tanedo v. E.*

16  *Baton Rouge Parish Sch. Bd.*, No. SA CV-10-01172-JAK, 2011 WL 5447959 at *5-6 (C.D.

17  Cal. Oct. 4, 2012). Moreover, permitting the counterclaim or offset would itself work an

18  inequity because detainees who did not work in the VWP would have received the exact same

19  benefits from GEO without paying any compensation, while VWP workers would be denied

20  (by the offset) from receiving the full value of their labor as mandated by the MWA.

PLTFS.' MOT. FOR SUMM. J. – 18
(3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

# IV. CONCLUSION

In essence, GEO is taking advantage of a captive workforce to run and maintain the NWDC, paying detainee workers $1 a day for their labor regardless of how long they work. Because all of the indicia of employment are met and because GEO's contract with ICE commands GEO to comply with state laws, the Court should grant Plaintiffs' summary judgment motion, affirming that all workers—even civil immigration detainees—shall enjoy the minimum standards of employment within the state of Washington.

RESPECTFULLY SUBMITTED this 2nd day of January, 2020.

SCHROETER GOLDMARK & BENDER

*s/ Jamal N. Whitehead*
Adam J. Berger, WSBA #20714
Lindsay L. Halm, WSBA #37141
Jamal N. Whitehead, WSBA #39818
Rebecca J. Roe, WSBA #7560
810 Third Avenue, Suite 500
Seattle, WA 98104
Tel: (206) 622-8000
berger@sgb-law.com
halm@sgb-law.com
whitehead@sgb-law.com
roe@sgb-law.com

THE LAW OFFICE OF
R. ANDREW FREE
R. Andrew Free (*Pro Hac Vice*)
P.O. Box 90568
Nashville, TN 37209
Tel: (844) 321-3221
andrew@immigrantcivilrights.com

OPEN SKY LAW, PLLC
Devin T. Theriot-Orr, WSBA # 33995
20415 – 72nd Avenue S, Suite 110
Kent, WA 98032
Tel: (206) 962-5052
devin@opensky.law

1

MENTER IMMIGRATION LAW, PLLC
Meena Menter, WSBA # 31870
8201 – 164th Avenue NE, Suite 200
Redmond, WA 98052
Tel: (206) 419-7332
meena@meenamenter.com

*Class Counsel*

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on January 2, 2020, I electronically filed the foregoing, together
with its supporting pleadings and attachments thereto, with the Clerk of the Court using the
3 CM/ECF system, which will send notification of such filing to the following:

4 Devin T. Theriot-Orr     R. Andrew Free
  OPEN SKY LAW, PLLC     THE LAW OFFICE OF R. ANDREW FREE
5 20415 – 72nd Avenue South, Suite 110 PO Box 90568
  Kent, WA 98032       Nashville, TN 37209
6 devin@opensky.law      andrew@immigrantcivilrights.com
  *Attorney for Plaintiff*       *Attorney for Plaintiff*

7

8 Meena Menter       Joan K. Mell
  MENTER IMMIGRATION LAW PLLC III BRANCHES LAW, PLLC
9 8201 – 164th Avenue NE, Suite 200  1019 Regents Boulevard, Suite 204
  Redmond, WA 98052     Fircrest, WA 98466
10 meena@meenamenter.com    joan@3ebrancheslaw.com
  *Attorney for Plaintiff*       *Attorney for Defendant*

11 Colin L. Barnacle      Christopher M. Lynch
  Ashley E. Calhoun      US DEPARTMENT OF JUSTICE
12 Christopher J. Eby      Civil Division, Federal Programs Branch
  Adrienne Scheffey      1100 "L" Street NW
13 Allison N. Angel       Washington, D.C. 20005
  AKERMAN LLP       christopher.m.lynch@usdoj.gov
14 1900 Sixteenth Street, Suite 1700  *Attorneys for Interested Party*
  Denver, CO 80202
15 colin.barnacle@akerman.com
  ashley.calhoun@akerman.com
16 christopher.eby@akerman.com
  allison.angel@akerman.com
17 adrienne.scheffey@akerman.com
  *Attorneys for Defendant*

18

    DATED at Seattle, Washington this 2nd day of January, 2020.

19

            *s/ Virginia Mendoza*
20          VIRGINIA MENDOZA, Legal Assistant
           Schroeter Goldmark & Bender
21          810 Third Avenue, Suite 500
           Seattle, WA 98104
22          Tel: (206) 622-8000
           mendoza@sgb-law.com

23

24

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305