The Honorable Robert J. Bryan

1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

8

9 | UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated,

10

11

Case No. 3:17-cv-05769-RJB

**DEFENDANT THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs/Counter-Defendants,

12

v.

13

THE GEO GROUP, INC.,

14

**NOTE ON MOTION CALENDAR:**
January 24, 2020

Defendant/Counter-Claimant.

15

ORAL ARGUMENT REQUESTED

16

17

18

19

20

21

22

23

24

25

26

27

---

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB)

51273540;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

Defendant The GEO Group, Inc. ("GEO"), by and through its undersigned counsel, hereby submits its Motion for Summary Judgment.

## I.   INTRODUCTION

This litigation arises out of allegations by Plaintiffs that, despite the vastly different circumstances between individuals in Immigration and Customs Enforcement ("ICE") detention and those who are not, there should be no distinction between them for the purposes of the Washington Minimum Wage Act ("WMWA").   An important foundation to GEO's primary defenses is that both the WMWA and the State of Washington clearly recognize these differences when it comes to their own prisoners and civil detainees, but do not when it comes to ICE's detainees housed at GEO, ICE's federal contractor. Plaintiffs argue that individuals who participate in the ICE-mandated Voluntary Work Program ("VWP") at GEO's Northwest Ice Processing Center ("NWIPC") – with its stated purpose of reducing idleness while confined, improving morale, and reducing disciplinary incidents – should be classified as "employees" for purposes of the WMWA. As demonstrated herein, Plaintiffs' claim that the ICE detainees are employees under the WMWA fails as a matter of law. As relevant here, there are no material facts in dispute. Accordingly, GEO is entitled to summary judgment for three reasons:

First, detainees at the NWIPC do not fall within the WMWA's definition of "employee". The WMWA explicitly exempts individuals who are required to sleep and reside where they work.  RWC § 49.46.010(3)(j). It also excludes all detainees and inmates within state prisons, jails, and civil detention facilities from the definition of "employee." There is no question that detainees at the NWIPC are required to sleep and reside where they perform their VWP duties and are, therefore, exempted from the WMWA.

Second, the WMWA violates the U.S. Constitution's Supremacy Clause in two ways: (1) it directly regulates the federal government (via GEO); and (2) it discriminates against the federal government and those with whom the federal government deals. GEO is therefore entitled to intergovernmental immunity under clear Supreme Court and Ninth Circuit precedent.

Third, GEO is immune from the WMWA under the doctrine of derivative sovereign

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 1

51273540;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

immunity. In defining who is and who is not an employee at the NWIPC, GEO indisputably follows the directive of the federal government and the unambiguous terms of its contract with ICE.

As detailed more fully herein, this Court should grant GEO's Motion for Summary Judgment and dismiss Plaintiffs' WMWA claims in their entirety.

## II.      STATEMENT OF UNDISPUTED MATERIAL FACTS

The NWIPC houses ICE detainees while they await the results of immigration proceedings or deportation. Dec. of Barnacle, Ex. A, 43.("[ICE] is responsible for the detention, health, welfare, transportation, and deportation of detainees in removal proceedings, and those subject to final order of removal from the United States. ICE houses detainees in Contractor-owned, Contractor-operated detention facilities. . ."). All detainees at the NWIPC live and sleep at the facility until ordered released or deported by a legal authority. ECF 1 ¶ 4.4 (describing detainees as "captive"); Dec. of  Barnacle, Ex. B, Nwauzor Dep. 36, 72-73 (describing living and sleeping in the NWIPC and how he was required to stay there until granted asylum by a judge); Dec. of  Barnacle, Ex. C, Johnson Dec. ¶¶ 10, 18 (NWIPC detainees are held in the lawful custody of ICE) (hereinafter "Johnson Dec."); Dec. of  Barnacle, Ex. D, Detainee Handbook ("You have to share a living space with a lot of people so it is important to be considerate … [b]e quiet at night so other people can sleep."); Dec. of Scott ¶¶ 7-9. As part of its duties in safely housing federal detainees at the NWIPC, GEO must comply with the 2011 Performance Based National Detention Standards ("PBNDS").  Ex. A, pg. 45; Ex. E, 2009 ICE contract, pg. 57; ECF 19;   2011   Performance-Based   National   Detention   Standards   *available   at* http://www.ice.gov/detention-standards/2011/ (last accessed Dec. 30, 2019) (hereinafter "PBNDS"). Among the expected outcomes of the PBNDS is that "[d]etainees shall live and work in a safe and orderly environment." PBNDS § 2.10. To reduce the unrest that comes with idleness, both GEO's Contract with ICE (the "ICE Contract") and the PBNDS require that GEO implement and maintain a VWP at the NWIPC.  PBNDS § 5.8; Ex. A p. 82 *see also* Ex. E, 89.  GEO's ICE Contract uses the word "shall" in referring to the VWP, signaling a mandatory directive:

---

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 2

51273540;1

"Detainee labor shall be used in accordance with the detainee work plan developed by [GEO], and will adhere to the ICE PBNDS on Voluntary Work Program." Ex. A at § IX, p. 82. The VWP is a program that exists solely to provide "detainees opportunities to work and earn money while confined . . . ." PBNDS § 5.8. The program addresses the "negative impact of confinement" by decreasing idleness, improving morale, and reducing disciplinary incidents. *Id.*; Johnson Dec. ¶ 11. VWP positions at the NWIPC exist only to provide opportunities for those detainees confined in ICE custody. Johnson Dec. ¶¶ 12, 23-23 (explaining that only detainees may participate in the VWP). Should GEO fail to implement the VWP, ICE may withhold or deduct up to 10% of each monthly invoice until GEO provides a compliant VWP. ECF 19 at 371.

The VWP explicitly applies to detainees, not GEO employees. GEO's ICE Contract defines "detainee" as "[a]ny person confined under the auspices and authority of any federal agency . . ." Ex. A at 47; Ex. E at 51. GEO tracks the detainees who participate in the VWP and submits their names, along with their detainee numbers, to ICE for reimbursement for GEO's payment to detainees for their participation. Johnson Dec. ¶ 22; Dec. of Barnacle, Ex. F, Delacruz Depo. 103:6-10. Consistent with the terms of the ICE Contract, participation in the VWP is limited to detained individuals—the positions are not offered to the public or to GEO's employees. Declaration of Bruce Scott, ¶¶ 4-6. The ICE Contract's terms are clear: "Detainees shall not be used to perform the responsibilities or duties of an employee." Ex. A at 82. Indeed, the ICE Contract further ensures that detainees cannot be classified as employees, by requiring that all individuals classified as "employees" at the NWIPC "shall be a United States Citizen or a person lawfully admitted into the United States for permanent residence . . ." Ex. A at 63; Ex. E 69. Additionally, the ICE Contract requires that each actual GEO employee sign a document certifying that they agree to standards of conduct laid out therein including that, (1) a GEO employee cannot have outside social contact with other detainees *or their families* and (2) a GEO employee cannot accept or receive any gift or favor from any detainee or *a detainee's family*. Ex. A at 62. It would be virtually impossible for any detainee to sign such a document required of GEO employees – as doing so would mean agreeing to cut off all social contact with his or her

---

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 3

51273540;1

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1  family and fellow detainees.

