The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, INC., a Florida corporation,<br><br>Defendant. | No. 17-cv-05769-RJB<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. JEFFREY MUNSON |

## I. INTRODUCTION

Plaintiffs' expert Jeffrey Munson, Ph.D, is a professor at the University of Washington and has extensive experience with database management and statistical analysis. He will serve as a "human calculator" at trial, essentially multiplying the minimum wage by estimates about the length of detainee-worker shifts to figure damages owed to the class. The estimates are based on GEO-created documents and information. His work is straight-forward and non-controversial—so much so that GEO's expert economist does not challenge his methodology.

PLTFS.' OPP. TO DEF.'S MOT. TO
EXCLUDE MUNSON (17-cv-05769-RJB ) – 1

SCHROETER GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Still, GEO would exclude Dr. Munson from trial because his academic research focuses on autism spectrum disorder, and not "the area of damages."[1] While true, Dr. Munson's calculations rest upon universal mathematical methods and principles that apply regardless of the "*thing*" underlying the data analyzed. Put differently, Dr. Munson's "math" would stand whether he was computing the statistical output from one of his autism studies or the backpay at issue here. Moreover, Dr. Munson has served as an expert in many wage-and-hour cases and has testified at numerous trials. This work is not foreign to him.

If GEO wants to challenge Dr. Munson's assumptions or his reliance upon the same, it may do so as argument at trial. But because Dr. Munson satisfies the rules of evidence governing the admissibility of expert testimony, GEO's motion to exclude him altogether should be denied.

## II.   FACTUAL BACKGROUND

### A. Dr. Munson is a UW Professor who has rendered expert opinions about damages in many wage-and-hour lawsuits, and he has testified at trial about damages five times in the last five years.

Dr. Munson earned his undergraduate degree from Stanford University and his Ph.D. from the University of Washington, where he completed graduate-level courses in a variety of statistical techniques. Barnacle Decl., Ex. B (Munson Report) at 13 (Dkt. No. 218-2); Ex. 1 (Munson Dep.) at 14.[2] He currently works as a research professor at UW in the Department of Psychiatry and Behavioral Science. Barnacle Decl., Ex. B at 13. Since 1998, he has been responsible for data analysis and data management of several large, multi-project, collaborative

---

[1] Dkt. No. 217 (Mot.) at 1:24

[2] Except for Dr. Munson's expert report, which is attached to the Declaration of Colin Barnacle in support of GEO's motion as Exhibit B, all *numbered* exhibits are attached to the accompanying declaration of Jamal Whitehead ("Whitehead Decl.").

studies, including the extensive use of multiple software programs for various data analytic tasks. *Id.* For more than a dozen years, Dr. Munson has also performed damages calculations in wage and hour class actions based upon voluminous payroll, timekeeping, and similar data produced by defendant employers. Whitehead Decl., ¶ 2. Dr. Munson has performed damages calculations in approximately forty different wage cases, and testified at trial at least five times in the last five years. Ex. 1 (Munson Dep.) at 19; Barnacle Decl., Ex. B at 26.

For example, in *Pellino v. Brink's, Inc.*, 267 P.3d 383, 399 (Wash. Ct. App. 2011), the Washington Court of Appeals upheld Dr. Munson's testimony regarding his calculation of damages in a class-action wage dispute. In addition, his expert testimony has been admitted and endorsed by the Yakima Superior Court in *WA State Nurses Assoc. v. Yakima Reg'l Med. & Cardiac Ctr.*, No. 15-2-01109-9 and by the King County Superior Court in *Espinoza v. MH Janitorial Serv.*, No. 14-2-26201-9, *Hill, et al. v. Garda CL NW, Inc.*, No. 09-2-07360-1, and *Bruner v. Davis Wire Corp.*, No. 12-2-15676-0. Barnacle Decl., Ex. B at 26. He has offered deposition testimony in Pierce County Superior Court in *Rojas v. Damco Distribut. Serv., Inc./Damco USA, Inc.*, No. 17-2-14133-5, in King County Superior Court in *Hardie et al. v. Best Parking Lot Cleaning Inc.*, No. 17-2-27730-4, and in U.S. District Court for the Western District of Washington in *Mendis v. Schneider Nat'l Carriers, Inc.*, No. C15-0144-JCC and *Southwell v. Mortgage Investors Corp. of Ohio, Inc.*, No. C13-1289 MJP. Barnacle Decl., Ex. B at 26.

