# EXHIBIT 3

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT TACOMA

---

UGOCHUKWU GOODLUCK NWAUZOR,      )
FERNANDO AGUIRRE-URBINA,          )
individually and on behalf of     )
all those similarly situated,     )
                                  )
        Plaintiffs,               )
                                  ) No. 17-cv-05769-RJB
    vs.                           )
                                  )
THE GEO GROUP, INC., a Florida    )
corporation,                      )
                                  )
        Defendant.                )

---

VIDEO DEPOSITION UPON ORAL EXAMINATION OF

BRUCE A. SCOTT, JR.

AS A RULE 30(b)(6) DESIGNEE OF

THE GEO GROUP, INC.

---

810 Third Avenue, Suite 500

Seattle, Washington

DATE:  Tuesday, December 10, 2019

REPORTED BY:  Donald W. McKay, RMR, CRR, CCR 3237

Page 6

1          MS. MELL:  Joan Mell.  GEO.
2          Bruce Scott, witness, 30(b)(6).
3          MR. POLOZOLA:  My name is Lane Polozola.  I am
4     counsel for the State of Washington in a separate
5     consolidated lawsuit, Washington versus GEO.
6          THE VIDEOGRAPHER:  Will the court reporter
7     please administer the oath.
8
9    BRUCE A. SCOTT, JR.           called as a witness in the
10                                 above-entitled cause, being
11                                 first duly sworn, testified
12                                 as follows:
13
14                    E X A M I N A T I O N
15   BY MR. WHITEHEAD:
16      Q.  Good morning, Mr. Scott.  We met yesterday when
17   I deposed you in your individual capacity.  I will
18   introduce myself again, though, for the benefit of the
19   record.  I'm Jamal Whitehead.  I represent Mr. Nwauzor,
20   as well as Mr. Aguirre-Urbina in their lawsuit against
21   The GEO Group.
22          Mr. Scott, could you please state and spell your
23   name for the record.
24      A.  Bruce Arnold Scott, Jr.  B-R-U-C-E, A-R-N-O-L-D,
25   S-C-O-T-T, J-R.

```
 1      A.   After.
 2      Q.   And $27.12, were there ever any other offset
 3   amounts reached or discussed by GEO?
 4      A.   No.
 5      Q.   Walk me through how GEO arrived at the amount of
 6   $27.12 per hour as the offset amount.
 7      A.   We looked at total 2016 data, and took the total
 8   participants in the Voluntary Work Program for 2016, and
 9   we multiplied that by an estimated hours worked and
10   average hours worked per detainee during that time
11   period, to determine a total number of hours worked in
12   that year; and divided that by the total expenditures of
13   equipment, services, building costs, taxes, a number of
14   other factors, divided -- that equated out to the $27.12
15   an hour.
16      Q.   In 2016, what was the total number of
17   participants in the program?
18      A.   I can't recall off the top of my head.  I know
19   it's listed on some documentation somewhere.
20      Q.   Do you have those documents with you today?
21      A.   I do not.
22      Q.   All right.  And the estimated hours worked by
23   detainee, I believe you said was part of the formula.
24   Did I get that right?
25      A.   Yes.
```

 1      Q.   What was the estimated hour or hours worked by
 2   detainees used in your formula?
 3      A.   The estimated average hours worked by detainees,
 4   I believe, was 1.72 hours.
 5      Q.   How was that estimate reached?
 6      A.   That is purely an estimate.  Most Voluntary Work
 7   Program assignments only last 30 minutes, sometimes not
 8   even 30 minutes.  We don't have time records of each
 9   individual work period.  It was not a requirement and is
10   not a requirement of the ICE PBNDS standards for
11   voluntary work.  It's our best estimate of the number of
12   hours that each individual spent on average, working any
13   day for the Voluntary Work Program.
14      Q.   What sources of information did GEO consult to
15   reach that 1.72 hours estimate?
16      A.   Really just knowledge of the program, of what
17   detainees actually do in the Voluntary Work Program.
18      Q.   And in estimating 1.72 hours, was it GEO's
19   intent to be accurate in its estimate?
20           MS. MELL:  Object to the form.
21           THE WITNESS:  As accurate as available since the
22   ICE standard, nor contract require any such
23   documentation of time spent within the Voluntary Work
24   Program.
25   BY MR. WHITEHEAD:

