The Honorable Robert J. Bryan

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated,<br><br>Plaintiffs/Counter-Defendants,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>Defendant/Counter-Claimant. | Case No. 3:17-cv-05769-RJB<br><br>**BRIEF OF AMICUS CURIAE IMMIGRATION REFORM LAW INSTITUTE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

1

# INTEREST OF *AMICUS CURIAE*

The Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens and lawful permanent residents, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 74 F. Supp. 3d 247 (D.D.C. 2014); *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, No. 16-5287 (D.C. Cir. filed Sept. 28, 2016); *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016); *Matter of C-T-L-*, 25 I. & N. Dec. 341 (B.I.A. 2010); and *In re Q- T- -- M- T-*, 21 I. & N. Dec. 639 (B.I.A. 1996).

No counsel for a party authored this brief in whole or in part and no person or entity, other than *amicus curiae*, its members, or its counsel, has contributed money that was intended to fund preparing or submitting the brief.

# SUMMARY OF THE ARGUMENT

By claiming that the Washington Minimum Wage Act ("WMWA") prohibits GEO, Inc. ("GEO") from administering Congress's $1-per-day work program at the Northwest Ice Processing Center ("NWIPC"), plaintiffs ask this Court to accept

BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

2

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

that WMWA bars the United States from locating federal immigration detention facilities inside the State of Washington unless its contractors pay immigration detainees $11.50 per hour—more than ten times the *daily* compensation set by Congress.

By plaintiffs' reading, WMWA would violate the Supremacy Clause of the U.S. Constitution. Under that clause, a state statute is preempted when it stands as an obstacle to the full purposes and objectives of Congress. By setting a $1-per-day maximum compensation rate at immigration detention facilities for voluntary work by detainees, Congress intended to mirror the compensation rate for inmates and detainees who participate in voluntary work programs in state and federal prisons and detention facilities, both civil and criminal, throughout the United States. WMWA, as plaintiffs would apply it, would block that purpose of Congress; $11.50 per hour is far more than these kinds of institutions, including those operated by the State of Washington, pay inmates for voluntary work. Indeed, more specifically, by setting a maximum compensation rate of $1 per day, Congress obviously intended that detainees receive no more than this rate. Applying WMWA here would block this congressional purpose, as well.
BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

3

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

Second, as a federal contractor, GEO enjoys derivative sovereign immunity against the instant action. Derivative sovereign immunity protects GEO against any complaint based on GEO's exercise of authority validly conferred on it by the federal government. To be sure, derivative sovereign immunity does not apply when a detainee brings a complaint alleging that a contractor exceeded its validly conferred authority. But because plaintiffs' claims trench upon GEO's exercise of its valid contract with the federal government, they are barred.

## ARGUMENT

### I. The Supremacy Clause precludes WMWA from applying to detainee work programs at federal immigration detention facilities.

Congress requires that detainees at immigration detention facilities be offered work programs. 8 U.S.C. § 1555(d) ("Appropriations now or hereafter provided for the Immigration and Naturalization Service shall be available for . . . payment of allowances (at such rate as may be specified from time to time in the appropriation Act involved) to aliens, while held in custody under the immigration laws, for work performed."). "The work program created by this law has been known as the 'Voluntary Work Program,' and ICE [Immigration and Customs Enforcement] detention standards *require it to be offered by detention facilities* and

BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

4

provide that 'compensation is at least $1.00 (USD) per day.'" Statement of Interest of the United States, Dkt. 185, at 3 (emphasis added).

Congress expressly determined this exact rate of compensation: $1 per day. This compensation rate has been in place for decades. *Alvarado Guevara v. INS*, 902 F.2d 394, 396 (5th Cir. 1990) ("Pursuant to 8 U.S.C. § 1555(d), which provides for payment of allowances to aliens for work performed while held in custody under the immigration laws, volunteers are compensated one dollar ($ 1.00) per day for their participation. The amount of payment was set by congressional act.") (citing Department of Justice Appropriation Act, 1978, Pub. L. No. 95-86, 91 Stat. 426 (1978) (authorizing "payment of allowances (*at a rate not in excess of $1 per day*) to aliens, while held in custody under the immigration laws, for work performed.") (emphasis added)). *See also* Declaration of Tae Johnson, Dkt. 111, ¶ 13 ("The amount of the payments was most recently specified in the appropriations act for Fiscal Year 1979, which set it *at a maximum* of $1 per day.") (emphasis added).

