The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, INC., a Florida corporation,<br><br>Defendant. | No. 3:17-cv-05769-RJB<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE |

## I. INTRODUCTION

Defendant The GEO Group, Inc. raises nine enumerated motions in limine in this case and the consolidated case brought by the State of Washington. Plaintiffs Nwauzor and Aguirre-Urbina address each of GEO's motions below in the order they were presented in GEO's moving papers. To avoid burdening the Court with repetitive argument and unnecessary paper, Plaintiffs try not to duplicate arguments made by the State in opposition to GEO's motions in limine and instead adopt and incorporate those by reference where appropriate as specifically indicated below.

PLTFS.' OPP. TO GEO'S MOT. IN LIMINE - 1 (Case No. 3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

## II. DISCUSSION

### 1. That VWP positions should have or could have been filled by non-detainee Washington citizens or residents.

Plaintiffs specifically adopt and incorporate by reference the State's response to this motion. Plaintiffs only reiterate that to the extent the Court concludes that the economic realities test governs the question of whether the VWP participants were employees for purposes of the Washington Minimum Wage Act ("MWA"), numerous courts have concluded that a relevant consideration under that test is whether a defendant used unpaid or underpaid workers to perform work that otherwise would have been performed by a paid employee. *See, e.g.*, *Walling v. Portland Terminal Co.*, 330 U.S. 148, 149-50, 67 S. Ct. 639, 642, 91 L. Ed. 809 (1947); *Benjamin v. B & H Educ., Inc.*, 877 F.3d 1139, 1143-44, 1147-48 (9th Cir. 2017) (discussing *Walling* and other cases); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 529 (6th Cir. 2011); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 536-37 (2d Cir. 2016); *Reich v. Shiloh True Light Church of Christ*, 895 F. Supp. 799, 815 (W.D.N.C. 1995), *aff'd*, 85 F.3d 616 (4th Cir. 1996). Therefore, Plaintiffs should not be prohibited from introducing evidence or arguing that the labor provided by VWP workers in the kitchen, barbershop, laundry, and various janitorial and maintenance roles displaces the work of paid employees.

### 2. That the VWP is a "forced work situation."

Plaintiffs have made clear that they are bringing claims only under the MWA, not under the Trafficking Victims Protection Act or other laws prohibiting forced labor. Nor will Plaintiffs argue that any workers participated in the VWP under the threat of harm or threat of legal process. *See* GEO Mot. [Doc. 256] at 4. However, throughout this litigation Plaintiffs have pointed out that detainees are motivated to work in the VWP in part to earn money to

PLTFS.' OPP. TO GEO'S MOT. IN LIMINE - 2 (Case No. 3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

supplement their food and toiletries at the commissary and to make phone calls to family, legal counsel, and other persons outside the NWDC. Moreover, it is clear from GEO's opposition to Plaintiffs' motions in limine and GEO's other filings in this case that GEO intends to stress the "voluntary" nature of work in the VWP and the fact that GEO already provides food and shelter to the detainees per its contract with U.S. Immigration and Customs Enforcement ("ICE"). GEO also presumably will attempt to adduce evidence and argue, as it has in the past, that detainees participate in the VWP merely to have something to occupy their time.[1] Plaintiffs agree that an individual's motivation for performing work generally is not relevant to determining employee status under the MWA. *See* GEO Mot. [Doc. 256] at 4. However, evidence that individuals participate in the VWP in whole or in part to earn money to use at the commissary is relevant and necessary to balance and contextualize any evidence and arguments regarding voluntariness, provision of necessities, or detainees' other motivations for work. Such evidence does not suggest that the detainees' labor is "forced" and should not be prohibited.

**3. Evidence related to GEO's legal fees, including requests for compensation for legal fees sent to ICE.**

Plaintiffs specifically adopt and incorporate by reference the State's response to this motion.

