# EXHIBIT 2



berger@sgb-law.com

February 24, 2020

Colin L. Barnacle
Akerman LLP
1900 16th Street, Suite 1700
Denver, CO 80202

Re:  *Nwauzor v. The GEO Group, Inc*.

Dear Mr. Barnacle:

I am responding to your letter of February 13, 2020 regarding the amended report of Dr. Munson. As explained below, we are not going to withdraw the amended report and believe your arguments for asking us to do so are misplaced.

Rule 37(c)(1) provides that expert testimony disclosed after the normal deadline may still be allowed if it was substantially justified or is harmless. Both exceptions are met here.

To begin, the timing of Dr. Munson's amended report is substantially justified by GEO's delays in providing electronic Keefe banking data that had been repeatedly requested in discovery by Plaintiffs' counsel. These data were not produced in usable format until after the deadline for Plaintiffs' expert report. Amendment of Dr. Munson's report was not only substantially justified, but inevitable given the timing of GEO's document production.

To provide just a brief history of this issue, Plaintiffs first requested all records showing "work hours and work assignments performed by detainees participating in the Voluntary Work Program" and all records showing compensation paid to VWP participants on January 31, 2018. *See* Plaintiff's First Interrogatories and Request for Production (Interrogatories 4 & 6, Requests for Production A, D, & Z). Those requests specifically directed that "[f]iles such as spreadsheets and drawing files … should be produced in native format." There is no reasonable dispute that the Keefe banking data are responsive to these requests.

On August 6, 2019, following review of the 30(b)(6) deposition of Ryan Kimble, we specifically requested production of the Keefe banking data in Excel or similar comma-delimited format. We noted at the time that PDFs of individual pay data produced to the State of Washington were incomplete and from outside the class period.

On September 20, 2019, after the September 11 deadline for Dr. Munson's report, GEO produced Excel spreadsheets through June 2018, but those spreadsheets did not contain any



Mr. Barnacle
February 24, 2020
Page 2

work location data. Therefore, although they provided individual pay data, they did not provide any information that would enable a different aggregate analysis than the ICE invoice data initially used by Dr. Munson. Plaintiffs emailed defense counsel about this omission on October 15, noting that the PDFs produced to the State contained job location data, but received no response.

On October 31, 2019, GEO's expert, Serena Morones, produced a report that relied in significant part on analysis of the Keefe banking data to critique Dr. Munson's initial report. Unlike the spreadsheets produced to Plaintiffs on September 20, the data provided to Ms. Morones did include work location data. By itself, the fact that GEO provided its own expert with these important data at the same time it was being withheld from Plaintiffs' expert provides substantial justification for the post-deadline amendment of Dr. Munson's opinions.

On November 1, the day after receiving Ms. Morones's rebuttal report, we emailed regarding the discrepancy between the data produced to Plaintiffs and that provided to Ms. Morones. GEO finally produced the complete Keefe banking data, with work location information, on November 13, 2019.

After learning that the Keefe banking data were available in usable format, Plaintiffs consistently made it clear that Dr. Munson would be preparing a revised report once he received and had adequate time to analyze the data. For example, on November 8, Mr. Whitehead emailed that Dr. Munson had not had a chance to review the Worker Pay files and that "[t]his data may necessitate supplementation of his initial report." Subsequently, we advised defense counsel that it might make sense to defer Dr. Munson's deposition until he completed his new analysis, but you nonetheless decided to proceed with his deposition. At deposition, Dr. Munson repeatedly stated that he was still working with the Keefe banking data and would be revising his calculations accordingly. *See* Munson Dep. 35, 69-70, 71-72. And in opposing GEO's motion to strike, Plaintiffs expressly told defense counsel and the Court that Dr. Munson "anticipates supplementing his report to refine his aggregate damages calculations and to determine individual damages owed to the Class Members" based on the banking data. Opp. Mot. To Strike at 4 n.3. Thus, there is absolutely no surprise to GEO from the present amendment.

