The Honorable Robert J. Bryan

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

8

9   UGOCHUKWU GOODLUCK NWAUZOR,
    FERNANDO AGUIRRE-URBINA,
10  individually and on behalf of all those
    similarly situated,

11          Plaintiffs/Counter-Defendants,

12

13  v.

    THE GEO GROUP, INC.,
14
            Defendant/Counter-Claimant.
15

Case No. 3:17-cv-05769-RJB

**DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE**

**NOTE ON MOTION CALENDAR:**
March 27, 2020

ORAL ARGUMENT REQUESTED

16
17
18
19
20
21
22
23
24
25
26
27

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)

52367625;2

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

## TABLE OF CONTENTS

I.      THE USE OF EXHIBITS IN OPENING STATEMENTS ...........................................1

II.     ORDER OF WITNESS EXAMINATION. ......................................................................2

III.    EVIDENCE OF INTERGOVERNMENTAL IMMUNITY AND WASHINGTON
        MINIMUM WAGE ACT ("WMWA") EXCEPTIONS.....................................................4

        1.      Intergovernmental Immunity……………………………………………….4

        2.      Exceptions to the WMWA……………………………………………………6

IV.     EVIDENCE THAT DETAINEES VOLUNTEER FOR THE VOLUNTARY WORK
        PROGRAM ("VWP"). .................................................................................................8

V.      EVIDENCE THAT DETAINEES BENEFIT FROM THE VWP. ...............................9

VI.     EVIDENCE THAT DETAINEES DID NOT REQUEST AN INCREASE IN
        COMPENSATION. ....................................................................................................12

VII.    WORK AUTHORIZATION OF DETAINEES.............................................................12

VIII.   PLAINTIFF NWAUZOR'S DISCIPLINARY HISTORY. .........................................13

IX.     CRIMINAL AND MENTAL HEALTH HISTORY OF PLAINTIFF AGUIRRE
        URBINA.......................................................................................................................14

X.      DESCRIPTORS FOR DETAINEES.............................................................................15

XI.     EVIDENCE THAT DETAINEES VIOLATED IMMIGRATION LAWS. ................16

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)

52367625;2

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1    Defendant The GEO Group, Inc. ("Defendant" or "GEO"), by and through its
2    undersigned counsel, hereby submits its Opposition to Plaintiffs' Motions in Limine ("Motion").
3    Dkt. No. 259.

4    ## I.    The Use of Exhibits in Opening Statements

5        Plaintiffs first Motion in Limine is a motion in limine in name only. It does not ask this
6    Court to limit any specific evidence at trial, but rather asks the Court to permit Plaintiffs to
7    introduce unidentified exhibits in their opening statement—without limitation. Because this
8    particular Motion is better addressed through another procedural vehicle, the Court should deny
9    Plaintiffs' first Motion in Limine.

10       Should the Court determine Plaintiffs' Motion should be addressed at this juncture, the
11   motion should be denied for a lack of specificity. Plaintiffs seek to use unidentified exhibits in
12   their opening statement. Plaintiffs do not even take the initial step of identifying the general
13   categories of exhibits they seek to use. As the exhibits are unknown to both GEO and the Court,
14   Plaintiffs' Motion should be denied. *Coachman v. Seattle Auto Mgmt. Inc.*, No. 17-187RSM,
15   2018 WL 4510067, at *1 (W.D. Wash. Sept. 20, 2018) ("The Court does not know what exhibits
16   are at issue, and, out of caution, concludes that the parties may not show any exhibit or portion of
17   an exhibit where admissibility is disputed.").

18       Furthermore, Plaintiffs make a baseless claim that GEO may engage in "gamesmanship"
19   that would prohibit the admissibility of a proposed exhibit merely to prevent them from
20   introducing the document in its opening statement. GEO has not unreasonably withheld its
21   consent to the admissibility of any documents, and as such, this Motion serves as nothing more
22   than an underhanded and groundless attempt to undermine GEO's credibility with the Court.
23   Ironically, while GEO has stipulated to the admissibility of over 100 exhibits, the State and
24   Private Plaintiffs have disputed the admissibility of *every single exhibit proposed by GEO*,

25
26
27

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 1

52367625;2

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1    including exhibits that are duplicates of those proposed by Private Plaintiffs.[1] Dec. of Barnacle

2    ¶ 2.  Thus aspersions of "gamesmanship" are nothing more than projection and are misdirected.

3    Accordingly, should the Court rule on this Motion now, as opposed to during the pretrial

4    proceedings (which it should not), it should make clear that the ruling applies to all parties with

5    equal force. Such a ruling should equally caution the State and Private Plaintiffs against

6    improper tactics of "gamesmanship."

7                           **II.    <u>Order of Witness Examination.</u>**

8          Plaintiffs seek a ruling from the Court that preemptively bars any cross-examination by

9    GEO that goes beyond the scope of direct examination. FRE 611. Specifically, where witnesses

10   may be called both in GEO's and Plaintiffs' case in chief, Plaintiffs seek a ruling from the Court

11   that it *will not* exercise its discretion under Rule 611(b) to allow witnesses who will be called by

12   both parties to be examined by GEO and Plaintiffs in successive order. Plaintiffs' Motion is both

13   premature and runs contrary to the underpinnings of FRE 611. Thus, Plaintiffs' Motion should be

14   denied.

