1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UGOCHUKWU GOODLUCK
NWAUZOR, FERNANDO AGUIRRE-
URBINA, individually and on behalf of all
those similarly situated,

                        Plaintiffs,

        v.

THE GEO GROUP, INC., a Florida
corporation,

                        Defendant.

No.  3:17-cv-05769-RJB

**PLAINTIFFS' OPPOSITION TO
GEO'S MOTION FOR
SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:
APRIL 1, 2020

ORAL ARGUMENT REQUESTED

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   RELEVANT BACKGROUND...............................................................1

    A.    Factual Background of the Work Program at NWDC. ...................1

    B.    Factual Background About Other Work Programs for Civilly
         Confined People in the State of Washington....................................4

    C.    Relevant Procedural History..........................................................5

III.  LEGAL ARGUMENT ...........................................................................7

    A.    Standard of Review. ......................................................................7

    B.    Neither the Residential Nor "Government-Owned Facility"
         Exemptions Apply to GEO. ...........................................................7

         1.    GEO has not previously asserted the "Residential
              Exemption" and has therefore waived it as an
              affirmative defense. ...........................................................8

         2.    The "Residential Exemption" is inapplicable because
              Plaintiffs' job duties do not require them to sleep or
              reside at NWDC. .................................................................9

         3.    The Court previously ruled that the State-Owned
              Facility exemption did not apply to GEO, and there has
              been no change in circumstances warranting the Court
              to reverse course.............................................................12

    C.    GEO Advances the Same Intergovernmental Immunity
         Arguments this Court Previously Rejected, Offering the Court
         Nothing New to Consider.............................................................14

         1.    The MWA does not directly regulate the Federal
              Government....................................................................14

         2.    The MWA does not discriminate against the Federal
              Government....................................................................16

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. - i (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

1

**Table of Contents, continued**                               **Page(s)**

a.    *The proper comparator for GEO is a similarly situated private contractor.* ...................................17

b.    *The MWA treats private-contract facilities the same regardless of where the underlying contract lies.* ........................................19

c.    *Washington maintains no private contracts in the state that provide for the payment of subminimum wages.* ............................20

D.    Derivative Sovereign Immunity Does Not Bar Plaintiffs' Claims. ..................................................21

IV.    CONCLUSION ....................................................24

CERTIFICATE OF SERVICE ............................................26

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. - ii (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anfinson v. FedEx Ground Package Sys.*,
  281 P.3d 289 (Wash. 2012)......................................................................................8, 18

*Berrocal v. Fernandez*,
  121 P.3d 82 (Wash. 2005) ..............................................................................10, 11, 12

*Blackburn v. United States*,
  100 F.3d 1426 (9th Cir. 1996)..................................................................................15, 16

*Boeing Co. v. Movassaghi*,
  768 F.3d 832 (9th Cir. 2014)............................................................................................16

*Bostain v. Food Express, Inc.*,
  111 P.3d 906 (2005) .........................................................................................................9

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
  797 F.3d 720 (9th Cir. 2015).........................................................................................21

*Calhoun v. Washington*,
  193 P.3d 188 (Wash. App. Ct. 2008) ............................................................................13

*Campbell v. PricewaterhouseCoopers, LLP*,
  642 F.3d 820 (9th Cir. 2011)............................................................................................9

*Campbell-Ewald Co. v. Gomez*,
  136 S. Ct. 663 (2016)..........................................................................................21, 22, 23

*Corning Glass Works v. Brennan*,
  417 U.S. 188 (1974) ..........................................................................................................9

*Cunningham v. Gen. Dynamics Information Tech., Inc.*,
  888 F.3d 640 (4th Cir. 2018)....................................................................................22, 23

*David v. Bankers Life & Cas. Co.*,
  C14-766RSL, 2018 WL 3105985 (W.D. Wash. June 25, 2018) .......................................8

*Davis v. Mich. Dep't of Treasury*,
  489 U.S. 803 (1989) ........................................................................................................18

*Dawson v. Steager*,
  139 S.Ct. 698 (2019) ................................................................................................17, 18

*Dep't of Labor & Indus. v. Lanier Brugh*,
  147 P.3d 588 (Wash. 2006).............................................................................................19

*D'Iorio v. Winebow, Inc.*,
  68 F. Supp. 3d 334 (E.D.N.Y. 2014)...............................................................................7

*Drinkwitz v. Alliant Techsystems, Inc.*,
  996 P.2d 582 (Wash. 2000)......................................................................................7, 8, 9

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. - iii (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

**Table of Authorities, continued**                                                     **Page(s)**

*Helton v. Factor 5, Inc.*,
   26 F. Supp. 3d 913 (N.D. Cal. 2014)..................................................................9

*In re Nat'l Sec. Agency Telecomms. Records Litig.*,
   633 F. Supp. 2d 892 (N.D. Cal. 2007)......................................................17, 20

*John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*,
   510 U.S. 86 (1993) ............................................................................................18

*Lake v. Woodcreek Homeowners Ass'n*,
   243 P.3d 1283 (Wash. 2010)............................................................................10

*Magana v. Com. of the N. Mariana Islands*,
   107 F.3d 1436 (9th Cir. 1997)............................................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................7

*Mitchell v. Pemco Mut. Ins. Co.*,
   142 P.3d 623 (Wash. Ct. App. 2006) ..............................................................8-9

*North Dakota v. United States*,
   495 U.S. 423 (1990) .......................................................................14, 15, 17, 19

*Park v. Choe*,
   C06-5456RJB, 2007 WL 2677135 (W.D. Wash. Sept. 10, 2007) ...............11, 12

*Strain v. W. Travel, Inc.*,
   70 P.3d 158 (Wash. Ct. App. 2003) ................................................................11

*Thomas v. Bible*,
   983 F.2d 152 (9th Cir. 1993)............................................................................13

*Tift v. Prof'l Nursing Servs., Inc.*,
   886 P.2d 1158 (Wash. Ct. App. 1995)...............................................................8

*United States Postal Serv. v. Berkeley*, C,
   16-04815-WHA, 2018 WL 2188853 (N.D. Cal. May 14, 2018)......................20

*United States v. California*,
   921 F.3d 865 (9th Cir. 2019)......................................................................18, 20

*United States v. County of Fresno*,
   429 U.S. 452 (1977) ..........................................................................................17

*Wash. Natural Gas Co. v. Public Util. Dist. No. 1*,
   459 P.2d 633 (Wash. 1969)..............................................................................13

*Washington v. United States*,
   460 U.S. 536 (1983) ..........................................................................................19

