# EXHIBIT 3

```
                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
                             AT TACOMA
_____

UGOCHUKWU GOODLUCK NWAUZOR,           )
FERNANDO AGUIRRE-URBINA,              )
individually and on behalf of         )
all those similarly situated,         )
                                      )
     Plaintiffs/Counter-Defendants.   )
                                      )
         vs.                          )     NO. 3:17-CV-05769-RJB
                                      )
THE GEO GROUP, Inc.,                  )
                                      )
     Defendant/Counter-Claimant.      )
_____

           DEPOSITION UPON ORAL EXAMINATION OF DAVID HOLT
_____




                     Tuesday, December 17, 2019
                        Lakewood, Washington
```

1     that you select to pay detainees derived from?

2            MS. BRENNEKE:  Object to the form.

3   A   I do not know.

4   Q   (By Ms. Mell)  Do detainees get 7.25 -- is it per hour?

5   A   Correct.

6   Q   And they get 7.25 per hour regardless of the tasks

7       undertaken?

8   A   That's correct.

9   Q   And with respect to the number of hours of work, how many

10      hours do detainees work?

11   A   It depends on the condition of the patient.  Let me give

12      you an example.  Some of the patients on the wards, they

13      cannot handle more than a half hour or an hour.  Other

14      patients, for example, in our Habilitative Mental Health

15      program have a set number of hours per week that they work.

16   Q   What's the most hours any detainee works?

17            MS. BRENNEKE:  Object to the form.

18   A   I don't know exactly.  We have 260 patients on our

19      vocational rehab payroll that are receiving wages.  I would

20      not know on each individual patient how many hours.

21   Q   (By Ms. Mell)  What's the longest tasks that's assigned?

22   A   We have -- in our Habilitative Mental Health program, they

23      work daily Monday through Friday.  They work two hours in

24      the morning and an hour in the afternoon, three hours per

25      day.

1  Q  And a patient may be kicked out of the vocational rehab
2     program if they refuse to participate at all?
3              MS. BRENNEKE:  Object to the form.
4  A  Let me clarify your previous question about whether they
5     get kicked out of the program.  There is an example for
6     safety, for example, in the kitchen.  If a patient cannot
7     handle being around dangerous equipment, et cetera, they
8     may move them into a different job category.  They don't
9     get kicked out, but they would be adapted to the individual
10    needs of the patient.
11 Q  (By Ms. Mell)  Okay.  So there's a misbehavior protocol.
12    What about a refusal to work protocol; what happens to
13    those people?
14             MS. BRENNEKE:  Object to the form of the
15    question.  It misstates prior testimony.
16 A  I don't know that answer.
17 Q  (By Ms. Mell)  Is the participation voluntary?
18 A  In the Habilitation Mental Health program it is part of
19    their treatment program, and all patients participate as
20    part of their treatment.
21 Q  So they can't refuse to work?
22 A  I don't know.
23 Q  Why don't you know?
24             MS. BRENNEKE:  Object to the form.
25 A  I don't work in the program every day, and I would be

1   Q  (By Ms. Mell)  Do you know whether or not the federal
2      minimum wage varies based on activity?
3              MS. BRENNEKE:  Same objection.
4   A  I don't know.
5   Q  (By Ms. Mell)  What are patients required to do relative to
6      maintaining their personal grooming as well as the
7      facilities that they need to use to maintain themselves?
8              MS. BRENNEKE:  Object to the form.  Compound.
9   A  Could you repeat the question?
10  Q  (By Ms. Mell)  Do patients have to change their beds?
11  A  Each patient is in a different place as far as their social
12     skills, their abilities, their intellectual capability, et
13     cetera.  So each patient is on a ward where there is a
14     treatment team that considers the overall needs and
15     abilities of each patient and adapts the treatment plan to
16     meet those individual needs.  Some patients can make their
17     beds; some can't.  Some have intellectual capabilities that
18     they can't do it.  Some have physical disabilities where
19     they can't.  Some have mental disabilities where they
20     can't.  They take the patient where they are and create an
21     individualized treatment plan to encourage grooming and
22     dress and making beds and keeping their personal space
23     appropriate and work with them to increase those skill
24     levels.
25  Q  So is it correct that there's no expectation by the State

NWAUZOR vs GEO GROUP
David Holt, 12/17/2019

```
 1    question to the extent it calls for a legal conclusion.
 2  A I can't -- I can't state that.  That's speculation.  I
 3    don't know.
 4  Q (By Ms. Mell)  Do the patient workers work the same as the
 5    State workers?
 6            MS. BRENNEKE:  Object to the form of the
 7    question.  It's been asked and answered, and it's very
 8    vague.
 9  A Could you repeat that again?
10  Q (By Ms. Mell)  Do the patient workers work the same as the
11    State workers?
12            MS. BRENNEKE:  Object to the form of the
13    question.  It's been asked and answered for an hour-long
14    deposition, and it's very vague.
15  A They work according to the treatment plan that the
16    treatment team works out with them based on their
17    individual needs and abilities.
18  Q (By Ms. Mell)  Do you think the patient workers have an
19    employment relationship with Western State?
20  A They have a --
21            MS. BRENNEKE:  I'm going to object to the extent
22    it calls for a legal conclusion.
23        Go ahead.
24  A They have a vocational relationship with our hospital that
25    helps provide them treatment.  We're not about just jobs.
```

1                    C E R T I F I C A T E

2         I, DIXIE J. CATTELL, the undersigned Registered

3    Professional Reporter and Washington Certified Court Reporter,

4    do hereby certify:

5         That the foregoing deposition of DAVID HOLT was taken

6    before me and completed on the 17th day of December, 2019, and

7    thereafter transcribed by me by means of computer-aided

8    transcription; that the deposition is a full, true and

9    complete transcript of the testimony of said witness;

10        That the witness, before examination, was, by me,

11   duly sworn to testify the truth, the whole truth, and nothing

12   but the truth, and that the witness reserved signature;

13        That I am not a relative, employee, attorney or

14   counsel of any party to this action or relative or employee of

15   such attorney or counsel, and I am not financially interested

16   in the said action or the outcome thereof;

17        That I am herewith securely sealing the deposition of

18   DAVID HOLT and promptly serving the same upon MS. JOAN MELL.

19        IN WITNESS HEREOF, I have hereunto set my hand this

20   21st day of DECEMBER, 2019.

21                    [signature: Dixie J. Cattell]

22        _____

          Dixie J. Cattell, RPR, CCR
23        NCRA Registered Professional Reporter
          Washington Certified Court Reporter CSR#2346
24

25