# EXHIBIT E

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

---

UGOCHUKWU GOODLUCK NWAUZOR,           )
FERNANDO AGUIRRE-URBINA,              )
individually and on behalf of all     )
those similarly situated,             )
            Plaintiffs,               )
      vs.                             ) No. 17-cv-05769-RJB
THE GEO GROUP, INC., a Florida        )
corporation,                          )
            Defendant.                )

---

Videotaped

Deposition Upon Oral Examination of

DAVID M. TRACY

---

10:13 a.m.

Tuesday, December 3, 2019

1019 Regents Blvd., Suite 204

Fircrest, Washington

REPORTED BY: Keri A. Aspelund, RPR, CCR No. 2661

```
                                                              Page 2
 1      APPEARANCES:
 2      For the Plaintiffs:  JAMAL N. WHITEHEAD, ESQ.
 3                           Schroeter Goldmark & Bender
 4                           810 Third Avenue, Suite 500
 5                           Seattle, WA  98104
 6                           206-622-8000
 7                           whitehead@sgb-law.com
 8      For the Defendant:   JOAN K. MELL, ESQ.
 9                           III Branches Law
10                           1019 Regents Blvd., Suite 204
11                           Fircrest, WA  98466
12                           253-566-2510
13                           joan@3brancheslaw.com
14      Also Present:        LINDSAY HITCHCOCK, VIDEOGRAPHER
15
16                           LANE POLOZOLA, ESQ.
17                           Assistant Attorney General
18                           800 Fifth Avenue, Suite 2000
19                           Seattle, WA  98104
20                           lane.polozola@atg.wa.gov
21                           206-287-4182
22
23
24
25
```

David Tracy                                                December 3, 2019

Page 3

```
 1                       E X H I B I T S
 2    No.    Description                                Page/Line
 3    310    Plaintiffs' Second Amended Notice of        8    22
 4           Videotaped Deposition of David Tracy
 5    311    Job Description, Job Title:  Sergeant -    19    11
 6           GEO-Nwauzor 000340-000341
 7    312    Northwest Detention Center -               25     3
 8           Organizational Chart - GEO-Nwauzor
 9           044059-044067
10    313    Policy and Procedure Manual, Chapter:      29     8
11           Detainee Services and Programs, Title:
12           Voluntary Work Program - GEO-Nwauzor
13           016419-016426
14    314    Volunteer Work Program Agreement           50    25
15    315    Northwest Detention Center Detainee Job    55     3
16           Descriptions
17    316    Northwest Detention Center Pod Porter      77     4
18           Job Descriptions - GEO-Nwauzor
19           078053-078054
20    317    Email dated October 26, 2017, from Nels   100    11
21           Riach to Alisha Singleton and others -
22           GEO-Nwauzor 038934
23
24
25
```

David Tracy                                           December 3, 2019

```
                                                              Page 4
 1                    E X A M I N A T I O N

 2     BY                                             Page/Line

 3     MR. WHITEHEAD                                    10    4

 4     MS. MELL                                         90    5

 5     MR. WHITEHEAD                                    93    1

 6     MS. MELL                                        104    4

 7

 8

 9

10

11

12       (Note:  * Denotes phonetic spelling.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

David Tracy                                              December 3, 2019

                                                                  Page 5

 1            Fircrest, Washington; Tuesday, December 3, 2019
 2                           10:13 a.m.
 3                  ---------------------------
 4            THE VIDEOGRAPHER:  We are on the record.  The
 5     time is approximately 10:13 on this day, December 3rd,
 6     2019.  This is media unit one, volume one, of the video
 7     deposition of David Tracy taken by the plaintiff, case
 8     number 17-cv-05769-RJB, in the matter of Nwauzor, et al.,
 9     vs. GEO Group, in the U.S. District Court, Western District
10     of Washington, at Tacoma.  This deposition is taking place
11     at 1019 Regents Boulevard, Suite 204, in Tacoma,
12     Washington.
13            The videographer is Lindsay Hitchcock for
14     Seattle Deposition Reporters, 600 University Street,
15     Seattle, Washington 98101.  The court reporter is Keri
16     Aspelund for Seattle Deposition Reporters.
17            Counsel, at this time please identify yourselves
18     for the record and the witness may be sworn in.
19            MR. WHITEHEAD:  Good morning, this is Jamal
20     Whitehead, class counsel on behalf of Mr. Nwauzor and the
21     class he represents.
22            MS. MELL:  Joan Mell on behalf of The Geo Group.
23            MR. POLOZOLA:  And Lane Polozola, counsel for
24     Washington in Washington vs. The GEO Group.
25            MS. MELL:  And for the record, what's the State

