# EXHIBIT J

Michael Heye                                              December 4, 2019

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

---

UGOCHUKWU GOODLUCK NWAUZOR,              )
FERNANDO AGUIRRE-URBINA,                 )
individually and on behalf of all        )
those similarly situated,                )
                Plaintiffs,              )
     vs.                                 ) No. 17-cv-05769-RJB
THE GEO GROUP, INC., a Florida           )
corporation,                             )
                Defendant.               )

---

** Transcript Contains Portions Designated Confidential **

** See Index on Page 4 **

---

Videotaped Deposition Upon Oral Examination of

MICHAEL T. HEYE

---

10:04 a.m.

Wednesday, December 4, 2019

810 Third Avenue, Suite 500

Seattle, Washington

REPORTED BY: Keri A. Aspelund, RPR, CCR No. 2661

```
 1     APPEARANCES:
 2     For the Plaintiffs:  JAMAL N. WHITEHEAD, ESQ.
 3                          Schroeter Goldmark & Bender
 4                          810 Third Avenue, Suite 500
 5                          Seattle, WA  98104
 6                          206-622-8000
 7                          whitehead@sgb-law.com
 8     For the Defendant:   JOAN K. MELL, ESQ.
 9                          III Branches Law
10                          1019 Regents Blvd., Suite 204
11                          Fircrest, WA  98466
12                          253-566-2510
13                          joan@3brancheslaw.com
14     Also Present:        LINDSEY LEWIS, VIDEOGRAPHER
15
16                          MARSHA CHIEN, ESQ.
17                          Assistant Attorney General
18                          800 Fifth Avenue, Suite 2000
19                          Seattle, WA  98104
20                          marshac@atg.wa.gov
21                          206-287-4182
22
23                          SYDNEY BAY
24
25
```

Michael Heye                                                December 4, 2019

Page 3

```
 1                     E X H I B I T S
 2   No.    Description                                 Page/Line
 3   319    Northwest Detention Center document -        41    2
 4          GEO-Nwauzor 085820-085821
 5   320    Email exchange dated November 5, 2012 -      48   25
 6          GEO Nwauzor 000313-000314
 7   321    Northwest Detention Center Detainee          62    4
 8          Request Form) - GEO-Nwauzor
 9          141925-141926
10   322    Kite - Laundry - #1,818,533 -                63    2
11          GEO-Nwauzor 065649
12   323    Email exchange dated December 25, 2012 -     70    9
13          GEO-Nwauzor 097538
14   324    Department Head Meeting Minutes, March       72    5
15          30, 2016 - GEO-Nwauzor 181325-181326
16   325    Slip Sheet, Created 06/30/2010, Detainee     93    6
17          Worker Average Hours.xls
18   326    Presentation Outline, December 29, 2011,   101   23
19          Detainee Worker Program - GEO-Nwauzor
20          016346-016350
21   327    Worker Program - GEO-Nwauzor 058848         103   20
22   328    Volunteer Work Program for Pod Workers      108   25
23          -GEO-Nwauzor 016427
24
25                                  Continued ...
```

```
                                                              Page 4
 1   329   Department Head Meeting Minutes, June      109   21
 2         14, 2011 - GEO-Nwauzor 075573-075574
 3   330   Memorandum dated April 12, 2012, from      111   25
 4         Classification, Singleton & Heye to
 5         Associate Warden, McHatton - GEO-Nwauzor
 6         016445
 7   331   Email exchange dated October 31, 2012     114   16
 8   332   GEO-Nwauzor 073752-073761                 116   20
 9   333   Email exchange dated August 11, 2015 -    118   19
10         GEO-Nwauzor 176429-176431
11
12                   E X A M I N A T I O N
13   BY                                             Page/Line
14   MR. WHITEHEAD                                    6    8
15   MS. MELL                                       122    1
16
17          C O N F I D E N T I A L   T E S T I M O N Y
18                    Page 7     Lines 3-4
19
20
21      (Note:  * Denotes phonetic spelling.)
22
23
24
25
```

