The Honorable Robert J. Bryan

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated,<br><br>Plaintiffs/Counter-Defendants,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>Defendant/Counter-Claimant. | Case No. 3:17-cv-05769-RJB<br><br>**THE GEO GROUP, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**NOTE ON MOTION CALENDAR:**<br>April 3, 2020<br><br>**ORAL ARGUMENT REQUESTED** |

THE GEO GROUP, INC.'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB)

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

52540009;4

Defendant The GEO Group, Inc. ("GEO") files its Reply in Support of its Motion for Summary Judgment ("GEO's Motion"), ECF 227.

## I. INTRODUCTION

Plaintiffs' Response to GEO's Motion ("Response"), ECF 272, does not raise any issues of disputed material fact. Instead, Plaintiffs' Response attacks only GEO's legal analysis. Because there are no genuine disputes of material fact, the Court should grant summary judgment in GEO's favor for three (3) reasons.

First, Plaintiffs do not dispute that detainees reside, sleep, and work at the Northwest ICE Processing Center ("NWIPC").  Plaintiffs also do not dispute that the detainees cannot perform the tasks associated with their Voluntary Work Program ("VWP") roles if they did not reside and sleep at the NWIPC.  Therefore, Plaintiffs are exempt from the definition of "employee" under the Washington Minimum Wage Act ("WMWA"). 49.46.10(3)(j). Second, GEO is entitled to intergovernmental immunity as a matter of law. This Court should reject Plaintiffs' flawed intergovernmental immunity analysis that purports to treat GEO as an entity that is separate and distinct from the federal government. "For purposes of intergovernmental immunity, federal contractors are treated the same as the federal government itself," particularly in the context of immigration contractors. *United States v. California*, 921 F.3d 865, 883 n. 7 (9th Cir. 2019). Because the WMWA discriminates against and directly regulates, the federal government, it is invalid as applied to the federal government <u>and</u> as to GEO's NWIPC. Third, GEO is entitled to derivative sovereign immunity because its contract with Immigration and Customs Enforcement ("ICE") explicitly forbids it from classifying detainees as employees. Accordingly, this Court should rule, as a matter of law, that detainees at the NWIPC are not "employees" under the WMWA, are not entitled to minimum wage, and that GEO is entitled to immunity.

## II. THE RESIDENT EXCEPTION

### A. The Doctrine of Waiver is Inapplicable.

GEO has not waived its contention that detainees are not "employees" based upon exceptions to the definition of "employee" contained within in the WMWA. Since the inception of this case, GEO has

---

THE GEO GROUP, INC.'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 1

52540009;4

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

asserted that detainees are not "employees" under the WMWA. ECF 92 ¶¶ 12.8,12.12. GEO pled an affirmative counterclaim for a declaratory judgment that detainees are not "employees" under the WMWA entitling it to its own interpretations and theories related to the WMWA. *Id.* Plaintiffs, at any point during the over 2 years of litigation, could have sought discovery on the basis for GEO's claim. They failed to conduct any discovery on GEO's counterclaim. They cannot now claim prejudice because of their litigation decisions.

As this Court has previously explained, "[t]he parties' arguments boil down to the issue of whether the Washington Minimum Wage Act applies…" ECF 40. Any claim by Plaintiffs that they did not know the exceptions to the WMWA were at issue in this case is, at best, insincere. Additionally, while not dispositive of the issue of waiver because GEO has asserted counterclaims, well-settled Ninth Circuit precedent makes clear that affirmative defenses are timely when raised for the first time at summary judgment. *Lowerison v. Yavno*, 26 F. App'x 720, 722 (9th Cir. 2002) ("Affirmative defenses are not waived even if they are first raised in pretrial dispositive motions, if the plaintiff is not unfairly surprised or prejudiced"); *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984) (finding employer did not waive its defense by failing to plead it until the summary judgment phase); *Healy Tibbitts Const. Co. v. Ins. Co. of N. Am.*, 679 F.2d 803, 804 (9th Cir. 1982) (same). Here, Plaintiffs do not (and cannot) demonstrate any prejudice, particularly where the affirmative defenses overlap with GEO's counterclaim. Accordingly, there is no question that the exceptions to the WMWA are properly before this Court.

