The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, INC., a Florida corporation,<br><br>Defendant. | No. 3:17-cv-05769-RJB<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>NOTE ON MOTION CALENDAR: APRIL 3, 2020<br><br>ORAL ARGUMENT REQUESTED |

PLTFS.' REPLY IN SUPPORT OF THEIR MOT. FOR SUMM. J. (3:17-cv-05769-RJB)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

## I. INTRODUCTION

Likening detainee workers to messy teenagers, GEO minimizes their labor at NWDC as nothing more than the attendants of "communal living," but GEO relies on detainee workers to do much more than simply make their beds. The sheer number of detainee workers and the breadth of the worker program bear this out. This is real and meaningful work that the detainee workers perform in return for wages, and in its absence, GEO would be forced to secure more hours from its existing staff, more employees, or both to continue operating at NWDC. Because GEO permits detained persons to work and pays them for doing so, it is an "employer" and the detainee workers are its "employees" under the MWA.

## II. ARGUMENT

### A. Neither the Residential Nor "Government-Owned Facility" Exemptions under the MWA Apply to GEO.

GEO repeats nearly *verbatim* its arguments about MWA exemptions from its pending cross-motion for summary judgment. *See* Dkt. 227 (GEO's Mot. for Summ. J.) at 7-13. Rather than restating what they have already said, Plaintiffs incorporate by reference the argument and authority from their brief in opposition. Dkt. 272 (Pltfs.' Opp.) at 13-20.

### B. GEO Became Plaintiffs' Employer By Permitting Them to Work.

GEO raises a legitimate point in a footnote to its opposition warranting further discussion. Dkt. 274 (Opp.) at 4 n.1. Until now, the parties have advocated for some formulation of the "economic-dependence" test to determine whether an employment relationship existed between GEO and the detainee workers. But as GEO points out, Opp. at 16 n.7, Washington first adopted the test to distinguish an employee from an independent contractor. *Anfinson v. FedEx Ground Package Sys., Inc.,* 866, 281 P.3d 289, 302 (Wash. 2012). ("Under the MWA," the economic dependence test is "the correct inquiry into whether

PLTFS.' REPLY IN SUPPORT OF
THEIR MOT. FOR SUMM. J. (3:17-cv-05769-RJB) – 1

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

a worker is an employee covered by the act or an independent contractor not covered by the act…"). Washington later adopted a more extensive multi-factor test to assess alleged joint employer relationships. *Becerra v. Expert Janitorial, LLC*, 332 P.3d 415, 421 n.7 (Wash. 2014) ("The joint employment test we articulate today is designed to determine obligations under the minimum wage act and does not otherwise govern a worker's employment status or employer's obligations.").

Neither test is a good fit here as no one argues the existence of a joint-employer relationship, and whether the detainee workers are "in business for [themselves]"—the central question under the economic dependence test—misses the point for people in civil detention. *See Anfinson,* 281 P.3d at 299 ("The relevant inquiry is "'whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself.'").

Rather, the detainee workers are either in GEO's employ or not, as there is no secondary label or fallback status that applies as in cases alleging misclassification (i.e., employee vs. independent contractor) or joint employment (i.e., single employer vs. joint employer). Here, the plain language of the statute provides the proper framework for the inquiry before the Court. "'Employ includes to permit to work." RCW 49.46.010(2); *see* WAC 296-126-002(3) ("'Employ' means to engage, suffer or permit to work."). And "permit" means "to allow." Webster's Third New International Dictionary of the English Language, Unabridged 1683; *see Anfinson,* 281 P.3d at 298 n.2 ("The relevant definition of 'suffer' is 'not to forbid or hinder' with the synonym 'permit.' '[S]uffer' is synonymous with 'permit.'").

Read as a whole, the MWA finds an employment relationship to exist wherever an entity permits an individual to work and some other exception does not apply. *See Anfinson,*

PLTFS.' REPLY IN SUPPORT OF
THEIR MOT. FOR SUMM. J. (3:17-cv-05769-RJB) – 2

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

281 P.3d at 297; RCW 49.46.010(4).Because GEO has permitted Plaintiffs and members of the class to work at NWDC, an employment relationship was formed under the MWA. The Court's analysis may end here.

### C. Plaintiffs Satisfy the Economic Dependence Test.

Even if the Court reaches the economic-dependence test, the record contains overwhelming evidence that GEO's relationship with the detainee workers satisfies the *Anfinson* factors, entitling Plaintiffs to summary judgment. GEO does not dispute that several of the factors are satisfied,[1] and the arguments GEO offers to challenge other factors are unavailing.

