UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>Defendant. | CASE NO. C17-5769RJB<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on the Plaintiffs' Motion for Summary Judgment (Dkt. 221 refiled in redacted form Dkt. 233) and The GEO Group, Inc.'s ("GEO") Motion for Summary Judgment (Dkt. 227). The Court has considered the pleadings filed regarding the motions, the remaining file and the file in *Washington v. GEO Grp., Inc.,* Western District of Washington Case No. 17-5806 RJB, which is joined with this case for liability purposes. Because the issues in the motions overlap, the motions are here discussed together.

For the reasons provided below, Plaintiff's motion for summary judgment (Dkts. 221 and 233) and GEO's motion for summary judgment (Dkt. 227) should be denied.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 1

# I. FACTS

On September 26, 2017, the Plaintiffs filed this class action, alleging that the Defendant, GEO, failed to comply with the State of Washington's Minimum Wage Act ("MWA") regarding work performed by civil detainees at the Northwest Detention Center ("NWDC"), which was recently renamed the "Northwest ICE Processing Center." Dkt. 1. (For ease of reference, this opinion will continue to refer to it as the NWDC). On August 6, 2018, the undersigned certified a class in this case of "all civil immigration detainees who participated in the Voluntary Work Program [("VWP")]at the [NWDC] from September 26, 2014 and the date of final judgment in this matter." Dkt. 114.

## A. GEO AND THE CONTRACTS

GEO is a private for-profit corporation that provides correctional and detention services. Dkt. 230-1, at 46. The NWDC, a 1,575-bed facility, is owned and operated by GEO. Dkt. 230-1, at 46. In 2009, and through a renewed agreement in 2015, GEO contracted with U.S. Immigration and Customs Enforcement ("ICE") to provide "detention management services including the facility, detention officers, management personnel, supervision, manpower, training certificates, licenses . . . [and] supplies . . ." Dkt. 230-1, at 46 (2015 Contract); *and see* Dkt. 229-4, at 57 (2009 Contract). GEO also agreed to "be responsible for other ancillary services including but not limited to transportation and food service." *Id.*

The contracts with ICE require that GEO comply with ICE's Performance-Based National Standards ("PBNDS"), which are a set of national detention standards to ensure all entities that ICE contracts with meet baseline requirements. Dkt. 230-1, at 46 and Dkt. 229-4, at 57. The contracts also require GEO to comply with all federal, state, and local laws and

regulations. Dkt. 230-1, at 45 and 53; Dkt. 229-4, at 19. If ambiguity arises, the most stringent standard applies. Dkt. 230-1, at 53.

According to ICE official, Tae D. Johnson, the NWDC "operates pursuant to a performance-based contract[s], which is a results-oriented method of contracting focused on outputs, quality, and outcomes. Performance-based contracts do not designate *how* a contractor is to perform the work, but rather establishes the expected outcomes and results that the government expects." Dkt. 229-2, at 3-4. Further the contracts are also "firm-fixed price contracts, which means that GEO responded to the government's requirements by quoting fully burdened rates (i.e. bed day rate, transportation rate, etc.) at which it would perform the requirements." *Id.,* at 4. Johnson maintains that "one of the many aspects of ICE's detention standards is the [VWP]," which is intended to "reduce the negative impact of confinement through decreased idleness, improved detainee morale, and fewer disciplinary incidents." *Id.,* at 5. The program also allows detainees to earn money to buy commissary goods and pay for phone calls. *Id.*

**B. VWP**

The contracts require GEO develop and manage a VWP which adheres to the PBNDS and "all applicable laws and regulations." Dkt. 230-1, at 83; and Dkt. 229-4, at 89. The 2008 PBNDS requires that detainees receive VWP compensation at "$1.00 per day." Dkt. 223-12, at 5. The revised 2011 PBNDS requires that GEO pay "at least $1.00 per day" for work performed in the VWP. Dkt. 223-13, at 7. Both contracts provide for an annual $114,975 for "Detainee Volunteer Wages for the Detainee Work Program. Reimbursement for this line item will be at the actual cost of $1.00 per day per detainee. [GEO] shall not exceed the amount shown without prior approval by the Contracting Officer." Dkt. 230-1, at 6 and 229-4, at 6. GEO and ICE

acknowledge that GEO has the option to pay more than a $1.00 a day for work performed in the VWP. Dkts. 224-4, at 2; 223-21, at 22 and 224-5, at 2.

