The Honorable Robert J. Bryan

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

9

10

11

12

13

14

15

UGOCHUKWU GOODLUCK NWAUZOR,
FERNANDO AGUIRRE-URBINA,
individually and on behalf of all those
similarly situated,

        Plaintiffs/Counter-Defendants,

v.

THE GEO GROUP, INC.,

        Defendant/Counter-Claimant.

Case No. 3:17-cv-05769-RJB

**DEFENDANT THE GEO GROUP, INC.'S**
**MOTION FOR RECONSIDERATION OF**
**ORDER ON CROSS MOTIONS FOR**
**SUMMARY JUDGMENT (ECF 280)**

**DATE ON MOTION CALENDAR:**
April 21, 2020

16

17

18

19

20

21

22

23

24

25

26

27

---

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR RECONSIDERATION OF ORDER ON CROSS
MOTIONS FOR SUMMARY JUDGMENT (ECF 280)
(3:17-CV-05769-RJB)

52806018;1

**AKERMAN LLP**

1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

Defendant The GEO Group, Inc. ("GEO") respectfully moves for reconsideration of the Court's April 7, 2020 Order on Cross Motions for Summary Judgment ("Order"). ECF 280. Local Civil Rule 7(h)(1) authorizes reconsideration upon a showing of an "error that is plain and indisputable, and that amounts to a complete disregard of the controlling law **or** the credible evidence in the record." *Casteel v. Charter Commc'ns Inc.,* No. C13-5520 RJB, 2014 WL 6751219, at *1 (W.D. Wash. Dec. 1, 2014) (emphasis added). This standard is met here.

## ARGUMENT

### A.    The Court Did Not Address GEO's Derivative Sovereign Immunity Defense, but Instead Ruled Upon An Argument Not Raised In GEO's Motion.

Rather than address the derivative sovereign immunity ("DSI") argument in GEO's Motion— which is wholly unrelated to GEO's authority to pay some amount more than $1 per day—the Court repeated, nearly verbatim, its prior ruling from the State of Washington's case where different DSI arguments and facts were at issue. *Compare* ECF 280, 18-19 *with State of Washington v. GEO*, ECF 288, 9 (August 6, 2019). GEO provides a brief summary of the argument not addressed by the Court here, while referring the Court to GEO's briefing for a complete description of the argument. *See* ECF 227, 22-25; 278, 11. GEO's contract with ICE requires it to operate the Voluntary Work Program ("VWP"). 229-1, 82. It also states that detainees cannot be employees, and forecloses detainees from becoming employees by requiring certifications that would be impossible for any detainee to complete. *Id.*; *see also* ECF 227, 4. There is <u>no</u> discretion in the contract to for detainees to be employees, yet Plaintiffs' argument would *require* GEO to make detainees employees, since only employees are entitled to a minimum wage. Summary judgment is therefore appropriate.

### B.    The Court Disregarded Evidence in the Record Regarding GEO's WMWA Defense.

The Court "complet[ly] disregard[ed] . . . credible evidence in the record" in reaching the conclusion that detainees do not fall within the scope the Resident Exception to the Washington Minimum Wage Act ("WMWA"). 49.41.10(3)(j). The Court erroneously stated that "GEO fail[ed] to point to <u>any facts</u> which support the notion that the detainees' duties require that they sleep or reside at the NWDC." ECF 280, 12 (emphasis added). To the contrary, GEO presented ample factual