2      Similar to ICE's VWP, the State of Washington itself operates a number of programs for

3  civil detainees where it pays less than minimum wage. Dec. of Barnacle, Ex. G, Eagle Dep. 8:9

4  (hereinafter "Eagle Dep."); Dec. of Barnacle, Ex. H Williams Dec, ¶ 4 (hereinafter "Williams

5  Dec."); Dec. of Barnacle, Ex. I. For example, the State operates, among others, a work program

6  at the Special Commitment Center ("SCC"), Eagle Dep. 8:9, where individuals are civilly

7  detained. At the SCC, detainees are required to perform menial tasks (like those in the VWP) for

8  less than minimum wage, including, janitorial work  (Eagle Dep. 9:19-25, 10:1; 19:1-7), laundry

9  (Dec. of Barnacle, Ex. J, Murphy Dep. 19:7-13), and food preparation for less than minimum

10  wage. Eagle Dep. 19:8-19; 31:8-14. To carry out operations at the SCC, the State also engages

11  contractors who are able to benefit from products and services obtained through subminimum

12  wages. Eagle Dep. 21:2-21. In turn, the State receives a financial benefit by exempting its civil

13  commitment programs from minimum wage. Eagle Dep. 17:3-19; 39:18-25; 40:1. In addition, the

14  individuals in this voluntary work program benefit from the program, which serves as an effective

15  tool to provide individuals with a feeling of self-worth, responsibility, and self-confidence as well

16  as to exercise their minds. Murphy Dep. 19:11-13; 20:22-24.

17      Additionally, the State offers an Inmate Work program to detainees at the Pierce County

18  Jail. Williams Dec. ¶ 4. The program is available to individuals who have not yet been convicted

19  of a crime. *Id.* ¶ 3. As part of the operations of Pierce County Jail, the State contracts with private

20  corporations to provide food services within the jail. *Id.* ¶ 8. Those private contractors operate the

21  kitchen using detainee labor, for which the detainees are paid subminimum wages. *Id.* ¶ 3.

22  Likewise, the State places criminal detainees in various facilities within and outside of the State.

23  Dec. of Barnacle, Ex. K, Eisen Dep. 6:8-12 (hereinafter "Eisen Dep."). Similar to the SCC and

24  other prison, jail and civil commitment centers, the State engages private contractors to assist with

25  the detention of criminal detainees. Dec. of Barnacle, Ex. L. Ironically, one of the contractors that

26  the State engaged to house detainees was GEO. Eisen Dep. 6:8-12; Ex. L. The State's contract

27  with GEO contemplated a work program where detainees could work for subminimum wages.

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 4

51273540;1

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

Eisen Dep. 6:19-25, 7:1. The contract was "approved as to form" by the "WA Assistant Attorney General." Ex. L. In all of its contracts to house criminal detainees, the State includes a requirement for a work program in order to reduce idleness—just like the PBNDS at the NWIPC. Eisen Dep. 7:8-14; Ex. L. And, as part of these contracts, the State "extends all of its legal or RCW requirements to all of its contractors." Eisen Dep. 9:6-8.

## III.        SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson*, *supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

///

///

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 5

51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

**IV.        As a Matter of Law, the WMWA Does Not Apply to Detainees in Washington Who Reside or Sleep at a Detention Facility.**

The WMWA, as relevant here, requires that "every employer pay to each of his or her employees who has reached the age of eighteen years, wages at a rate" set forth in the statute. RWC § 49.46.020(1). The WMWA defines "employer" as "any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." RWC § 49.46.010(4). Thus, the definition of "employer" turns on the definition of "employee." The WMWA defines an "employee" as "any individual employed by an employer" except for a number of explicitly enumerated exceptions. RWC § 49.46.010(3). In determining whether the WMWA applies, as a threshold matter, a Court must determine whether an individual falls into an exception to the WMWA. "If an individual is not an employee under the MWA, the minimum wage requirements are never applicable[.]" *Berrocal v. Fernandez*, 155 Wash. 2d 585, 596, 121 P.3d 82, 87 (2005). Here, detainees are covered by two exemptions to the definition of employee: (1) their participation in and duties under the VWP require them to reside (and sleep) at the NWIPC—the same location where they participate in the VWP; and (2) they are in the confines of a detention facility within the State of Washington.

**A.   Detainees are not employees under the resident exception to the WMWA.**

The WMWA explicitly provides that the definition of "employee… shall not include":

(j) Any individual whose duties require that he or she reside or sleep at the place of his or her employment or who otherwise spends a substantial portion of his or her work time subject to call, and not engaged in the performance of active duties;

RWC § 49.46.010(3)(j) (hereinafter the "resident exception").

As Plaintiffs have previously argued, "the Court must analyze the plain language of the statute … [i]f the statute is unambiguous, the Court's inquiry about its meaning must end." ECF 15 (citing *Lake v. Woodcreek Homeowners Ass'n*, 243 P.3d 1283, 1288 (Wash. 2010)).   GEO agrees. A statute is not ambiguous "merely because different interpretations are conceivable." *State v. Gonzalez*, 226 P.3d 131, 134 (Wash. 2010); ECF 15.  In the same vein, "this Court

1    should not re-write legislation." ECF 28 at 14 (Order on GEO's Motion to Dismiss). In diversity

2    cases, "the State's highest court is the best authority on its own law." *Comm'r v. Bosch's Estate*,

3    387 U.S. 456, 465 (1967); *see also Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975 (2017)

4    ("[F]ederal courts defer to state courts on matters of state law when sitting in diversity.");

5    *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1099 (9th Cir. 2003) (deferring to

6    California Court of Appeals interpretation of state law where the California Supreme Court had

7    not yet decided the issue); *Williams v. Dep't of Army*, 715 F.2d 1485, 1493 (Fed. Cir. 1983)

8    ("Such a situation exists with respect to the 'diversity' jurisdiction of federal courts over state

9    law controversies, as to which the highest state court ought to be allowed and is allowed the

10   deciding voice as to the meaning of state law.").