**B.  Dr. Munson analyzed the economic damages owed to the Class, using data and information produced by GEO and standard mathematical principles.**

Plaintiffs retained Dr. Munson to assess the economic damages sustained by detained persons participating in the "Voluntary Wage Program" (VWP) at the Northwest Detention Center (NWDC). Barnacle Decl., Ex. B (Munson Report) at 2. To render his opinions,

Dr. Munson analyzed monthly bills submitted by GEO to U.S. Immigration and Customs Enforcement (ICE) for reimbursement of the wages GEO paid the detainee workers. Dr. Munson also reviewed a summary chart of "Detainee Worker Average Hours" prepared by Michael Heye—one of GEO's classifications officers at NWDC. Ex. 2 (Heye Dep.) at 94-95. According to Heye, the document reflects the number of pods, workers and total assignments in the VWP each day, as well as the average length of shift. *Id.* This document came to be known as "Exhibit 20" because it was first used in the deposition of Ryan Kimble during discovery in the State of Washington's case, but was later marked as "Exhibit 325" during Heye's deposition. Dr. Munson refers to this document as "Exhibit 20" in his report. Barnacle Decl., Ex. B.

Relying upon the documents created and produced by GEO, Dr. Munson extracted GEO's monthly payments to the detainee workers during the Class Period. Barnacle Decl., Ex. B at 4. Because each dollar requested represented one detainee worker shift, he was able to determine the number of detainee worker shifts each month. *Id.* at 5. He then multiplied the monthly worker pay by the corresponding Washington State minimum wage. *Id*. The product was the amount of pay VWP participants would be entitled to if they received minimum wage and if each shift lasted one hour. *Id*. He then multiplied that amount by 1.72—the average shift length per detainee as reflected in Exhibit 20. *Id*. Finally, from the values obtained, he subtracted the amount of money the workers were actually paid as reflected on the invoices to derive the amount owed in aggregate to the class.[3] *Id.*

---

[3] After the expert report deadline, GEO produced banking data showing the amounts paid to individual detainee workers for their work in the VWP. Dr. Munson has analyzed this data and anticipates supplementing his report to refine his aggregate damages calculations and to determine individual damages owed to the Class Members. Whitehead Decl., ¶ 3.

PLTFS.' OPP. TO DEF.'S MOT. TO
EXCLUDE MUNSON (17-cv-05769-RJB ) – 4

SCHROETER GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

### III. LEGAL ARGUMENT

GEO argues that Dr. Munson's "psychology background does not provide a reliable background for his opinions," Mot. at 3, but this misstates the nature of Dr. Munson's work and the admissibility standard for expert testimony.

Under the federal rules, an expert is qualified to testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "[I]n considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). "The determination whether an expert witness has sufficient qualifications to testify is a matter within the district court's discretion." *United States v. Garcia*, 7 F.3d 885, 889 (9th Cir. 1993) (internal quotation omitted).

**A. Dr. Munson's specialized knowledge about "crunching" large data sets, like payroll information, will help the jury understand the economic damages in this wage and hour case.**

Dr. Munson is perfectly suited to assess damages in this case. There are nearly 10,000 Class Members and volumes of GEO payroll records and bills to ICE. Dr. Munson loaded this information into a programing language that he uses frequently for his academic research, which provides a wide variety of statistical and graphical analysis tools to him. From there, he simply calculated economic damages using basic arithmetic. Yes, his academic research focuses on the developmental trajectory of children, but this requires extensive analysis of large data sets—precisely the challenge before him here. And to the extent there are any

lingering questions about Dr. Munson's field of research and its applicability to this case, Dr. Munson has done this sort of number crunching in many wage and cases.