1    Q.   Well, I guess what I'm driving at is that this
2  wasn't an arbitrary number.  1.72 hours represents GEO's
3  best estimate.  Is that correct?
4         MS. MELL:  Object to the form.
5         THE WITNESS:  Based on available knowledge and
6  without any detailed information from the Voluntary Work
7  Program that's not required, it's our best estimate.
8  BY MR. WHITEHEAD:
9    Q.   And is 1.72 hours still GEO's best estimate of
10 the average detainee shift?
11        MS. MELL:  Object to the form of the question.
12        THE WITNESS:  It's hard to answer.  The
13 Voluntary Work Program from day-to-day is very fluid.
14 It's hard to come up with a specific set of hours.  It
15 probably would not be the same from day-to-day if we
16 actually counted hours in the Voluntary Work Program.
17 BY MR. WHITEHEAD:
18   Q.   Well, for purposes of deriving GEO's offset
19 amount, is GEO sticking with or changing the 1.72 hours
20 detainee shift estimate?
21        MS. MELL:  Object to the form of the question.
22        THE WITNESS:  Based on -- when more available
23 information is known about the -- how many detainee
24 workers or what the overall end process wants to be --
25 it's hard to know.  It's a number right now.  The 1.72

1   hours is our best estimate within the Voluntary Work
2   Program.
3   BY MR. WHITEHEAD:
4        Q.   So that's yes, that is still GEO's estimated
5   hours for the average detainee shift?
6             MS. MELL:  Object to the form of the question.
7             THE WITNESS:  Based on the documentation in
8   front of me, yes.
9   BY MR. WHITEHEAD:
10       Q.   Well, it's not based on the documentation in
11  front of you.  Like I said at the outset, it's a
12  30(b)(6) deposition, so it's a little bit different.
13  You're speaking on behalf of the company.  So my
14  question is a yes or no one.  On behalf of the company,
15  is 1.72 hours still the company's estimate for the
16  average detainee shift?  Yes or no.
17            MS. MELL:  Object to the form of the question.
18  Move to strike.
19            And don't tell my client what to do.
20            THE WITNESS:  I've answered the question.  As of
21  right now, based on the documentation and the
22  information that we have, 1.72 hours is the number.
23  BY MR. WHITEHEAD:
24       Q.   And then you said that the total number of
25  participants multiplied by the estimated hours worked is

1   then divided by GEO's expenditures.  Did I get that
2   right?
3       A.  The costs related to the detainees in that
4   program.  Hygiene, products used, bedding used,
5   uniforms, the cost of housing, food, a number of
6   different topics, taxes.  All those things that relate
7   to the detainee and their housing determines that
8   number.
9       Q.  That's what I would like for you to unpack for
10  me.  I want to discuss in detail the expenditures that
11  are included in GEO's offset analysis.  Could you give
12  me a list of the expenditures or costs that GEO has
13  considered in formulating its offset amount?
14          MS. MELL:  Object to the form of the question.
15          THE WITNESS:  There is a number of related
16  items.  I mean, we could sit down if you have some
17  documentation to review, but I won't be able to rattle
18  off everything from memory.  We have provided some
19  information that was related to determining these
20  numbers.  I'd like to refer to that documentation.
21  BY MR. WHITEHEAD:
22      Q.  Did you bring it with you?
23      A.  I do not have it.
24      Q.  Do you know the title of the document that
25  you're thinking of?

```
 1                    C E R T I F I C A T E
 2
     STATE OF WASHINGTON   )
 3                         ) ss
     COUNTY OF KING        )
 4
 5         I, the undersigned Washington Certified Court
     Reporter, hereby certify:
 6
           That the foregoing deposition upon oral examination
 7   of the witness named herein was taken stenographically
     before me and transcribed under my direction;
 8
           That the witness was duly sworn by me pursuant to
 9   RCW 5.28.010 to testify truthfully;
10         That the transcript of the deposition is a full,
     true and correct transcript to the best of my ability;
11
           That I am neither an attorney for, nor a relative
12   or employee of any of the parties to the action or any
     attorney or counsel employed by the parties hereto, nor
13   financially interested in its outcome.
14         I further certify that in accordance with CR 30(e),
     the witness was given the opportunity to examine, read,
15   and sign the deposition, within 30 days upon its
     completion and submission, unless waiver of signature was
16   indicated in the record.
17
18
19   _____
20        Donald W. McKay, RMR, CRR
          Washington Certified Court Reporter No. 3237
21        License effective until: 07/02/2020
22
23
24
25
```