The federal government accomplishes Congress's work-program mandate by hiring private contractors such as GEO to run immigration detention facilities. Each day, the federal government holds more than 30,000 aliens in civil detention.

BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

5

*Gonzalez v. CoreCivic, Inc.*, No. 18-cv-00169 (W.D. Tex. Feb. 22, 2018), Complaint (ECF No. 1) at 10. Two-thirds of these aliens are detained at facilities "operated by private companies" such as GEO. *Id.* Such companies operate "nine out of ten of the country's largest immigration detention facilities." *Id.*

Plaintiffs complain that WMWA prohibits GEO from executing its contract with the federal government unless GEO pays detainees much more than the contractual reimbursement rate of $1 per day. According to plaintiffs, Congress's legislated compensation of $1 per day constitutes unlawful "subminimum wages" under WMWA. Dkt. 84 ¶ 6.4.

By its plain language, WMWA does not apply to detainee work programs at federal immigration detention facilities. Detainees fall under both the resident exception and the detainee exception to the WMWA. Defendant GEO's Motion for Summary Judgment, Dkt. 227, Part IV. This plain meaning controls. "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993).

But even under plaintiffs' suggested reading of the WMWA, the Act is precluded from applying to federal detainee work programs under the Supremacy Clause.

BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

6

The Supremacy Clause of the U.S. Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Accordingly, federal law can preempt state law, both expressly and impliedly. "Pre-emption . . . 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53 (1982) (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)).

A species of implied preemption is conflict preemption. "[S]tate laws are pre-empted when they conflict with federal law." *Arizona v. United States*, 567 U.S. 387 399 (2012). Conflict preemption comes in two varieties: "conflict-impossibility preemption" and "conflict-obstacle preemption." The former occurs when "'compliance with both federal and state regulations is a physical impossibility.'" *Id.* (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963)). The latter occurs when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). The judgement of courts about what constitutes an unconstitutional impediment to federal law is "informed

BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

7

by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

If WMWA applied to Congress's voluntary work programs at federal immigration detention facilities, it would present an obstacle to the purposes of these programs. Congress's evident purpose in selecting a $1-per-day compensation rate was to align immigration detainee compensation with detainee compensation under similar programs in similar contexts. Plaintiffs' reading of WMWA would disrupt this purpose and cause compensation at the NWIPC to be anomalously high. "[T]he State of Washington itself operates a number of programs for civil detainees where it pays less than minimum wage," and less than minimum wage is likewise paid at the state's criminal detention facilities, some of which are run by GEO. Dkt. 227 at 5. Obstructing this federal purpose would cause disruptive or even absurd consequences. For example, "if the state and federal facilities were treated differently . . . some individuals who may be held in state custody would have a perverse incentive to be transferred to a federal detention facility in order to earn additional funds." *Id.* at 13. Such obstruction would also prevent Congress from achieving uniformity across the facilities managed by

BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

8

federal contractors and those managed by the federal government directly. $1-per-day "is the same rate that ICE provides in its own [detention] facilities." Dkt. 111, ¶ 13.

It does not matter whether GEO can, in theory, go above and beyond the $1-per-day rate Congress legislated. Plaintiffs' reading of WMWA is unconstitutional simply because it would prohibit that rate and obstruct Congress's manifest objective and purpose. Under plaintiffs' reading of WMWA, GEO "could be found guilty . . . for doing that which the act of Congress permits him to do," namely, to pay immigration detainees $1-per-day for their participation in the voluntary work program. *Hill v. Florida*, 325 U.S. 538, 542 (1945). In *Hill*, the state of Florida introduced a licensing regime for union representatives. *Id.* at 541–42. Would-be union representatives could, in theory, satisfy Florida's state-level licensing regime just as GEO could, in theory, satisfy plaintiffs' above-and-beyond compensation demands. Nonetheless the Supreme Court held that Florida's minimum-standard licensing regime was unenforceable because it "circumscribe[d]" the freedom of choice Congress intended workers to have in selecting their union representatives. *Id.* at 541. Here, by setting a $1-per-day compensation rate, Congress at the

BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

9

minimum intended contractors such as GEO to be able to offer that rate if they chose to do so. WMWA is preempted to the extent it would take that choice away.