**4. Evidence or argument related to GEO's size, profitability, financial status or overall wealth.**

Plaintiffs specifically adopt and incorporate by reference the State's response to this motion. GEO acknowledges that Plaintiffs can discuss the fact that GEO is a for-profit

---

[1] For example, GEO's proposed jury instructions – incorrectly – include the statement, "A program that is designed to allow detained individuals to remain active and feel productive on a daily basis, for example, likely does not indicate an employment relationship." GEO Proposed Jury Instructions, at 21.

PLTFS.' OPP. TO GEO'S MOT. IN LIMINE - 3 (Case No. 3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

company, as this is directly relevant to its exemption defenses under the MWA. However, Plaintiffs should also be able to discuss how use of VWP labor impacts GEO's bottom line. In its own proposed jury instructions, GEO identifies "whether the service rendered is an integral part of GEO's business" as a relevant element in determining employee status. In order to make this assessment, the jury will first need to understand what "GEO's business" is, and second how much of a contribution VWP labor makes to that business. Thus, in deciding employee status, courts have looked not only at the displacement of paid labor (as discussed in section 1 above), but also at the extent to which the company receives direct economic advantage from the alleged employees' work. *See Walling*, 330 U.S. at 153; *Shiloh True Light Church*, 895 F. Supp. at 815. For example, in *Marshall v. Baptist Hosp., Inc.*, the trial court found that unpaid trainees in a hospital radiology department were employees where,

> It is beyond question that the defendant received direct and substantial benefit from the work performed by trainees, work that would otherwise have been done by regular employees and work for which the hospital charged patients at full rates…. Simply stated, the hospital exploited the training program, turning it to its own advantage.

473 F. Supp. 465, 476–77 (M.D. Tenn. 1979), *rev'd*, 668 F.2d 234 (6th Cir. 1981). Viewing the circumstances of "the whole activity," the court concluded, "The economic reality is that the trainees functioned as an integral part of the operation of the Radiology Department without pay."[2] Evidence relating to the budget and staffing of the NWDC, and how much VWP labor contributes to the facility's bottom line is relevant and admissible to allow the

---

[2] The Sixth Circuit reversed the district court's judgment for the workers, holding that the hospital reasonably relied on ambiguous Department of Labor interpretive guidelines and therefore established a good faith defense under the Portal to Portal Act. However, the circuit court also concluded that "we do not believe that the District Court applied an erroneous test of liability under the FLSA, and we agree that the record supports the general findings of the court below." *Marshall v. Baptist Hosp., Inc.*, 668 F.2d 234, 236 (6th Cir. 1981).

PLTFS.' OPP. TO GEO'S MOT. IN LIMINE - 4 (Case No. 3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

jury to assess whether this work is "integral" to GEO's business and whether GEO obtained a direct and substantial economic advantage from this labor.

### 5.  Evidence or argument that GEO is involved in other lawsuits.

Plaintiffs do not oppose this motion, unless GEO opens the door by arguing that the lawsuits brought by Plaintiffs and the State are irrational, politically motivated, or driven by some purpose other than Plaintiffs' legitimate belief that the MWA applied to their work for GEO. If GEO opens the door by arguing that Plaintiffs' claim is irrational or motivated by political considerations beyond the reasonable application of fact to law, Plaintiffs have a right to rebut those assertions by pointing to the myriad other cases in which parties have made similar claims regarding the employment status of detainee workers and which claims were not and could not have been motivated by any political considerations of the Washington Attorney General's Office.

### 6.  Exclusion of Mr. Strawn's testimony.

GEO's motion in limine to exclude Mr. Strawn's testimony merely reiterates its earlier failed motion to exclude, in brief and without the introduction of any new facts or argument. Moreover, by indicating its opposition to several of Plaintiffs' pending motions in limine, GEO has highlighted the potential relevance and admissibility of Mr. Strawn's testimony.

For example, GEO has indicated that it opposes Plaintiffs' motions to preclude evidence that class members violated federal immigration laws and to prohibit use of the terms "illegal alien" and "illegal immigrant" at trial. *See* Pl. Motions in Limine [Doc. 259] at 7-9. Mr. Strawn's testimony would be relevant to rebut the implications of these emotionally charged terms, and indeed the pre-existing misunderstandings of potential jurors, by

PLTFS.' OPP. TO GEO'S MOT. IN LIMINE - 5 (Case No. 3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

explaining that many NWDC detainees and VWP participants have not been found guilty of breaking any laws and that they are merely detained while their immigration status is being determined.