Finally, your assertion that there is no substantial justification for the new opinions because GEO produced the banking records in TIF format in April 2019 is flawed on two grounds. First, GEO did not produce comprehensive records for the entire class period. Rather, the records it produced only covered certain months, were repetitive, and were scattered throughout other document production, not consolidated or identified in any way. Second, even if GEO had produced a comprehensive set of records in TIF format, that would not have been usable for Dr. Munson's calculations. The Keefe spreadsheets contain over 700,000 rows of information. The TIFs for *one month* of banking records used by GEO as an exhibit



765390.docx

Mr. Barnacle
February 24, 2020
Page 3

during Dr. Munson's deposition ran 182 pages alone and were produced as separate TIF files for every single page. Reliably transcribing these records into a format where it could be used for electronic computations simply would not have been feasible, a fact apparently recognized by Ms. Morones when she asked for the data in Excel format.

Beyond the issue of substantial justification, the amendment of Dr. Munson's report is also harmless. If anything, Dr. Munson's amended report benefits GEO because his damage calculations decreased by approximately $736,000, even with the addition of an extra six weeks of extrapolated damages. Dr. Munson's amended report also calculates an average shift length of 1.4569 hours (compared to the 1.72 hours calculated by Mr. Heye and used in Dr. Munson's initial report), which is virtually identical to the average shift length calculated by Ms. Morones in her rebuttal report.[1] Given the consistency of Dr. Munson's revised calculations to those of GEO's own expert, there is no harm to GEO from allowing the amended opinion.

Moreover, the bifurcation of the trial into liability and damage phases further eliminates any theoretical harm from amendment of Dr. Munson's opinion, since Dr. Munson would not testify until the second trial, if one even occurs. For similar reasons, your reference to *Luke* is wholly inapposite. In that case, the late disclosed opinion introduced an entirely new liability theory into a complex medical malpractice case after the close of discovery and in response to defendant's motion for summary judgment. Here, the amended opinion simply provides a lower, and more precise, calculation of damages utilizing the same basic mathematical methodology, and does not affect the determination of liability at all.

Finally, there is no harm to GEO from the fact that the company brought, and lost, its motion to exclude before provision of the amended report. GEO's motion first argued that Dr. Munson lacks specialized knowledge and is not qualified to provide an expert opinion on damages in this case. That argument was rejected by the Court. Nothing in the amended report changes Dr. Munson's knowledge or qualifications or affects the outcome of that argument at all. Next, GEO argued that Dr. Munson's methods were unreliable, because he simply applied the assumptions provided by counsel to the data, rather than engaging in any sort of sampling or statistical analysis. The Court also rejected this argument, reasoning that whether the assumptions he was asked to apply are proper and supported by the evidence is a matter for trial and does not affect the admissibility of his testimony. Again, nothing in Dr. Munson's amended report changes this argument or conclusion, because Dr. Munson is

---

[1] Ms. Morones critiqued Dr. Munson's original report by reevaluating the average shift length after adjusting separately for the proportion of kitchen and barbershop work based on the Keefe banking data. After analyzing the kitchen data, she determined that the average shift length should be reduced to 1.49 hours, rather than 1.72. After analyzing the barber data, she calculated a reduction of .04 hours, from 1.72 to 1.68. Combining these two reductions results in an average shift length of 1.45 hours.



765390.docx

Mr. Barnacle
February 24, 2020
Page 4

still simply performing mathematical calculations by applying assumptions provided by counsel to the data. Finally, GEO argued that Dr. Munson's opinion should be excluded because he simply accepted the average shift length figure of 1.72 hours from Exhibit 20, rather than verifying that figure against other sources like the TIF Keefe banking records. The Court rejected this argument. Given that rejection, GEO suffers no harm from the fact that Dr. Munson has now done what Defendant argued was lacking before – using the more detailed banking data to calculate potential damages. The only "harm" GEO suffers is the inability to use its own dilatory conduct in responding to discovery as a launchpad for attacking Dr. Munson's opinion, which is not the type of harm contemplated by the rule.

In short, we will not voluntarily withdraw Dr. Munson's amended report, and would be happy to take the issue up with the Court.

Sincerely,

ADAM J. BERGER



765390.docx