15         As an initial matter, Plaintiffs' Motion first requires the Court to determine the threshold

16   issue of whether GEO's cross-examination will fall outside of the scope of the direct

17   examination, without any specific information about how or when this may actually arise at trial.

18   Plaintiffs have not identified specific witnesses who are likely to be questioned about topics

19   beyond the scope of direct testimony. Because GEO does not yet know the scope of Plaintiffs

20   direct testimony, it is impossible at this juncture to determine whether GEO's cross-examination

21   will go beyond the scope of Plaintiffs' direct testimony. Thus, Plaintiffs Motion is premature and

22   not ripe for a ruling.

23         If the Court is inclined to entertain Plaintiffs' Motion at this early juncture, GEO requests

24   that if some limited questions at trial fall outside of the scope of Plaintiffs' direct examination,

25

26   _____

27   [1] By not consolidating their motions and instead submitting a combined total of 22 motions in limine, the State and
     Private Plaintiffs have taken the untenable position during pre-trial conferrals that over 90% of GEO's proposed
     exhibits are the subject of a motion in limine.

---

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 2

52367625;2

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

the Court consider expanding the scope of GEO's cross-examination consistent with FRE 611. As the gatekeeper, "the court should exercise reasonable control over the mode and order of ... presenting evidence so as to: (1) make those procedures effective for determining the truth; [and] (2) avoid wasting time . . . " FRE 611(a).  To that end, Rule 611(b) permits the Court to allow cross-examination that goes beyond the scope of direct examination where doing so is more efficient from a trial management perspective. Certainly, here, reducing the number of times the same witnesses are called to the stand will increase the efficiency at trial.  Witnesses that will be called by both GEO and Plaintiffs should not be needlessly required attend multiple days of trial, as Plaintiffs request. This is particularly true where, as here, a number of the trial witnesses will be travelling from out-of-state or significant distances from the Tacoma courthouse, to testify. If Plaintiffs' Motion is granted, not only will it increase the strain on the witnesses, but it will also break up the testimony of each witness into discrete parts, making it more difficult for the jury to put together the entirety of each individual's testimony and determine the truth. This is also particularly true where, here, the trial is anticipated to last three weeks and therefore a single witnesses' testimony could be spread out over the course of nearly a month. The added complexities associated with breaking each witnesses' testimony into discrete parts runs directly contrary to foundational principles of FRE 611. Because this Motion seeks only to further complicate an already complex and lengthy trial, Plaintiffs' request should be denied.

Plaintiffs also seek a blanket ruling under FRE 611(c) that they are permitted to ask leading questions of all individuals who are current or former GEO employees.  Plaintiffs request is over inclusive and overbroad. Plaintiffs request assumes, without any support, that all current and former GEO employees should be treated as hostile. Plaintiffs do not identify specific witnesses and any basis for believing such witnesses are hostile and for that reason alone their Motion should be denied. Indeed, for example, there are a number of former GEO employees listed in the State and Private Plaintiffs' witness list that cannot properly be identified as hostile to Plaintiffs and in fact may actually be hostile to GEO.  *Yousefi v. Delta Elec. Motors, Inc.*, No. C13-1632RSL, 2015 WL 11217257, at *1 (W.D. Wash. May 11, 2015) (denying Plaintiffs'

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 3

52367625;2

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

motion in limine on the basis that "[p]ast employment . . . does not, standing alone, give rise to an inference that the witness' self-interest or affections would align him with defendants or make him hostile to plaintiff."). Because neither the Court nor GEO have sufficient information about which witnesses Plaintiffs seek to treat as hostile and in what context, Plaintiffs <u>fifth</u> Motion in Limine should be denied.  In the alternative, any ruling should be reserved for trial.

## III.  <u>Evidence of Intergovernmental Immunity and Washington Minimum Wage Act ("WMWA") Exceptions.</u>

Citing its forthcoming response to GEO's motion for summary judgment (which neither the Court nor GEO has reviewed), Plaintiffs seek exclusion of argument and evidence of GEO's defenses of intergovernmental immunity and that detainees are not employees under the exceptions to the WMWA. RCW 49.46.010. Plaintiffs' Motion is speculative at best and not ripe for decision by this Court (or briefing by GEO). Plaintiffs argue that the legal basis for its Motion in Limine will be detailed in a yet-to-be filed response to GEO's motion. GEO is unable to respond to arguments it has not seen. Likewise, the Court cannot rule upon issues that are not yet before it. Nevertheless, GEO notes that the proper standard for intergovernmental immunity is set forth in its motion for summary judgment (Dkt. No. 227), its response to the State's Motion in Limine, and again here. Furthermore, Plaintiffs argument that the exceptions to the WMWA are not before this Court similarly lack merit.

### 1.  Intergovernmental Immunity.

Binding Ninth Circuit precedent makes clear that <u>in the context of federal immigration detention centers, federal government contractors are treated the same as the federal government itself for purposes of intergovernmental immunity</u>. *United States v. California*, 921 F.3d 865, 879 (9th Cir. 2019); *see also Boeing v. Movassaghi*, 768 F.3d 832, 842-43 (9th Cir. 2014) ("The federal government's decision to hire Boeing to perform the cleanup rather than using federal employees does not affect our immunity analysis . . . When the state law is discriminatory, a private entity with which the federal government deals can assert immunity."). Thus, GEO steps into the shoes of the federal government for purposes of intergovernmental immunity.