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

**Table of Authorities, continued**                  **Page(s)**

**Statutes**

8 U.S.C. § 1226(a) ...................................................................................24

RCW 49.46.010(2) ....................................................................................8

RCW 49.46.010(3) ....................................................................................7

RCW 49.46.010(3)(a)-(p) ........................................................................19

RCW 49.46.010(3)(j) ...............................................................................10

RCW 49.46.010(3)(k) ..............................................................................20

RCW 49.46.010(4) ....................................................................................8

RCW § 49.46 .............................................................................................1


**Rules**

Fed. R. Civ. P. 8(c), 12(b), 12(g) ............................................................9

Fed. R. Civ. P. 56(g) .................................................................................7

Fed. R. Evid. 56(c) ....................................................................................7


**Miscellaneous**

Washington Department of Labor & Industries, Minimum Wage Act Applicability,
ES.A.1 (Jul. 15, 2014) at 6(j), p. 5, available at https://lni.wa.gov/workers-rights/_docs/esa1.pdf ................................................................................10

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. - v (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

# I.   INTRODUCTION

Everything old is new again, as GEO's summary judgment motion pushes legal arguments this Court has previously rejected. Now that discovery has closed and the record is complete, the time is ripe for the Court to rule definitively on those issues raised by GEO and Plaintiffs in their cross-motions for summary judgment. To that end, Plaintiffs request that the Court enter findings of fact pursuant to Rule 56(g) on those issues not genuinely in dispute, treating those facts as established in the case. Streamlining the case in this way will narrow the scope of issues for trial, promote judicial efficiency, and avoid juror confusion.

# II.   RELEVANT BACKGROUND

## A.   Factual Background of the Work Program at NWDC.

This is a class-action wage-and-hour lawsuit under the Washington Minimum Wage Act (MWA), RCW § 49.46 *et seq*. Plaintiffs discuss the specifics of GEO's detainee work program at length in their cross-motion for summary judgment and incorporate those facts by reference here. *See* Dkt. 221 (Pltfs.' Mot. for Summ. J.). What follows is an overview of those facts about which there are no genuine disputes when it comes to the worker program:

1. GEO owns and operates the Northwest ICE Processing Center (formerly known as the Northwest Detention Center). Dkt. 223-18 (Whitehead Decl., Ex. R (T. Johnson Decl.)) at ¶¶ 7-8.

2. GEO contracts with U.S. Immigration and Customs Enforcement (ICE) to provide "detention management services including the facility, detention officers, management personnel, supervision, manpower, training certifications, licenses … equipment, and supplies" for detainees awaiting resolution of immigration matters. Dkt. 223-2 (Whitehead Decl., Ex. B (ICE Contract)) at 45.

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. – 1 (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

3. NWDC presently has the capacity to hold 1,575 men and women. *Id.* at 2, 42.

4. Detention at NWDC is not penal or criminal in nature. *See* Dkt. 258 (Stipulation) at 3.

5. Under GEO's contract with ICE, GEO must "develop" and "manage" a detainee work program. Dkt. 223-2 (Whitehead Decl., Ex. B (ICE Contract)) at 82.

6. The contract further provides that the "detainee work plan must be voluntary, and may include work or program assignments for industrial, maintenance, custodial service or other jobs… Detainees shall not be used to perform the responsibilities or duties of an employee of [GEO]." *Id.* at 82.

7. In developing and managing the detainee work program, GEO must "comply with all applicable laws and regulations." *Id*. Other parts of the contract amplify this requirement, instructing GEO at least twice more that it must comply with all applicable federal, state, and local laws and standards. *Id.*; Dkt. 223-13 (Whitehead Decl., Ex. M (2011 PBNDS § 5.8 - VWP)) at § 5.8.II.5-6.

8. The contract requires GEO to comply with ICE's national detention standards and "all applicable state, and local laws and standards. [And] [s]hould a conflict exist between these standards, the most stringent shall apply." Dkt. 223-2 (Whitehead Decl., Ex. B (ICE Contract)) at 52.

9. Job assignments for detainee workers generally include kitchen and laundry workers, barbers, and various janitorial roles. Detainee workers request to take part in the program, and GEO's classification department then assigns workers to specific work details. GEO requires no pre-existing skill for detainee workers to take part in the program, and workers do not have an opportunity to earn more (or less) depending on their skill, experience or initiative. GEO supervises the workers as they perform their

various jobs, and ICE is not involved in the direct supervision of work. GEO provides all equipment and training necessary for detainee workers to do their jobs. GEO can and does terminate detainee workers for poor job performance.[1]

10. ICE's national detention standards require GEO to pay detainee workers "at least $1.00 (USD) per day." Dkt. 223-13 (Whitehead Decl., Ex. M (2011 PBNDS § 5.8 - VWP)) at 407; Dkt. 223-14 (Whitehead Decl., Ex. N (2019 PBNDS § 5.8 – VWP)) at 177.

11. GEO has the option to pay more than $1 per day to detainee workers and does so in some circumstances at NWDC and its other facilities. Dkt. 223-21 (Whitehead Decl., Ex. U (GEO's RFA Resp.)) at RFA Nos. 56 and 67; Dkt. 223-3 (Whitehead Decl., Ex. C (GEO 30(b)(6) Dep.)) at 95:2-96:15.

12. ICE and GEO internal documents show that ICE does not prohibit GEO from paying detainee workers more than $1 per day. Dkt. 223-15 (Whitehead Decl., Ex. O (Classification Memo)); Dkt. 223-16 (Whitehead Decl., Ex. P (Aug. 27, 2014, Email, Howard to McHatton, *et al.*)).

13. GEO's 30(b)(6) designee testified that GEO derives its understanding of how much it must pay detainee workers from its contract with ICE and ICE's national detention standards. Dkt. 223-3 (Whitehead Decl., Ex. C (GEO 30(b)(6) Dep.)) at 92:2-23.

14. Detainee workers use money from the worker program to buy commissary goods, pay for phone calls, and attorneys, among other things. Dkt. 223-18 (Whitehead Decl., Ex. R (T. Johnson Decl.)) at ¶ 11; *see* Declaration of Jamal Whitehead in Support of

---

[1] The ins-and-outs of the work performed, and GEO's control over and reliance upon the detainees' labor, are not the subject of this motion, but these details are discussed at length in Plaintiffs' summary judgment motion.

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. – 3 (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Plaintiffs' Opposition to GEO's Summary Judgment Motion ("Whitehead Opp. Decl."), Ex. 5 (Nwauzor Dep. at 94-96, 137-138).