```
 1    the document front and back there.
 2              Do you see the Primary Duties and
 3    Responsibilities there on the first page?
 4        A.    Yes.
 5        Q.    And do you agree that those were your primary
 6    duties and responsibilities as sergeant?
 7        A.    I would say the overall primary duty is to
 8    ensure the safety and security of all individuals inside
 9    the building.
10        Q.    Certainly overarching, but as to the specific
11    duties and responsibilities, would you agree there that
12    that was an accurate statement of your duties and
13    responsibilities as sergeant?
14              MS. MELL:  Object to the form of the question --
15        A.    Yes.
16              MS. MELL:  -- asked and answered.
17        Q.    I'm sorry, your answer was yes?
18        A.    Yes.
19        Q.    Is there anything that you would add to this
20    list?
21              MS. MELL:  Object to the form.
22        A.    There's other things that could be added but not
23    necessary.  These are the primary duties.
24        Q.    I'd like for you to look at the tenth bullet
25    down for me.  It's the one that reads, "Directs work,
```

Page 32

```
 1        A.   There's -- with inside the units, they kind of
 2   have their own.  The other detainees, once they get a new
 3   job, they kind of explain to them how it works.  So, for
 4   example, the food porter, he works when the food comes.
 5   That's what his job -- you know, that's what his job is.
 6   He can't do his job when there's no food there.  So when
 7   it's time for food, you know, you might have to go wake him
 8   up or let him know, if he's outside playing basketball, or
 9   whatever, meals -- meals are up.
10        Q.   So in that way then, you're directing whoever
11   that food porter is to show up to work?
12             MS. MELL:  Object to the form of the question,
13   totally mischaracterizes his testimony.
14        A.   Can you repeat your question one more time?
15        Q.   Sure.
16             You told me that with the food porter, for
17   example, that they can only work when the food arrives, and
18   that if they're asleep or in recreation, that you go to get
19   help; did I get that right?
20        A.   Yeah, let them know that, you know, the meals
21   are ready, ask them to go to the kitchen.  Not making them
22   go to the kitchen, because they don't have to do it, they
23   can always put a request in to not work anymore.
24        Q.   All right, you mentioned janitor, closet access;
25   do you remember that?
```

```
 1   the main hallways that -- throughout the facility.
 2        Q.   Did you ever direct or supervise detainee
 3   workers performing those evening cleaning tasks?
 4        A.   Yes, just on the basis that you're out on the
 5   actual floor while they're working.  You're not so hovering
 6   over them, Hey, you missed a spot here, or like that, but
 7   you're physically out there with them.  You can see what
 8   they're doing.
 9        Q.   And that's as a detention officer, where the
10   direction and supervision is more hands on?
11        A.   Same as a supervisor.  Supervisor would leave
12   the office.  He's not stuck in the desk all day.
13        Q.   And when you say supervisor, are you referring
14   to sergeant?
15        A.   Sergeant, I'm sorry.  Sergeant.
16        Q.   And laundry, did you provide any direction or
17   supervision to detainee workers working in laundry?
18        A.   Yes.
19        Q.   Tell me about that.
20        A.   They are trained on how to use the washing
21   machine, the dryer, how to clean the equipment.
22        Q.   Anything else in terms of the direction and
23   supervision that you provided the detainee workers in the
24   laundry?
25        A.   When I personally worked in laundry, I worked
```

```
 1   with them.  So it was very hands on, you know, right next
 2   to them.
 3        Q.   Meaning you were doing the laundry right
 4   alongside them?
 5        A.   Yes.
 6        Q.   How long did you work in laundry?
 7        A.   A rough estimate, possibly a year.
 8        Q.   You said that the detainee workers were trained
 9   on how to use the washer and dryer; did I get that right?
10        A.   Correct.
11        Q.   And this is training that GEO provides to the
12   detainee workers?
13        A.   The officer in charge of laundry would be the
14   one doing it.
15        Q.   This is GEO's officer; correct?
16        A.   Correct.
17        Q.   Okay.  And that GEO would provide the detainee
18   workers training on how to clean the equipment; correct?
19        A.   Correct.
20             When I say clean, I'm not talking about like
21   taking apart the machine, but I'm talking about like the
22   dryers, the lint trap.  Not like actually taking apart of
23   machine and cleaning out the machine.
24        Q.   Okay.  Fair enough.
25             And GEO provided all of the laundry detergent to
```