                                                                   Page 5

     1         Seattle, Washington; Wednesday, December 4, 2019
     2                        10:04 a.m.
     3               --------------------------
     4              THE VIDEOGRAPHER:  We're now on the record.
     5     Today's date is December 4th, 2019.  The time is now 10:04
     6     a.m.
     7              This is the video recorded deposition of Michael
     8     Heye in the matter of Ugochukwu Goodluck Nwauzor, et al.,
     9     vs. The GEO Group, Inc., pending in the United States
    10     District Court, Western District of Washington, at Tacoma,
    11     case number 17-cv-05769-RJB.  This deposition is at the
    12     request of the plaintiff.
    13              My name is Lindsey Lewis, your videographer,
    14     here with Keri Aspelund, your court reporter.  We represent
    15     Seattle Deposition Reporters.
    16              This deposition is taking place at Schroeter
    17     Goldmark & Bender, 810 Third Avenue, Suite 500, Seattle,
    18     Washington 98104.
    19              Will counsel please identify and state your
    20     appearances for the record.
    21              MR. WHITEHEAD:  Good morning.  Jamal Whitehead
    22     on behalf of the private plaintiffs, the class of Mr.
    23     Nwauzor and those that he represents.
    24              MS. MELL:  Joan Mell representing the GEO
    25     defendants.  Mr. Heye is from the facility.

```
 1              MS. CHIEN:  And this is Marsha Chien, and I
 2   represent the State of Washington in a consolidated case.
 3              THE VIDEOGRAPHER:  Will the court reporter
 4   please administer the oath.
 5                   --------------------------
 6   MICHAEL T. HEYE:      Witness herein, having been
 7                         duly sworn, testified as follows:
 8                    E-X-A-M-I-N-A-T-I-O-N
 9   BY MR. WHITEHEAD:
10        Q.   Good morning, Mr. Heye.
11        A.   Hello.
12        Q.   We met a moment ago off the record, but I would
13   like to introduce myself for benefit of the record.  My
14   name's Jamal Whitehead.  I represent Mr. Nwauzor and the
15   class of civil immigration detainees that he represents in
16   a private lawsuit against the GEO corporation.
17             Could you please state and spell your name for
18   the record.
19        A.   It's Michael Heye, M-I-C-H-A-E-L, and last name
20   is Heye, H-E-Y-E.
21        Q.   And your middle name, Mr. Heye?
22        A.   Thomas --
23        Q.   What's --
24        A.   -- T-H-O-M-A-S.
25        Q.   And your date of birth, please.
```

 1   matter here, right, but I'm just asking could theft lead to
 2   the termination of a detainee worker?
 3        A.   Yes and no.  It has and it hasn't on both parts,
 4   depending on the circumstances and what the disciplinary
 5   process outcome has come out about from it.
 6        Q.   Now, you said something about earlier that
 7   detainee workers cannot be terminated; did I get that
 8   right?
 9        A.   No, cannot be fired.  You can't tell a detainee
10   that he's fired.
11        Q.   What about --
12        A.   Because officers like to, quote-unquote, say,
13   You're fired, which you cannot do.
14        Q.   What about termination, can GEO terminate
15   detainee workers?
16        A.   In policy and procedure, there's a stipulation
17   in there that the warden can remove a detainee from a
18   worker program.
19        Q.   So that's yes, you're agreeing with me?
20        A.   On how you want to stipulate it?  How you want
21   to say it?  Well, warden can.
22        Q.   The warden --
23        A.   That's what I'm saying, the warden can.
24        Q.   The warden is an extension of GEO.
25             So I'll try one more time, and then I'll --

```
 1    facility."
 2              Do you see that?
 3         A.   I do.
 4         Q.   Do you agree that the volunteer detainee workers
 5    make important contributions to maintaining the Northwest
 6    Detention Center?
 7         A.   I always thank them when they're cleaning and
 8    keeping the place nice and clean, yes.
 9              And this is a very told old form, isn't it?
10    Yep.
11         Q.   So to my question, do you believe that the
12    detainee workers make an important contribution to
13    maintaining the facility?
14              MS. MELL:  Object to the form of the question.
15         A.   They don't maintain the facility, but they do
16    contribute to keeping it clean.
17         Q.   What's the distinction you draw between cleaning
18    and maintaining?
19         A.   Maintaining?
20         Q.   Mm-hm.  Yes.
21         A.   We keep the facility running and operational,
22    that's maintaining.
23         Q.   We being GEO and its personnel?
24         A.   GEO and its personnel, so that everybody is safe
25    and secure and that the maintenance is kept up, yes.
```