**B.   The Resident Exception Applies Because Detainees Reside and Sleep at the NWIPC.**

Under the "Resident Exception" to the definition of "employee" under the WMWA, individuals who live or sleep at their place of employment are not employees and are not entitled to minimum wage. 49.46.010(3)(j). The text of the statute is not ambiguous; the Supreme Court of Washington has already made clear that the statute's plain language alone is sufficiently precise. *Berrocal v. Fernandez*, 155 Wash. 2d 585, 589, (2005). The Court in *Berrocal* summarized the issue before it as follows: "Under RCW 49.46.010(5)(j), are sheepherders excluded from the protections of the MWA because they live and sleep at the place where they work?" *Id.* at 589. As the Court's own description of the issue makes

THE GEO GROUP, INC.'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 2

52540009;4

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

plain, there was no emphasis on the word "required" from the statute. Rather, the Court properly focused on whether individuals who unquestionably sleep and live where they work are excluded from the definition of "employee" under the WMWA. In doing so, the Supreme Court avoided unnecessarily nuanced or impractical interpretations. Based upon the plain language of the statute, the Court reached the following conclusion:

> In sum . . . RCW 49.46.010(5)(j) is intended, as the Employers suggest, to encompass two categories of workers: (1) those individuals who reside or sleep at their place of employment and (2) those individuals who otherwise spend a substantial portion of work time subject to call, and not engaged in the performance of active duties.

*Id.* at 595.

In an effort avoid the clear application of the Resident Exception, Plaintiffs attempt to rewrite the controlling precedent to draw a distinction between individuals based upon their job descriptions. Plaintiffs erroneously claim that this analysis is consistent with the analysis in *Berrocal*. It is not. *Id.* (placing no weight on the immigrant sheepherders job descriptions in determining they fell within the Resident Exception); *see also Strain v. W. Travel, Inc.*, 117 Wash. App. 251, 255 (2003) (holding an individual fell within the Resident Exception because he slept at his place of work and placing no weight on his job duties which included cooking and cleaning). Nowhere in the statue nor the text of *Berrocal* are job descriptions mentioned as part of the Court's reasoning. *Id.* Rather, both the statute and the case law focus on whether, under the arrangement between the parties, the individuals sleep and reside at their place of work. *Id*. If they do, the Resident Exception applies regardless of an individual's primary job duties.[1]

Even if the Court were to look at Plaintiffs job descriptions, the job descriptions do not remove detainees from the purview of the Resident Exception. Indeed, each job description submitted to the Court by Plaintiffs prominently includes the heading "Detainee Job Description" in bold and underline, making clear that the tasks are limited to <u>detainees</u> who, by definition, live and sleep at the facility. ECF

---

[1] Plaintiffs provide no clear reasoning or framework for distinguishing between individuals who are "required" to sleep at their place of work and those who are not. Would an employer asking an employee to sleep at his workplace be enough? The Court need not resolve this distinction in this case as there is little question that individuals who, by order of the United States, cannot leave the NWIPC without a court order are "required" to sleep at the NWIPC.

THE GEO GROUP, INC.'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 3

52540009;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1  223-25, 2-7.[2] Furthermore, the detainee job descriptions include positions in the kitchen and in the
2  laundry room. *Id.* These tasks are indistinguishable from those of other individuals for whom the Court
3  previously concluded fell within the bounds of the Resident Exception. *Park v. Choe*, No. C06-
4  5456RJB, 2007 WL 2677135 (W.D. Wash. Sept. 10, 2007) (describing plaintiff's on-site tasks as
5  consisting of doing laundry and working in the kitchen). Consistent with *Berrocal*, this Court's analysis
6  in *Park* did not involve an analysis of the job descriptions of the plaintiffs. *Id.* Instead, like here, it was
7  undisputed that the plaintiffs were required to sleep at their place of work. *Id.* at *6. On that basis alone,
8  the Court correctly concluded the plaintiffs were "exempted from coverage under the WMWA" *Id.* The
9  same is true here. There is no genuine dispute that participants in the VWP are required to live and sleep
10 at the NWIPC. Plaintiffs do not deny this fact.[3] Therefore, this Court should grant GEO's Motion and
11 enter a declaratory judgment that detainees at the NWIPC are not "employees" under the WMWA.