Ultimately, these factors demonstrate that the detainee workers are economically dependent upon GEO—and GEO alone—to earn wages while at NWDC. *See Real v. Driscoll Strawberry Assoc., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) ("employees are those who as a matter of economic reality are dependent upon the business to which they render service."). The inability of the detainee workers to work purely on their own terms demonstrates their dependence on GEO. *See, e.g., Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 138-40 (2d Cir. 2017)*; Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1542 (7th Cir. 1987) ("The usual argument that workers are 'dependent' on employers … is that they are immobile.") (Easterbrook, J., concurring).

GEO misconstrues the economic dependence test, arguing that detained persons don't need money at NWDC because all of their basic necessities are met. Factually speaking, this

---

[1] Nowhere does GEO address the relative investments of Plaintiffs and GEO (i.e., the second *Anfinson* factor), Plaintiffs' opportunity for profit or loss (i.e., the third *Anfinson* factor), or the skill and initiative required of the detainee workers (i.e., the fourth *Anfinson* factor). *See* Dkt. 221 (Mot.) at 14-17. Because the Plaintiffs' argument and evidence concerning these factors is uncontradicted, the Court may take them as true for purposes of granting Plaintiffs' motion. Fed. R. Civ. P. 56 (e).

PLTFS.' REPLY IN SUPPORT OF THEIR MOT. FOR SUMM. J. (3:17-cv-05769-RJB) – 3

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

notion is incorrect, as detained workers use money they earn to buy commissary goods, pay for phone calls, and attorneys. Whitehead Decl., Ex. R (Johnson Decl.) at ¶ 11; *see* Dkt. 273-5 (Nwauzor Dep.) at 94-96, 137-138. Legally speaking, GEO's argument misses the mark as the economic dependence test turns on whether the employee's opportunity for economic gain is solely through the employer, not whether the employee needs (i.e., depends on) the money.

Because they satisfy the economic dependence test, the Court should render summary judgment in Plaintiffs' favor.

### 1. So long as they are detained, the relationship between GEO and the detainee workers is permanent.

GEO twists the "permanency" factor into a requirement akin to permanent servitude, arguing the "ephemeral" nature of the relationship prevents a finding by the Court. Contrary to GEO's claim, satisfying the permanency inquiry does not mean that detainee workers must do the same job exclusively at NWDC or even that they participate in the worker program through the duration of their detention. Rather permanency is found when the relationship is such that workers "do not transfer from one [employer] to another as particular jobs are offered to them." *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1372 (9th Cir. 1981) (finding permanency of the relationship between employer and dry cleaning agents because agents did not generally offer their services to different employers); *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1384 (3d Cir. 1985) (finding permanency because "the home researchers did not transfer their services from place to place, as do independent contractors."); *Mathis v. Hous. Auth. of Umatilla Cty.*, 242 F. Supp. 2d 777, 785 (D. Or. 2002) (finding permanency even though "position was for an indefinite duration and either party could terminate the relationship at any time"). Indeed, if employee attrition prevented a finding of permanency, as

PLTFS.' REPLY IN SUPPORT OF THEIR MOT. FOR SUMM. J. (3:17-cv-05769-RJB) – 4

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

GEO suggests, employees in high turnover industries like retail, fast food, and hospitality could never satisfy the economic dependence test.

The detainee workers at the NWDC may not seek employment outside the NWDC, and if they wish to work, GEO and its worker program are the *only* option. Whitehead Decl., Ex C (GEO 30(b)(6) Dep) at 88:7-10. This is not just a long-lasting work relationship, it is the only working relationship available to detainee workers, some of whom are detained for years. And just like any other at-will employment relationship, the relationship will last as long as the detainee worker performs his or her duties satisfactorily and chooses to continue working.

The undisputed facts show that this is a permanent working relationship.