GEO's classification unit manages the VWP at the NWDC. Dkt. 223-24, at 4. GEO has "job descriptions" for worker assignments, which contain "job titles," "work hours," "specific work duties," hours, requirements and grounds for "termination." Dkt. 223-24, at 5-6; Dkt. 223-25, at 2-7; and Dkt. 223-33, at 2. The VWP includes work in the kitchen, work in the laundry unit, janitorial services, barber shop (including cutting hair), and painting. Dkt. 223-3, at 16 and 19. Detainees request work assignments by completing kites which are reviewed by GEO's classification officers, who make the assignments. Dkt. 223-22, at 18. GEO looks at "classification level, attitude, behavior, and physical ability to perform the job." Dkt. 223-9, at 26. It has the discretion over who to hire in the program. Dkt. 223-22 and 24. ICE plays no role in assigning detainee workers to work assignments. Dkt. 223-22, at 7-9.

GEO sets the work schedule for the detainees, provides the detainees with orientation, training, uniforms, equipment, and supervises and directs the detainees in their duties. Dkt. 233-3, at 24-25; Dkt. 223-7, at 6-10, 16-28; Dkt. 223-8, at 6-9; and Dkt. 223-9, at 5-7, and 12-13. The detainees do not have discretion to deviate from GEO's rules, regulations, or directions in how they perform their duties. Dkt. 223-7, at 11, 23-24, and 36; Dkt. 223-8, at 23; Dkt. 223-9, at 15. Detainees cannot seek employment outside the facility and those with pre-existing skills have no opportunity to earn more than the VWP pays. Dkt. 223-3, at 26-27; and Dkt. 223-9, at 27 and 44. GEO estimates that the average shift in the VWP is around 1.72 hours. Dkt. 223-3, at 4. It pays the workers directly to a detainee's trust account. Dkt. 223-3, at 27. GEO makes the initial decision of whether to terminate a detainee's participation in the program. Dkt. 223-3, at 26; Dkt. 223-7, at 34-35; and Dkt. 223-8, at 28. ICE plays no role in directing or supervising

detainees ins the VWP. Dkt. 223-9, at 22-23; Dkt. 223-7, at 21; and Dkt. 223-8, at 12-13. A detainee can appeal GEO's VWP termination decision to ICE. Dkt. 275-9, at 10.

Detainees held at the facility are in the custody of ICE. Dkt. 228, at 2. They live and sleep at the facility until they are ordered released or deported. Dkt. 228, at 2. Detainees are provided a living area, clothing, food, and healthcare at no cost to them. Dkt. 228, at 2. GEO asserts that it does not have a system in place to track all the hours the detainees work and estimates that if the participants in the VWP were considered employees, this would result in over an additional 400 employees per day (over the 340 employees currently there). Dkt. 228, at 2. GEO maintains that if they had to start considering the detainees as employees, they would need additional human resources support staff and would have to "restructure and renegotiate the pricing of its contracts with ICE to account for the increased cost." Dkt. 228, at 2. It asserts that implementing those changes (with the additional costs) would be a significant burden. Dkt. 228, at 2.