---

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR RECONSIDERATION OF ORDER ON CROSS
MOTIONS FOR SUMMARY JUDGMENT (ECF 280)
(3:17-CV-05769-RJB) – PAGE 1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

support, which Plaintiffs do not contest. As demonstrated by the record, GEO, in connection with ICE, develops and determines the relevant duties for each VWP position—including that <u>all participants must be detainees who live and sleep at the facility to be eligible to participate in the VWP</u>. *See* ECF 227, 4,9; PBNDS § 5.8; ECF 229-3, Johnson Dec. ¶¶ 12, 23-23; ECF 228, Dec. of Scott ¶¶ 4-6. The duties that the individuals in the VWP perform are specifically crafted by GEO and ICE to reduce the negative impacts of confinement. PBNDS § 5.8. The purpose of the program and this value would be lost if the positions were open to individuals who didn't live and sleep at the NWIPC, as it would do little to curb idleness or increase morale to have detainees watch other individuals perform the VWP tasks. GEO also presented evidence demonstrating that the VWP requires on-site presence at all times, as the exact timing of each task is unknown on any given day. ECF 274, 10. It would be logistically unworkable to have individuals performing VWP tasks who lived offsite and would make little sense to have someone travel to the facility just to, for example, place spoons on a tray at each meal. ECF 274-5. Thus, living and sleeping in the facility is a requirement for participation in the program. The most salient facts the Court disregarded are listed, in full, in the attached <u>Exhibit A</u>.

There is no question the VWP duties and requirements are set by GEO and ICE. ECF 229-3. Even Plaintiffs agree that GEO defines the duties and requirements for the VWP. ECF 279, 7 ("GEO develops and manages the VWP"). The WMWA does not list certain *tasks or duties* that would not qualify for the exemption; rather, the statute exempts *individuals*, who are on notice that the position for which they are applying is not open to individuals who do not sleep or reside at the place where the tasks are performed.[1] The critical inquiry is whether the party soliciting the work (and providing lodging as part of the arrangement) decides to <u>require</u> that anyone who occupies the position live and sleep onsite. Here, GEO (and ICE) has done just that.

---

[1] This reading is also consistent with the Washington Court of Appeals analysis of the Resident Exception: "In none of these categories does coverage vary from hour to hour depending upon the type of activity in which an employee is momentarily engaged." *Strain v. W. Travel, Inc.*, 117 Wash. App. 251, 255 (2003). If particular duties governed the analysis, an employee could be exempt from moment to moment.

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR RECONSIDERATION OF ORDER ON CROSS
MOTIONS FOR SUMMARY JUDGMENT (ECF 280)
(3:17-CV-05769-RJB) – PAGE 2

52806018;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

In the face of this significant evidence, Plaintiffs did **not point to a single piece of evidence** that would lead a trier of fact to find in their favor. ECF 272 15-18. This much is clear from their briefing on this issue, which fails to include **even one** citation to evidentiary support for their position. ECF 272 15-18. Thus, the record is undisputed that GEO *requires* that individuals be detained, and live and sleep at the facility, as a prerequisite to their participation in the VWP. ECF 227, 4, 10. Once detainees are no longer living at the facility, they cannot continue to participate in the program. No. 227, 10. GEO has never permitted an individual who did not live and sleep at the facility to participate in the program. Dkt. No. 227, 10.  Accordingly, reconsideration is warranted.

**C.    The Court Plainly Erred in Adjudicating GEO's Direct-Regulation Intergovernmental-Immunity Defense.**

This Court also made two related, plain errors in adjudicating GEO's direct-regulation defense. It stated that "[t]here are, at least, material issues of fact on whether GEO should be considered 'the federal government itself' for immunity purposes," and it appears to have done so out of concern that "GEO's claim would mean that no State or local laws would apply to it." ECF 280, 17. But under the direct-regulation doctrine, a federal contractor is regarded as the same as the federal government itself **as a matter of law**. *Boeing Co. v. Movassaghi*, 768 F.3d 832, 844 (9th Cir. 2014) ("[t]he federal government's decision to hire Boeing to perform the cleanup rather than using federal employees **does not affect our immunity analysis** on this ground); *see also United States v. California*, 921 F.3d 865, 882 n.7 (9th Cir. 2019) ("[f]or purposes of intergovernmental immunity, federal contractors are treated the same as the federal government itself."). Nor does this prove too much, since the direct-regulation doctrine of intergovernmental immunity only applies where the federal government can prevail on the merits, where the law "directly interferes with the functions of the federal government," *Boeing*, 768 F.3d at 842; that is, where the interference is *substantial*. Intergovernmental immunity does not immunize the Federal Government or its contractors from *every* form of state and local regulation. Here, there can be no question that application of minimum-wage requirements substantially interferes with federal operations by "mandat[ing] the ways in which [GEO] renders services that the federal government hired [GEO] to perform." *Id.* Contrary to