11       The Supreme Court of Washington has previously addressed the resident exception. In

12   interpreting its statutory language[1], the Supreme Court of Washington held that "[t]he plain

13   language of RCW 49.46.010(5)(j) excludes two categories of workers from the MWA's

14   definition of 'employee': (1) those individuals who reside or sleep at their place of employment

15   and (2) those individuals who otherwise spend a substantial portion of work time subject to call,

16   and not engaged in the performance of active duties." *Berrocal v. Fernandez*, 155 Wash. 2d 585,

17   598, 121 P.3d 82, 88 (2005); *see also Strain v. W. Travel, Inc.*, 117 Wash. App. 251, 257, 70

18   P.3d 158, 162 (2003) ("The statute is plain: employees required to sleep at their places of

19   employment are exempt from coverage under the MWA."). And, the Washington Department of

20   L&I has not altered this definition. WAC 296-128-600(5) ("'Employee' has the same meaning as

21   RCW 49.46.010(3)."). Thus, this Court, sitting in diversity, defers to the Washington Supreme

22   Court's findings in *Berrocal*.

23       In *Berrocal*, two individual plaintiffs, Rafael Castillo and Heriberto Berrocal, brought

24   suit alleging the failure to pay minimum wage. *Berrocal*, 155 Wash. 2d at 588. Castillo and

25   Berrocal immigrated to the United States under temporary worker visas that specifically

26

27   _____

[1] The same exact language in the present statute was previously located at RCW 49.46.010(5)(j).

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 7

51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1    permitted them to work as sheepherders. *Id.*  They entered into contracts with a ranch, requiring

2    them to be available twenty-four (24) hours per day, seven (7) days per week to care for sheep.

3    *Id.*  In return, the ranch provided Castillo and Berrocal with a monthly stipend, health insurance,

4    and room and board. *Id.*  Castillo and Berrocal claimed that during their time at the ranch they

5    were required to work more than 12 hours per day for subminimum wages, in violation of the

6    WMWA.  *Id.* 589. The ranch countered that it had not violated the WMWA because the resident

7    exception applied; because Castillo and Berrocal lived and slept at the ranch, they were not

8    employees.  *Id.* The plaintiffs refuted the ranch's position by arguing that the statute was

9    ambiguous. *Id.* Applying the principles of statutory construction, the Washington Supreme Court

10   concluded that the resident exception's plain language was unambiguous, and that therefore,

11   individuals who live or sleep at their place of work are not "employees" under the WMWA. *Id.*

12   at 598.

13        At issue in this case is Plaintiffs' participation in the VWP at the NWIPC. The VWP is a

14   program that exists solely to provide "detainees opportunities to work and earn money while

15   confined . . . ." PBNDS § 5.8. The program addresses the "negative impact of confinement" by

16   decreasing idleness, improving morale, and reducing disciplinary incidents. *Id.*; Johnson Dec.

17   ¶ 11. The VWP positions exist only to provide opportunities for those detainees confined in ICE

18   custody, as at the NWIPC. Johnson Dec. ¶¶ 12, 23-23 (explaining that only detainees may

19   participate in the VWP). It is undisputed that, here, detainees reside (and sleep) at the NWIPC.

20   PBNDS §§ 2.13, 2.2 (defining detainees pods as their "living areas"); Ex. B, Nwauzor Dep. 36,

21   72-73 (describing living and sleeping in the NWIPC and how he was required to stay there until

22   granted asylum by a judge); Johnson Dec. ¶¶ 10, 18 (NWIPC detainees are held in the lawful

23   custody of ICE) (hereinafter "Johnson Dec."); Ex. D ("You have to share a living space with a

24   lot of people so it is important to be considerate … [b]e quiet at night so other people can

25   sleep."); Dec. of Scott ¶¶ 7-9. As in *Berrocal*, here, in addition to living and sleeping in the

26   NWIPC, Plaintiffs perform their work in the VWP at the NWIPC. Like in *Berrocal*, detainees are

27   provided room and board, healthcare, and payment (of less than the minimum wage). Dec. of

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 8

51273540;1

AKERMAN LLP

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

Scott ¶¶ 7-9. Once detainees are released, they can no longer perform VWP work at the NWIPC because VWP positions are only available to detainees – those that reside and sleep at the NWIPC. PBNDS 5.8, Dec. of Scott ¶¶ 4-6. Accordingly, because detainees at the NWIPC reside (and sleep) at the NWIPC, the unambiguous terms of the resident exception dictate that they are not "employees" under the WMWA.

**B.   Detainees are not employees under the detainee exception to the WMWA.**

In addition to the exception for individuals who sleep or reside at their workplace, the WMWA exempts from the definition of employee "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution[.]" RWC § 49.46.010(3)(k) (hereinafter "detainee exception").[2] This exemption, in its most natural reading, excludes those who are in government custody from the definition of employee.

Like with the resident exception, this Court first looks to the plain language of the statute to interpret its meaning. In analyzing the plain meaning of a statute, "[a] nontechnical statutory term may be given its dictionary meaning; statutes should be construed to effect their purpose, and unlikely, absurd, or strained consequences should be avoided." *State v. Smith*, 189 Wash. 2d 655, 662 (2017). Unlike the resident exception, the detainee exception has not been interpreted by the Washington Supreme Court. But, courts that have interpreted the detainee exception have concluded that ***civil detainees*** are not "employees" under the WMWA. *Calhoun v. State*, 146 Wash. App. 877, 886 (2008), as amended (Oct. 28, 2008).

In *Calhoun*, a pretrial detainee of a SCC (previously defined Special Commitment Center) brought suit against the State, arguing that by virtue of his voluntary participation in maintenance and janitorial work crews at the facility, he was an "employee," and therefore subject to the protections of various employment-related statutes. *Id*. at 885. In support of his claims, Calhoun argued that he fell within the definition of employee under the WMWA. *Id*. at

---

[2] The Court of Appeals has explained that the detainee exception is not redundant of the resident exception, as the detainee exception covers situations where inmates or residents work off-site, but remain detained. *Strain*, 117 Wash. App. 251.

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 9

51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

886. The court applied the detainee exception and concluded, "[i]n light of this exclusion, there is no reason to believe that the legislature or the courts expected or intended that principles derived from the MWA would be used to determine whether an SCC resident-worker qualifies as an 'employee[.]'" *Id*. The court drew support from other benefits Calhoun was not eligible to receive as an SCC resident-worker. *Id*.  Calhoun was ineligible for workers' compensation, was ineligible for Social Security benefits, and could not participate in the State's employee retirement program.  *Id*. at 886.