Dr. Munson's testimony will help the jury understand the reams of data reflecting the economic damages in this case. Although it may be possible for the jury to perform the same mathematical calculations as Dr. Munson for a handful of records, it is practically impossible for them to do so for the years of invoices and thousands of Class Members in this case. For this reason, courts have recognized the propriety of experts testifying as "human calculators." *See Wirtz v. Turner*, 330 F.2d 11, 14 (7th Cir. 1964) ("A jury cannot keep in mind all of the figures that might enter into a determination as to whether overtime payments were due. Computations and summaries based upon evidence before the Court, in many instances, would be very helpful to a jury. An expert may testify to computations based on facts which are in evidence as an aid to the jury's determination.").

Here, Dr. Munson has performed calculations that would otherwise be immensely burdensome and time-consuming—if not impossible—for the jury to conduct on its own. His testimony will be a welcome addition at trial.

**B.     Dr. Munson relied on documents and information prepared by GEO.**

GEO argues that Dr. Munson relied on faulty assumptions and unreliable information, but here again, GEO misstates the record. Specifically, GEO claims that Dr. Munson did not determine the accuracy of the information contained in Exhibit 20, and that he incorrectly used averages for the 11 months of missing invoices from GEO to ICE. Exhibit 20, however, is a document that *GEO prepared and produced* estimating the shift-lengths of detainee workers, so GEO's attacks on its accuracy deal self-inflicted wounds only, and do not call into question Dr. Munson's work or qualifications. And despite GEO's litigation argument, the company's

30(b)(6) designee recently testified at deposition that 1.72 hours—the average shift length stated in Exhibit 20—is still accurate. Ex. 3 (GEO 30(b)(6) Dep.) at 17-21 ("The estimated average hours worked by detainees, I believe, was 1.72 hours."). In fact, GEO's offset defense *still* relies on this figure. *Id.*

As for GEO's argument about the assumptions Dr. Munson applied to compensate for the missing GEO invoices to ICE, Geo's argument is more an indictment against the Company's discovery practices than anything else, as GEO has failed to produce complete records to Plaintiffs.

In any event, damages experts routinely rely on assumptions provided by counsel. *Tuf Racing Prod. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) (admitting expert opinion based on financial information furnished by party and assumptions given by party's counsel); *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 372 F. Supp.2d 1104, 1118-19 (N.D. Ill. 2005) (admitting expert opinion based on measurements provided by party's employees despite allegations of bias and unreliability). Indeed, "it is well-settled that a damages expert … can testify as to damages while assuming the underlying liability." *Sancom, Inc. v. Qwest Commc'n Corp.*, 683 F. Supp.2d 1043, 1068 (2010). Here, Dr. Munson's reliance on GEO's work-product and the assumptions he made about the missing invoices are no different than any other expert answering a hypothetical question posed by counsel.

Even if there were legitimate questions about the reliability of the information relied on by Dr. Munson, they do not affect the admissibility of his testimony. "As a general rule, questions relating to the bases and sources of an expert's opinion affect only the weight to be assigned that opinion rather than its admissibility." *Loeffel Steel Prod.*, 372 F. Supp.2d at 1119. "[T]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude

PLTFS.' OPP. TO DEF.'S MOT. TO
EXCLUDE MUNSON (17-cv-05769-RJB ) – 7

SCHROETER GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

opinions merely because they are impeachable. The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp. Inc.*, 738 F.3d 960, 969-70 (2013) (holding that defendant's challenges to the testimony and opinions of plaintiff's damages expert went to its weight and credibility, not to its admissibility). *Id.* at 970.

**C.   Dr. Munson's methodology is sound, as he applied basic arithmetic to GEO's payroll data and other information to calculate damages owed to the Class.**

GEO goes on to challenge Dr. Munson's methodology on the basis that he failed to obtain a sample of a subset of detainees and apply that sample to the larger population. Yet in reviewing Dr. Munson's work, GEO's damages expert does not challenge Dr. Munson's methodology beyond the same argument above about the accuracy of Exhibit 20. Ex. 4 (Morones Report) at 13. In fact, in reaching her conclusion that the average shift length for detainee workers was slightly shorter than the time reflected on Exhibit 20, GEO's expert applies the same methodology as Dr. Munson. *Id.* at 8, 12.