Indeed, on the face of the statute setting $1 per day as a *maximum* compensation rate for voluntary work program participants, an even more specific purpose of Congress is quite obvious: that such participants be paid at *no more than* this rate. Applying WMWA as plaintiffs would apply it would obliterate that purpose in the State of Washington.

**II.   GEO enjoys derivative sovereign immunity.**

Plaintiffs' true grievance lies against the federal government, which has: (1) prohibited plaintiffs' unlawful entry or presence in the United States; (2) detained plaintiffs; and (3) set the terms of plaintiffs' detention, including their access to a $1-per-day voluntary work program. But plaintiffs' complaint singles out GEO in the hope that, by jeopardizing one of the contractors that the federal government assigns to manage two-thirds of the Nation's immigration detainees, plaintiffs can accomplish a policy change through an attack on federal contractors. Indeed, plaintiffs' complaint is just one front in a strategic litigation campaign that has also targeted other similar contractors. "This case is one of four copycat cases . . . in the

BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

10

last few years." Appellant's Brief at 31 n.9, *Gonzales v. CoreCivic*, No. 19-50691 (5th Cir. Oct. 15, 2019).

GEO, however, is merely the federal government's agent. GEO itself is not liable for plaintiffs' objections to federal policy. "[I]t is clear that if this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." *Yearsley v. W. A. Ross Constr. Co.*, 309 U.S. 18, 20–21 (1940). GEO can only be liable to plaintiffs if GEO exceeds the authority assigned to it by the federal government, or if the underlying federal policy is itself unlawful. "Where an agent or officer of the Government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the ground of liability has been found to be *either that he exceeded his authority or that it was not validly conferred*." *Id.* at 21 (emphasis added). An agent of the government is not liable when it is faithfully implementing the exact directive that the federal government has ordered it to accomplish. "[T]there is no ground for holding its agent liable who is simply acting under the authority thus validly conferred. The action of the agent is 'the act of the government.'" *Id.* at 22 (quoting *United States v. Lynah*, 188 U.S. 445, 465 (1903)). Here, GEO is merely

BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

11

acting under the express authority of the federal government, which dictates GEO's actions down to the very same compensation details that plaintiffs complain about.

The holding of *Yearsley* controls in this case. Plaintiffs' core claim against GEO—that "paying subminimum wages to Plaintiffs and the proposed class members violates" WMWA—does not allege that GEO exceeded its authority under its federal contract. Dkt. 84 ¶ 6.3. GEO is operating within the express terms of its contract with the federal government, and those terms are within the federal government's valid prerogative to set. Therefore, derivative sovereign immunity protects GEO from liability.

To be sure, even if derivative sovereign immunity applies to a contractor's faithful implementation of its contract with the federal government, behavior unauthorized by that contract would lie outside the scope of such immunity. Derivative sovereign immunity does not cover conduct by a contractor that exceeds the authority conferred to it, or that cannot be lawfully conferred in the first place. *Yearsley*, 309 U.S. at 21. Federal contractors at immigration-detention facilities might forfeit their derivative sovereign immunity in specific instances where their conduct goes beyond the limits of what the federal government is itself allowed to

BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

12

do, or beyond what the federal government has authorized its contractor to do. But GEO is not alleged to have done anything of the kind. Thus, it is immune against plaintiffs' claims based on its performance of its contract with the federal government.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment should be granted and plaintiffs' motion summary judgment should be denied.

Dated: January 14, 2020                              Respectfully submitted,

*/s/* Richard M. Stephens, WSBA 21776
Stephens & Klinge LLP
601- 108th Avenue NE, Suite 1900
Bellevue, WA 98004
425-453-6206; stephens@sklegal.pro

/s/ Christopher J. Hajec
CHRISTOPHER J. HAJEC
LEW J. OLOWSKI
Immigration Reform Law Institute
25 Massachusetts Avenue NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

13

chajec@irli.org
lolowski@irli.org

Attorneys for *Amicus Curiae*
Immigration Reform Law Institute

BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

14

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

# **CERTIFICATE OF SERVICE**

I hereby certify on this 15th day of January, 2020, I electronically filed and served the foregoing via the Court's CM/ECF system.

*/s/* Richard M. Stephens,

BRIEF OF AMICUS CURIAE
IMM. REF. LAW INST.
IN SUPPORT OF DEFENDANT
CASE NO. 3:17-CV-05769-RJB

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVENUE NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

15