Similarly, GEO has indicated that it opposes Plaintiffs' motion in limine precluding evidence and argument about work authorization, *see* Pl. Motions in Limine [Doc. 259] at 15-16, and continues to suggest in its motion in limine that "whether detainees are eligible to work for GEO" is a relevant consideration, *see* GEO Mot. [Doc. 256] at 8. To the extent that GEO is allowed to discuss work authorization, Mr. Strawn's testimony regarding the work eligibility of detainees and the reasons why detainees might not obtain the requisite work permits even if eligible will be relevant and helpful to the jury in forming a complete understanding of the evidence.

Finally, much of GEO's documentary evidence concerns practices at State correctional facilities, presumably in support of its intergovernmental immunity defense. To the extent that type of evidence is deemed admissible or relevant, Mr. Strawn's testimony distinguishing non-punitive civil detention in the NWDC from punitive detention in state facilities will again be relevant to avoid confusion and undue prejudice and to provide a complete view of the evidence to the jury.

For these reasons, the Court should affirm its earlier denial of GEO's motion to exclude and determine the admissibility of Mr. Strawn's testimony at the time of trial when it is clear what evidence the parties are allowed to and either have or intend to introduce.

**7.     Limiting Dr. Munson's testimony.**

The scope of GEO's motion to limit Dr. Munson's testimony is unclear. Plaintiffs do not oppose this motion to the extent GEO only seeks to ensure compliance with this Court's

PLTFS.' OPP. TO GEO'S MOT. IN LIMINE - 6 (Case No. 3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Order denying GEO's earlier motion to exclude and limiting Dr. Munson's testimony to the "human calculator" role described in Plaintiffs' earlier briefing [Doc. 237] and authorized by the Court's Order [Doc. 251]. Dr. Munson's testimony will be limited to describing his process and the outcome of his calculations, and he will not offer any opinions on the average shift lengths worked by VWP participants, the credibility of evidence relating to that issue, or the appropriate measure of damages (beyond the accuracy of his calculations).

However, it appears that GEO may be seeking to exclude Dr. Munson's revised calculations as described in his amended report, without expressly stating so. *See* GEO Mot. [Doc. 256] at 8-9 & n.5. To the extent that is GEO's intent, it rests on flawed factual and legal grounds and should be denied.

To begin, GEO suggests that Dr. Munson's revised calculations somehow expand his expert role and go beyond the limitations proscribed in the Court's order. This is incorrect. In performing his original calculations, Dr. Munson used an overall average shift length generated by GEO itself and invoice data from GEO to ICE reflecting the number of VWP shifts worked in a given month. *See* Pl. Opp. to Def. Mot. to Exclude Munson [Doc. 237], at 3-4; Report of Dr. Munson (Sept. 11, 2019) [Doc. 218-2]. Dr. Munson used this approach because GEO had not produced more precise data in electronic form regarding the work assignments of VWP participants during the class period, despite longstanding and repeated discovery requests by Plaintiffs for these data.[3]

---

[3] The history of these requests and of the data production leading up to Dr. Munson's amended report is set forth in the letter appended as Exhibit 2 to the accompanying Declaration of Jamal N. Whitehead. Plaintiffs are prepared to submit copies of all documents and correspondence referenced in that letter should the Court need that information to rule on the present motion. Dr. Munson's amended report is appended as Exhibit 1 to the accompanying Whitehead Declaration.