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 4

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

52367625;2

1    *California*, 921 F.3d at 879; *see also Boeing*, 768 F.3d at 842-43. This principle has been

2    recognized by both the United States in its Statement of Interest filed in this case (Dkt. No. 185

3    at 5-6) and this Court, (SOW Proposed Order, Dkt. No. 306-1 at 7).

4           The Supreme Court recently clarified that "[w]hether a State treats similarly situated state

5    and federal employees differently depends on how the State has defined the favored class."

6    *Dawson v. Steager*, 139 S. Ct. 698, 705 (2019). Under the WMWA the definition of employer is

7    the same for all entities, public or private. RCW 49.46.010(4).[2] Thus, it is not the "employer" or

8    operator of the detention facility that defines the "favored class" for purposes of this Court's

9    intergovernmental immunity analysis. Instead, it is the definition of "employee" that controls.

10   The Washington legislature has defined the class of individuals exempted from the WMWA as

11   "[a]ny resident, inmate, or patient of a state . . . correctional, detention, treatment or rehabilitative

12   institution[.]" RWC § 49.46.010(3)(k) ("detainee exception"). Accordingly, the "favored class"

13   in the WMWA consists of state detainees who are exempted from the coverage of the Act.

14          Thus, here, the proper comparison to the federal government's detainees, held at the

15   NWIPC, is any resident, inmate, or patient of a state detention, treatment, correctional, or

16   rehabilitative institution – again, the "favored class" defined by the legislature.[3] This analysis is

17   consistent with the Supreme Court's explanation in *Dawson* that "if a State exempts from

18   taxation all state employees, it must likewise exempt all federal employees." *Dawson v. Steager*,

19   139 S. Ct. at 704. Substituting the relevant factors here, the comparison stands: "if a State

20   exempts from [the WMWA] all state [detainees], it must likewise exempt all federal

21   [detainees]." *Id*. It follows that if the federal government (and by extension GEO) is not afforded

22   the same exemptions as the state, the WMWA violates the principle of intergovernmental

---

[2] For the avoidance of doubt, the WMWA's definition of "employer" does not distinguish between public and private employers. Nor does the detainee exception distinguish between facilities where the state engages a contractor and those where it does not. Certainly, the detainee exception would be superfluous if both the state and federal governments were exempt from the WMWA's definition of employer.

[3] The WMWA is silent as to the potential "employer" of these detainees, in that it does not draw a distinction between private and governmental entities. Likewise, the WMWA is silent as to who owns or operates the facility in which the individuals are housed.

---

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 5

52367625;2

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1   immunity. Accordingly, if the issue is not resolved through the pending summary judgment

2   motions, GEO will introduce evidence at trial that there are individuals in Washington who: (i)

3   are in state custody (both criminal and civil); (ii) participate in work programs; and (iii) are not

4   paid minimum wage under the WMWA. Through evidence of sub-minimum wage work

5   performed by those in state custody, GEO will establish its defense of intergovernmental

6   immunity. Thus, this evidence is not only relevant to GEO's intergovernmental immunity

7   defense, but it rests at its core.

8           **2.  Exceptions to the WMWA.**

9           Plaintiffs also argue that GEO should not be permitted to introduce evidence of the

10  "detainee exception"[4] found in 49.46.010(3)(k) or the "resident exception" found in

11  49.46.010(3)(j) on the basis that the exceptions were not pled with sufficient specificity. Like the

12  State's argument, Plaintiffs argument that GEO has not adequately pled, and put Plaintiffs on

13  notice, that the exemptions of the WMWA will be at issue in the upcoming trial stretches

14  credulity. In response to Plaintiffs' Complaint, GEO filed a motion to dismiss for failure to state

15  a claim that argued that detainees are not "employees" because they fall into exemptions under

16  the WMWA. Dkt. No. 8 at 24. The Court denied GEO's motion to dismiss ruling that "[at] least

17  based on the pleadings, it is plausible that the Plaintiff, arguably, comes within the State

18  definition of 'employee,' and is not subject to any existing statutory exception." Dkt. No. 28 at

19  14.[5] Following the Court's Order, GEO re-alleged the failure to state a claim for which relief

20  may be granted in its Answer. Dkt. No. 33 at ¶ 8.1. Additionally, GEO pled a counterclaim for

21  affirmative relief in the form a declaratory judgment that detainees are not GEO's "employees"

22  and GEO is not an 'employer' with respect to participation in the Voluntary Work Program. *Id.*

23  at ¶¶ 12.12. At that point, GEO put the Plaintiffs on notice that, in addition to its defenses, it

24  would be making an *affirmative claim* that detainees are not employees under the WMWA.

25

26  [4] Plaintiffs misleadingly refer to this exception as the "government-owned facility" exception despite the fact that none of those words, let alone in that order, appear in the text of the statute.

27  [5] Like the State, Plaintiffs grossly mischaracterize this holding as conclusively determining that the detainee exception does not apply in this case. To the contrary, the issue has yet to be decided on its merits.