15. ICE reimburses GEO at the rate of $1 per day per detainee worker. GEO may not submit an invoice to ICE for a higher reimbursement rate without first seeking approval from ICE. Dkt. 223-2 (Whitehead Decl., Ex. B (ICE Contract)) at 5 ("Detainee Volunteer Wages for the Detainee Work Program. Reimbursement for this line item will be at the actual cost of $1.00 per day per detainee. Contactor shall not exceed the amount shown without prior approval by the Contracting Officer."). GEO can request an Equitable Adjustment from ICE for operating the detainee work program. *See* Dkt. 223-34 (Whitehead Decl., Ex. HH (GEO's Equitable Adjustment Request to ICE)).

16. GEO's Work Program serves no treatment, training, or other rehabilitative purpose for those who participate in it. *See* Dkt. 223-13 (Whitehead Decl., Ex. M (2011 PBNDS § 5.8 - VWP)) at § 5.8.II (Expected Outcomes).

17. GEO cannot provide, and detainee workers cannot receive, any benefit other than $1 per day for participating in the Work Program at NWDC. (Whitehead Opp. Decl., Ex. 7 (2011 PBNDS § 4.1 - Food Service) at § 4.1. II.13 ("Food shall never be used as a reward or punishment"); Dkt. 223-13 (Whitehead Decl., Ex. M (2011 PBNDS § 5.8 - VWP)) at 5.8.V.K (Compensation) ("Detainees shall receive monetary compensation for work completed in accordance with the facility's standard policy. The compensation is at least $1.00 (USD) per day.").

**B.    Factual Background About Other Work Programs for Civilly Confined People in the State of Washington.**

18. No operator of any civil detention or commitment space in Washington State operates a work program for detained individuals that includes among its stated purposes the

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. – 4 (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

enhancement of essential facility operations. Whitehead Opp. Decl., Ex. 4 (Murphy Dep.) at 20:9-24 (listing range of skills work programs are intended to build) and 24:1-7 ("We don't have work programs that are designed to support the facility.").

19. Work programs in state-operated civil commitment centers and hospitals operate as part of an individualized, case-manager-approved treatment or rehabilitation plan, or a vocational training plan, for the benefit of detained individuals. *Id.* at 32:9-17; Whitehead Opp. Decl., Ex. 3 (Holt Dep.) at 18:4-20, 28:11-24, 44:15-17; Whitehead Opp. Decl., Ex. 7 (Wells Dep.) at 10:25-11:12; Whitehead Opp. Decl. Ex. 1 (Eagle Dep.) at 51:20-52:12.

20. The State of Washington has never allowed a for-profit contractor to operate a work program inside the state that pays civilly confined individuals less than the Minimum Wage. Whitehead Opp. Decl., Ex. 2 (Eisen Dep.) at 10:25-11:1-10; 18:22-25.

21. The Washington State Department of Corrections (DOC) does not contract with any private corporation for the use of detainee labor. *Id.* at 21:1-10.

22.  In Washington's civil confinement facilities, the hours a patient works depend on the condition and needs of the individual worker. Whitehead Opp. Decl., Ex. 3 (Holt Dep.) at 11:9-15.

## C.    Relevant Procedural History.

Plaintiffs filed this action on September 26, 2017. Dkt. 1. GEO moved to dismiss the Complaint soon after, arguing among other things that the MWA excludes from coverage any "resident, inmate, or patient of a state, county, or municipal correctional, detention" facility. Dkt. 8 (Motion) at 17-23. The Court denied GEO's motion and held as follows:

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. – 5 (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1
2
3

> Beginning with the statute itself, it is plain that the definition excepts
> residents of "state … detention" facilities, not federal facilities. The
> Northwest Detention Center is a federal detention facility and thus does not
> fall under the exception. This conclusion is reinforced by Washington law
> narrowly construing exceptions in favor of the employee.

4    Dkt. 28 (Order, Dec. 6, 2017) at 13-14 (citations omitted).

5           GEO filed yet another motion to dismiss, arguing this time that GEO enjoys derivative

6    sovereign immunity from suit as a government contractor. Dkt. 91 (Motion) at 11-20. The

7    Court denied the motion without prejudice. Dkt. 113 (Order, Aug. 6, 2018) at 2. Likewise, in

8    *Washington v. The GEO Group, Inc.,* the Court denied GEO's motion to dismiss on derivative

9    sovereign immunity grounds:

10
11
12
13
14

> GEO's motion for summary judgment, based on derivative sovereign
> immunity should be denied. GEO has not shown that it was directed to pay
> participants in the VWP only a $1 for the relevant period. GEO has not
> shown that it had "no discretion in the design process and completely
> followed government specifications." The State points out that GEO has, in
> the past, paid workers more than a $1 a day and has the ability to, and has
> requested, changes to the contracts, including modifications to be
> reimbursed more than was originally agreed upon. GEO's motion to for
> summary judgment based on derivative sovereign immunity should be
> denied.

15
16   Dkt. 288 at 9, *Washington v. The GEO Group, Inc.,* No. 3:17-cv-05806-RJB (W.D. Wash. Aug

6, 2019).

17           Finally, GEO moved for summary judgment against the State of Washington, asserting

18   that intergovernmental immunity barred Washington's claims. Dkt. 149 in *Washington v.*

19   *GEO*. The Court denied GEO's motion, concluding that the MWA "does not discriminate

20   against the Federal Government" because it "is neutral on its face." *Id.,* Dkt. 162. Recently,

21   however, the Court revisited the subject, to clarify that "The doctrine of intergovernmental

22   immunity has not been shown, on the motion for summary judgment, to shield Defendant from

23   application of the Minimum Wage Act." *Id.,* Dkt. 322 in *Washington v. GEO*.

24

## III.   LEGAL ARGUMENT

### A.      Standard of Review.

The parties have filed cross-motions for summary judgment and agree on one thing: there are no genuine issues of material fact and the Court can decide the outcome of this case as a matter of law. *See* Fed. R. Evid. 56(c). Here, the record taken as a whole could not lead a rational jury to find in GEO's favor on its motion, and thus, its motion must be denied. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

On denying summary judgment, the Court has discretion to enter an order identifying those facts that are not genuinely in dispute and treating them as established in the case—i.e., effectively entering summary adjudication as to those facts. Fed. R. Civ. P. 56(g). This rule allows courts to "salvage some of the judicial effort" that went into the court's denial of the motion for summary judgement; and (2) to "streamline the litigation process by narrowing the triable issues." *D'Iorio v. Winebow, Inc.,* 68 F. Supp. 3d 334, 356 (E.D.N.Y. 2014).

The record before the Court is complete on the matters addressed below, and the time is ripe to identify those issues not fairly in dispute and boil this case down to size.