```
 1       Q.   And when we talk about visitation, intake, we're
 2   talking about cleaning those areas; is that right?
 3       A.   Yeah, usually it's, for the most part, just, you
 4   know, wiping down the windows and taking a dust -- you
 5   know, dry mopping it with a dust mop and then with a wet
 6   mop afterwards.  That's the extent of cleaning.  Maybe take
 7   the garbage -- you know, the garbage out, or just replace
 8   the bags in the garbage.
 9       Q.   What about medical, did you ever direct and
10   supervise detainee workers working or cleaning the medical
11   unit?
12       A.   Not to my knowledge.
13       Q.   Library?
14       A.   No.
15       Q.   Recreational --
16       A.   Can I go back to library?
17       Q.   Sure.
18       A.   I never worked in the library, but we had a
19   floor detail inside the hallway of the library.
20       Q.   All right, so you've mentioned the living areas,
21   laundry, visitation, intake, you said essentially every
22   unit --
23       A.   Yeah.
24       Q.   -- anywhere else that you've directed and
25   supervised detainee workers?
```

```
 1          A.    Recreation yards.
 2          Q.    Anywhere else?
 3          A.    Intake, laundry.
 4                I'm sure there is, but ...
 5          Q.    Can you give me a rough estimate on how long it
 6   would take a detainee worker to carry out their cleaning
 7   assignment in the living areas?
 8          A.    It, honestly, depends on the person.  There's --
 9   you know, for example, I work in segregation right now.  We
10   have a detainee that was previously there, he would take an
11   hour or two hours just to sweep and mop, but part of that
12   is because we feel like he liked not being stuck inside the
13   cell, and he's very meticulous with everything he did,
14   everything was slow.  And the guy that cleans now maybe
15   takes 15 or 20 minutes to do the exact same job.
16          Q.    So anywhere from 15 to 20 minutes to one to two
17   hours?
18          A.    Depending on the individual.
19          Q.    What about the laundry, how long would a
20   detainee worker shift last in the laundry unit?
21          A.    Again, it depends on the detainees.  Depends on
22   the officer running laundry.  I would say for me, maybe --
23   just an approximation of time, maybe two and a half to
24   three and a half hours.
25          Q.    And how many detainee workers would work on a
```

```
 1   laundry shift that you would supervise, for example?
 2        A.   Roughly one to four.
 3        Q.   And the cleaning, how long would it take to --
 4   for a detainee worker to finish their assignment in the
 5   visitation room?
 6        A.   Approximately 20 to 30 minutes.
 7        Q.   What about intake?
 8        A.   I would say roughly the same time, 20 to 30
 9   minutes.
10        Q.   What about the rec yard?
11        A.   I would say just in general, the normal
12   cleaning, just the sweeping, mopping, that type of thing,
13   roughly 20 to 30 minutes in -- in every area.
14        Q.   Now, the time estimates that you've just given
15   me, do you base them on your firsthand observation as a
16   detention officer or sergeant?
17        A.   Yes.
18        Q.   Now, we've talked a lot about the direction and
19   supervision that you provide.  What role, if any, does ICE
20   play in directing and supervising the detainee work?
21        A.   I believe -- well, they're not -- there's no
22   supervision from an ICE officer, but the only thing I
23   believe is that they set the dollar a day that works into
24   the voluntary worker program.
25        Q.   Sure, and we'll certainly talk about the dollar
```

```
 1        Q.   And in fact, I mean, there are consequences if
 2   detainees don't comply with GEO's rules and regulations for
 3   the detainee work?
 4             MS. MELL:  Object to the form of the question.
 5        A.   I mean, if -- if they don't want to work, they
 6   don't have to work.  If they don't want to do the job, they
 7   don't -- they don't have -- they don't have to do it.
 8        Q.   That's right, but if a detainee worker was doing
 9   a lousy job consistently, GEO would have the right to
10   terminate that worker's assignment; correct?
11             MS. MELL:  Object to the form of the question.
12        A.   I can't just say, You're not doing a good job,
13   you're not working anymore.  They would have to refuse to
14   do it, and then they would either sign a refusal to work
15   form, which is the same thing as them quitting, or I would
16   submit the refusal to work form, and write down that they
17   refused to sign it, but there's no punishment for I don't
18   want to do this job.
19        Q.   There's punishment or discipline for let's say
20   fighting during a detainee worker shift; correct?
21             MS. MELL:  Object to the form.
22        A.   There's punishment for fighting.
23        Q.   Or stealing?
24        A.   Correct.
25                  (Exhibit-314 marked.)
```