Michael Heye                                           December 4, 2019

Page 99

1   slots, and you slot people into the slots --

2       A.   Mm-hm.

3       Q.   -- but in terms of the schedule, the hours of

4   day that people are assigned to work, how is that

5   determined?

6       A.   I don't know.  The hours were also on there at

7   the same time that the schedule was put out.  So graveyard

8   is graveyard, they start whenever they need to, I guess, at

9   lights out on graveyard, because that's -- when I was a pod

10  officer, that's when graveyard started, when lights out.

11      Q.   Well, what happens if everyone says that, you

12  know, I -- I want to work morning shift in the kitchen?

13  What do you do, if anything, as a classification officer

14  from there?

15      A.   Then I would --

16      MS. MELL:  Object to the form.

17      A.   I just put them on the list and specify what

18  shift they want.

19      Q.   Well, is there any communication back to the

20  detention officer, Hey, this shift is full, but we have

21  some availability for a shift later in the day?

22      A.   No, when they are -- when they apply for

23  kitchen, they'll either specify what shift they want or

24  they don't.  And if they don't, then when I call the pod

25  officer, I just say I have these.  So when we go to ask the

1   detainee if he wants an assignment, I'll call the pod
2   officer and say, Talk to detainee so and so and see if he
3   wants breakfast, lunch, or dinner.  Or I only have lunch or
4   dinner, see if they'll take either one of those.  That's
5   how the assignments are filled in to the kitchen.  If
6   there's space available, I will tell them there's space
7   available.  If there's no space available, then they either
8   specify, No, I want to wait for breakfast, and I put them
9   on a list, and when breakfast becomes available, then I'll
10  call them back and see if they want to work then or take
11  the assignment.
12         Q.   What are IDP sanctions?
13         A.   I -- that's disciplinary through the seg
14  officer.
15         Q.   Let me take it one level up, I guess, what is
16  IDP?
17         A.   Something disciplinary procedure.  Now you're
18  telling me acronyms I don't remember.
19              I don't remember.
20              MS. MELL:  That's fine.  That's an answer.
21         A.   I don't remember what IDP --
22         Q.   It's a panel related to disciplinary --
23         A.   Correct.  That I do know.  I just don't know
24  what the acronym is.
25         Q.   Do you have any involvement with the IDP

Page 125

C-E-R-T-I-F-I-C-A-T-E

STATE OF WASHINGTON  )
                     )  ss.
COUNTY OF THURSTON   )

       I, the undersigned Registered Professional Reporter and Certified Court Reporter, hereby certify that the foregoing deposition upon oral examination was taken stenographically before me and transcribed under my direction;

       That the witness was duly sworn by me, pursuant to RCW 5.28.010, to testify truthfully; that the transcript of the deposition is a full, true, and correct transcript to the best of my ability; that I am neither attorney for, nor a relative or employee of, any of the parties to the action or any attorney or counsel employed by the parties hereto, nor financially interested in its outcome.

       I further certify that in accordance with CR 30(e), the witness was given the opportunity to examine, read, and sign the deposition, within 30 days, upon its completion and submission, unless waiver of signature was indicated in the record.

       IN WITNESS WHEREOF, I have hereunto set my hand this 16th day of December, 2019.

_____
NCRA Registered Professional Reporter
Washington Certified Court Reporter No. 2661