12 **III.  INTERGOVERNMENTAL IMMUNITY**

13 GEO, and more importantly, **this Court**, have previously set forth the proper standard for
14 whether GEO is entitled to intergovernmental immunity. ECF 227, *State of Washington v. GEO*,
15 Proposed Order, ECF 306-1. Nevertheless, Plaintiffs' continue to argue[4] for an interpretation of
16 intergovernmental immunity that is contrary to controlling law. ECF 272. Plaintiffs make no effort to
17 distinguish or address the clear directive from *U.S. v. California* that federal contractors in the federal
18 immigration detention context must be treated the same as the federal government itself in an
19 intergovernmental immunity analysis because Congress has explicitly directed ICE to consider the use
20 of all suitable facilities, public or private, to house detainees. *California*, 921 F.3d at 882 n.7. In an effort
21 to untangle the potential confusion created by Plaintiffs' briefing, GEO breaks down each element of
22 intergovernmental immunity into its component parts below.

---

[2] This is consistent with the purpose of the program, which is to provide detainees, who are in the custody of ICE, an opportunity to perform tasks to occupy their time. PBNDS § 5.8. The VWP positions are only available to detainees and detainees are required to live and sleep at the facility. ECF 228, Scott Dec. ¶¶ 6-8.

[3] Any other argument stretches logic and borders on specious. Indeed, if detainees are not required to live and sleep at the facility, it begs the question of why detainees even participate in the VWP at all as opposed to leaving the facility at night and taking jobs in the broader community.

[4] Plaintiffs significantly overstate their position by arguing, without legal support, that GEO invites this Court to commit "reversible error." ECF 272, 20. A review of the controlling law, and the absence of any meaningful analysis of this statement in Plaintiffs' brief makes clear that this statement is nothing more than puffery.

---

THE GEO GROUP, INC.'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 4

52540009;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

Under the Direct Regulation prong of intergovernmental immunity, the Court must ask: Does the WMWA directly regulate the federal government? If the answer is "yes," the WMWA directly regulates the federal government, the WMWA is invalid unless Congress "clearly and unambiguously" authorized Washington to exercise authority over the pay rates and other conditions of confinement of ICE detainees. *Boeing Co. v. Movassaghi*, 768 F.3d 832, 840 (9th Cir. 2014).

Under the Discriminatory Treatment prong, the Court must ask: Does the WMWA discriminate against the federal government? To answer this question here, the Court must first determine the scope of the Detainee Exception to the WMWA.[5] 49.46.10(3)(k). If the Detainee Exception applies only to individuals in the State's custody, and not those in federal custody, the provision is discriminatory. If instead, the Detainee Exception applies to individuals in both the federal government's custody and the State's custody, the Court need not further analyze intergovernmental immunity, as Plaintiffs would be exempted from coverage under the WMWA. But, if the statute is discriminatory, the Court must determine whether the discriminatory treatment burdens the federal government. Finally, for purposes of intergovernmental immunity under either prong in the federal immigration detention context, "federal contractors are treated the same as the federal government itself." *California*, 921 F.3d at 883 n. 7. So, if under either of the analyses above the WMWA violates the doctrine of intergovernmental immunity, GEO steps into the shoes of the government and is entitled to immunity. Here, the WMWA violates the principles of intergovernmental immunity under both prongs.