### 2. GEO exerts near absolute control over detainee workers in the terms and conditions of the worker program.

GEO's rejoinder to any claim that it supervises and controls the detainee workers is that participating in the worker program is "completely voluntary." Opp. at 22. Other than forced labor, however, the act of working is always "voluntary" in the sense that it is an act of one's own choice or free will. But the fact that detainee workers choose to participate in the program does not alter the conclusion that GEO controlled and supervised their work once they decided to participate. GEO does not challenge this fact in a serious way, creating straw man arguments about uniforms instead.[2] *Id.*

At other times, GEO downplays its might, arguing that it cannot control "*any* of the aspects of detainees' participation in the VWP," but GEO offers no citation to the record for this stunning claim. Opp. at 23 (emphasis added). To be sure, GEO points out the so-called

---

[2] GEO argues that it provides clothing to all detained persons, which is true, but GEO provides special clothing, footwear, and other protective gear to detainee kitchen workers. Whitehead Decl., Ex. G (Delacruz Dep.) at 114:25-116:5. Providing the materials, equipment, and clothing needed for the job are indicia of employment.

PLTFS.' REPLY IN SUPPORT OF THEIR MOT. FOR SUMM. J. (3:17-cv-05769-RJB) – 5

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

limits of its power, but it has left virtually uncontested the mountain of evidence demonstrating its near absolute control over the worker program and its participants. Consider the following facts that must be taken as verities because they are unchallenged by GEO:

- GEO develops and manages the VWP. Mot. at 7.
- GEO sets the detainee worker rate of pay. *Id.* at 8.
- ICE is not involved in the day-to-day operation of the VWP and plays no role in assigning detainee workers to work assignments or supervising their work. *Id.* at 9, 11.
- GEO creates job descriptions for the VWP jobs. *Id.* at 9.
- GEO creates a roster or schedule detailing when and where detainee workers may work. *Id.* at 10.
- GEO provides on the job training to VWP participants. *Id.*
- GEO conducts safety inspections of VWP workers. *Id.* at 11.
- GEO may fire detainee workers for unsatisfactory job performance. *Id.* at 11-12.
- GEO may refuse to pay detainee workers for unsatisfactory job performance. *Id.* at 12.

The fact that GEO provides more or better training for its regular employees, or expects more of them, does not refute the control or supervision that GEO exercises over the detainee workers. *See Torres-Lopez v. May*, 111 F.3d 633, 642 (9th Cir. 1997) (finding sufficient control where employer "exercised significant control" including setting the work schedule, determining the number of workers needed, and inspecting all work performed); *Berry v. Transdev Servs., Inc.*, No. C15-1299-RAJ, 2017 WL 1364658, at *4-5 (W.D. Wash. Apr. 14, 2017) (finding sufficient control where an employer dictated how duties were performed).

And if GEO's expectations of its regular employees is at all relevant, its job descriptions requiring them to **"**Direct[ ] work, provide[ ] training and perform[ ] inspections of work performed by inmate/detainee workers" negate any claim that GEO personnel were

PLTFS.' REPLY IN SUPPORT OF
THEIR MOT. FOR SUMM. J. (3:17-cv-05769-RJB) – 6

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

merely passive bystanders while detained persons worked. Whitehead Decl., Ex. BB; *see* Whitehead Decl., Exs. CC, DD, EE, and FF.

Finally, GEO conflates the "direct supervision" of detainees for purposes of facility safety and security with the supervision it provides for detainee workers in the VWP. Only the terms of the VWP—and the work performed within it—are challenged in this case. Because GEO cannot, and does not, dispute that its officers supervise the work detainees perform in the VWP, the undisputed evidence supports finding in Plaintiffs' favor on this factor.

### 3. The work performed by detainees is an integral part of GEO's business at NWDC.

There is no dispute that GEO relies upon detainee labor to operate the NWDC and that such labor is integral to GEO's business. Hundreds of detainee workers cook, clean, cut hair, and do laundry each day to keep the facility up and running. *See Berry*, 2017 WL 1364658, at *5 (finding workers' labor to be integral to an employer's business model because the employer "cannot fulfill its contractual obligations" unless workers performed their duties). GEO's argument that it could pick up the slack if detainee workers stopped working does not create a fact dispute—it proves Plaintiffs' point. GEO's admissions that GEO staff could step in to cover the shifts of kitchen workers, or that detainees could go without haircuts if barbers refused to work, are decisive evidence that without detainee labor, GEO would have to restructure its business model or hire more employees to address the work shortage. *See* Whitehead Decl., Ex. C (30(b)(6) Dep.) at 89:5-90:18.

### D. The Fundamental Nature of the Relationship Between GEO and Detainee Workers is that of Employer and Employee.

Perhaps because it is a losing argument for the company, GEO urges the Court to look past the economic-dependence test to the "fundamental nature' of the activity and relationship"

PLTFS.' REPLY IN SUPPORT OF
THEIR MOT. FOR SUMM. J. (3:17-cv-
05769-RJB) – 7

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

between GEO and the detainee workers to negate Plaintiffs' claim. Opp. at 15-19. GEO's arguments rest on half-truths and dubious legal authority.