### C. WASHINGTON STATE WORK PROGRAMS IN DETENTION CENTERS

The State of Washington operates civil detention centers where it pays less than minimum wage for work performed by detainees. *See e.g*. Dkt. 229-6, at 5-7. For example, detainees at the Special Commitment Center for sexually violent predators engage in work activities for subminimum wage. Dkt. 229-6, at 5-7. Further, political subdivisions of Washington State, like Pierce County, own and operate jails where some of the detainees are awaiting criminal proceedings but have not been convicted of a crime. Dkt. 229-7. Detainees in the Pierce County jail can participate in the Inmate Worker Program, which includes activities like food preparation, laundry, and janitorial services. Dkt. 229-7, at 3. Participants in the Pierce County jail program do not get paid wages but may receive extra food or recreational time. Dkt.

229-7, at 3. Pierce County contracts with a private entity, Consolidated Food Management to assist in managing the food service program and Aramark Correctional Services, LLC to handle the commissary. Dkt. 229-7, at 3. GEO points to the declaration of Julie Williams, who is a retired Contract Services Manager at the Pierce County Sheriff's Department, who states that Consolidated Food Management "operates the kitchen using detainee and inmate labor." Dkt. 229-7, at 4. Williams asserts that this private contractor "handles all meal preparation and clean up, using detainees and inmates to perform the work that [Consolidated Food Management] oversees." Dkt. 229-7, at 4. She attaches a contract dated July 9, 2014, which purports to be between Pierce County and Consolidated Food Management. Dkt. 229-7, at 43-80. The contract indicates that Consolidated Food Management would do activities like purchase all the food and supplies, hire supervisors and staff, and operate the program. Dkt. 229-7, at 49-50. Pierce County agreed to provide the kitchen, corrections staff for security, equipment, and pay the utilities. Dkt. 229-7, at 53-54. Consolidated Food Management agreed not to serve meals to corrections security that was prepared by inmates. Dkt. 229-7, at 49. The County agreed to "provide the appropriate number of inmate kitchen helpers to assist the cook in meal preparation, service and sanitation. The number assigned [was] subject to negotiation and may change at any time within the contract period." Dkt. 229-7, at 54. The State has also contemplated contracting with GEO to provide out-of-state detention services (which included a work program) for people convicted of a crime, but no contract was completed. Dkts. 229-10, and 229-11, at 1-33.

**D. OTHER RELEVANT PROCEDURAL HISTORY IN *WASHINGTON V. GEO***

On September 20, 2017, the State filed a case against GEO, maintaining that GEO failed to pay civil detainees participating in the VWP in accord with MWA. *Washington v. GEO Grp., Inc.,* Western District of Washington Case No. 17-5806 RJB, Dkt. 1. As one of its

affirmative defenses in *Washington*, GEO maintained that it was entitled to intergovernmental immunity. *Washington v. GEO Grp., Inc.,* Western District of Washington Case No. 17-5806 RJB, *see e.g.*, Dkt. 162. In December of 2018, the Court denied GEO's motion for summary judgment on its defense of intergovernmental immunity (Dkt. 162) and denied its motion for reconsideration of the denial of the motion for summary judgment (Dkt. 165). *Washington v. GEO Grp., Inc.,* Western District of Washington Case No. 17-5806 RJB. Discovery in *Washington* continued.

On May 28, 2019, this class action case was consolidated with the State case, *Washington v. GEO Grp., Inc.,* Western District of Washington Case No. 17-5806 RJB, for liability purposes only. Dkts. 174 and 175. The Court ordered that the deadlines in the cases would remain unchanged. *Id.*

On August 6, 2019, GEO's motion for summary judgment based on the defense of derivative sovereign immunity and the State and GEO's cross motions for summary judgment on the State' MWA claim were all denied. *Washington v. GEO Grp., Inc.,* Western District of Washington Case No. 17-5806 RJB, Dkt. 288.

After the close of discovery in *Washington* and after giving the parties another opportunity to address the defense of intergovernmental immunity, on October 9, 2019, the Court reaffirmed its prior ruling and denied GEO's motion for summary judgment on the defense of intergovernmental immunity. *Washington v. GEO Grp., Inc.,* Western District of Washington Case No. 17-5806 RJB, Dkts. 306 and 322. On October 28, 2019, GEO's motion for reconsideration, or in the alternative, to reopen discovery and move for summary judgment, was denied in *Washington*. *Id.*, Dkt. 326.