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR RECONSIDERATION OF ORDER ON CROSS
MOTIONS FOR SUMMARY JUDGMENT (ECF 280)
(3:17-CV-05769-RJB) – PAGE 3
52806018;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

the Court's statement that classifying detainees as employees would not "replace or add contractual requirements" for operating the VWP, classifying detainees as "employees" would require a complete overhaul of the GEO-ICE contract and the federal government's directives.[2] GEO would be required to negotiate a revised staffing plan with ICE to both increase the number of staff administering the program, ECF 227, and to include all detainees as employees—which, would either change the cost of GEO-ICE contract or altogether eliminate the VWP. ECF 22, 55; ECF 227, 17. Thus, the Court's ruling that there are "material issues of fact" as to whether GEO is the same as the federal government for purposes of the direct-regulation doctrine of intergovernmental immunity is an incorrect statement of law and therefore should be reconsidered.

**D.  This Court Disregarded Binding Supreme Court Precedent.**

The Court also concluded that there "are issues of fact as to whether these various programs are sufficiently similar to the VWP to show discrimination." ECF 280. The Court did not explain how it determined, as a matter of law, which comparators were relevant to its intergovernmental immunity analysis. Instead, it (incorrectly) assumed that the proper comparators for the intergovernmental immunity analysis are private State contractors. This conclusion contravenes controlling Supreme Court precedent and therefore constitutes manifest error. The issue of what institutions are appropriate comparators is a key legal issue that must be resolved before trial. Thus this Court should revisit its Order to, at a minimum, make the requisite legal findings prior to trial.

*Dawson v Steager* provides the legal analysis for identifying the appropriate comparators for purposes of the intergovernmental immunity analysis. 139 S. Ct. 698, 705, 203 L. Ed. 2d 29 (2019). It

---

[2] The federal government would need to eliminate or revise the certification requirements for all employees as discussed above as they relate to DSI. Among the certifications all employees must submit to ICE, include a promise not to provide preferential treatment to one detainee over another, a promise not to disclose information from detainee's immigration cases unless expressly authorized by the contract, a promise not to socially interact with other detainees, a promise not to interact with the families of other detainees except as approved by the employee's job description, and a promise not to accept gifts from a detainee's family members "no matter how trivial the gift, favor or service." ECF 229, 62. And, if VWP participants were now "employees," rather than providing all detainees an opportunity to reduce idleness and improve morale, the fundamental underlying purposes of the VWP, only those with a social security number could participate. ECF 229, 63,71 (requiring all NWIPC employees to have a valid social security number); *see also* 8 U.S.C. § 1324a(a)(1)(A), (a)(2).

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR RECONSIDERATION OF ORDER ON CROSS
MOTIONS FOR SUMMARY JUDGMENT (ECF 280)
(3:17-CV-05769-RJB) – PAGE 4

52806018;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

is not through competing factual evidence introduced by the parties. Rather, *Dawson* makes clear that the comparators in an intergovernmental immunity analysis are determined by *the legislature*. *Id.* "Whether a State treats similarly situated state and federal employees differently **depends on how the State has defined the favored class** . . . So how has West Virginia chosen to define the favored class in this case? The **state statute** singles out for preferential treatment retirement plans associated with West Virginia police, firefighters, and deputy sheriffs." *Id.* (emphasis added). Here, the **state statute** at issue is the "Government Institution" exception to the WMWA, which defines the "favored class" as any "resident, inmate, or patient of a [Washington] state, county, or municipal correctional, detention, treatment or rehabilitative institution." 49.46.10(3)(k); *as modified by* ECF 280,11. The proper comparators for the federal detainees at the NWIPC are thus any "resident[s], inmates[s], or patient[s]" covered by the statute, including, for example, residents of the Special Commitment Center ("SCC"). *Id.*; *see also* ECF 272, 6 (conceding SCC is exempt from WMWA).