Here too, Plaintiffs fall into the detainee exception to the WMWA. The exceptions to the definition of "employee" describe certain individuals who are exempt from the definition of employee—not certain types of entities that are not considered employers. Indeed, the definition of "employer" is expansive, covering nearly any entity, individual, or "group of persons," limited only by whether they are acting "directly or indirectly in the interest of an employer in relation to an employee." RWC § 49.46.010(4). By that definition, the federal government (and GEO) certainly fall into the definition of "employer." But, that does not mean every individual who acts at the direction of, or participates in a program of, the federal government or State is also necessarily an "employee." For example, the State could run a detention facility using the labor of individuals who are neither residents or inmates of the facility. Those individuals would be subject to minimum wage as they would not fall within any exception. By contrast, individuals who *are* in the custody of the State, and reside at the facility *would not* be employees as they are explicitly exempted under the statute (both the resident exception and the detainee exception). As described above, Plaintiffs are residents of the NWIPC, held in the custody of the federal government. Johnson Dec. ¶¶ 6,10, 18. The NWIPC is located within the State of Washington. As residents of a "detention" facility, they are exempted from the definition of employee, so long as that detention facility is a "state, county, or municipal . . . institution." RWC § 49.46.010(3)(k).

The statute does not define "state" and therefore, this Court may look to the word's common usage in the dictionary. Black's Law Dictionary defines "state" as the "political system

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 10

51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1   of a body of people who are politically organized; the system of rules by which jurisdiction and

2   authority are exercised over such a body of people."  STATE, Black's Law Dictionary (11th ed.

3   2019). The federal government (and by extension ICE) certainly falls within the definition of

4   "state" contained in Black's Law Dictionary. The federal government is a political system that

5   exercises jurisdiction over the United States. The State of Washington also falls within the

6   definition of "state," as a political system within Washington's geographic boundaries.[3] The

7   NWIPC is also within the geographic boundaries of Washington, making it arguably, a state

8   institution under the detainee exception. Therefore, the plain language of the detainee exception

9   removes individuals in the custody of the federal government, the state government, and its local

10  subdivisions from the definition of "employee" under the WMWA.

11      This construction is "plainly and unmistakably consistent with the terms and spirit of the

12  legislation." *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wash. 2d 851, 870 (2012). There

13  is no reason for this Court to believe that the legislature intended to regulate the employment

14  status of those in government custody. Indeed, the State of Washington, in public filings with

15  this Court, has appeared to endorse this reading of the detainee exception. The State recently

16  argued that both the federal government *and* the State may "hold detainees and avoid the

17  application of the [W]MWA." *State of Washington v. GEO*, Case No. 17-cv-05806, ECF 308,

18  pg. 6 (October 4, 2019); *see also id.* ECF 297 at 18 n. 5 ("All parties agree that the [WMWA]

19  does not apply to the federal government's facilities . . ."); *id.* at 26-27 ("More importantly, that

20  the [detainee] exemption does not explicitly mention 'federal' institutions makes sense in light of

21  the Supremacy Clause and longstanding prohibition on states directly regulating the federal

22  government"); Grice Dep. 19:4-5 ("Generally an employee of the federal government would not

---

[3] Importantly, the word "state" is not capitalized in RCW 49.46.10(3)(k) and as such should not be construed as a proper noun referring to a specific state. Furthermore, when the legislature wants to refer specifically to Washington State, it knows how to do so. *See e.g.* RCW § 49.12.121(1) ("The department may at any time inquire into wages, hours, and conditions of labor of minors employed in any trade, business, or occupation **in the state of Washington** and may adopt special rules for the protection of the safety, health, and welfare of minor employees.) (emphasis added); RWC § 49.48.210 (11)(b) ("'Employer' means **the state of Washington** or a county or city, and any of its agencies, institutions, boards, or commissions") (emphasis added).

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 11

51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

be subject to the [WMWA]"). Thus, including the federal government in the broad definition of "state," in the absence of additional clarification from the legislature, is consistent with the tenets of statutory interpretation. First, it does not require this Court to improperly impute words that are not written into the statute, such as "state-*owned*" or "state-*operated*." Second, it avoids absurd or strained consequences that would occur if the state detainees were to be exempted, while federal detainees were not. By way of example, if the state and federal facilities were treated differently, aside from the clear intergovernmental immunity problems discuss below, some individuals who may be held in state custody would have a perverse incentive to be transferred to a federal detention facility in order to earn additional funds. Accordingly, the most natural reading of the exception provides that any detainees held in government—or "state"—custody, should be exempted from the definition of "employee" under the WMWA.

Because Plaintiffs are explicitly exempted from the definition of "employee" under the WMWA, the Court's inquiry may end here. The plain language of the statute makes clear that NWIPC detainees are not employees. Accordingly, this Court should issue a declaratory judgment that the WMWA does not apply to the detainees participating in the VWP at the NWIPC.   Should this Court disagree with the Washington Supreme Court, and the plain language drafted by the legislature (which it should not), the law would be invalid under the principles of intergovernmental immunity. To read the statute so as to apply to the NWIPC, but not apply to the SCCs and jails run by the State renders it discriminatory on its face, and therefore, invalid under the doctrine of intergovernmental immunity.

### V.        Even if this Court Interprets the Statutory Language of the WMWA to Apply to VWP Participating Detainees at the NWIPC, GEO is Immune from Suit.[4]

#### A.   <u>The Intergovernmental Immunity Defense is Available in a Case Between a Private Party and a Federal Government Contractor.</u>

As a threshold matter, the fact that the Plaintiffs in this case are private actors does not impact the applicability of the doctrine of intergovernmental immunity. *Davis v. Michigan Dep't*

---

[4] It is GEO's position that the plain language of the WMWA exempts detainees at the NWIPC. However, in the alternative and in the event this Court disagrees, GEO is entitled to intergovernmental immunity.

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 12

51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

*of Treasury*, 489 U.S. 803, 814 (1989) ("[I]t does not follow that private entities or individuals who are subjected to discriminatory taxation on account of their dealings with a sovereign cannot themselves receive the protection of the constitutional doctrine. Indeed, all precedent is to the contrary."). Rather, intergovernmental immunity arises where a state law attempts to regulate the Federal Government, or those with whom it deals. *United States v. California*, 921 F.3d 865, 879 (9th Cir. 2019) "When the state law is discriminatory, a private entity with which the federal government deals can assert immunity." *Boeing Co. v. Movassaghi*, 768 F.3d 832, 842 (9th Cir. 2014) "For purposes of intergovernmental immunity, federal contractors are treated the same as the federal government itself." *California*, 921 F.3d 882; *see also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181, (1988) (applying intergovernmental immunity to private contractors "authorized by statute to carry out a federal mission"). As such, federal courts frequently entertain intergovernmental immunity defenses raised by a federal contractor when faced with a suit brought by private plaintiffs (not a governmental entity). *See e.g., Goodyear*, 486 U.S. 174 (considering an intergovernmental immunity defense where a government contractor was sued by its' former employee, a private party, who alleged that the contractor had failed to pay certain sums under state workers compensation laws); *Lamb v. Martin Marietta Energy Sys., Inc.*, 835 F. Supp. 959, 960 (W.D. Ky. 1993) (assessing a federal contractor's intergovernmental immunity defense where private plaintiffs sought to enforce state tort law claims of negligence); *Bordell v. Gen. Elec. Co.*, 164 A.D.2d 497, 498, 564 N.Y.S.2d 802, 803 (1990) (applying the doctrine of intergovernmental immunity where a federal contractor, General Electric Company, was sued by a former employee for wrongful discharge). Here, because the WMWA both directly regulates the Federal Government (via GEO) and discriminates against GEO in its capacity as a federal contractor, GEO may raise the defense of intergovernmental immunity. *See Boeing*, 768 F.3d at 842 ("The federal government's decision to hire Boeing to perform the cleanup rather than using federal employees does not affect our immunity analysis on this ground."). Thus, this defense is