Even assuming for argument's sake there were legitimate challenges to Dr. Munson's methodology, those critiques would go to the weight of his testimony, not its admissibility:

> [T]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology. Under *Daubert,* the district judge is "a gatekeeper, not a fact finder." When an expert meets the threshold established by Rule 702 as explained in *Daubert,* the expert may testify and the jury decides how much weight to give that testimony.

*Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010), as amended (Apr. 27, 2010).

### CONCLUSION

Dr. Munson has the requisite skill and experience to testify about damages in this case, as he has done in many other wage and hour actions, and his testimony will be useful to the jury. GEO has failed to show any fundamental flaws in Dr. Munson's methodology or in the

GEO-produced documents and information upon which he has relied. Accordingly, this Court should deny GEO's motion to exclude Dr. Munson from trial.

DATED this 13th day of January, 2020.

SCHROETER GOLDMARK & BENDER

*s/ Jamal N. Whitehead*
Adam J. Berger, WSBA #20714
Lindsay L. Halm, WSBA #37141
Jamal N. Whitehead, WSBA #39818
810 Third Avenue, Suite 500
Seattle, WA 98104
Tel: (206) 622-8000
berger@sgb-law.com
halm@sgb-law.com
whitehead@sgb-law.com

THE LAW OFFICE OF R. ANDREW FREE
Andrew Free (*Pro Hac Vice*)
PO Box 90568
Nashville, TN 37209
Tel: (844) 321-3221
Fax: (615) 829-8959
andrew@immigrantcivilrights.com

OPEN SKY LAW, PLLC
Devin T. Theriot-Orr
20415 – 72nd Avenue South, Suite 110
Kent, WA 98032
devin@opensky.law

MENTER IMMIGRATION LAW PLLC
Meena Menter, WSBA #31870
8201 – 164th Avenue NE, Suite 200
Redmond, WA 98052
meena@meenamenter.com

*Class Counsel*

# CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2020, I electronically filed the foregoing, together with its supporting pleadings and attachments thereto, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Devin T. Theriot-Orr
OPEN SKY LAW, PLLC
20415 – 72nd Avenue South, Suite 110
Kent, WA 98032
devin@opensky.law
*Attorney for Plaintiff*

R. Andrew Free
THE LAW OFFICE OF R. ANDREW FREE
PO Box 90568
Nashville, TN 37209
andrew@immigrantcivilrights.com
*Attorney for Plaintiff*

Meena Menter
MENTER IMMIGRATION LAW PLLC
8201 – 164th Avenue NE, Suite 200
Redmond, WA 98052
meena@meenamenter.com
*Attorney for Plaintiff*

Joan K. Mell
III BRANCHES LAW, PLLC
1019 Regents Boulevard, Suite 204
Fircrest, WA 98466
joan@3ebrancheslaw.com
*Attorney for Defendant*

Colin L. Barnacle
Ashley E. Calhoun
Christopher J. Eby
Adrienne Scheffey
Allison N. Angel
AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, CO 80202
colin.barnacle@akerman.com
ashley.calhoun@akerman.com
christopher.eby@akerman.com
allison.angel@akerman.com
adrienne.scheffey@akerman.com
*Attorneys for Defendant*

Christopher M. Lynch
US DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 "L" Street NW
Washington, D.C.  20005
christopher.m.lynch@usdoj.gov
*Attorneys for Interested Party*

DATED at Seattle, Washington this 13th day of January, 2020.

*s/ Virginia Mendoza*
VIRGINIA MENDOZA, Legal Assistant
Schroeter Goldmark & Bender
810 Third Avenue, Suite 500
Seattle, WA  98104
Tel: (206) 622-8000
mendoza@sgb-law.com