PLTFS.' OPP. TO GEO'S MOT. IN LIMINE - 7 (Case No. 3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

On November 13, 2019, well after the deadline for Dr. Munson's original report, GEO finally produced electronic data showing the daily work assignments of VWP participants for most of the class period. These data are from the Keefe banking system and reflect daily payments by GEO to the commissary accounts of VWP participants for work in the VWP. Dr. Munson took these data, and using assumptions provided by counsel regarding the different shift lengths for different work assignments (e.g., kitchen, laundry, janitorial), calculated minimum wages owed to each VWP participant. *See* Amended Report of Dr. Munson (Feb. 6, 2020) (Whitehead Dec. Ex. 1). Thus, Dr. Munson's amended report contains more precise calculations of damages owed, but does not fundamentally alter his approach or the scope or nature of his testimony. He is simply applying assumptions about shift lengths to data showing the number of shifts, without opining on the accuracy of those assumptions (which will be left to the determination of the jury and which Plaintiffs anticipate will be established by the testimony of GEO's own employees, officers, and supervisors).

Plaintiffs produced Dr. Munson's report to GEO on February 10, 2020, including an Excel workbook containing multiple spreadsheets showing his amended calculations by month, by individual, the work locations to which each shift-length assumption was applied, data source documents, and the like. Thus, it is not clear what GEO means when it suggests Dr. Munson's exact mathematical calculations "appear to be missing from his most recent report," and GEO has not previously raised any such complaint or concern with Plaintiffs.

GEO also suggests in a footnote that Dr. Munson's amended calculations are "subject to automatic exclusion" because they were provided after the deadline for disclosure of expert reports. GEO Mot. [Doc. 256] at 8 n.5. As Plaintiffs previously explained to GEO, this

PLTFS.' OPP. TO GEO'S MOT. IN LIMINE - 8 (Case No. 3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

is not so. *See* Whitehead Dec. Ex. 2. GEO has never responded to this correspondence, other than by filing the present motion in limine, which does not address any of the points raised in Plaintiffs' letter.[4]

If GEO's motion is intended to press this argument, it is flawed and should be rejected. Fed. R. Civ. P. 37(c)(1) provides that expert testimony disclosed after the normal deadline may still be allowed if it was substantially justified or is harmless. Both exceptions are met here.

To begin, the timing of Dr. Munson's amended report is substantially justified by GEO's delays in providing electronic Keefe banking data that had been repeatedly requested in discovery by Plaintiffs' counsel. These data were not produced in usable format until after the deadline for Plaintiffs' expert report. Indeed, although Plaintiffs originally requested these data in their first discovery requests on January 31, 2018, they were not produced until November 13, 2019, after they had been used by GEO's expert, Serena Morones, to prepare a critique of Dr. Munson's original report. *See* Whitehead Dec. Ex. 2, at 1-2 (summarizing history). Amendment of Dr. Munson's report was not only substantially justified, but inevitable given the timing of GEO's document production.

Second, Dr. Munson's amended calculations are also harmless. If anything, Dr. Munson's amended report benefits GEO because his damage calculations decreased by approximately $736,000, even with the addition of an extra six weeks of extrapolated damages. Dr. Munson's amended report also calculates an average shift length of 1.4569

---

[4] Footnote 5 to GEO's motion ends with the cryptic statement that "GEO believes that this issue is easily addressed by limiting Dr. Munson's testimony to only that which is consistent with this Court's prior ruling." As explained above, Dr. Munson's testimony regarding his amended calculations can and will be consistent with the Court's ruling. It thus is not clear whether GEO is objecting to introduction of the amended calculations or not.

PLTFS.' OPP. TO GEO'S MOT. IN LIMINE - 9 (Case No. 3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

hours (compared to the 1.72 hours calculated by Mr. Heye and used in Dr. Munson's initial report), which is virtually identical to the average shift length calculated by Ms. Morones in her rebuttal report. Dr. Munson's amendment also should have come as no surprise to GEO, since both Plaintiffs' counsel and Dr. Munson himself told GEO's counsel that he would be revising his calculation once Plaintiffs learned that the electronic Keefe banking data were available. *See* Whitehead Dec. Ex. 2, at 2. Any minor prejudice to GEO is further ameliorated by Plaintiffs' offer to provide Dr. Munson for a second deposition, by the bifurcation of liability and damages in this case, and now, by the postponement of the trial, which allows further time for evaluation of the amended calculations and any redeposition.