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 6

52367625;2

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1    Plaintiffs filed a motion to dismiss GEO's Counterclaims, including GEO's claim for declaratory

2    relief under the WMWA, arguing that Plaintiffs' own Complaint "necessarily require[s] the

3    Court to determine whether [Plaintiffs] are 'employees' and whether GEO is an 'employer.'"

4    Dkt. No. 37 at 9. The Court denied the Plaintiffs' motion to dismiss GEO's claim for declaratory

5    relief under the WMWA on the basis that the counterclaims "go to the heart of Defendant's view

6    of Plaintiff's claims." Dkt. No. 40 at 6. Plaintiffs subsequently amended their Complaint and

7    GEO once again alleged its defenses and counterclaims. Dkt. No. 92 ¶¶ 12.8,12.12. The

8    pleadings and briefing in this case make clear that the exceptions to the WMWA have been at

9    issue in this case since GEO's initial motion to dismiss. Thus, the record is clear that GEO's

10   pleadings met the requirements of Fed. R. Civ. P. 8(c). Plaintiffs were adequately provided

11   notice of GEO's contentions and has not been prejudiced. *Wyshak v. City Nat'l Bank*, 607 F.2d

12   824, 827 (9th Cir. 1979) ("The key to determining the sufficiency of pleading an affirmative

13   defense is whether it gives plaintiff fair notice of the defense.").

14          In any event, well-settled Ninth Circuit precedent makes clear that the failure to allege an

15   affirmative defense, without any showing of prejudice to the Plaintiff, is not grounds for waiver.

16   *Lowerison v. Yavno*, 26 F. App'x 720, 722 (9th Cir. 2002) ("Affirmative defenses are not waived

17   even if they are first raised in pretrial dispositive motions, if the plaintiff is not unfairly surprised

18   or prejudiced"); *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984) (finding employer did not

19   waive its defense by failing to plead it until the summary judgment phase); *Healy Tibbitts Const.*

20   *Co. v. Ins. Co. of N. Am.*, 679 F.2d 803, 804 (9th Cir. 1982) ("The defendant should be permitted

21   to raise its policy exclusions defense in a motion for summary judgment, whether or not it was

22   specifically pleaded as an affirmative defense, at least where no prejudice results to the

23   plaintiff."); *Olson v. Snohomish Cty. Pub. Transp. Ben. Area*, No. C03-3841RSM, 2005 WL

24   2573328, at *2 (W.D. Wash. Oct. 12, 2005). Furthermore, GEO raised the exceptions to the

25   WMWA in its summary judgment briefing, precluding a claim of waiver. *Healy*, 679 F.2d at

26   804. Plaintiffs do not allege any prejudice, nor does any exist. *See e.g. K Networks Co. Ltd. v.*

27   *Bentley Forbes Holdings, LLC*, No. CV1208997MMMSHX, 2013 WL 12131715, at *13 (C.D.

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 7

52367625;2

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1   Cal. Nov. 7, 2013) (finding no prejudice where Plaintiff was aware of the arguments not pled in

2   advance of trial). Thus, GEO's defenses cannot be deemed waived.

3        Finally, GEO's claim for declaratory relief has not yet been assessed on the merits.

4   Surely, a motion in limine is not the proper procedural vehicle for the State to seek a ruling on

5   the merits of GEO's claim for declaratory judgment under the WMWA. For these reasons,

6   Plaintiffs twelfth Motion in Limine regarding evidence of state work programs should be denied

7   in its entirety.

8   **IV.    Evidence that Detainees Volunteer for the Voluntary Work Program ("VWP").**

9        The voluntary nature of the VWP goes to the heart of whether detainees are employees

10   under the WMWA and therefore its relevance outweighs any prejudice to Plaintiffs. FRE 403. As

11   GEO has previously argued, the fact that the VWP is completely voluntary goes directly to the

12   *Anfinson* factors. See Dkt. No. 270 at 11; *Anfinson v. FedEx Ground Package Sys., Inc.*, 174

13   Wash. 2d 851, 870 (2012). *Anfinson* instructs that whether an employee-employer relationship

14   exists depends upon the circumstances of the whole activity. *Id.* at 869. While there is no

15   exclusive set of factors to consider, two factors that are commonly considered are permanence

16   and control. Clearly, whether a detainee is a volunteer participant goes directly to those two

17   factors. Because detainees are volunteers, GEO has no control over what tasks they choose to

18   perform or if they choose to participate at all. Nor can GEO control whether detainees continue

19   to volunteer, what positions detainees volunteer for, or if the detainee will consistently show up

20   for each shift. In addition, because the program is purely voluntary, GEO has no control over the

21   quality of a detainee's participation or whether more highly skilled detainees volunteer for

22   positions requiring higher levels of skill. Likewise, because the program is voluntary, detainees

23   are free to set their own schedule. For these same reasons, the voluntary nature of the program

24   goes to the permanence of the relationship. Because detainees can volunteer one day and change

25   their mind the next, they are not "permanent" fixtures in GEO's business, and by extension are

26   not employees.