### B.      Neither the Residential Nor "Government-Owned Facility" Exemptions Apply to GEO.

Washington has a "long and proud history of being a pioneer in the protection of employee rights." *Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 586 (Wash. 2000). The Minimum Wage Act was enacted to "establish[ ] a minimum standard for wages, hours, and working conditions of *all employees in this state, unless exempted herefrom*…." Wash. Sess. Laws, Ch. 294, § 12 (1959) (emphasis added). The MWA states in pertinent part that an "employee" is "any individual employed by an employer..." RCW 49.46.010(3). "An '[e]mployer' is any individual or entity 'acting directly or indirectly in the interest of an

employer in relation to an employee.'" *Anfinson v. FedEx Ground Package Sys.*, 281 P.3d 289, 297 (Wash. 2012) (quoting RCW 49.46.010(4)). And "'[e]mploy' includes to permit work." *Id.* (quoting RCW 49.46.010(2)). The Washington Supreme Court has held that "[t]aken together, these statutes establish that, under the MWA, an employee includes any individual permitted to work by an employer. *This is a broad definition*." *Id.* (emphasis added). And the Act, as remedial legislation, is to be construed broadly in favor of coverage. *Id.* at 299.

Exemptions from the MWA, however, are narrowly construed and applied only to situations that are "plainly and unmistakably consistent with the terms and spirit of the legislation." *Id* (internal quotations omitted); *see Tift v. Prof'l Nursing Servs., Inc.*, 886 P.2d 1158, 1161 (Wash. Ct. App. 1995) ("Exclusions pertaining to MWA coverage should be construed strictly in favor of the employees so as not to defeat the broad objectives for which the act was passed."). "[T]he employer bears the burden of proving this 'exempt' status." *Drinkwitz*, 996 P.2d at 587.

Here, GEO argues in favor of two exemptions, but the Court has already found one to be inapposite and the other is not only inapplicable, but untimely.

### 1. GEO has not previously asserted the "Residential Exemption" and has therefore waived it as an affirmative defense.

For the first time in the two-and-a-half year history of this litigation, GEO argues that Plaintiffs and members of the class are excluded from coverage under the "residential exemption" to the MWA. Mot. at 6-9. As a threshold matter, GEO has waived any claim to the exemption. This is because, to lay claim to the exemption, it must have been pleaded as an "affirmative defense." *See David v. Bankers Life & Cas. Co.*, C14-766RSL, 2018 WL 3105985, at *4 (W.D. Wash. June 25, 2018) (analyzing MWA exemptions pleaded as affirmative defenses); *Mitchell v. Pemco Mut. Ins. Co.*, 142 P.3d 623, 625 (Wash. Ct. App.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

2006) (same); *Bostain v. Food Express, Inc.,* 111 P.3d 906, 909 (2005), *rev'd on other grounds,*

*Bostain v. Food Exp., Inc.*, 153 P.3d 846 (2007) (same); *see also Corning Glass Works v.*

*Brennan,* 417 U.S. 188, 196-97 (1974) ("[T]he application of an exemption under the Fair

Labor Standards Act is a matter of affirmative defense on which the employer has the burden

of proof."); *see also Drinkwitz*, 996 P.2d at 586 (MWA and FLSA may be read *in pari materia*).

GEO's failure to raise the defense until now constitutes waiver. Fed. R. Civ. P. 8(c),

12(b), 12(g); *Magana v. Com. of the N. Mariana Islands*, 107 F.3d 1436, 1445 (9th Cir. 1997)

(exemption under FLSA is an "affirmative defense that must be pleaded and proved by the

defendant," and "district court erred by allowing the Defendant to raise the [waived] defense

in a motion for summary judgment without first determining whether the delay caused

prejudice to [the plaintiff]."); *see also Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d

820, 825 (9th Cir. 2011) (California overtime exemption is an affirmative defense that must be

pled by the employer); *Helton v. Factor 5, Inc.*, 26 F. Supp. 3d 913, 920-21 (N.D. Cal. 2014)

(prohibiting defendants' FLSA exemption defense due to delay in raising it and prejudice to

plaintiffs who had no opportunity to conduct discovery on the issue).

Permitting GEO to raise the defense now—near the time of trial and months after the

discovery cutoff—will prejudice Plaintiffs because there is insufficient time to respond prior

to trial, take discovery on the issue, or file briefing with the Court. Because GEO has not given

Plaintiffs fair notice of its defense, the Court should consider it waived.

### 2. The "Residential Exemption" is inapplicable because Plaintiffs' job duties do not require them to sleep or reside at NWDC.

Even on the merits, GEO's claim to the residential exemption fails. The Court's inquiry

stops and starts with the plain language of the exemption:

"Employee" … shall not include:

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

...

> (j) Any individual *whose duties require* that he or she reside or sleep at the place of his or her employment or who otherwise spends a substantial portion of his or her work time subject to call, and not engaged in the performance of active duties.

RCW 49.46.010(3)(j) (emphasis added); *see Lake v. Woodcreek Homeowners Ass'n,* 243 P.3d 1283, 1288 (Wash. 2010) ("If the statute is unambiguous after a review of the plain meaning, the court's inquiry is at an end.").

GEO argues the exception is met simply "because detainees at the NWDC reside (and sleep) at the NWDC," Mot. at 9, but GEO's reading ignores an unmistakable and critical qualifier: the individual's job duties must require that he or she reside at his or her place of employment. In other words, the exemption is met only where the employee's job duties require them to sleep onsite. Lest there be any doubt about the plain-language—and common sense—reading of the residential exemption, the Washington State Department of Labor and Industries offers the following policy guidance:

> Employees whose job duties require them to reside at the place of employment are exempt from both the minimum wage and overtime requirements. *Merely residing or sleeping at the place of employment does not exempt individuals from the Minimum Wage Act.* In order for individuals to be exempt, *their duties* must require that they sleep or reside at the place of their employment.

Washington Department of Labor & Industries, Minimum Wage Act Applicability, ES.A.1 (Jul. 15, 2014) at 6(j), p. 5, available at https://lni.wa.gov/workers-rights/_docs/esa1.pdf (last visited on Mar. 16, 2020) (emphasis in original and added).

GEO counters this with a cribbed analysis of the Washington Supreme Court's decision in *Berrocal v. Fernandez,* 121 P.3d 82 (Wash. 2005). In *Berrocal,* the court decided whether two sheepherders were entitled to overtime or exempt from the MWA under the residential

exemption. At issue was a different modifying phrase within the exemption (i.e., "not engaged in the performance of active duties") and its effect on the exemption as a whole. *Id.* at 85-86. At no point did the *Berrocal* court address the qualifier at issue here (i.e., "whose duties require that he or she reside or sleep at the place of his or her employment"). And contrary to GEO's suggestion, the court did not hold that an employee residing or sleeping at his place of employment—standing alone—was enough to satisfy the exemption. To hold otherwise would create another category of excluded worker from the MWA, and no Washington court has so held.