```
 1          A.    Nguyen.
 2          Q.    Spell that one for me.
 3          A.    N-G-U-Y-E-N, guessing.
 4          Q.    Anyone else?
 5          A.    Not that I can think of.
 6          Q.    Now, the -- you said that Mr. Edgecomb and Mr.
 7    Nguyen are current janitors?
 8          A.    Correct.
 9          Q.    Can you distinguish for me the work that these
10    two do as opposed to the janitorial services that the
11    detainee workers do?
12                MS. MELL:  Object to the form.
13          A.    They have access to parts of the facility where
14    detainees wouldn't be able to go.
15          Q.    Are you aware of any other distinction?
16          A.    Not to my knowledge.  I'm not a janitor.  I'm
17    not sure what the difference is.
18          Q.    And as you sit here today, the first thing that
19    you can think of though is that the janitors have access to
20    areas that the detainee workers can't go; correct?
21                MS. MELL:  Object to form.
22          A.    Correct.
23                They also have keys.
24          Q.    Can you tell me the areas that the janitors can
25    go that the detainee workers can't?
```

```
 1         A.    Would you like a list or --
 2         Q.    Sure.
 3         A.    Break room, male locker room, female locker
 4   room, courts, immigration, warehouse, maintenance, loading
 5   dock, front lobby, employee restrooms, visitation
 6   restrooms, outside in the dog run, perimeter, upstairs in
 7   immigration, through emergency doors, parking lot, on the
 8   property.
 9               I'm sure there's more, I just --
10         Q.    But the common theme though among all the items
11   that you just listed for me is that detainees can't go
12   there?
13         A.    Correct.
14         Q.    Now, are you aware of the janitors cleaning in
15   areas that detainees have access to?
16         A.    Medical, but parts that they wouldn't have
17   access to.
18         Q.    All right, so again, are you aware of the
19   janitors cleaning areas that the detainee workers have
20   access to?
21         A.    I mean, if they see something on the ground,
22   they might pick it up, if you consider that cleaning, but I
23   would think all the officers would do the same thing.  So
24   technically, we all clean.
25         Q.    I get that, and that certainly makes sense.  I
```

```
 1    pods, who would?
 2         A.    I -- I don't know.
 3         Q.    Do you think the detainee workforce is an
 4    important part of carrying out the operations at the
 5    Northwest Detention Center?
 6              MS. MELL:  Object to the form of the question.
 7         A.    I think it's a benefit to the population.  They
 8    gain some -- a sense of pride from it, they gain the sense
 9    of I'm not stuck here.  It gives them -- you know, just
10    like everybody else, you know, everybody else works.  You
11    know, they have their normal job, that type of thing.  This
12    gives them a sense of I'm not just stuck in here, I have
13    this, this objective or goal that I have to do.  And it
14    helps them out financially.  I think it's a benefit to --
15    sorry -- the population overall.
16         Q.    Do you think GEO gets something out of it too
17    though?
18              MS. MELL:  Object to the form of the question.
19         A.    I'm sure they do.
20         Q.    I guess that's what I'm driving at.  I mean, do
21    you think that the work that GEO gets from the detainee
22    workers is important?
23              MS. MELL:  Object to the form of the question.
24         A.    Yes.
25         Q.    It's important to the operation of the facility?
```

Page 113

1
                     C-E-R-T-I-F-I-C-A-T-E
2

3     STATE OF WASHINGTON )

4                         ) ss.

5     COUNTY OF THURSTON  )

6

7              I, the undersigned Registered Professional
      Reporter and Certified Court Reporter, hereby
      certify that the foregoing deposition upon oral
8     examination was taken stenographically before me and
      transcribed under my direction;

9

10             That the witness was duly sworn by me,
      pursuant to RCW 5.28.010, to testify truthfully; that the
11    transcript of the deposition is a full, true, and correct
      transcript to the best of my ability; that I am neither
12    attorney for, nor a relative or employee of, any of the
      parties to the action or any attorney or counsel employed
13    by the parties hereto, nor financially interested in its
      outcome.

14

15             I further certify that in accordance with CR
      30(e), the witness was given the opportunity to examine,
16    read, and sign the deposition, within 30 days, upon its
      completion and submission, unless waiver of signature was
17    indicated in the record.

18
               IN WITNESS WHEREOF, I have hereunto set
19    my hand this 10th day of December, 2019.

20

21

22

23    _____
      NCRA Registered Professional Reporter
24    Washington Certified Court Reporter No. 2661

25