**A.   The WMWA Directly Regulates the Federal Government.**

Plaintiffs argue that the WMWA does not directly regulate the federal government but provide no textual support for their argument. ECF 272, 20-22. To the contrary, the plain language of the WMWA makes plain that it directly regulates the federal government. The definition of "employer" in the WMWA does not exclude the federal government. Instead, the WMWA defines "employer" broadly, including every entity, individual, or "group of persons," who purport to act "directly or indirectly in the

---

[5] While Plaintiffs argue that this Court has already made a final determination as to the applicability of the Detainee Exception, the Court's Order made clear that any ruling was based solely on the pleadings, stating "[at] least based on the pleadings, it is plausible that the Plaintiff, arguably, comes within the State definition of 'employee,' and is not subject to any existing statutory exception." ECF 28 at 14.

THE GEO GROUP, INC.'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 5

52540009;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

interest of an employer in relation to an employee." RWC § 49.46.010(4). Correspondingly, the Washington Department of Labor and Industries regulations state that the definition of "employer" under the WMWA includes "public employers." *See* WAC 296-126-002(1)(2010). The regulations do not explicitly exclude employees of the federal government.[6] Accordingly, there is no question that the WMWA directly regulates the federal government (and by extension GEO) and therefore violates the principles of intergovernmental immunity. *Boeing*, 768 F.3d at 840 (finding that the bill at issue directly interfered with "the functions of the federal government . . . [by] mandat[ing] the ways in which Boeing renders services that the federal government hired Boeing to perform."). And, the federal government has not "clearly and unambiguously" authorized Washington to exercise authority over the pay rates and conditions of confinement of ICE detainees. *Id.* Thus, under the direct regulation prong alone, the Court should enter summary judgment in favor of GEO.

**B.     This Court Must Determine Whether the WMWA is Neutral or Discriminatory.**

In their Response, Plaintiffs speak out of both sides of their mouth; characterizing the WMWA differently depending upon the legal outcome they wish to achieve. When addressing the application of the Detainee Exception, Plaintiffs argue that the WMWA provides *special treatment* to the State. Specifically, Plaintiffs claim that under 49.46.10(3)(k) the State, and the State alone, is not required to pay State detainees minimum wage for work performed while detained, but the federal government (and by extension GEO) are required to pay detainees minimum wage.[7] Thus, Plaintiffs argue that the law is not "neutral" or "generally applicable" because it provides for special benefits for the State. ECF 272, 19. At the same time, when explaining their theory of intergovernmental immunity under *North Dakota*, Plaintiffs argue that the WMWA is neutral and generally applicable. *See* ECF 272,21. *North Dakota v. United States,* 495 U.S. 423, 435 (1990). In contrast, GEO has argued that when the Detainee Exception is construed based upon its plain meaning, it necessarily includes individuals in both state and federal custody (including those in the NWIPC). Under GEO's proposed interpretation, the law is

---

[6] Previously, the WMWA explicitly excluded the federal employees from the definition of "employee." *See* ECF 366-2.
[7] Of course, the exception's bounds extend only to those in governmental custody and would not apply to individuals in "private custody." GEO is unaware of any lawful means by which a private individual could detain another individual without running afoul of a multitude of criminal and civil laws.

THE GEO GROUP, INC.'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 6

52540009;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

nondiscriminatory: both detainees at the NWIPC and detainees at state facilities are excluded from the definition of "employee" under the WMWA, ending the Court's analysis.

This Court should adopt GEO's interpretation of the Detainee Exception. To be sure, there is absolutely no provision in the Detainee Exception, 49.46.10(3)(k), that would limit its application to only those facilities the state owns and operates. Rather, the provision plainly exempts the "residents" of state or government facilities without regard for who operates the same. Accordingly, the Court should enter summary judgment in favor of GEO and issue a declaratory judgment stating that the WMWA does not apply to detainees at the NWIPC. However, should the Court adopt Plaintiffs' position as to the Detainee Exception, the statute is impermissibly discriminatory. Indeed, similarly situated detainees in the State of Washington would not be not treated equally to those detained in federal custody rendering the law invalid under the discriminatory treatment prong of intergovernmental immunity.