The Court need only look to the name of the program (i.e., the Volunteer *Worker* Program) to ascertain the nature of the relationship between GEO and the detainee workers.[3] GEO pays them for their labor, forming an employment relationship in the process. *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 306 (1985).

The Supreme Court's holding in *Alamo* is instructive. There, a religious foundation ran several commercial businesses, including service stations, clothing and grocery stores, hog farms, a motel, construction companies, candy companies, and record-keeping companies. *Id*. at 292. Staffing the foundation's businesses were "volunteers," who were former drug addicts, derelicts, or criminals that the foundation had converted and rehabilitated. *Id*. In exchange for their services, the volunteers received food, clothing, shelter, and other benefits from the foundation, but no cash salaries. *Id*. The Court held that the "volunteers" were actually employees under the economic realities test. *Id*. at 301, 306. Two factors were particularly significant. First, the volunteers were entirely dependent economically upon the foundation for long periods of time, and in some cases several years. *Id*. at 301, 305. Second, the volunteers expected to receive in-kind non-cash benefits in exchange for their services, which amounted to "wages in another form." *Id*. Because the volunteers "work[ed] in contemplation of compensation," they were employees under the FLSA. *Id.* at 306.

---

[3] GEO fails to distinguish between its relationship with the broader population of detained persons at NWDC from its relationship with the detainee workers at NWDC. This is a critical distinction because this case—and the certified class—concern only those detained persons who engaged in the worker program. Thus, it is GEO's relationship with the detainee workers that is at issue.

PLTFS.' REPLY IN SUPPORT OF
THEIR MOT. FOR SUMM. J. (3:17-cv-05769-RJB) – 8

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Like, the volunteers in *Alamo,* the detainee workers here expected compensation from GEO in the form of wages, and they are entirely dependent upon GEO to earn money during their detention, which can span years. *See* Whitehead Decl., Ex. E (Aguirre-Urbina Dep.) at 8:2-8 (six years in detention).

Ignoring these obvious truths, GEO insists that its relationship with the detainee workers is that of jailer and jailed, but GEO has previously stipulated that detention at NWDC is neither penal nor criminal in nature. *See* Dkt. 258 (Stipulation) at 3. In other places, GEO styles the worker program as simply a cure for idleness. To be sure, some detained persons participate in the worker program at least in part to address boredom, but this is no defense to complying with minimum wage laws. *Souder v. Brennan*, 367 F. Supp. 808, 813 n.21 (D.D.C. 1973) (emphasis added) (rejecting argument that work performed by mentally-ill and disabled workers was merely "something to occupy the time" as defense to paying minimum wages).

The cases cited by GEO do not persuade otherwise. GEO turns first to the Washington intermediate court's opinion in *Rocha v. King Cty.,* 435 P.3d 325 (Wash. Ct. App. 2019), which the Washington Supreme Court recently accepted for review. 448 P.3d 64 (Wash. 2019). In *Rocha,* a putative class of prospective jurors argued, among other things, that they were entitled to the minimum wage for their jury service. *Id.* at 328-29. The court acknowledged, but did not apply, the economic dependence test, which is one of the issues before the state Supreme Court. *Id.* at 332-334. Instead, the court found that an employment relationship could not be found because the fundamental nature of jury service was a civic duty. *Id.*

This case is distinguishable from *Rocha* because the fundamental nature of GEO's worker program *is working for wages.* There is no grander or more noble purpose overriding the fact that Plaintiffs and members of the class are working for money.

PLTFS.' REPLY IN SUPPORT OF THEIR MOT. FOR SUMM. J. (3:17-cv-05769-RJB) – 9

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Next, GEO turns to *Calhoun v. Wash.*, 193 P.3d 188 (Wash. Ct. App. 2008), as controlling authority. It is not. In *Calhoun,* a pretrial detainee awaiting a civil commitment trial regarding possible classification as a sexually violent predator brought a discrimination claim against the state. *Id.* at 190-191. The court held that the plaintiff was not an employee within the meaning of the state's discrimination laws, and did not reach the economic dependence test because neither the FLSA nor MWA applied to the case. *Id.* at 193. The court found an employment relationship otherwise lacking because the plaintiff's activity was part of the facility's therapeutic program for violent offenders. *Id.* at 193 n.12.