**D. PENDING MOTIONS**

1  The Plaintiffs now move for summary judgment asserting that (1) GEO is an "employer," the Plaintiffs are "employees" under the MWA, (2) GEO's contract with ICE does not prevent GEO from paying detainee workers minimum wage, and (3) GEO's counterclaim and affirmative defense of "offset/unjust enrichment" should be dismissed because GEO contracted with ICE and received payment for the benefits it now seeks to disgorge from the Plaintiffs. Dkt. 221.

GEO opposes the motion and argues that (1) the detainees are not "employees" under the plain language of the MWA, (2) the Plaintiffs cannot satisfy the economic dependence test and so are not "employees," (3) there are issues of fact as to whether GEO is entitled to "offset/unjust enrichment." Dkt. 274.

The Plaintiffs reply and argue that (1) the exceptions to the MWA urged by GEO do not apply, (2) they are/were GEO's "employees" under MWA, and (3) GEO's offset/unjust enrichment" affirmative defense/counterclaim should be dismissed. Dkt. 279.

GEO also moves for summary judgment, asserting that (1) detainees at the NWDC do not fall within the MWA's definition of "employee" and so are exempted from coverage, (2) it is entitled to intergovernmental immunity against the Plaintiffs' claims, and (3) it is immune from the MWA under the doctrine of derivative sovereign immunity. Dkt. 227.

The Plaintiffs oppose the motion and argue that (1) the Plaintiffs are "employees" under the MWA and no exemption applies, (2) GEO is not entitled to intergovernmental immunity – it points to no facts supporting its claim of either direct regulation of the federal government or discrimination against the federal government in application the MWA, and (3) the doctrine of derivative sovereign immunity does not apply. Dkt. 272. The Plaintiffs also move for 17 findings of fact pursuant to Fed. R. Civ. P. 56(g) on which that they assert all parties agree. *Id.*

GEO replies and argues that (1) the detainees are exempt from MWA coverage, (2) it is entitled to intergovernmental immunity, and (3) it is entitled to derivative sovereign immunity. Dkt. 278.

### E. ORGANIZATION OF OPINION

This opinion will first address the Plaintiffs' motion for findings of fact under Rule 56(g), second, provide the standard of review on a motion for summary judgment, third, address both parties arguments regarding whether the Plaintiffs are "employees" under the MWA, fourth, GEO's defense of intergovernmental immunity, fifth, GEO's defense of derivative immunity and last the Plaintiffs' motion to summarily dismiss GEO's counterclaim and/or affirmative defense for offset/unjust enrichment.

## II. DISCUSSION

### A. PLAINTIFFS' MOTION FOR FINDINGS OF FACT

Fed. R. Civ. P. 56(g), "Failing to Grant All the Requested Relief," provides, "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case."

The Plaintiffs' motion for the Court to enter findings of fact on undisputed facts (Dkt. 272) should be denied. The parties are free to agree on facts before trial in preparation of the pre-trial order, but the Court should not do so at this point.

### B. STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is

entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**C. WHETHER DETAINEES IN VWP ARE EMPLOYEES UNDER THE MWA**

"The MWA 'establishes minimum standards of employment within the state of Washington,' including setting the minimum wage" for employees. *Carranza v. Dovex Fruit Co.*, 190 Wn.2d 612, 618 (2018)(*quoting* RCW 49.46.005(1)). Under the MWA, "an employee includes any individual permitted to work by an employer." *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 871 (2012). "Because the MWA is based upon the [Fair Labor Standards Act ("FLSA")], federal authority under the FLSA often provides helpful guidance." *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 298 (2000).