Directly contrary this clear directive from *Dawson*, the Court ruled that the focus should be not on the State—the entity that clearly receives a benefit—but instead on the State's private contractors who *may* not receive a benefit under the statute.[3]  This ruling is in direct conflict with *Dawson*:

> "[T]he relevant question isn't whether federal retirees are similarly situated to state retirees who *don't* receive a tax benefit; the relevant question is whether they are similarly situated to those who *do*." 139 S. Ct. at 705–06 (internal citations omitted).

Thus, the proper comparison here is to those who *receive* the benefit as defined by the legislature. Indeed, the same principles in *Dawson* were applied in *North Dakota v. United States*, 495 U.S. 423, 439 (1990). In *North Dakota*, the state-imposed regulations upon *all* liquor retailers within the state. *Id.* Thus, the Court compared the Federal Government to *all other* liquor retailers in the State. *Id.* Further, in *North Dakota,* like in *Dawson* (and here) the comparators were clear from the scope of the

---

[3] The Court did not resolve whether the definition in 49.46.10(3)(k) covers private State contractors. Indeed, Plaintiffs argue that private State contractors are not covered. If the Court were to determine private State contractors are not covered by the Government Institution exception, then *Dawson* makes plain that they are not the proper comparators because they are not the "favored class" but rather the class that does not receive a benefit.

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR RECONSIDERATION OF ORDER ON CROSS
MOTIONS FOR SUMMARY JUDGMENT (ECF 280)
(3:17-CV-05769-RJB) – PAGE 5
52806018;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

1    **state statute** drafted by the legislature.[4] Here, the State (and its related entities) benefit from the

2    Government Institution exception to the WMWA. As a result, the "favored class" is comprised of

3    Washington State prisoners and civil detainees. 49.46.10(3)(k); *as modified by* ECF 280, 11. This

4    analysis is consistent with *Dawson's* explanation that "if a State exempts from taxation all state

5    employees, it must likewise exempt all federal employees." *Dawson*, 139 S. Ct. at 704. Substituting

6    the relevant factors here, the comparison stands: "if a State exempts from [the WMWA] all state

7    [detainees], it must likewise exempt all federal [detainees]." *Id.* Because the legal analysis in this

8    Court's ruling is in conflict with binding legal precedent, the Order constitutes manifest error.

9    Accordingly, this Court should reconsider its Order. Had the Court addressed the clear legal

10   principles in *Dawson*, it would have correctly defined the comparators for the NWIPC's detainees: all

11   Washington State detainees, regardless of contractor involvement. Had the Court applied the binding

12   legal principles from *Dawson*, under the Court's undisputed facts, GEO is entitled to immunity.

**CONCLUSION**

13   GEO respectfully asks this Court to reconsider its Order on the Cross Motions for Summary

14   Judgment and grant GEO's Motion for the issues raised herein.

15   Respectfully submitted, this 21st day of April, 2020.

16

17                                   By: *s/ Colin L. Barnacle*
                                     **AKERMAN LLP**
18                                   Colin L. Barnacle (Admitted *pro hac vice*)
                                     Christopher J. Eby (Admitted *pro hac vice*)
19                                   Ashley E. Calhoun (Admitted *pro hac vice*)
                                     Adrienne Scheffey (Admitted *pro hac vice*)
20                                   1900 Sixteenth Street, Suite 1700
                                     Denver, Colorado 80202
21