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 13

51273540;1

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1    equally available to GEO here as it is in *State of Washington v. GEO*.[5]

2        **B.  Intergovernmental Immunity.**

3        The doctrine of intergovernmental immunity is derived from the Supremacy Clause, U.S.

4    Const., Art. VI, which mandates that "the activities of the Federal Government are free from

5    regulation by any state." Under the intergovernmental immunity doctrine, "a state regulation is

6    invalid only if it [1] regulates the United States directly or [2] discriminates against the Federal

7    Government or those with whom it deals." *See North Dakota v. United States*, 495 U.S. at 435

8    (1986). Because "a [state] regulation imposed on one who deals with the Government has as

9    much potential to obstruct governmental functions as a regulation imposed on the Government

10   itself," intergovernmental immunity may apply to state regulation that affects government

11   contractors, *see id*. at 438; *see also Boeing*, 768 F.3d at 842-43 ("The federal government's

12   decision to hire Boeing to perform the cleanup rather than using federal employees does not

13   affect our immunity analysis on [the grounds of discrimination]. When the state law is

14   discriminatory, a private entity with which the federal government deals can assert immunity.").

15   The Supreme Court has made clear that the intergovernmental immunity doctrine requires the

16   invalidation of otherwise generally applicable state laws that treat the state and those with whom

17   it deals better than the federal government and those with whom it deals. *Davis*, 489 U.S. at 812.

18   This includes laws that discriminate against federal contractors, as the Supreme Court has

19   explained, "it does not seem too much to require that the State treat those who deal with the

20   [federal] Government as well as it treats those with whom it deals itself." *Phillips Chem. Co. v.*

21   *Dumas Indep. Sch. Dist.*, 361 U.S. 376, 385 (1960). Here, both prongs of the *North Dakota* test

22   for intergovernmental immunity are satisfied.

23       **i.      The WMWA Directly Regulates The Federal Government By Purporting To Set A Prevailing Wage Rate For Federal Detainees And Inmates.**

24

25       "[U]nder the intergovernmental immunity component of the Supremacy Clause to the

26

27   _____

[5] 17-cv-05806-RJB, which has been consolidated with this case for the purposes of liability.

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 14
51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

United States Constitution, states may not directly regulate the Federal Government's operations or property." *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996). In *Blackburn*, the Ninth Circuit concluded that a law, neutral on its face, impermissibly regulated the federal government's operations. *Id.* At issue was a law requiring placement of warning signs and safety ropes near certain bodies of water. *Id.* at n.3. Under the law, which did not provide an exception for the federal government, Yosemite National Park would have been required to change its operations by placing signs and ropes throughout the park. *Id.* at 1435. The Ninth Circuit found that this regulation, though not explicitly targeted at the federal government, was a "direct and intrusive regulation by the State of the Federal Government's operation of its property at Yosemite." *Id.* Accordingly, the court concluded that applying the state law to the federal government would run afoul of the Supremacy Clause. *Id.*

Similarly, in *Boeing*, a California law implemented regulations regarding the cleanup of toxic substances. *Boeing*, 768 F.3d at 839. The law permitted a state agency to "compel a responsible party or parties" to take certain remedial actions related to toxic waste cleanup. *Id.* The federal government hired Boeing, a contractor to perform its cleanup work in California. Boeing filed suit challenging the law. *Id.* Boeing argued that while the regulation did not explicitly name the federal government as a "responsible party", its application was clear: the federal government was certainly a "responsible party" as defined in the statute—if not *the* responsible party. *Id.* Because the federal government (and by extension Boeing) fell within the definitions in the state statute, *Boeing* argued that the state law directly interfered with the functions of the federal government by "mandat[ing] the ways in which Boeing render[ed] services that the federal government hired Boeing to perform." *Id.* at 840. In so doing, the state law impermissibly attempted to supplant the standards chosen by the federal government with those chosen by the state. *Id.* The Ninth Circuit agreed and concluded that the statute directly regulated the federal government—in violation of the Supremacy Clause. *Id.* at 840.

Similar to *Blackburn* and *Boeing*, the WMWA here directly regulates the Federal

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 15

51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

Government, and by extension GEO.[6] The WMWA defines "employer" so broadly as to include nearly any entity, individual, or "group of persons," limited only by whether they are acting "directly or indirectly in the interest of an employer in relation to an employee." RWC § 49.46.010(4). The federal government (and by extension, its contractor GEO) falls squarely within this definition, just as the federal government (and Boeing) fell within the definition of "responsible party" in *Boeing*. There is no exception in the WMWA for individuals under the jurisdiction, or employ, of the federal government. Thus, as in *Boeing,* the regulation impermissibly "mandates the ways in which [GEO] renders services that the federal government" hired it to perform. *Boeing*, 768 F.3d at 840. The WMWA directly regulates the federal government by mandating the amount of wages the government and its contractor must pay—and to whom. Specifically, here, Plaintiffs seek to utilize its provisions to classify VWP workers as "employees." In the alternative, they seek utilize its provisions to eliminate the VWP program, despite the federal government's established practice that conditions of confinement improve when idleness decreases. PBNDS § 5.8; Johnson Dec. ¶ 11. Because, the WMWA directly regulates the federal government, it conflicts with the Supremacy Clause and GEO is entitled to intergovernmental immunity.

> **ii.      The WMWA discriminates Against the United States Government and Those with Whom it Deals.**

In addition to directly regulating the federal government, the WMWA discriminates against the federal government by, according to Plaintiffs, excluding the detainees and inmates

---

[6] In *U.S. v. California*, the Ninth Circuit recently held that in the context of federal immigration detention centers, federal government contractors are treated the same as the federal government itself for purposes of intergovernmental immunity:

> To "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," 8 U.S.C. § 1231(g)(1), the INA contemplates use of both federal facilities and nonfederal facilities with which the federal government contracts. See id. § 1231(g)(2) (requiring the federal government to "consider the availability for purchase or lease of any existing prison, jail, detention center, or other comparable facility suitable for" detainee detention); id. § 1103(a)(11) (authorizing "payments" to and "cooperative agreement[s]" with states and localities). For purposes of intergovernmental immunity in this immigration context, federal contractors are treated the same as the federal government itself.