In sum, to the extent GEO's motion simply seeks to enforce this Court's earlier order, it is unnecessary and unopposed. To the extent it seeks to exclude Dr. Munson's amended calculations, it is ill-founded and should be denied.

**8.      Exclusion of evidence related to pay rates at other facilities.**

Plaintiffs anticipate that GEO will adduce evidence and argue that either federal law or its contract with ICE prohibit it from paying VWP participants more than $1 per day. Plaintiffs have a right to rebut such assertions with evidence that GEO in fact has paid more than $1 per day to VWP participants at other facilities that are subject to the same laws and contract language. This evidence is not unduly prejudicial to GEO, is not so complex that it would confuse the jury, and would be necessary to rebut or impeach patent misrepresentations of fact by GEO.

**9.      Exclusion of Mr. Martinez and Mr. Ho.**

Plaintiffs no longer intend to call Mr. Martinez or Ms. Ho at trial and therefore do not oppose this motion.

PLTFS.' OPP. TO GEO'S MOT. IN LIMINE - 10 (Case No. 3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

DATED this 23rd day of March, 2020.

SCHROETER GOLDMARK & BENDER

*s/ Jamal N. Whitehead*

Adam J. Berger, WSBA #20714
Lindsay L. Halm, WSBA #37141
Jamal N. Whitehead, WSBA #39818
Rebecca J. Roe, WSBA #7560
810 Third Avenue, Suite 500
Seattle, WA 98104
Tel: (206) 622-8000 ~ Fax: (206) 682-2305
berger@sgb-law.com
halm@sgb-law.com
whitehead@sgb-law.com

THE LAW OFFICE OF R. ANDREW FREE
Andrew Free (*Pro Hac Vice*)
P.O. Box 90568
Nashville, TN 37209
Tel: (844) 321-3221 ~ Fax: (615) 829-8959
andrew@immigrantcivilrights.com

OPEN SKY LAW PLLC
Devin T. Theriot-Orr, WSBA #33995
20415 72nd Ave S, Ste. 100
Kent, WA 98032
Tel: (206) 962-5052 ~ Fax: (206) 681-9663
devin@openskylaw.com

MENTER IMMIGRATION LAW, PLLC
Meena Menter, WSBA #31870
8201 164th Ave NE, Suite 200
Redmond, WA 98052
Tel: (206) 419-7332
meena@meenamenter.com

*Attorneys for Plaintiff*

PLTFS.' OPP. TO GEO'S MOT. IN LIMINE - 11 (Case No. 3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

# CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Devin T. Theriot-Orr
OPEN SKY LAW, PLLC
20415 – 72nd Avenue South, Suite 110
Kent, WA 98032
devin@opensky.law
*Attorney for Plaintiff*

R. Andrew Free
THE LAW OFFICE OF R. ANDREW FREE
PO Box 90568
Nashville, TN 37209
andrew@immigrantcivilrights.com
*Attorney for Plaintiff*

Meena Menter
MENTER IMMIGRATION LAW PLLC
8201 – 164th Avenue NE, Suite 200
Redmond, WA 98052
meena@meenamenter.com
*Attorney for Plaintiff*

Joan K. Mell
III BRANCHES LAW, PLLC
1019 Regents Boulevard, Suite 204
Fircrest, WA 98466
joan@3ebrancheslaw.com
*Attorney for Defendant*

Colin L. Barnacle
Ashley E. Calhoun
Christopher J. Eby
Adrienne Scheffey
AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, CO 80202
colin.barnacle@akerman.com
ashley.calhoun@akerman.com
christopher.eby@akerman.com
adrienne.scheffey@akerman.com
*Attorneys for Defendant*

DATED at Seattle, Washington this 23rd day of March, 2020.

*s/ Virginia Mendoza*
VIRGINIA MENDOZA, Legal Assistant
Schroeter Goldmark & Bender
810 Third Avenue, Suite 500
Seattle, WA 98104
Tel: (206) 622-8000
mendoza@sgb-law.com

PLTFS.' OPP. TO GEO'S MOT. IN LIMINE - 12 (Case No. 3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305