27        Additionally, the fundamental nature of the activity is relevant to whether an employee-

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 8

52367625;2

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

employer relationship exists. *Rocha v. King Cty.*, 435 P.3d 325, 333 (Wash. Ct. App.), *review granted sub nom. Bednarczyk v. King Cty.*, 193 Wash. 2d 1017, 448 P.3d 64 (2019). The *Rocha* court concluded that despite the State's control over jurors, they were not employees for purposes of the WMWA because the fundamental nature of jury service was a civic duty—not an employer-employee relationship. *Id*. Here, the fundamental nature of the detainee's relationship with GEO is not one of employment, but rather a custodial relationship. The ability to perform tasks on a voluntary basis exists not for employment purposes, but rather to avoid idleness, reduce disciplinary issues, and instead provide detainees with an opportunity to feel productive and useful. Indeed, directly analogous case law, addressing civilly detained individuals at the State of Washington's Special Commitment Center on McNeil Island ("SCC"), makes clear that where a detention facility operates a voluntary program for its residents as part of their custodial detention programming, the detainees are not employees. *Calhoun v. State*, 146 Wash. App. 877, 886 (2008), as amended (Oct. 28, 2008). Establishing that the NWIPC's program is the same as in the work program at the SCC in *Calhoun* (including that the program is voluntary) is a key issue for trial. Therefore, the relevance of the voluntariness of the VWP outweighs any perceived prejudice Plaintiffs have expressed.  Accordingly, Plaintiffs' <u>second</u> Motion in Limine should be denied.

## V.    <u>Evidence that Detainees Benefit from the VWP.</u>

Plaintiffs argue that GEO should not be permitted to introduce evidence of the benefits that the VWP provides to detainees on the basis of relevance. Plaintiffs' argument rests on inapplicable case law[6] and should therefore be denied. The fact that detainees benefit from the VWP is relevant both to the "fundamental nature" of the program, for purposes of determining whether detainees are employees, and to GEO's intergovernmental immunity defense. *Rocha*, 435 P.3d at 333. Accordingly, Plaintiffs' <u>third</u> Motion in Limine should be denied.

In *Calhoun*, the Washington Court of Appeals addressed whether an individual who was

---

[6] Curiously, despite repeated arguments that federal case law is not relevant to this case, Plaintiffs now appear to concede that it is appropriate to turn to federal precedent in interpreting the WMWA.

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 9

52367625;2

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1    civilly committed by the Washington Department of Social Health Services was an "employee"

2    who could bring a claim for discrimination under Washington law. *Calhoun*, 146 Wash. App. at

3    884-885. The Court concluded that the detainee was not an employee because the purpose of the

4    work program in which he participated was to "maintain a healthy lifestyle and promote good

5    habits." *Id.* Likewise, rather than serving the purpose of providing detainees with an opportunity

6    to earn minimum wage or obtain work experience—the purpose of the VWP is to address the

7    "negative impact of confinement" by decreasing idleness, improving morale, and reducing

8    disciplinary incidents. PBNDS § 5.8. Plaintiffs have testified that they received these benefits

9    through their participation, thus, GEO should be able to introduce this evidence.

10          Plaintiffs' claim that benefits conferred upon detainees are not relevant to whether

11   detainees can be classified as "employees" is not only inconsistent with *Calhoun*, but also with

12   the balance of federal law. The majority of circuit courts to address whether a civil detainee who

13   participates in a work program is an "employee" under the Fair Labor Standards Act ("FLSA")

14   have held that civil detainees are not "employees." *See e.g., Matherly v. Andrews*, 859 F.3d 264,

15   278 (4th Cir. 2017) (holding that civil detainee was not an "employee" under the FLSA);

16   *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008) (same); *Miller v. Dukakis*, 961 F.2d 7, 9

17   (1st Cir. 1992) (same); *Tourscher v. McCullough*, 184 F.3d 236, 243 (3d Cir. 1999) (same);

18   *Villarreal v. Woodham*, 113 F.3d 202, 207 (11th Cir. 1997) (same); *Alvarado Guevara v.*

19   *Immigration and Naturalization Service*, 902 F.2d 394 (5th Cir. 1990) (holding that the FLSA

20   does not apply to immigration detainee work programs).  In reaching this conclusion, courts

21   across the country place significant weight on the fact that detainees in a custodial setting

22   perform tasks for non-monetary benefits, including reducing idleness, rehabilitation, and

23   training. *See e.g., Matherly*, 859 F.3d at 278 (detainees work "not to turn profits for their

24   supposed employer, but rather as a means of rehabilitation"); *Sanders*, 544 F.3d at 814 (one

25   beneficial purpose of detainee work programs is to "keep detainees out of mischief"). Federal

26   courts also emphasize that because individuals in custody receive all basic necessities from the

27   facilities where they are detained, the underlying purpose of a minimum wage is satisfied. *See*

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 10

52367625;2

AKERMAN LLP
————————————
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1   *e.g., Matherly*, 859 F.3d at 278 (detainees receive "all necessities, satisfying the underlying

2   purpose of the FLSA's minimum wage provision."); *Sanders*, 544 F.3d at 814 (same); *Miller*,

3   961 F.2d at 9 (same); *Tourscher*, 184 F.3d at 243 (same); *Villarreal*, 113 F.3d at 207 (same).  As

4   a result, the purposes of detention work programs are inconsistent with an employer-employee

5   relationship. *See e.g., Matherly*, 859 F.3d at 278 (the purpose of a detention work program is

6   inconsistent with an employer-employee relationship); *Sanders*, 544 F.3d at 814 (same); *Miller*,

7   961 F.2d at 9 (same); *Tourscher*, 184 F.3d at 243 (same); *Villarreal*, 113 F.3d at 207 (same).

8   Thus, contrary to Plaintiffs' allegations in their Motion, evidence of the benefits of a custodial

9   work program are always relevant to the analysis of whether detainees are "employees."