This is likely because it is so obvious when the requirement is met (or not). For example, in *Berrocal,* the sheepherders' labor contracts required them to reside on site and "be available 24 hours per day, 7 days per week" because their duties included "feeding the sheep, attending to sheep that are injured or sick, and guarding the sheep from predatory animals," requiring them to be available "at all hours of the day and night." *Id.* at 588-89.

Similarly, in *Strain v. W. Travel, Inc.,* 70 P.3d 158, 160 (Wash. Ct. App. 2003)—another case cited by GEO—the residential exemption operated to exclude the plaintiff, a cruise ship customer service representative, from coverage. The plaintiff's job duties included "attend[ing] to passenger needs, assist[ing] with meal service, and ensur[ing] vessel preparation," which necessarily required him to "to sleep on board during cruises." *Id.* at 253.

This Court has addressed the "residential exemption" on at least one occasion, holding that the exemption applied because the plaintiffs were undisputely "*required* to sleep" at work because of their job duties. *Park v. Choe,* C06-5456RJB, 2007 WL 2677135, at *6 (W.D. Wash. Sept. 10, 2007) (emphasis added). In *Park*, the plaintiffs worked as caregivers at an

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. – 11 (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

adult family home, and their duties involved washing, bathing, feeding, and caring for residents around the clock, which required them to live on premises. *Id.*

Here, unlike the plaintiffs in *Berrocal, Strain,* and *Park,* whose job duties required them to sleep at their places of employment, the jobs performed by Plaintiffs and members of the class *did not* require them to spend the night at NWDC. Indeed, cooking, cleaning, laundry, and working in the barbershop are not 24/7 affairs requiring workers to live on site. And as the State of Washington argues in its separate action against GEO, all of the jobs performed by detainee workers could have been performed by Tacoma residents living outside the facility. Plaintiffs and members of the class came to "reside" at NWDC only by virtue of their uncertain immigration status and the circumstances of their civil detention, not because their labor was needed on-demand to maintain the facility.[2]

### 3. The Court previously ruled that the State-Owned Facility exemption did not apply to GEO, and there has been no change in circumstances warranting the Court to reverse course.

Next, GEO argues that Plaintiffs are excepted from employee status as "resident[s], inmate[s], or patient[s] of a state, county, or municipal correctional, detention, treatment or rehabilitative institution." Mot. at 9. As an initial matter, the Court has already considered and rejected this argument on at least three occasions. Dkt. 28 at 13-14 ("Beginning with the statute itself, it is plain that the definition excepts residents of 'state … detention' facilities, not federal facilities. The Northwest Detention Center is a federal detention facility and thus does not fall under the exception."); Dkt. 29 at 17 in *Washington v. GEO*; Dkt. 162 at 6 in *Washington v.*

---

[2] GEO's preferred reading of the statute would create a perverse incentive for employers (e.g., warehouse operators, hotels, etc.) to "require" their employees to sleep on site, thus skirting the MWA's requirements and creating modern-day versions of the old "company towns."

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

*GEO* ("importantly, this exclusion does not extend to residents, inmates or patients of private entities….").

GEO fails to address the Court's previous rulings, much less argue that the Court's earlier decisions were clearly erroneous. Under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).

The Court should not reverse itself on GEO's faulty arguments.[3] GEO argues for an expansive definition of "state" to include federally run facilities, but "[w]here a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature under the maxim *expressio unius est exclusio alterius*–specific inclusions exclude implication." *Wash. Natural Gas Co. v. Public Util. Dist. No. 1*, 459 P.2d 633, 636 (Wash. 1969). Moreover, reading "state" broadly to include any government-owned facility, as GEO urges, would violate another basic rule of statutory construction by rendering the terms "county or municipal" in the statute mere surplusage. But even if the Court read the term "state" broadly, the exception still would not apply because GEO is a privately owned and run facility. Contorting the plain language of the exemption to include privately-held, for-profit corporations like GEO, effectively creates a new exemption under the MWA and would be antithetical to basic canons of statutory construction.

---

[3] GEO grossly misstates the holding from *Calhoun v. Washington,* 193 P.3d 188 (Wash. App. Ct. 2008), as GEO neglects to explain that the civil detainees in question resided in a State of Washington owned and run facility, unlike Plaintiffs here, who resided at a privately-owned facility—the NWDC.

PLTFS.' OPP. TO DEF.'S MOT. FOR SUMM. J. – 13 (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

GEO argues the state-owned facility exemption is a matter of perspective: "the definition of 'employee' describes certain individuals who are exempt from the definition of employee—not certain types of entities that are not considered employers." Mot. at 11. But this legal sleight of hand negates the function of the preposition linking the individual to the type of facility (i.e., "resident ... *of* a state ... institution."). Thus, the exemption does not apply to just any resident, inmate, or patient. Nor does it apply to any state-owned facility. Rather, taken as a whole, as it must be read, the exemption applies to residents *of* a state-owned facility. Because the plain terms of the exemption are not met, GEO's motion must be denied.

## C.   GEO Advances the Same Intergovernmental Immunity Arguments this Court Previously Rejected, Offering the Court Nothing New to Consider.

Twice now this Court has rejected calls to dismiss MWA claims against GEO based on intergovernmental immunity, finding most recently that "[t]he doctrine ... has not been shown, on the motion for summary judgment [before the Court at the time], to shield [GEO] from application of the Minimum Wage Act." Dkt. 162 at 9 and Dkt. 322 at 2 in *Washington v. GEO*. There has been no intervening change in law since the Court's previous order, and the fact discovery that has occurred since reveals how different GEO's operations are from similarly situated private contractors in Washington. The Court should once again resist GEO's call to commit reversible error and enter findings of fact precluding further argument and wasted time at trial on an issue not reasonably in dispute.

### 1.   The MWA does not directly regulate the Federal Government.

This time around, GEO argues for immunity by ignoring the basics and nuances of the intergovernmental immunity doctrine. At bottom, the doctrine holds that a "state regulation is invalid *only* if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 434-

35 (1990) (emphasis added). The Supreme Court takes a "functional approach" to claims of intergovernmental immunity that "accomodate[s] the full range of each sovereign's legislative authority." *Id.* at 434-35. Under this approach, a state law may impose burdens on the federal government without raising constitutional concerns so long as it regulates federal suppliers or contractors in a non-discriminatory manner. *Id.* This is because any such burdens "are but normal incidents of the organization within the same territory of two governments." *Id.* at 435 (internal citations omitted).