**C.    If the WMWA is Not Neutral, It Violates the Discrimination Prong of Intergovernmental Immunity.**

The Supreme Court recently clarified that "[w]hether a State treats similarly situated state and federal employees differently depends on how the State has defined the favored class." *Dawson v. Steager*, 139 S. Ct. 698, 705 (2019). Thus, the definition of "employee" in the WMWA that controls. The Washington legislature has defined the class of individuals exempted from the WMWA as "[a]ny resident, inmate, or patient of a state . . . correctional, detention, treatment or rehabilitative institution[.]" RWC § 49.46.010(3)(k). Accordingly, the "favored class" in the WMWA consists of state detainees who are exempted from the coverage when compared with federal detainees who are not. Thus, here, the proper comparison to the federal government's detainees, held at the NWIPC, is any resident, inmate, or patient of a state detention, treatment, correctional, or rehabilitative institution – again, the "favored class" defined by the Washington legislature. This analysis is consistent with the Supreme Court's explanation in *Dawson* that "if a State exempts from taxation all state employees, it must likewise exempt all federal employees." *Dawson*, 139 S. Ct. at 704. Substituting the relevant factors here, the comparison stands: "if a State exempts from [the WMWA] all state [detainees], it must

THE GEO GROUP, INC.'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 7

52540009;4

AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

likewise exempt all federal [detainees]." *Id*. Like in *Dawson* where state employees received an exemption from taxation, in the instant case there is no question detainees in State custody are paid less than minimum wage. *See e.g*., (Eagle Dep. 8:9); SOW ECF 304, Decl. of Williams ¶ 4; SOW ECF 300, pg. 80-82. It follows that if the federal government (and by extension GEO – as explicitly enumerated in *California*) must pay minimum wage to detainees, who under the same circumstances in state detention would be exempted from the WMWA. Accordingly, even if the Court adopts Plaintiffs' construction of the Detainee Exception, the WMWA violates the nondiscriminatory principle of intergovernmental immunity and summary judgment in GEO's favor is proper.

**D.  This Court Should Reject Plaintiffs' Flawed Construction of Intergovernmental Immunity.**

Despite a lack of legal authority from the WMWA or case law, Plaintiffs' theory is as follows: the WMWA does not run afoul of the principles of intergovernmental immunity because both the State and the federal government must pay minimum wage if they utilize private contractors in detaining individuals within the boundaries of Washington. Assuming *arguendo*[8] that the Court finds textual support within the WMWA for Plaintiffs' flawed theory, the WMWA would still be invalid under the doctrine of intergovernmental immunity.

"The nondiscrimination rule finds its reason in the principle that the States may not directly obstruct the activities of the Federal Government." *North Dakota*, 495 U.S. at 437–38. Thus, if the WMWA draws a distinction between situations where ICE selects a private facility to house detainees and the instances where ICE operates its' own facility with government employees, the WMWA is invalid under the doctrine of intergovernmental immunity. Here, Plaintiffs' proposed interpretation of WMWA directly obstructs the activities of the federal government—specifically its ability to choose a cost efficient and preexisting facility to house federal ("ICE") detainees. *Id.*

The Department of Homeland Security, and by extension ICE, is congressionally authorized to provide appropriate detention facilities for detainees, including by renting "facilities adapted or suitable located for detention" and by entering into cooperative agreements with States and localities. 8 U.S.C.

---

[8] Of course, this theory incorrectly assumes that government contractors are not treated the same as the federal government for an intergovernmental immunity analysis.

THE GEO GROUP, INC.'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 8

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

52540009;4

§ 1103(a)(11), 1231(g). ICE may also "acquire, build, remodel repair, and operate facilities . . . necessary for detention," but must first "consider the availability for purchase or lease of any existing prison, jail detention center, or other comparable facility suitable for such use." 8 U.S.C. § 1231(g)(1). Thus, the operations of the federal government specifically contemplate that ICE will utilize private facilities where doing so is consistent with the directives of Congress. Plaintiffs argue that under the WMWA if the federal government chooses a preexisting facility to house detainees (as opposed to building a new federal facility), it must pay minimum wage where it otherwise would not. So, under Plaintiffs' theory, the WMWA *directly obstructs* the activities of the federal government by placing an additional regulation upon it, should it properly follow the direction of Congress (to first utilize private contractors). Thus Plaintiffs' interpretation directly obstructs the activities of the federal government and run afoul of the principles of intergovernmental immunity. Further, because the government contractor steps into the federal government's shoes for purposes of intergovernmental immunity in the context of federal immigration detention – the precise context at issue here – Plaintiffs' construction impermissibly divides the government and the contractor into separate categories. *California*, 921 F.3d at 883 n. 7.