Far from "legally indistinguishable," as GEO claims, *Calhoun* is nothing like this case because GEO's worker program serves no therapeutic, training, or rehabilitative purpose for those who participate. Whitehead Decl., Ex. M (2011 PBNDS § 5.8 - VWP)) at § 5.8.II (Expected Outcomes). GEO can point to no individualized, case-manager-approved treatment or rehabilitation plan, or a vocational training plan, for the benefit of detained individuals because none exist.

GEO also cites *Ndambi v. CoreCivic, Inc.*, CV RDB-18-3521, 2019 WL 4735428 (D. Md. Sept. 27, 2019), for the proposition that residents of detention facilities are not employees in light of the custodial nature of detention.[4] *Ndambi*, however, relied upon *Alvarado Guevara v. I.N.S.*, 902 F. 2d 394, 396 (5th Cir. 1990), which this Court has declined to follow as persuasive authority. Dkt. 29 at 17-18 ("Neither *Menocal*, *Whyte*, nor *Alvarado* is binding precedent, and in this Court's view, extending the logic of *Alvarado* to interpret this State's statutory exception to include federal detainees moves beyond interpretation to legislation.").

---

[4] Plaintiffs previously debunked GEO's argument that civil detainees cannot state a claim under the MWA by virtue of their detention. For brevity's sake, Plaintiffs incorporate their prior briefing by reference rather than restating their argument and authority here. Dkt. 15 at 24-30.

PLTFS.' REPLY IN SUPPORT OF THEIR MOT. FOR SUMM. J. (3:17-cv-05769-RJB) – 10

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Finally, GEO suggests a parade of horribles that will occur if an employment relationship is found (e.g., must GEO comply with employment discrimination laws?), but this is a logical fallacy this Court should not entertain. Opp. at 18 n.9. For one thing, GEO already follows other laws promoting the health and safety of detainee workers, such as Occupational Safety and Health Administration regulations. Whitehead Decl., Ex. M (2011 PBNDS § 5.8 - VWP) at 408; Ex. I (Tracy Dep) at 33:18-34:8, 38:2-10, 41:8-41:23; Ex. G (Delacruz Dep.) at 47:24-50:16, 55:20-56:4, 97:14-19. For another, GEO is prohibited from discriminating against detainee workers on the basis of race, religion, national origin, gender, sexual orientation, or disability. Whitehead Decl., Ex. M (2011 PBNDS § 5.8 - VWP) at 407. And to answer GEO's question about the applicability of other employment laws to detainee workers, the Ninth Circuit has previously held that a prisoner working in a prison library can be an employee of the prison under Title VII. *Baker v. McNeil Island Corr. Ctr.*, 859 F.2d 124, 128 (9th Cir. 1988) (reversing dismissal, finding prisoner had stated plausible claim under Title VII). In the end, any adjustments GEO would make to other employment laws are the province of the legislature, not the courts, and are beyond the scope of this dispute.

### E. GEO's Unjust Enrichment Counterclaim Fails as a Matter of Law.

GEO's response to Plaintiffs' motion to dismiss its unjust enrichment counterclaim fails to refute the core of Plaintiffs' argument: GEO is not entitled to any restitution from Plaintiffs for housing and other expenses because ICE has already paid the company fully for providing those same services. *See* Mot. at 15-18 (citing, *inter alia*, Restatement (Third) of Restitution and Unjust Enrichment § 25 (2011)). Indeed, GEO's payment under its contract with ICE is based on a "bed-day rate" for each detained person at NWDC that is "inclusive of [GEO's] direct costs, indirect costs, overhead and *profit* necessary to provide the detention and

PLTFS.' REPLY IN SUPPORT OF
THEIR MOT. FOR SUMM. J. (3:17-cv-05769-RJB) – 11

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

food service" at NWDC. Ex. B at 46 (emphasis added); Ex. C (30(b)(6) Dep.) at 33:7-22, 36:4-37:2. This fact renders the cases cited by GEO about offset for room and board a nullity, as the defendants in those were *not* already compensated from some other source. Opp. at 23.

Instead, this case is more like *Lynch v. Deaconess Med. Ctr.*, 776 P.2d 681 (Wash. 1989), in which the plaintiff sought restitution from a defendant that benefited from work the plaintiff was contractually bound to perform for another. *Id.* at 682. In affirming the dismissal of the plaintiff's case, the Washington Supreme Court held that the "receipt of an incidental benefit … does not create an implied contract between the parties, nor does it impose the obligation of restitution upon the recipient" when the benefit conferred is part of the conferring party's independent legal obligation to another. *Id.* at 683.