1. Exclusions from Coverage Under MWA

As is relevant here, the MWA excludes from the definition of "employee:"

(j) Any individual whose duties require that he or she reside or sleep at the place of his or her employment or who otherwise spends a substantial portion of his or her work time subject to call, and not engaged in the performance of active duties;

(k) Any resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution; . . .

RCWA § 49.46.010(3).

Pointing to sections (j) and (k), GEO maintains that the Plaintiffs' claims must be dismissed because they are excluded from the definition of "employee" based on the plain language of the act. Dkts. 227 and 274. Each will be considered in turn.

a. Section (j) "Residential" Exclusion

GEO's motion for summary judgment based on section (j) should be denied. The Plaintiffs argue that GEO failed to plead section (j) as an affirmative - a defense for which it has the burden of proof. *See Mitchell v. Pimco Mut. Ins. Co.,* 134 Wash.App.723 (2006)(employer has burden of proof to demonstrate that MWA exemption applied); *David v. Bankers Life & Cas. Co.*, C14-766RSL, 2018 WL 3105985, at *4 (W.D. Wash. June 25, 2018)(examining MWA exemptions as affirmative defenses); *Magana v. Com. of the N. Mariana Islands*, 107 F.3d 1436,

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 11

1445 (9th Cir. 1997)(exemption under FLSA is an "affirmative defense that must be pleaded and proved by the defendant"). "Defendants may raise an affirmative defense for the first time in a motion for summary judgment only if the delay does not prejudice the plaintiff." *Magana*, at 1446. GEO's answer did assert that the MWA did not apply to the Plaintiffs. The issue was sufficiently raised. GEO has not waived the affirmative defense of the section (j) exclusion.

In any event, GEO is not entitled to summary judgment on its affirmative defense of the section (j) exclusion to the MWA. GEO fails to acknowledge the key phrase in the exclusion - it applies to individuals "who's duties require that he or she reside or sleep at the place of his or her employment." GEO fails to point to any facts which support the notion that the detainees' duties require that they sleep or reside at the NWDC. All parties agree that the detainees are in the custody of ICE and are not permitted to leave the facility until the detainees are ordered released or deported. It is their detention which leads to the requirement that they "reside or sleep" at the NWDC. Their participation in the program does not lead to the requirement that they "reside or sleep" at the NWDC. Further, GEO fails to point to facts which support the other clause of the section (j) exclusion: "who otherwise spends a substantial portion of his or her work time subject to call, and not engaged in the performance of active duties." GEO fails to point to evidentiary support that the detainees spend work time "on call" and not engaged in their kitchen, laundry, janitorial, etc. duties. GEO points to *Berrocal v. Fernandez,* 155 Wash.2d 585 (2005). In *Berrocal,* two sheepherders asserted that they should be paid minimum wage. *Id.* They willingly engaged in a contract of employment which required that they live on the ranch to be available 24 hours a day, seven days a week, to care for the sheep. *Id.* The *Berrocal* court found the section (j) exclusion applied and they were not entitled to minimum wage. The detainees here did not choose work that required that they reside and live at the NWDC. They were forced

to reside and sleep at the NWDC due to being in ICE custody. They then requested what work they could. At least, there are material issues of fact regarding application of this exclusion.

### b. Section (k) "Government Institution" Exclusion

GEO's motion for summary judgment based on the detainee exclusion found in RCW § 49.46.010(3)(k) (Dkt. 227) should be denied. GEO argues that the detainees at the NWDC are "residents" of a detention facility and so are excluded under the plain language of the statute. The statute clarifies, though, that it is those who are detained in "a state, county, or municipal . . . facility," of which the NWDC is not. GEO maintains that the statute does not define the work "state" and so its common usage – that of a "political system" is the proper one. Dkt. 227, at 11-12. GEO surmises that the federal government is a "political system" and so is included in the term "state." *Id.* GEO's assertions fall short. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). The word "state" is followed by "county, or municipal" indicating that the word state means Washington State. GEO's motion for summary judgment of dismissal on the grounds that the Plaintiffs' are not employees under the MWA due to their detainee status should be denied.