22

23   ---

[4] Once the comparators are identified, *Dawson* provides for a second step in the analysis where the court may consider
24   whether there are "significant differences" between the detainees at the NWIPC and the detainees who are not entitled to
     minimum wage under the Government Institution exception. *Dawson*, 139 S. Ct. at 705. Plaintiffs conflate this second
25   step with the initial inquiry and ask this Court to find that there are significant differences between state-run institutions
     and contractor-run institutions as a threshold matter. ECF 272, 23. This misreads *Dawson*. If all government contractors
     (state and federal) are not covered by the Government Institution exception, then they are, by definition, not proper
26   comparators. In any event, the record is clear that there are no significant differences between detainees at state-run and
     contractor-run facilities, including GEO and the SCC. In both facilities the detainees are in the civil custody *of the*
27   *government* and the facilities are performing a uniquely governmental function.

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR RECONSIDERATION OF ORDER ON CROSS
MOTIONS FOR SUMMARY JUDGMENT (ECF 280)
(3:17-CV-05769-RJB) – PAGE 6

52806018;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

Telephone:  (303) 260-7712
Facsimile:   (303) 260-7714
Email: colin.barnacle@akerman.com
Email: christopher.eby@akerman.com
Email: ashley.calhoun@akerman.com
Email: adrienne.scheffey@akerman.com

By: *s/ Joan K. Mell*
**III BRANCHES LAW, PLLC**
Joan K. Mell, WSBA #21319
1019 Regents Boulevard, Suite 204
Fircrest, Washington 98466
Telephone:  (253) 566-2510
Facsimile:   (281) 664-4643
Email: joan@3brancheslaw.com

*Attorneys for Defendant The GEO Group, Inc.*

DEFENDANT THE GEO GROUP, INC.'S MOTION
FOR RECONSIDERATION OF ORDER ON CROSS
MOTIONS FOR SUMMARY JUDGMENT (ECF 280)
(3:17-CV-05769-RJB) – PAGE 7

52806018;1

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

**PROOF OF SERVICE**

  I hereby certify on the 21st day of April 2020, pursuant to Federal Rule of Civil Procedure 5(b), I electronically filed and served the foregoing **DEFENDANT THE GEO GROUP, INC.'S MOTION FOR RECONSIDERATION OF ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF 280)** via the Court's CM/ECF system on the following:

**SCHROETER GOLDMARK & BENDER**
Adam J. Berger, WSBA #20714
Lindsay L. Halm, WSBA #37141
Jamal N. Whitehead, WSBA #39818
Rebecca J. Roe, WSBA #7560
810 Third Avenue, Suite 500
Seattle, Washington 98104
Telephone:  (206) 622-8000
Facsimile:  (206) 682-2305
Email: hberger@sgb-law.com
Email: halm@sgb-law.com
Email: whitehead@sgb-law.com
Email: roe@sgb-law.com

**THE LAW OFFICE OF R. ANDREW FREE**
Andrew Free (Admitted *Pro Hac Vice*)
P.O. Box 90568
Nashville, Tennessee 37209
Telephone:  (844) 321-3221
Facsimile:  (615) 829-8959
Email: andrew@immigrantcivilrights.com

**OPEN SKY LAW PLLC**
Devin T. Theriot-Orr, WSBA #33995
20415 72nd Avenue S, Suite 100
Kent, Washington 98032
Telephone:  (206) 962-5052
Facsimile:  (206) 681-9663
Email: devin@openskylaw.com

**MENTER IMMIGRATION LAW, PLLC**
Meena Menter, WSBA #31870
8201 164th Avenue NE, Suite 200
Redmond, Washington 98052
Telephone:  (206) 419-7332
Email: meena@meenamenter.com

*Attorneys for Plaintiffs*

       *s/ Nick Mangels*
       Nick Mangels

PROOF OF SERVICE
(3:17-CV-05769-RJB) – PAGE 8

**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  303-260-7712

52806018;1