*California*, 921 F.3d at 882 n.7.

---

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 16

51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1   of the State of Washington and its municipal or local entities from the definition of "employee"

2   while simultaneously categorizing federal detainees and inmates as "employees."[7] RWC

3   § 49.46.010(3)(k). As the Ninth Circuit recently reiterated, "state laws are invalid if they . . .

4   discriminate[] against the Federal Government or those with whom it deals." *California*, 921

5   F.3d at 878. The doctrine of intergovernmental immunity attaches when a state law both

6   discriminates against the federal government and burdens it in some way. *Id.*

7       In *Davis*, the Supreme Court held that "Michigan Income Tax Act violates principles of

8   intergovernmental tax immunity by favoring retired state and local government employees over

9   retired federal employees." *Davis*, 489 U.S. at 817. The Michigan statute at issue exempted from

10   taxation retirement benefits paid by the *state*, but did not equally exempt retirement benefits paid

11   by other employers, including the federal government. *Id.* at 803. In reaching its conclusion, the

12   Supreme Court concluded that the key consideration was that the law treated retired state

13   employees better than retired federal employees—thereby discriminating against the federal

14   government. *Id.* at 806.

15       In *Dawson v. Steager*, decided earlier this year, the State of Virginia had passed a law

16   allowing an individual to reduce his or her federal adjusted gross income by the amount of any

17   "[r]etirement income received in the form of pensions and annuities after December 31, 1979,

18   under any *West Virginia* police, *West Virginia* Firemen's Retirement System or the *West Virginia*

19   State Police Death, Disability and Retirement Fund, the *West Virginia* State Police Retirement

20   System or the *West Virginia* Deputy Sheriff Retirement System." W. Va. Code Ann. § 11-21-12

21   (c)(6); *Dawson v. Steager*, 139 S. Ct. 698  (2019). While the statute allowed an individual to

22   reduce his or her income (for tax purposes) by the amount of a *state* police pension, it did not

23   allow for the reduction of income by the amount of a *federal* law enforcement pension. *Id.* at

24   704-705. The statute at issue did not *explicitly* state that "pensions from the federal government

25

26   [7] Of course, as stated above, the statute can, and should be, read to exclude detainees in both federal and state

27   custody from the definition of employee, in which case the Court need not reach the issue of intergovernmental immunity.

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 17

51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

do not qualify," but nevertheless, had the same effect by explicitly including *only* state pensions. Thus, the Supreme Court concluded that the law was impermissibly discriminatory. *Id.* at 703. In reaching this conclusion, the Court relied upon *Davis* and *Phillips* to frame its analysis, concluding that in evaluating whether a law is discriminatory, courts should consider whether the federal entity is similarly situated to those who *receive* the benefit, not those that *do not receive* the benefit. *Id.*

Here, too, Plaintiffs' proposed interpretation of the WMWA discriminates against the federal government (and its contractors),[8] by providing exceptions to the definition of "employee" for state detainees, but not federal detainees. Under the guidance of *Dawson*, GEO must be compared to state facilities (who receive a benefit), not those who do not receive a benefit (i.e., private State contractors). In comparing the NWIPC to its State counterparts, as the Court must under the clear guidance provided by *California* and *Dawson*, it is clear that the WMWA is impermissibly discriminatory. By omission, like in *Dawson*, the WMWA discriminates against the federal government (and its contractors) who house similar detainees, inmates, or residents. As articulated in *Dawson*, "[w]hether a State treats similarly situated state and federal employees differently depends on how the State has defined the favored class." *Id*. at 705. In *Dawson*, the law at issue specifically applied to *state* retirees who were formerly West Virginia police, firefighters, and deputy sheriffs. *Id.* Therefore, the proper comparison was similarly situated *federal* retirees with similar job responsibilities to a state police officer, sheriff, or firefighter. *Id.* Here, the legislature has defined the class of individuals exempted from the WMWA as "[a]ny resident, inmate, or patient of a state . . . correctional, detention, treatment or rehabilitative institution[.]" RWC § 49.46.010(3)(k). Under *California*, GEO is treated the same as the federal government for intergovernmental immunity purposes in the immigration context.

---

[8]Again, in the context of federal immigration detention centers, government contractors are treated the same as the federal government itself for purposes of intergovernmental immunity. Thus, for purposes of the immunity analysis, GEO is treated the same as the federal government itself—put differently GEO steps into the federal government's shoes.  *Boeing*, 768 F.3d at 842 ("When the state law is discriminatory, a private entity with which the federal government deals can assert immunity."); *California*, 921 F.3d at n.7 ("For purposes of intergovernmental immunity, federal contractors are treated the same as the federal government itself.").

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 18

51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

921 F.3d at n.7. Thus, here, the proper comparison to the federal government's detainees, held at the NWIPC (which is operated by GEO), is any resident, inmate, or patient of a state detention facility. Washington operates detention facilities within its state (both criminal and civil) in which it does not pay detainees who participate in work programs minimum wage because they are exempt from the WMWA. Eagle Dep. 8:9; Williams Dec ¶ 4; Ex. I. At the same time, here, Plaintiffs seek to classify GEO's detainees who participate in work programs as "employees" under the WMWA. This proper comparison makes plain that the WMWA is impermissibly discriminatory because the "requirements burden federal operations, and only federal operations." *California*, 921 F.3d at 883.

As a result of the discriminatory legislation, the federal government (and GEO) will face both an economic and administrative burden. *See e.g.*, *Blackburn*, 100 F.3d at 1435 (finding intergovernmental immunity applicable where the government would face an incredible administrative burden to comply with the law); *California*, 921 F.3d at 883 ("any discriminatory burden on the federal government is impermissible"). GEO (and the federal government) would be subject to an economic burden that the State would not be forced to bear. There is no question that the difference between $1 a day and minimum wage is significant. Indeed, in 2014, approximately 133,800 VWP shifts were completed at the expense of $1 per day. Dec. of Barnacle, Ex. M at 24. Even assuming each shift was a single hour-long, the cost would increase more than 10 times to accommodate the minimum wage under the WMWA. As it stands, GEO's contract with ICE caps VWP reimbursements at $114,975 per year. Johnson Dec. ¶ 24. Should the WMWA apply, that would result in a significant shortfall in the allocated budget for the VWP program. Scott Dec. ¶ 17. Inevitably, GEO would be compelled to restructure and renegotiate the pricing of its contracts with ICE, ultimately passing the cost directly to ICE. Scott Dec. ¶ 16.  This restructuring will most assuredly cause a dramatic repricing of the federal government's contracts with GEO and other private detention service providers, thereby ultimately causing a significant financial burden on the federal government. At the same time, the State would be free to continue to operate work programs for state detainees at a fraction of the

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 19

51273540;1

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

cost. Eagle Dep. 21:2-21.