10          Moreover, evidence of non-monetary benefits is also relevant to GEO's

11   intergovernmental immunity defense. Like GEO, the State offers work programs to individuals

12   who are in state custody to provide non-monetary benefits to those detainees. Those programs

13   allow confined individuals to participate in tasks for subminimum wages in return for a sense of

14   fulfillment or connection to their custodial communities. These benefits are appreciated by the

15   State in the form of decreased idleness and other positive non-monetary features. GEO provides

16   those same benefits to detainees within the NWIPC. But, if GEO is prohibited from operating its

17   VWP in the same manner as the State, it will lose the non-monetary benefits of the VWP.

18   Indeed, classifying detainees as employees would drastically shift the nature of the VWP. Rather

19   than focusing on allowing detainees to feel a sense of purpose regardless of their skill level, the

20   program would shift to one focused on performance metrics and skills—potentially leaving

21   behind unskilled detainees. And, it is likely that fewer detainees would be afforded the

22   opportunity to participate, reducing the inherent benefits of the program as a whole. Certainly,

23   because of the web of employment laws that would be applicable to detainees, GEO could not

24   provide detainees with special treatment when it came to their performance reviews, scheduling,

25   or job assignments. As a result, the VWP would lose its fundamental purpose. At trial, GEO

26   should be permitted to introduce evidence that such discriminatory treatment is impermissible

27   under the doctrine of intergovernmental immunity. Accordingly, Plaintiffs' <u>third</u> Motion in

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 11

52367625;2

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1   Limine should be denied.

2        **VI.    Evidence That Detainees Did Not Request an Increase in Compensation.**

3        Plaintiffs also ask this Court to exclude any evidence that detainee workers did not

4   request more than $1 per day for participation in the VWP on the basis that such information is

5   not relevant. FRE 403. To the contrary, whether the detainees sought more than $1 per day is

6   relevant to whether their motivations for participating in the VWP were consistent with those of

7   "employees" or instead reflected a different motive. Indeed, GEO intends to introduce evidence

8   that many detainees participated in the VWP solely to feel productive, a singular motivation that

9   is inconsistent with the concept of employment.  This singular motive is only possible in a

10   custodial setting, where ordinary costs of living are not relevant since room, board, and food are

11   provided. Additionally, the fact that detainees never requested a raise is relevant context for

12   GEO's derivative sovereign immunity defense. GEO anticipates that Plaintiffs will try to

13   introduce evidence that ICE's Performance Based National Detention Standards ("PBNDS")

14   stated that GEO could pay "at least" $1 per day to detainees and therefore that GEO *could* have

15   paid more. In response, GEO should not be precluded from arguing that it never raised the

16   amount of pay because individuals continued to participate in the VWP without asking for a

17   raise. Accordingly, Plaintiffs' fourth Motion in Limine should be denied.

18        **VII.    Work Authorization of Detainees.**

19        Plaintiffs move to prevent GEO from introducing evidence of the work authorization

20   status of detainees while simultaneously seeking to introduce testimony of Chris Strawn that

21   detainees are able to obtain work authorization while detained. Plaintiffs have also listed a

22   number of work authorization forms on its list of proposed exhibits. Surely, there is no basis for

23   excluding evidence solely based upon the party who will introduce it. For this reason alone the

24   State's Motion should fail.

25        Additionally, evidence about work authorization is relevant to GEO's derivative

26   sovereign immunity defense. GEO's contract with ICE sets forth specific work authorization

27   requirements for any GEO employees. To the extent detainees do not fall within those

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 12

52367625;2

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1  requirements, that is relevant to GEO's defense. Thus, Plaintiffs' <u>eleventh</u> Motion in Limine

2  should be denied in full.

3  ### VIII.  <u>Plaintiff Nwauzor's Disciplinary History.</u>

4  Plaintiffs seek to exclude evidence of Plaintiff Nwauzor's disciplinary history at trial on

5  the basis that it is prejudicial and improper character evidence. FRE 403, 404. But, Mr.

6  Nwauzor's disciplinary incident is relevant to the claims in the case and GEO intends to

7  introduce it for purposes other than to show Mr. Nwauzor's character. Accordingly, Plaintiffs'

8  Motion should be denied.

9  While detained, Mr. Nwauzor volunteered to clean the showers in his dorm as part of the

10  VWP. Others in his housing unit volunteered to clean the bathrooms and other common areas.

11  During his detention, Mr. Nwauzor had an incident where he urinated on the bathroom floor, as

12  opposed to in the toilet. Ex. A, Nwauzor Dep. 80-81. As part of GEO's presentation of the

13  "fundamental purpose" of the VWP, GEO will present evidence and argument that the VWP

14  positions are akin to the chores that any individual would complete in his or her daily life

15  without the expectation of compensation, including the tasks of cleaning and folding laundry,

16  cleaning toilets, making beds, and taking out the trash (among others). Rather than mandating

17  that each individual complete all chores each day, the VWP divides the chores among detainees

18  who wish to reduce their idleness, increase their morale, amongst other benefits, and adds an

19  incentive for detainees to participate in the form of $1 per day. Thus, an individual who cleans

20  the shower does not need to do his laundry, clean the bathroom, or wipe his table after dinner.

21  The fact that Mr. Nwauzor urinated outside of the toilet and then did not thereafter clean up his

22  mess reinforces this point. Contrary to Plaintiffs' assertion, GEO will not argue that because Mr.