So when GEO argues that "the federal government (and GEO) will face both an economic and administrative burden" if the MWA is applied to the detainee worker program, it fails to establish the type of direct regulation or interference required to trigger immunity. Mot. at 19-20. Indeed, *North Dakota* makes plain that a state law *does not* run afoul of intergovernmental immunity merely because a generally applicable state regulation "make[s] it more costly for the Government to do its business." 495 U.S. at 434. The Supreme Court "decisively rejected" arguments like GEO's more than a half-century ago, deeming the notion "thoroughly repudiated." *Id.* Likewise, the Supreme Court explained that a law does not implicate intergovernmental immunity where it "is imposed on some basis unrelated to the object's status as a [federal] Government contractor" and is "imposed equally on other similarly situated constituents of the State." *Id.* at 438.

Thus, proper analysis considers whether the terms of the challenged state law are a "direct and intrusive regulation by the State of the Federal Government." *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996). And as it relates to the MWA, this Court has already answered this query in the negative:

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

1
2
3

> The state minimum wage arguably relates indirectly to federal government activities—the Federal Government and its contractors may employ persons within the State of Washington—but the MWA does not regulate the Federal Government directly, and, in fact, imposes no duty on the Federal Government itself.

4   Dkt. 162 at 7 in *Washington v. GEO* (citations omitted).

5   Even so, GEO persists with readily distinguishable case law in its quest for immunity.

6   For example, GEO returns to *Boeing Co. v. Movassaghi,* 768 F.3d 832 (9th Cir. 2014), but this

7   Court previously distinguished its holding from the case at bar. Dkt. 162 at 7 in *Washington v.*

8   *GEO.* GEO fails to acknowledge, never mind argue against, the Court's previous analysis.

9   GEO also turns to *Blackburn,* for cover, but it is equally inapposite. In *Blackburn,* the plaintiff

10  sued the United States, claiming that the National Park Service failed to provide more specific

11  warnings against diving off a bridge in Yosemite National Park. 100 F.3d at 1428-29. The

12  plaintiff argued in relevant part that the California Resort Act subjected the federal government

13  to suit because it failed to place warning signs and safety ropes in compliance with the Act. *Id.*

14  at 1435. The court dismissed the plaintiff's claim on intergovernmental immunity grounds,

15  among other reasons, because the state law purported to regulate the Federal Government's

16  operations on Federal Government property. *Id.* But here, the MWA regulates neither a federal

17  actor nor facility in GEO and the NWDC.

18  Because the MWA does not directly regulate the federal government's conduct, the

19  doctrine of intergovernmental immunity does not apply.

20  **2.      The MWA does not discriminate against the Federal Government.**

21  When a state law is alleged to operate discriminatorily, courts apply intergovernmental

22  immunity with "restraint," meaning that "[t]he nondiscrimination analysis should not 'look to

23  the most narrow provision addressing the Government or those with whom it deals'" because

24

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. – 16 (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

even "'[a] State provision that appears to treat the Government differently on the most specific level of the analysis may, in its broader regulatory context, not be discriminatory.'" *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d 892, 903-04 (N.D. Cal. 2007) (quoting *North Dakota*, 495 U.S. at 438). "Applying these principles, the [Supreme] Court has required that regulations be imposed equally on all similarly situated constituents of a state and not based on a constituent's status as a government contractor or supplier." *Id.* at 903 (citing *United States v. County of Fresno,* 429 U.S. 452, 462-64 (1977)).

a.    *The proper comparator for GEO is a similarly situated private contractor.*

As a threshold matter, proper comparison requires a proper comparator. GEO argues "the WMWA discriminates against the federal government (and its contractors), by providing exceptions to the definition of 'employee' for state detainees, but not federal detainees," thus, setting out a comparison between state and federal detainees. Mot. at 19-20. But this ignores the key distinction that animates this dispute: GEO is a contractor operating a privately-owned facility. Under these circumstances, the proper comparator for GEO is not the State of Washington, but rather a similarly situated private contractor doing business with the State.

The case law GEO cites to argue otherwise is unavailing. First, in *Dawson v. Steager,* 139 S.Ct. 698 (2019), West Virginia exempted certain state law enforcement employees from taxes on their pensions, but taxed the benefits for a similarly situated federal law enforcement retiree. *Id.* at 703-04. There were no significant differences between the job responsibilities of the federal retiree and those of the tax-exempt state retirees, but the state's treatment differed depending on the source of the benefits. *Id.* Under the circumstances, the Supreme Court had "little difficulty" concluding that West Virginia's law unlawfully discriminated against similarly situated federal retirees. *Id.* Nowhere in *Dawson*, however, did the Supreme Court

suggest that the proper comparison was between a privately-employed retiree and the state government itself.[4]

Likewise, GEO's reliance on *United States v. California*, 921 F.3d 865 (9th Cir. 2019), is also misplaced. There, the Ninth Circuit analyzed intergovernmental immunity challenges to three separate California statutes. *Id.* at 872-73. The court rejected the United States' claims of immunity on all three statutes, with the lone exception of a single subsection in one statute, and even then, only to the extent that it "d[id] not merely replicate" the generally applicable inspection requirements for all detention facilities. *Id.* at 883. The only intergovernmental immunity issue existed where that subsection imposed unique, heightened, and specialized requirements on "federal operations—and only federal operations." *Id.* at 882-83.

GEO makes one final attempt to muddy the waters on this point by reading the MWA definitions for "employee" and "employer" in isolation to argue the MWA does not cover individuals in the custody of the State or federal government. Mot. at 21. But why should these terms be read in a vacuum? GEO does not say, but its suggestion is at odds with the Washington Supreme Court's commandment that MWA definitions be "taken together" as a whole to determine whether an employment relationship exists. *Anfinson,* 281 P.3d at 297; *see also John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 94–95 (1993) (When examining the language of a "governing statute, [courts are] guided not by a single sentence or member of a sentence, but look[ing] to the provisions of the whole law, and to its object and policy."). And unless an express statutory exemption applies, the MWA's terms read together

---

[4] GEO also discusses *Davis v. Mich. Dep't of Treasury,* 489 U.S. 803, 817 (1989), but like *Dawson,* the Supreme Court held in *Davis* that a state law violated principles of intergovernmental tax immunity by favoring retired state and local government employees over federal employees. This underscores that the proper comparison is between individuals dealing with state and individuals who deal with the federal government.

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. – 18 (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

hold that private employers across the state are subject to Washington's minimum wage laws. *See* RCW 49.46.010(3)(a)-(p) (enumerating limited exceptions to minimum wage requirements); *Dep't of Labor & Indus. v. Lanier Brugh*, 147 P.3d 588, 592-95 (Wash. 2006) (applying Washington's minimum wage laws to federal contractor).