Additionally, despite Plaintiffs contention that *North Dakota* supports their theory that the WMWA is not discriminatory, Plaintiffs' interpretation of the WMWA is wholly distinguishable from the statute at issue in *North Dakota*, 495 U.S. 423. In *North Dakota*, the challenged regulation did "not restrict the parties from whom the Government may purchase liquor or its ability to engage in competitive bidding" *Id.* at 441. Thus, the statute did not impermissibly discriminate against the Government. *Id.* In contrast, here, Plaintiffs' proposed interpretation of the WMWA restricts the Government's ability to deal with private contractors and its ability to engage in competitive bidding. Such a result clearly runs afoul of the principles of intergovernmental immunity. And, for the avoidance of doubt, the Ninth Circuit has held that there is no "de minimis exception" exception to the doctrine of intergovernmental immunity. *California*, 921 F.3d at 883. Rather, "*[a]ny* discriminatory burden on the federal government is impermissible" *Id.* (emphasis in original). This is certainly true here.

Finally, it is worth noting that Plaintiffs have not identified a comparative facility to GEO's where ICE detainees could be housed in Washington. While they attempt to misdirect the Court by

THE GEO GROUP, INC.'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 9

52540009;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

citing the absence of comparators, they do not identify any facility where detainees actually could be housed by the federal government other than the current GEO facility. Certainly, if the WMWA is interpreted to preclude the federal government from utilizing the existing structures to house detainee—contrary to the explicit direction of Congress—such that it would have to build an entirely new facility (including new immigration courtrooms and ICE offices that are currently located in the NWIPC) in order to be treated the *same as* the State government, the WMWA impermissibly regulates, discriminates against, and burdens the federal government.[9] For, the reasons herein, and the reasons articulated in GEO's Motion, the Court should grant summary judgment in GEOs favor and rule that the WMWA impermissibly discriminates against the federal government (and GEO) and therefore violates the doctrine of intergovernmental immunity.

## IV. DERIVATIVE SOVEREIGN IMMUNITY

GEO is also entitled to derivative sovereign immunity. Government contractors may "obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016). While Plaintiffs attempt to complicate this analysis, it is actually quite simple. Plaintiffs here allege that GEO violated the WMWA by not classifying its detainees as "employees" and paying them minimum wage. Thus, Plaintiffs are bound to the position that GEO does not currently treat detainees as "employees" under the WMWA. GEO's contract with ICE states that GEO may not treat its detainees as employees, including by extension, paying them minimum wage. ECF 223-2 at 82.[10] Plaintiffs seek to have this fact accepted as true under Fed. R. Civ. P. 56(g). Neither party disputes that GEO currently follows this contractual term. Thus, because GEO has followed the terms of its contract with the federal government by not treating detainees as "employees" and because Congress authorized ICE to enter into the contract with GEO (8 U.S.C. § 1231(g)(1)), GEO is entitled to derivative sovereign immunity. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21 (1940).

## V. PLAINTIFFS' REQUEST FOR THE COURT TO ENTER UNDISPUTED FACTS

---

[9] This is particularly true where the State government tacitly admits the expense of building additional facilities within its borders to house detainees outweighs the expense of housing the "overflow" detainees out-of-state. *See* ECF 229-11.
[10] It also provides that GEO will not employ any individual who does not have a Social Security card. ECF 223-2 at 31.