Like the plaintiff in *Lynch*, GEO had an independent contractual obligation to ICE to provide basic necessities to Plaintiffs and other detainees. The fact that Plaintiffs received the benefit—as intended—does not established an implied contract between them and GEO, such that GEO would be entitled to restitution from Plaintiffs. To hold otherwise would allow GEO to recover twice for the value of the necessities provided—*this* would be an inequitable result.

The Court previously grappled with this issue in the context of a Rule 12(b)(6) motion, but now, with the benefit of discovery and through the vehicle of Rule 56, the Court should dismiss GEO's unjust enrichment defense.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their summary judgment motion.

PLTFS.' REPLY IN SUPPORT OF THEIR MOT. FOR SUMM. J. (3:17-cv-05769-RJB) – 12

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

DATED this 3rd day of April, 2020.

                    SCHROETER GOLDMARK & BENDER

                    *s/ Jamal N. Whitehead*
                    Adam J. Berger, WSBA #20714
                    Lindsay L. Halm, WSBA #37141
                    Jamal N. Whitehead, WSBA #39818
                    Rebecca J. Roe, WSBA #7560
                    810 Third Avenue, Suite 500
                    Seattle, WA 98104
                    Tel: (206) 622-8000
                    berger@sgb-law.com
                    halm@sgb-law.com
                    whitehead@sgb-law.com

                    THE LAW OFFICE OF
                    R. ANDREW FREE
                    R. Andrew Free (*Pro Hac Vice*)
                    P.O. Box 90568
                    Nashville, TN 37209
                    Tel: (844) 321-3221
                    andrew@immigrantcivilrights.com

                    OPEN SKY LAW, PLLC
                    Devin T. Theriot-Orr, WSBA # 33995
                    20415 – 72nd Avenue S, Suite 110
                    Kent, WA 98032
                    Tel: (206) 962-5052
                    devin@opensky.law

                    MENTER IMMIGRATION LAW, PLLC
                    Meena Menter, WSBA # 31870
                    8201 – 164th Avenue NE, Suite 200
                    Redmond, WA 98052
                    Tel: (206) 419-7332
                    meena@meenamenter.com

                    *Class Counsel*

PLTFS.' REPLY IN SUPPORT OF THEIR MOT. FOR SUMM. J. (3:17-cv-05769-RJB) – 13

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

# **CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2020, I electronically filed the foregoing, together with its supporting pleadings and attachments thereto, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Devin T. Theriot-Orr<br>OPEN SKY LAW, PLLC<br>20415 – 72nd Avenue South, Suite 110<br>Kent, WA 98032<br>devin@opensky.law<br>*Attorney for Plaintiff* | R. Andrew Free<br>THE LAW OFFICE OF R. ANDREW FREE<br>PO Box 90568<br>Nashville, TN 37209<br>andrew@immigrantcivilrights.com<br>*Attorney for Plaintiff* |
| Meena Menter<br>MENTER IMMIGRATION LAW PLLC<br>8201 – 164th Avenue NE, Suite 200<br>Redmond, WA 98052<br>meena@meenamenter.com<br>*Attorney for Plaintiff* | Joan K. Mell<br>III BRANCHES LAW, PLLC<br>1019 Regents Boulevard, Suite 204<br>Fircrest, WA 98466<br>joan@3ebrancheslaw.com<br>*Attorney for Defendant* |

Colin L. Barnacle
Ashley E. Calhoun
Christopher J. Eby
Adrienne Scheffey
AKERMAN LLP
1900 Sixteenth Street, Suite 1700
Denver, CO 80202
colin.barnacle@akerman.com
ashley.calhoun@akerman.com
christopher.eby@akerman.com
adrienne.scheffey@akerman.com
*Attorneys for Defendant*

DATED at Seattle, Washington this 3rd day of April, 2020.

*s/ Virginia Mendoza*
VIRGINIA MENDOZA, Legal Assistant
Schroeter Goldmark & Bender
810 Third Avenue, Suite 500
Seattle, WA 98104
Tel: (206) 622-8000
mendoza@sgb-law.com

PLTFS.' REPLY IN SUPPORT OF THEIR MOT. FOR SUMM. J. (3:17-cv-05769-RJB) – 14

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305