### 2. Economic-Dependence Test to Determine Whether Plaintiffs are Employees

Washington uses the "economic-dependence test developed by the federal courts in interpreting the [Fair Labor Standards Act]. The relevant inquiry is whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Anfinson,* at 871. "[T]he evaluation of whether an employment relationship exist[s] rest[s] upon the circumstances of the whole activity." *Becerra v. Expert Janitorial, LLC*, 176 Wn. App. 694, 708 (2013), *aff'd*, 181 Wn.2d 186 (2014). The "test is

flexible and depends on the totality of the circumstances of each case." *Id.* Washington courts consider several factors, including:

    (1) "The nature and degree of control of the workers;"

    (2) "The degree of supervision, direct or indirect, of the work;"

    (3) "The power to determine the pay rates of the methods of payment of the workers;"

    (4) "The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers;"

    (5) "Preparation of payroll and the payment of wages;"

    (6) "Whether the work was a specialty job on the production line;"

    (7) "Whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes;"

    (8) "Whether the premises and equipment of the employer are used for the work;"

    (9) "Whether the employees had a business organization that could or did shift as a unit from one worksite to another;"

    (10) "Whether the work was piecework and not work that required initiative, judgment or foresight;"

    (11) "Whether the employee had an opportunity for profit or loss depending upon the alleged employee's managerial skill;"

    (12) "Whether there was permanence in the working relationship;" and

    (13) "Whether the service rendered is an integral part of the alleged employer's business."

*Becerra,* at 717-718 (*citing Moreau v. Air France*, 356 F.3d 942, 947–48 (9th Cir. 2004)).

There are genuine issues of material fact as to whether GEO and the detainee workers have an employee-employer relationship under the MWA. The Plaintiffs' motion for summary judgment on this issue (Dkt. 221 refiled in redacted form Dkt. 233) should be denied. Likewise, GEO's argument that the Court can decide whether the Plaintiffs can satisfy the economic dependence test as a matter of law (Dkt. 274) should be denied. While there is evidence that GEO sets the work schedule for the detainees, provides the detainees with orientation, training, uniforms, equipment, and supervises and directs them in the detainees in their duties (Dkt. 233-3, at 24-25; Dkt. 223-7, at 6-10, 16-28; Dkt. 223-8, at 6-9; and Dkt. 223-9, at 5-7, and 12-13) there is also evidence that GEO does not choose who participates – detainees have to volunteer. Dkt. 275-9. There are issues regarding whether the work relationship is all that permanent. The detainees are in ICE custody and can be moved at any time. GEO points out that all the detainees' needs are met – lodging, meals, health care, etc. and asserts that the detainees are not "economically-dependent." Moreover, GEO does not have the last word on who is terminated from the program – ICE does. Dkt. 275-9, at 10. There are significant issues of fact as to whether the detainees in the VWP are "employees" under the MWA.

**D. GEO'S DEFENSE OF INTERGOVERNMENTAL IMMUNITY**

"The doctrine of intergovernmental immunity is derived from the Supremacy Clause, U.S. Const., art. VI, which mandates that 'the activities of the Federal Government are free from regulation by any state.'" *United States v. California,* 921 F.3d 865, 878 (9th Cir 2019)(*quoting Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014)). "State laws are invalid if they regulate the United States directly or discriminate against the Federal Government or those with whom it deals." *Id.* "When the state law is discriminatory, a private entity with which the federal government deals can assert immunity." *Boeing Co. v. Movassaghi*, 768 F.3d 832, 842

(9th Cir. 2014); *See also Davis v. Michigan Dep't. of Treasury,* 489 U.S. 803, 814 (1989)(*holding* that private entities or individuals who are subjected to discriminatory taxation on account of their dealings with the federal government can receive the protection of the intergovernmental immunity doctrine).