As for the administrative burden, GEO would be required to classify each participant in the VWP as an employee. It would thereafter need to implement a system to track the hours worked by each detainee. Scott Dec. ¶ 11. And, to ensure it was paying each detainee properly, it would have to hire additional personnel to, among other things, track when each individual moved facilities, and adjust his or her wages accordingly, depending upon the relevant minimum wage. Scott Dec. ¶ 15. As employees, GEO would also have to implement policies for managing detainee performance and the discipline or termination of underperformers. In turn, GEO would need to find an alternate activity for individuals who were not hired to participate, in order to manage idleness. Furthermore, GEO would need to track work authorizations and submit the necessary paperwork (insofar as GEO could actually hire any of the individuals as employees without running astray of federal immigration laws). Scott Dec. ¶¶ 12, 15 This would certainly be a "nightmarish accounting prospect." *Strain*, 117 Wash. App. At 259. Such an undertaking, even if confined to the NWIPC alone, would be a significant administrative burden that the State would not equally bear. Scott Dec. ¶ 17. Accordingly, if the WMWA applies to detainees in the NWIPC, GEO and the federal government will suffer an unmanageable administrative burden.

Furthermore, both the federal government and the State recognize the positive benefits that come from a detainee work program—the negative impacts of confinement are reduced and individuals are better prepared to re-enter society when released. Johnson Dec. ¶ 11; Murphy Dep. 18:20-24; Eisen Dep. 7:8-14. If the cost of implementing the VWP were to increase such that only a small number of detainees could participate, the State would obtain another benefit which the WMWA would deny the federal government. If the VWP were to be reduced or eliminated while the same programs continued at the SCC, the federal detainees would suffer from additional negative consequences of confinement where SCC detainees would continue to participate in opportunities to make productive contributions to their communities. This would have the result of burdening the federal government (and GEO) by denying it a program that both the State and federal government agree has a positive impact on detained individuals. Thus, if the WMWA

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 20

51273540;1

AKERMAN LLP

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1   applies to detainees at the NWIPC, the federal government (and GEO) would be forced to bear
2   yet another discriminatory burden, in violation of the Supremacy Clause. Accordingly, the
3   doctrine of intergovernmental immunity should apply to deny Plaintiffs' WMWA claims.

4         Finally, GEO anticipates that Plaintiffs will argue that intergovernmental immunity does
5   not apply because the proper comparator would be a private State contractor, and that under the
6   WMWA, such a private State contractor would be required to pay the minimum wage. Such a
7   comparison is inaccurate and misleading for three reasons. <u>First</u>, this reading is directly contrary
8   to the recent Supreme Court and Ninth Circuit guidance in *Dawson* and *California*.  <u>Second</u>,
9   there is no indication that the WMWA would apply to a private State contractor. The WMWA
10   does *not* differentiate between different classes of *employers* for purposes of the minimum wage.
11   As noted above, the definition of employer is the same for all entities. RCW 49.46.010(4). The
12   definition applies equally to the federal government (and its contractors) and the State
13   government (and its contractors). Rather, the WMWA differentiates between different classes of
14   *employees* (or non-employees). In doing so, it states that an individual who performs work for an
15   *employer* is *not an employee* if he or she is detained by the State for either civil or criminal
16   reasons. Thus, an individual in the *custody* of the State or federal government is not entitled a
17   minimum wage, regardless of who houses him or her (or who would otherwise be his or her
18   employer.) <u>Third</u>, this claim would be erroneous as the State includes a provision requiring a
19   subminimum wage work program in all of its contracts, including the one it entered into with
20   GEO. Eisen Dep. 7:8-14; Ex. L.  Accordingly, GEO is entitled intergovernmental immunity and
21   Plaintiffs' claims under the WMWA should be summarily dismissed.

22       **C.  <u>Derivative Sovereign Immunity.</u>**

23         In addition to intergovernmental immunity, here, GEO is entitled to summary judgment
24   under the doctrine of derivative sovereign immunity ("<u>DSI</u>"). Government contractors may
25   "obtain certain immunity in connection with work which they do pursuant to their contractual
26   undertakings with the United States." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016)
27   (internal quotation marks omitted) (*quoting Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 583, 63

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 21

51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

S.Ct. 425, 87 L.Ed. 471 (1943)). A contractor is entitled to DSI when it performs work "authorized and directed by the Government of the United States" and the contractor "simply performed as the Government directed." *Campbell-Ewald Co.*, 136 S. Ct. at 673. In that way, DSI ensures that "'there is no liability on the part of the contractor' who simply performed as the Government directed." *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 69 (D.C. Cir. 2019) (quoting *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21 (1940)). Authorization is "validly conferred" on a contractor if Congress authorized the government agency to perform a task and empowered the agency to delegate that task to the contractor, provided it was within the power of Congress to grant the authorization. *See Yearsley*, 309 U.S. at 20, 60 S.Ct. 413. Put another way, a government contractor that "violates both federal law and the government's explicit instructions" loses the shield of DSI and is subject to suit by those adversely affected by the contractor's violations. *Campbell-Ewald Co.*, 136 S. Ct. at 647.

Recently, the Fourth Circuit addressed facts analogous to those here. In *Cunningham v. General Dynamics Information Technology*, Greg Cunningham, received an autodialed call from General Dynamics (a government contractor), advertising the commercial availability of health insurance. 888 F.3d 640, 643 (4th Cir.), *cert. denied*, 139 S. Ct. 417 (2018). Cunningham filed suit on behalf of a putative collective, arguing that because he had not provided his express consent, General Dynamics had violated the Telephone Consumer Protection Act ("TCPA"). *Id.* In response, General Dynamics claimed that it was immune from suit under the principle of DSI. *Id.* General Dynamics called Cunningham in connection with its contract with the Department of Health and Human Services ("DHHS") wherein General Dynamics was required to make calls informing individuals about their ability to buy health insurance created by the Affordable Care Act ("ACA").[9] *Id.* at 643. Under the contract, General Dynamics was required to make phone calls during a specified timeframe to inform individuals about their ability to buy health insurance through the health insurance exchanges created by the ACA. *Id.* at 644. DHHS

---

[9] DHHS was authorized to establish a system informing applicants about their eligibility for a qualified health plan pursuant to 42 U.S.C. § 18083(a), (b)(2), (e).