23  Nwauzor urinated on the floor on one occasion that he did so on multiple occasions. FRE 404.

24  Instead, GEO will use this anecdote to help the jury understand the nature of the VWP and

25  operations at the NWIPC. Accordingly, there is no reason to exclude evidence of Mr. Nwauzor's

26  bathroom incident and Plaintiffs' <u>tenth</u> Motion in Limine should be denied.

27  ///

---

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 13

52367625;2

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1

**IX.    Criminal and Mental Health History of Plaintiff Aguirre Urbina.**

2      GEO has proposed a limited use of Plaintiff Aguirre Urbina's criminal history at trial. As

3   an initial matter, GEO seeks an opportunity to question Mr. Aguirre Urbina outside of the

4   presence of the jury, prior to his testimony, so that the Court can make a finding as to his

5   competence to testify on that day. FRE 601 (state law controls competence determinations);

6   *State v. Brousseau*, 172 Wash. 2d 331, 337, 259 P.3d 209, 212 (2011) (trial judge should

7   determine the witnesses competency prior to the witness testifying at trial). GEO seeks this relief

8   because Plaintiff Aguirre Urbina has previously sworn, under penalty of perjury, that on

9   occasion he has been controlled by voices in his head—which he describes as "the enemy." Ex.

10  B. According to Mr. Aguirre Urbina, "the enemy" has been responsible for his actions in prior

11  court proceedings. *Id.* And, he has sought to have his prior admissions in sworn proceedings

12  revoked based upon his mental health. Accordingly, GEO seeks the opportunity to have the

13  Court rule he is competent to testify at trial to preserve the ruling for the record in the event that

14  Mr. Aguirre Urbina later raises concerns of his competence.[7]

15      Next, GEO proposed that because positions in the VWP may vary based upon an

16  individual's criminal history, GEO be permitted to introduce evidence that Mr. Aguirre Urbina

17  has a criminal record which disqualified from participating in various VWP positions. GEO does

18  not seek to introduce evidence of Mr. Aguirre Urbina's specific bad acts or convictions. Rather,

19  GEO seeks to provide an explanation to the jury about why Mr. Aguirre Urbina was ineligible

20  for certain VWP positions. In the absence of this opportunity, Plaintiffs will be able to exploit

21  GEO's forced silence to imply that GEO limited the positions for which Aguirre Urbina could

22  apply based upon a lack of actual voluntariness of the VWP or GEO's preferences, when in

23  reality it is an issue of ICE-mandated facility security. As the element of control is relevant to

24  whether detainees are employees, this limitation would be highly prejudicial to GEO. Thus, GEO

25  should be permitted to introduce limited evidence of Mr. Aguirre Urbina's criminal history.

26
27  [7] Contrary to Plaintiffs assertions in their motion, GEO has not and does not seek to introduce evidence of Mr. Aguirre Urbina's drug addiction.

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 14

52367625;2

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1  Because GEO's proposed compromise strikes a balance between relevant information and the
2  prejudicial nature of criminal convictions, this compromise would not violate FRE 403 or FRE
3  609.

4          In this same vein, there are a number of circumstances where Plaintiffs may open the
5  door to Mr. Aguirre Urbina's criminal history. For example, if the State argues that Mr. Aguirre
6  Urbina meets all qualifications under GEO's contract with ICE to be an employee—GEO should
7  be allowed to introduce evidence that Mr. Aguirre Urbina has a criminal history that would
8  preclude him from employment at GEO. FRE 609. Likewise, if Plaintiffs introduce testimony of
9  Chris Strawn describing the reasons that detainees are held in the NWIPC, GEO should be able
10  to inquire whether a criminal history could be a factor in an individual's detention. Equally, if
11  Plaintiffs offer testimony of Chris Strawn that detainees could receive work authorization, GEO
12  should be permitted to ask if Mr. Aguirre Urbina would be eligible given his criminal history.

13          Finally, Mr. Aguirre Urbina also swore, under penalty of perjury, that he is receiving
14  treatment at the NWIPC for his mental health, and that he now "feels much better." GEO should
15  be able to introduce this sworn testimony as impeachment testimony, should Mr. Aguirre Urbina
16  deny that he receives treatment at the NWIPC. Ex. B. Accordingly, the Plaintiffs eighth and
17  ninth Motions in Limine should be denied in part, subject to the proposal herein.

18                          **X.       Descriptors for Detainees.**

19          Plaintiffs also seek to exclude the use of the phrases "undocumented," "illegal
20  immigrant" or "illegal alien" under FRE 403.[8] This Motion lacks merit. The simple fact is that
21  Plaintiffs were detained by ICE for alleged violations of immigration law. Many of Plaintiffs
22  were, in fact, "illegal aliens" or "undocumented." And, the jury will deduce as much based upon
23  the Plaintiffs' detention.  GEO should not be unnecessarily hamstrung at trial in the accurate and
24  non-inflammatory terms it may use to describe a detainee's status in the United States.
25  Additionally, Plaintiffs seek to introduce the testimony of Chris Strawn to explain why and how

26
27  [8] Contrary to Plaintiffs' title in its Table of Contents, which GEO assumes was an honest mistake, GEO has agreed not to use the term "illegals."