> b.   *The MWA treats private-contract facilities the same regardless of where the underlying contract lies.*

The MWA does not discriminate against the federal government or GEO because it imposes equal burdens upon privately run detention facilities whether the underlying contract lies with the State of Washington or the federal government. *See Washington v. United States*, 460 U.S. 536, 544-45 (1983) (A "[s]tate does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them."). As this Court previously found, the plain language of the MWA singles-out neither the federal government nor contractors like GEO for less preferential treatment:

> At its core, and by design, the MWA protects employees and prospective employees in Washington generally, placing private firms that contract with the Federal Government on equal footing with all other private entities. The MWA expressly excludes as employees, "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution," but, importantly, this exclusion does not extend to residents, inmates or patients of private entities, which, again, remain on equal footing. If the word "federal" was added to the subsection (3)(k) exception (e.g., "state, county, municipal or federal . . . institution"), the MWA exception still would not apply to residents of a private institution, like the NWDC. It therefore cannot be said that the MWA "meddl[es] with federal government activities indirectly by singling out for regulation those who deal with the government."

Dkt. 162 at 6 in *Washington v. GEO* (citations omitted).

The Court's inquiry must stop here because intergovernmental immunity focuses on the specific terms of the challenged state law and not whether there is in fact perfect compliance with the law. *See, e.g., North Dakota*, 495 U.S. at 435 (courts must examine "the entire

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. – 19 (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

regulatory system" for discrimination and not focus on particular claims "in isolation");
*California*, 921 F.3d at 872-73 (analyzing what requirements legal provisions imposed upon
facilities holding immigration detainees and other facilities); *United States Postal Serv. v.
Berkeley*, C 16-04815-WHA, 2018 WL 2188853, at *4 (N.D. Cal. May 14, 2018) (rejecting
United States' reliance on fact that Postal Service was only entity currently affected by neutral
ordinance as basis for asserting that ordinance was discriminatory, calling such a "sweeping
theory" unsupported and explaining that under that theory, "it would be virtually impossible
to impose any regulation—no matter how objective or sincerely neutral—on a group of
constituents that happened to include the federal government or those with whom it deals"); *In
re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d at 904 (rejecting attempt to
focus on the individual investigation as "treat[ing] the Government differently" because "the
regulatory regime as whole treats any unauthorized disclosure the same").

So even assuming *arguendo* that GEO established Washington state contractors pay
detainee workers subminimum wages, it has succeeded only in showing that other private
entities, like GEO, have violated the plain terms of the MWA.

c.      *Washington maintains no private contracts in the state that
provide for the payment of subminimum wages.*

Although the Court need not reach the question to dispose of GEO's intergovernmental
immunity claim, GEO has identified no other private contractor that owns and operates a
facility within Washington where the residents work for subminimum wages (i.e., a proper
comparator). Instead, GEO analogizes to the Special Commitment Center ("SCC") and the
Pierce County Jail. Mot at 5. But both facilities are government-owned placing them squarely
within the express terms of an MWA exemption. *See* RCW 49.46.010(3)(k). GEO mentions in
passing that certain services at government institutions are provided by private companies,

such as food services. But none of the private companies GEO references own and operate a detention facility in Washington, like GEO does. Thus, they are not proper comparators either.

GEO even refers to a contract it held for a time with the State of Washington, but it glosses over many of the details. Mot. at 4-5. Washington contracted with GEO between approximately May 2015 and August 2018 to house criminal offenders *out of state* on an as-needed basis if the State's facilities were full. Whitehead Opp. Decl., Ex. 2 (Eisen Dep.) at 6:11-15, 10:25-11:6, 16:3-7, 17:5-10, 17:25-18:25). The state never housed anyone at a GEO facility and the contract expired. *Id.* In fact, the last time Washington held an individual for detention or incarceration at a facility run by a private contractor was in 2009. *Id.*

Based on the foregoing, the Court should rule as a matter of law that intergovernmental immunity does not apply to GEO. Moreover, now that discovery is complete and GEO has failed to identify an appropriate comparator or any evidence to suggest the State of Washington uses private contractors for detention services, let alone that it allows such contractors to pay subminimum wages, the Court should enter findings of fact that GEO's operations at the NWDC are treated no differently than any other private detention facility in Washington.

### D.     Derivative Sovereign Immunity Does Not Bar Plaintiffs' Claims.

This Court previously held that derivative sovereign immunity does not bar Plaintiffs' claims, and since the Court's order issued, GEO has adduced no new facts demonstrating otherwise. "Government contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States," but immunity is not absolute and will not attach where a contractor's discretionary actions creates the contested issue. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016); *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (derivative sovereign immunity

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. – 21 (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1   is limited to cases in which a contractor "had no discretion in the design process and completely

2   followed government specifications.").

3          GEO's claim to derivative sovereign immunity is premised entirely on its contract with

4   ICE and the PBNDS. Mot. at 23. While ICE requires GEO to operate a worker program, ICE

5   does not dictate the types of jobs detainee workers must be assigned. *See generally* Dkt. 223-

6   13 (Whitehead Decl., Ex. M (2011 PBNDS § 5.8 - VWP)). ICE did not direct GEO to use

7   detainee workers to perform labor critical to the NWDC's operations. *Id*. Moreover, ICE did

8   not instruct GEO to pay detainee workers only $1 per day for their labor. *See* Dkt. 223-18

9   (Whitehead Decl., Ex. R (T. Johnson Decl.)) at ¶¶ 8, 12, 13 (affirming that the GEO-ICE

10  contract "do[es] not designate *how* a contractor is to perform the work" but rather establishes

11  expected outcomes, that GEO maintains discretion in developing and implementing the VWP,

12  and that "detainees who participate in the VWP shall receive no less than $1 per day for their

13  participation") (emphasis in original). Instead, ICE instructs GEO to comply with

14  Washington's labor laws—including the MWA. *See* Dkt. 223-2 (Whitehead Decl., Ex. B (ICE

15  Contract)) at 48 and 86. These facts are all fatal to GEO's derivative sovereign immunity claim

16  because they lay bare that GEO's discretionary actions have given rise to this suit.

17         GEO's arguments about *Cunningham v. Gen. Dynamics Information Tech., Inc.*, 888

18  F.3d 640 (4th Cir. 2018), do not persuade otherwise. In *Cunningham*, the plaintiff claimed

19  *Yearsley* immunity did not apply because the government contractor violated the Telephone

20  Consumer Protection Act (TCPA), as well as a contract provision requiring it to "follow

21  applicable laws." *Id*. at 647. The Fourth Circuit contrasted this situation with the government

22  contractor's actions in *Campbell-Ewald. Id*. at 648 (citing 136 S. Ct. at 667). Both cases

23  involve suits under the TCPA against private contractors who contacted individuals on behalf

24

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. – 22 (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

of federal government agencies using a list of names the government provided. In *Cunningham*, the agency did not direct the contractor to obtain consent from individuals in compliance with the TCPA. 888 F.3d at 647. In *Campbell-Ewald*, on the other hand, the contract expressly provided that TCPA compliance was the contractor's responsibility, and the agency's approval of lists containing the recipients depended on the contractor first investigating and obtaining their consent. *Id.* at 647-48 (citing 136 S. Ct. at 673-74). The contractor in *Cunningham* enjoyed derivative sovereign immunity, while the contractor in *Campbell-Ewald* did not.