THE GEO GROUP, INC.'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 10

52540009;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

Plaintiffs also ask the Court to declare certain facts as undisputed under Fed. R. Civ. P. 56(g). Plaintiffs' request focused on a number of facts that are immaterial[11] to the resolution of GEO's Motion and are also, for the most part, wholly unrelated to whether detainees are "employees" under Plaintiffs' cross-motion. Under Rule 56(g) Plaintiffs bear the burden to establish their facts are undisputed and have failed to do so here. *Almendarez v. BNSF Ry. Co.*, 2014 WL 931530, at *7 (W.D. Wash. Mar. 10, 2014) (holding that a moving party bears the burden). Plaintiffs cite only to their own evidence as proof each fact is "undisputed" while failing to acknowledge any of the evidence raising issues of disputed facts cited by GEO. They also fail to establish how each fact is "material" to the issues before this Court. This is insufficient for purposes of 56(g). Accordingly, GEO does not respond to every single fact[12] because the facts are immaterial to this Motion and Plaintiffs have cited only their own record, giving no credence to the conflicting evidence presented by GEO in its response to Plaintiffs' Motion for Summary Judgment. Nevertheless, GEO provides responses to a number of Plaintiffs' proposed facts here demonstrating the recurring flaws throughout.

Proposed Fact 9, describing the nature of VWP assignments cannot be resolved under Rule 56(g). ECF 272 at 8. Plaintiffs did not provide a *single* citation for the numerous factual allegations they make in Paragraph 9, nor do they provide any basis for alleging that the numerous facts alleged therein are undisputed by GEO. Instead, Plaintiffs state in a footnote that the allegations are "discussed at length" in their motion for summary judgment. This is clearly not sufficient to establish there is no material dispute because GEO has refuted the facts Plaintiff seeks to have admitted in its response to Plaintiffs' Motion for Summary Judgment. Likewise, GEO has vigorously disputed Proposed Fact 16 (the purpose of the VWP) and Proposed Fact 17 (benefits of the VWP) in its response to Plaintiffs' cross-motion. Issues related to Plaintiffs summary judgment brief are not properly addressed in response

---

[11] Plaintiffs do not rely upon the majority of the facts listed in their Response in connection with any salient issue before the Court.

[12] Should the Court find Rule 56(g) relief appropriate, GEO asks that the Court follow the procedure identified in *Yellowstone Womens First Step House, Inc. v. City of Costa Mesa*, 2018 WL 6164307, *24-25 (C.D. Cal. Nov. 5, 2018), wherein the court directed the parties first confer about the discrete facts at issue and which ones can be resolved without judicial intervention. This will reduce the burden on the Court and also allow GEO to inquire about what specific facts Plaintiffs seek to admit. Many of the facts, as currently stated, consist of a laundry list of different assumptions that are not easily addressed through Rule 56(g). Indeed, the Parties are currently working on their proposed facts for their joint pretrial statement which provides a better mechanism for identifying disputed facts.

THE GEO GROUP, INC.'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 11

52540009;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

1 to GEO's motion for summary judgment which does not involve the same facts as Plaintiffs' motion.
2 *See Koch v. 704 Group, LLC*, 2014 WL 7330877, *5 n.2, (S.D. Cal. Dec. 18, 2014) ("Plaintiff attempts
3 to move for summary judgment in its favor through his opposition brief. However, the motion is
4 procedurally defective and will not be considered by the Court."). Proposed Fact 13 asks the Court to
5 admit Plaintiffs' description of 30(b)(6) testimony, not the testimony itself, as an undisputed fact. This is
6 clearly improper and should be denied. Plaintiffs also ask this Court to accept Plaintiffs' summaries of a
7 number of contractual provisions as "undisputed facts," including in Proposed Facts 2, 5, 6, 7, 8, 15.
8 This is a similarly improper way to obtain admissions based upon truncated quotes, rather than entire
9 contractual provisions, and should also be denied. As is clear from GEO's objections, Plaintiffs'
10 proposed facts are both wholly unrelated to this Motion <u>and</u> an improper attempt to have this Court
11 acknowledge facts as undisputed that are unmistakably in dispute. Accordingly, Plaintiffs' requested
12 relief should be denied.