   1. <u>Whether application of the MWA "regulates the United States directly?"</u>

GEO has failed to show that application of the MWA here "directly interferes with the functions of the federal government." *Boeing Co. v. Movassaghi*, 768 F.3d 832, 840 (9th Cir. 2014). In *Boeing,* the Ninth Circuit found that California was prevented by the doctrine of intergovernmental immunity from imposing more onerous environmental regulations on a federal hazardous waste site that was being cleaned up by a federal contractor (Boeing) than the state applied to state hazardous waste sites. *Id.* The *Boeing* court noted that the California regulations attempted to mandate the way Boeing cleaned up the site and replaced the federal contract's provisions. *Id.* GEO has made no such showing here. Application of the MWA does not mandate the way in which GEO runs the VWP. It does not replace or add to the contractual requirements the GEO fulfill in running the program. Application of the statue would not regulate the terms of the contract itself. GEO has not demonstrated that the private Plaintiffs' enforcement of the MWA violates the doctrine of intergovernmental immunity because GEO has not shown that it directly interferes with the functions of the federal government.

GEO's assertion that, because it runs a federal immigration detention center it should be "treated the same as the federal government itself for purposes of intergovernmental immunity," is unpersuasive. Dkt. 227, at 17, n.6 (*citing California,* 921 F.3d at 882 n.7). GEO attempts to extend the reach of the doctrine too far. The case that GEO cites for that provision, *California,* did not make such a sweeping ruling. There, the Ninth Circuit found that some of the California

laws relating to the immigration facility at issue there did not violate the doctrine. *California,* at 884 (*holding* that only those provisions of the California law that "impose an additional economic burden exclusively on the federal government are invalid under the doctrine of intergovernmental immunity"). Further, GEO's claim would mean that no State or local laws would apply to it, contrary to the provisions in its contract with ICE. There are, at least, material issues of fact on whether GEO should be considered "the federal government itself" for immunity purposes.

    2. <u>Whether application of the MWA "discriminates against the Federal government or those with whom it deals" (GEO here)?</u>

"A state or local law discriminates against the federal government if it treats someone else better than it treats the government." *Boeing Co. v. Movassaghi*, 768 F.3d 832, 842 (9th Cir. 2014). The Ninth Circuit recently noted that:

> The doctrine [of intergovernmental immunity] has been invoked . . . "to prevent a state from imposing more onerous clean-up standards on a federal hazardous waste site than a non-federal project, . . . to preclude cities from banning only the U.S. military and its agents from recruiting minors, . . . and to foreclose a state from taxing the lessees of federal property while exempting from the tax lessees of state property . . . Those cases dealt with laws that directly or indirectly affected the operation of a federal program or contract.

*United States v. California*, 921 F.3d 865, 880 (9th Cir. 2019)(*citing Boeing,* at 842-43; *United States v. City of Arcata*, 629 F.3d 986, 988, 990–92 (9th Cir. 2010); and *Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376, 381–82, 387 (1960)).

GEO has not shown it is entitled to summary judgment based on a violation of the doctrine of intergovernmental immunity premised on discrimination. It has not demonstrated that there are no issues of fact as to whether application of the MWA here treats State contractors better than it treats the federal government's contractor GEO.

GEO points to the state's work program at the Special Commitment Center for sexually violent predators, Pierce County's work program for inmates and pre-trial detainees, and the State's contract to have GEO house prisoners out-of-state (which was never completed) to demonstrate that the State of Washington treats itself better than it treats the federal government. There are issues of fact as to whether these various programs are sufficiently similar to the VWP to show discrimination. Unlike GEO's NWDC, the Special Commitment Center and the Pierce County facilities are government owned and operated. Contractor involvement, if any, appears, on the record, to be limited. There are sufficient questions as to whether GEO points to a contractor that was sufficiently similar to it in either facility. Moreover, the contract (between GEO and the State of Washington) to which GEO refers was never finalized and related to the provision of services out-of-state. GEO's motion for summary judgment based on the doctrine of intergovernmental immunity should be denied.