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 22

51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

authorized General Dynamics to use an autodialer to make the calls, provided a script for each call, and provided a list of phone numbers for each call. *Id.* The contract also required General Dynamics follow all applicable laws. *Id.* at 647. DHHS provided Cunningham's phone number to General Dynamics, indicating he was an individual who should be notified of his right to enroll in health care plans. *Id.* In assessing whether DSI applied, the Fourth Circuit concluded that General Dynamics did not violate its contract when it made the call to Cunningham, because it was explicitly authorized under the contract. *Id.* In so holding, the Fourth Circuit made clear that the fact that General Dynamics did not obtain Cunningham's consent prior to placing the phone call (as mandated by the TCPA) was insufficient to show that it violated the contract which required it to comply with applicable laws, where the actions it took were otherwise consistent with what the contract required. *Id.* Thus, General Dynamics was entitled to DSI. *Id.*

There can be no question that GEO has performed precisely as directed by ICE without violating its contractual obligations or exceeding its delegated authority.  Here, it is undisputed that GEO was explicitly mandated to operate a VWP. PBNDS § 5.8; Ex. A, 82. Further, the ICE Contract explicitly stated that detainees shall not be used to perform the responsibilities or duties of an employee. Ex. A, 82.. Consistent with its obligations, GEO operated a VWP.  GEO also explicitly followed its contractual directive, without deviation, by not hiring detainees as employees. Like in *Cunningham*, where the contract did not require General Dynamics to obtain prior consent for compliance with the TCPA, here the ICE Contract did not require GEO to assess the risk that a court could potentially consider the tasks performed by detainees to constitute employment under the WMWA.  Therefore, GEO is immune from Plaintiffs' claim to the contrary that "Plaintiff and the proposed class members are 'employees' under [the WMWA.]" ECF 1 at ¶ 6.1.

For the purposes of DSI it is of no moment that GEO *could* have had discretion to pay detainees more than a dollar. Plaintiffs have brought forward no cause of action that would allow them to claim a legal right to an amount that is less (or more) than minimum wage but more than what they are currently being paid. Instead, the underpinnings of the present lawsuit ask this

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 23

51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

Court to find that VWP-participating detainees at the NWIPC are GEO's employees and therefore subject to the protections of the WMWA. If the WMWA does not apply, which it does not, then it also does not govern the rate detainees are paid for their participation in the VWP. Accordingly, because detainees cannot be treated as employees under the direct terms of the ICE Contract, and because GEO complied with this requirement, GEO is entitled to DSI.

There is also no question that Congress has validly conferred on ICE the authority to provide for the custodial supervision of detainees, and to do so using private contractors like GEO. ICE has broad discretion to determine where to house ICE detainees. *See e.g. Rios–Berrios v. I.N.S.*, 776 F.2d 859, 863 (9th Cir. 1985) (a decision to detain an alien arrested in California at a facility in Florida was within the province of ICE); *Sasso v. Milhollan*, 735 F.Supp. 1045, 1048 (S.D.Fla. 1990) (a decision to transfer an alien from one locale to another is within the sound discretion of ICE). Congress delegated to DHS and its agency, ICE, the authority to detain aliens placed into removal proceedings. *See* 8 U.S.C. §§ 1103, 1226, 1231. In carrying out that mandate, ICE has the discretion to contract with private entities for detention services if government facilities are otherwise unavailable. 8 U.S.C. §§ 1103(a)(11), 1231(a)(2), (g). In these contracts, Congress has authorized ICE to provide for programs that pay allowances to detainees of less than the minimum wage. *See* 8 U.S.C. § 1555(d). The ICE Contract at issue here, between GEO and ICE, is therefore, authorized by Congress's valid delegation of authority to ICE, and GEO is entitled to DSI.

## VI.        CONCLUSION

For the foregoing reasons, this Court should grant GEO's Motion for Summary Judgment and summarily dismiss Plaintiffs' WMWA claims in their entirety.

///

///

///

///

///

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 24

51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

Respectfully submitted, this 2nd day of January, 2020.

By: *s/ Colin L. Barnacle*
**AKERMAN LLP**
Colin L. Barnacle (Admitted *pro hac vice*)
Ashley E. Calhoun (Admitted *pro hac vice*)
Adrienne Scheffey (Admitted *pro hac vice*)
Allison N. Angel (Admitted *pro hac vice*)
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  (303) 260-7712
Facsimile:   (303) 260-7714
Email:  colin.barnacle@akerman.com
Email:  ashley.calhoun@akerman.com
Email:  adrienne.scheffey@akerman.com
Email:  allison.angel@akerman.com

By: *s/ Joan K. Mell*
**III BRANCHES LAW, PLLC**
Joan K. Mell, WSBA #21319
1019 Regents Boulevard, Suite 204
Fircrest, Washington 98466
Telephone:  (253) 566-2510
Facsimile:   (281) 664-4643
Email:  joan@3brancheslaw.com

*Attorneys for Defendant The GEO Group, Inc.*

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 25
51273540;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

**PROOF OF SERVICE**

I hereby certify on the 2nd day of January, 2020, pursuant to Federal Rule of Civil Procedure 5(b), I electronically filed and served the foregoing **DEFENDANT THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT** via the Court's CM/ECF system on the following:

**SCHROETER GOLDMARK & BENDER**
Adam J. Berger, WSBA #20714
Lindsay L. Halm, WSBA #37141
Jamal N. Whitehead, WSBA #39818
Rebecca J. Roe, WSBA #7560
810 Third Avenue, Suite 500
Seattle, Washington 98104
Telephone: (206) 622-8000
Facsimile:  (206) 682-2305
Email:  hberger@sgb-law.com
Email:  halm@sgb-law.com
Email:  whitehead@sgb-law.com
Email:  roe@sgb-law.com

**THE LAW OFFICE OF R. ANDREW FREE**
Andrew Free (Admitted *Pro Hac Vice*)
P.O. Box 90568
Nashville, Tennessee 37209
Telephone: (844) 321-3221
Facsimile:  (615) 829-8959
Email:  andrew@immigrantcivilrights.com

**OPEN SKY LAW PLLC**
Devin T. Theriot-Orr, WSBA #33995
20415 72nd Avenue S, Suite 100
Kent, Washington 98032
Telephone: (206) 962-5052
Facsimile:  (206) 681-9663
Email:  devin@openskylaw.com

**MENTER IMMIGRATION LAW, PLLC**
Meena Menter, WSBA #31870
8201 164th Avenue NE, Suite 200
Redmond, Washington 98052
Telephone: (206) 419-7332
Email:  meena@meenamenter.com

*Attorneys for Plaintiffs*

*s/ Nick Mangels*
Nick Mangels

PROOF OF SERVICE
(3:17-CV-05769-RJB) – PAGE 26

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

51273540;1