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 15
52367625;2

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1   detainees come to be at the NWIPC. GEO is certainly entitled to question Mr. Strawn about

2   whether Plaintiffs' detention is the result of illegal immigration. Accordingly, Plaintiffs' <u>seventh</u>

3   Motion in Limine should be denied.

4   **XI.   <u>Evidence that Detainees Violated Immigration Laws.</u>**

5          Plaintiffs ask this Court to exclude any evidence or argument that detainees violated

6   immigration laws under FRE 403. However, this evidence is relevant to provide jurors with,

7   amongst other things, context about detainee's lack of permanence in the VWP, a key

8   consideration under *Anfinson*. 174 Wash. 2d 851. Detainees at the NWIPC are held there because

9   they are the subject of legal proceedings regarding their immigration status. Thus, during their

10  detention at the NWIPC, a significant portion of their time is consumed with preparing for and

11  attending court hearings related to their immigration case. GEO intends to introduce evidence

12  that because of this reality, many detainees will decide not to volunteer or decide to skip their

13  volunteer shift in order to attend a court hearing or work in the law library. This results in a lack

14  of permanence in the VWP. Similarly, detainees' immigration status frequently changes with

15  some detainees becoming eligible for bond (and thus release from the NWIPC) and others

16  receiving an order of deportation. Because of these changes, over which GEO has no control,

17  detainees participation in the VWP is limited and subject to change at any time. These facts are

18  critical to the jury's understanding of the detainees' transience, and therefore lack of permanence

19  in the VWP. Therefore, the relevance of this evidence outweighs any prejudice. FRE 403.

20  Accordingly, Plaintiffs' <u>sixth</u> Motion in Limine should be denied.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

DEFENDANT THE GEO GROUP, INC.'S
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE
(3:17-CV-05769-RJB)
– PAGE 16

52367625;2

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1    Respectfully submitted, this 23rd day of March, 2020.

2                              By: *s/ Colin L. Barnacle*
                               **AKERMAN LLP**
3                              Colin L. Barnacle (Admitted *pro hac vice*)
                               Christopher J. Eby (Admitted *pro hac vice*)
4                              Ashley E. Calhoun (Admitted *pro hac vice*)
                               Adrienne Scheffey (Admitted *pro hac vice*)
5                              1900 Sixteenth Street, Suite 1700
6                              Denver, Colorado 80202
                               Telephone:  (303) 260-7712
7                              Facsimile:  (303) 260-7714
8                              Email:  colin.barnacle@akerman.com
                               Email:  christopher.eby@akerman.com
9                              Email:  ashley.calhoun@akerman.com
                               Email:  adrienne.scheffey@akerman.com
10
11                             By: *s/ Joan K. Mell*
                               **III BRANCHES LAW, PLLC**
12                             Joan K. Mell, WSBA #21319
                               1019 Regents Boulevard, Suite 204
13                             Fircrest, Washington 98466
                               Telephone:  (253) 566-2510
14                             Facsimile:  (281) 664-4643
                               Email:  joan@3brancheslaw.com
15
16                             *Attorneys for Defendant The GEO Group, Inc.*

17

18

19

20

21

22

23

24

25

26

27

---

DEFENDANT THE GEO GROUP, INC.'S                    **AKERMAN LLP**
OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE    _____
(3:17-CV-05769-RJB)                              1900 Sixteenth Street, Suite 1700
– PAGE 17                                            Denver, Colorado 80202
                                                  Telephone:  303-260-7712
52367625;2

1

## PROOF OF SERVICE

2

I hereby certify on the 23rd day of March, 2020, pursuant to Federal Rule of Civil

3

Procedure 5(b), I electronically filed and served the foregoing **DEFENDANT THE GEO**

4

**GROUP, INC.'S OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE** via the Court's

5

CM/ECF system on the following:

6

**SCHROETER GOLDMARK & BENDER**
Adam J. Berger, WSBA #20714

7

Lindsay L. Halm, WSBA #37141
Jamal N. Whitehead, WSBA #39818

8

Rebecca J. Roe, WSBA #7560
810 Third Avenue, Suite 500

9

Seattle, Washington 98104
Telephone:  (206) 622-8000

10

Facsimile:   (206) 682-2305
Email:  hberger@sgb-law.com

11

Email:  halm@sgb-law.com
Email:  whitehead@sgb-law.com

12

Email:  roe@sgb-law.com

13

**THE LAW OFFICE OF R. ANDREW FREE**
Andrew Free (Admitted *Pro Hac Vice*)

14

P.O. Box 90568
Nashville, Tennessee 37209

15

Telephone: (844) 321-3221
Facsimile:  (615) 829-8959

16

Email:  andrew@immigrantcivilrights.com

17

**OPEN SKY LAW PLLC**
Devin T. Theriot-Orr, WSBA #33995

18

20415 72nd Avenue S, Suite 100
Kent, Washington 98032

19

Telephone: (206) 962-5052
Facsimile:  (206) 681-9663

20

Email:  devin@openskylaw.com

21

**MENTER IMMIGRATION LAW, PLLC**
Meena Menter, WSBA #31870

22

8201 164th Avenue NE, Suite 200
Redmond, Washington 98052

23

Telephone: (206) 419-7332
Email:  meena@meenamenter.com

24

*Attorneys for Plaintiffs*

25

26

*s/ Nick Mangels*

27

Nick Mangels

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712