GEO's predicament is unlike that of either contractor. In both *Cunningham* and *Campbell-Ewald*, the government instructed the contractor to contact individuals, a task that ultimately triggered TCPA claims. Here, the federal government has not set, authorized, or approved a specific rate of pay for GEO to compensate detained immigrants at the NWDC, except that GEO must pay them *at least* $1 per day. The specific performance authorization and instructions the federal government provided in both TCPA cases are thus absent from GEO's contract.

Finally, GEO relies upon a provision in the ICE Contract that bars GEO from utilizing detainee labor to complete duties meant to be performed by GEO employees to argue that detainee workers cannot possibly be employees for purposes of Washington's MWA. Mot. at 21. But the facts of the case show that GEO is violating that prohibition. As GEO itself admits, GEO uses detainee workers to complete its own contractual duties. *Compare* Dkt. 223-2 (Whitehead Decl., Ex. B (ICE Contract)) at 57-58, 83 (listing GEO's responsibilities as ensuring the facility is "clean and vermin/pest free"; laundering, changing, and distributing linens; and preparing meals), *with* Dkt. 223-21 (Whitehead Decl., Ex. U (GEO's RFA Resp.))

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. – 23 (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

at RFA Nos. 23-44 (confirming the VWP jobs available at the NWDC include cleaning common areas, doing laundry, and preparing food). To the extent GEO argues that *no* detainee can work lawfully at the NWDC because ICE permits GEO to employ only U.S. citizens and persons "lawfully admitted," GEO provides no evidence that all detainees would be disqualified. To the contrary, not every detainee is "illegal or undocumented." *Cf* Dkt. 223-2 (Whitehead Decl., Ex. B (ICE Contract)) at 7. Detainees are held at the NWDC pending a determination on their immigration status and may be authorized to work notwithstanding detention.[5] *See* 8 U.S.C. § 1226(a) (authorizing detention "pending decision on whether the alien" is removable).

The Court has given GEO ample opportunity to develop evidence establishing its derivative sovereign immunity claim, but all of the evidence discovered to date shows that GEO's discretionary choices act as a bar to immunity. The Court should confirm as a matter of law that derivative sovereign immunity does not apply, and exclude argument and hearsay evidence at trial related to ICE's "intent" or directives to GEO. Such argument and evidence are likely to confuse the issue and mislead the jury and risk wasting an extraordinary amount of time conducting a trial within a trial about the meaning of the ICE Contract.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny GEO's summary judgment motion, and enter findings of fact and conclusions of law to streamline what will otherwise become a lengthy and unwieldly trial.

---

[5] At trial, Plaintiffs expect to introduce expert testimony from Christopher Strawn about the work authorization eligibility of detained persons generally at NWDC.

PLTFS.' OPP. TO DEF.'S MOT. FOR
SUMM. J. – 24 (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1    RESPECTFULLY SUBMITTED this 27th day of March, 2020.

2                                    SCHROETER GOLDMARK & BENDER

3                                    *s/ Jamal Whitehead*
                                     _____
4                                    Adam J. Berger, WSBA #20714
                                     Lindsay L. Halm, WSBA #37141
                                     Jamal N. Whitehead, WSBA #39818
5                                    Rebecca J. Roe, WSBA #7560
                                     810 Third Avenue, Suite 500
6                                    Seattle, WA 98104
                                     Tel: (206) 622-8000
7                                    berger@sgb-law.com
                                     halm@sgb-law.com
                                     whitehead@sgb-law.com
8                                    roe@sgb-law.com

9                                    THE LAW OFFICE OF
                                     R. ANDREW FREE
10                                   R. Andrew Free (*Pro Hac Vice*)
                                     P.O. Box 90568
11                                   Nashville, TN 37209
                                     Tel: (844) 321-3221
12                                   andrew@immigrantcivilrights.com

13                                   OPEN SKY LAW, PLLC
                                     Devin T. Theriot-Orr, WSBA # 33995
14                                   20415 – 72nd Avenue S, Suite 110
                                     Kent, WA 98032
15                                   Tel: (206) 962-5052
                                     devin@opensky.law

16

17                                   MENTER IMMIGRATION LAW, PLLC
                                     Meena Menter, WSBA # 31870
18                                   8201 – 164th Avenue NE, Suite 200
                                     Redmond, WA 98052
19                                   Tel: (206) 419-7332
                                     meena@meenamenter.com

20                                   *Class Counsel*

21

22

23

24

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2020, I electronically filed the foregoing, together with its supporting pleadings and attachments thereto, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Devin T. Theriot-Orr
OPEN SKY LAW, PLLC
20415 – 72nd Avenue South, Suite 110
Kent, WA 98032
devin@opensky.law
*Attorney for Plaintiff*

R. Andrew Free
THE LAW OFFICE OF R. ANDREW FREE
PO Box 90568
Nashville, TN 37209
andrew@immigrantcivilrights.com
*Attorney for Plaintiff*

Meena Menter
MENTER IMMIGRATION LAW PLLC
8201 – 164th Avenue NE, Suite 200
Redmond, WA 98052
meena@meenamenter.com
*Attorney for Plaintiff*

Joan K. Mell
III BRANCHES LAW, PLLC
1019 Regents Boulevard, Suite 204
Fircrest, WA 98466
joan@3ebrancheslaw.com
*Attorney for Defendant*

Colin L. Barnacle
Ashley E. Calhoun
Christopher J. Eby
Adrienne Scheffey
Allison N. Angel
AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, CO 80202
colin.barnacle@akerman.com
ashley.calhoun@akerman.com
christopher.eby@akerman.com
allison.angel@akerman.com
adrienne.scheffey@akerman.com
*Attorneys for Defendant*

Christopher M. Lynch
US DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 "L" Street NW
Washington, D.C.  20005
christopher.m.lynch@usdoj.gov
*Attorneys for Interested Party*

DATED at Seattle, Washington this 27th day of March, 2020.

*s/ Virginia Mendoza*

VIRGINIA MENDOZA, Legal Assistant
Schroeter Goldmark & Bender
810 Third Avenue, Suite 500
Seattle, WA  98104
Tel: (206) 622-8000
mendoza@sgb-law.com

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305