13 Should the Court entertain this request in Plaintiffs' Response, it should also declare undisputed
14 that "detainees at the NWIPC sleep and reside at the place they perform work." ECF 228, Scott Dec. ¶¶
15 6-8. Further, the Court should consider admitted that the "State pays less than minimum wage to
16 detainees in its custody, regardless of where they are housed." As Plaintiffs have not presented any
17 evidence that the State pays minimum wage to detainees in the custody of the State who are housed by
18 a private contractor, there should be no distinction based upon ownership or operation of the facility.

19 **VI.  <u>CONCLUSION</u>**

20 For the foregoing reasons, this Court should grant GEO's Motion for Summary Judgment and
21 enter a declaratory judgment stating that detainees are not "employees" under the WMWA.

22 ///
23 ///
24 ///
25 ///
26 ///
27 ///

THE GEO GROUP, INC.'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 12

52540009;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

Respectfully submitted, this 3rd day of April, 2020.

By: *s/ Colin L. Barnacle*
**AKERMAN LLP**
Colin L. Barnacle (Admitted *pro hac vice*)
Christopher J. Eby (Admitted *pro hac vice*)
Ashley E. Calhoun (Admitted *pro hac vice*)
Adrienne Scheffey (Admitted *pro hac vice*)
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  (303) 260-7712
Facsimile:   (303) 260-7714
Email:  colin.barnacle@akerman.com
Email:  christopher.eby@akerman.com
Email:  ashley.calhoun@akerman.com
Email:  adrienne.scheffey@akerman.com

By: *s/ Joan K. Mell*
**III BRANCHES LAW, PLLC**
Joan K. Mell, WSBA #21319
1019 Regents Boulevard, Suite 204
Fircrest, Washington 98466
Telephone:  (253) 566-2510
Facsimile:   (281) 664-4643
Email:  joan@3brancheslaw.com

*Attorneys for Defendant The GEO Group, Inc.*

THE GEO GROUP, INC.'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(3:17-CV-05769-RJB) – PAGE 13

52540009;4

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

# PROOF OF SERVICE

I hereby certify on the 3rd day of April 2020, pursuant to Federal Rule of Civil Procedure 5(b), I electronically filed and served the foregoing **THE GEO GROUP, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** via the Court's CM/ECF system on the following:

**SCHROETER GOLDMARK & BENDER**
Adam J. Berger, WSBA #20714
Lindsay L. Halm, WSBA #37141
Jamal N. Whitehead, WSBA #39818
Rebecca J. Roe, WSBA #7560
810 Third Avenue, Suite 500
Seattle, Washington 98104
Telephone:   (206) 622-8000
Facsimile:   (206) 682-2305
Email: hberger@sgb-law.com
Email: halm@sgb-law.com
Email: whitehead@sgb-law.com
Email: roe@sgb-law.com

**THE LAW OFFICE OF R. ANDREW FREE**
Andrew Free (Admitted *Pro Hac Vice*)
P.O. Box 90568
Nashville, Tennessee 37209
Telephone:   (844) 321-3221
Facsimile:   (615) 829-8959
Email: andrew@immigrantcivilrights.com

**OPEN SKY LAW PLLC**
Devin T. Theriot-Orr, WSBA #33995
20415 72nd Avenue S, Suite 100
Kent, Washington 98032
Telephone:   (206) 962-5052
Facsimile:   (206) 681-9663
Email: devin@openskylaw.com

**MENTER IMMIGRATION LAW, PLLC**
Meena Menter, WSBA #31870
8201 164th Avenue NE, Suite 200
Redmond, Washington 98052
Telephone:   (206) 419-7332
Email: meena@meenamenter.com

*Attorneys for Plaintiffs*

                                        *s/ Nick Mangels*
                                        Nick Mangels

PROOF OF SERVICE
(3:17-CV-05769-RJB) – PAGE 14

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303-260-7712

52540009;4