### E. GEO'S DEFENSE OF DERIVATIVE SOVEREIGN IMMUNITY

"[G]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016), *as revised* (Feb. 9, 2016). This immunity is not absolute. *Id*. A contractor is entitled to immunity when it performs work "authorized and directed by the Government of the United States." *Id*., at 673. "[D]erivative sovereign immunity . . . is limited to cases in which a contractor had no discretion in the design process and completely followed government specifications." *Cabalce v. Thomas E. Blanchard & Associates, Inc*., 797 F.3d 720, 732 (9th Cir. 2015).

GEO's motion for summary judgment, based on derivative sovereign immunity (Dkt. 227) should be denied. GEO has not shown that it was directed by the government to pay

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 18

participants in the VWP only $1 per day.  GEO has not shown that it had "no discretion in the design process and completely followed government specifications."  *Cabalce*, at 732.  The record indicates that GEO has, in the past, paid workers more than a $1 a day and has the ability to, and has requested, changes to the contracts, including modifications to be reimbursed more than was originally agreed upon.  GEO's motion to for summary judgment based on derivative sovereign immunity (Dkt. 227) should be denied.

### F. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT TO DISMISS GEO'S COUNTERCLAIM/DEFENSE FOR OFFSET/UNJUST ENRICHMENT

GEO must make a showing on three elements to make a counterclaim or affirmative defense based on offset/unjust enrichment.  *Young v. Young*, 164 Wn.2d 477, 484 (2008)(*internal citation omitted*).  It must show (1) "a benefit conferred" on the detainees by GEO; (2) "an appreciation or knowledge by the [detainees] of the benefit;" and (3) "the acceptance or retention by the [detainees] of the benefit under such circumstances as to make it inequitable for the [detainees] to retain the benefit without the payment of its value."  *Id.*

The Plaintiffs move to dismiss GEO's counterclaim or affirmative defense based offset/unjust enrichment.  It is undisputed that GEO has provided the detainees with benefits - lodging, meals, health care, etc.  There is no evidence that the detainees are not aware of the benefits conferred.  Moreover, the Court has already ruled in the February 28, 2018 Order on Plaintiff's Motion to Dismiss or Strike Defendant's Counterclaims and Affirmative Defenses:

> The second element [of the unjust enrichment test] is satisfied under the theory that if Plaintiff receives an award for lost wages from Defendant, Plaintiff has received both the benefit conferred and the award for lost wages, both at Defendant's expense.  The third element is satisfied under the theory that such compensation would unfairly increase Defendant's burden to comply with ICE contract obligations.

Dkt. 40, at 5. Even though this is a motion for summary judgment, the result is the same – there are facts at issue precluding summary judgment. GEO points out that if it has to pay detainees more than the amount allotted under the ICE contract for the VWP, it may well have to bear that cost. Dkt. 228, at 2. Whether that would be "inequitable" is an issue of fact for the jury.

Moreover, as they did in the motion to dismiss, Plaintiffs again advance the argument, that GEO cannot recover restitution from Plaintiff because it has already been fully paid by ICE. As was the case in the motion to dismiss, is still valid – that argument is relevant to the second and third elements and "is an equitable argument better reached at trial." Dkt. 40, at 5. The Plaintiff's motion for summary judgment on the GEO's counterclaim/affirmative defense of unjust enrichment/offset should be denied.

This issue appears to be triable only if Plaintiffs prevail on their MWA claims.

### G. CONCLUSION

The parties' cross motions for summary judgment should be denied.

### III. ORDER

It is **ORDERED** that:

- The Plaintiffs' Motion for Summary Judgment (Dkt. 221 refiled in redacted form Dkt. 233) **IS DENIED;** and

- The GEO Group, Inc.'s Motion for Summary Judgment (Dkt. 227) **IS DENIED**.

The Clerk is directed to send copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 7th day of April, 2020.

ROBERT J. BRYAN
United States District Judge