UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC., a Florida corporation,<br><br>Defendant. | C17-5806RJB |
| UGOCHUKWU GOODLUCK NWAUZOR, individually and on behalf of all those similarly situated, and  FERNANDO AGUIRRE-URBINA, individually,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, INC., a Florida corporation,<br><br>Defendant | C17-5769RJB<br><br>COURT'S CASE INTRODUCTION TO ALL JURORS FOR SECOND TRIAL |

Dated this 5th day of October, 2021.

ROBERT J. BRYAN
United States District Judge

COURT'S CASE INTRODUCTION TO ALL JURORS

Ladies and Gentlemen:

We are conducting this part of a civil trial remotely, on the Zoom platform, because of the pandemic.  This means that jurors will participate by computer from home or your private space or office.  The obligations of jurors will be the same as if you were in the courtroom.  You must be able to give these cases your full attention from 9:00 a.m. until discharged.  Also, you must follow the orders and instructions of the Judge and court staff.

The first order of business today is for me to tell you a bit about the cases we are going to try and to introduce the participants in the trial.

We have joined two cases together for the first phase of this trial, because the two cases share common issues.  After those issues are resolved, the same jury may be called upon to hear a second phase of the case.

The Plaintiff in the first case is the State of Washington.  The State here is represented by Assistant Attorneys General Marsha Chien, Andrea Brenneke and Lane Polozola

The Plaintiffs in the second case are Ugochukwu Goodluck Nwauzor and Fernando Aguirre-Urbina.  Their lawyers are Jamal Whitehead and Adam Berger.  These Plaintiffs are here on their own behalf, and Mr. Nwauzor as the representative of a class of others.  Their claims are described as a class action.  A class action is a lawsuit that has been brought by one or more plaintiffs on behalf of a larger group of people who have similar legal claims.  All of these people together are called a "class."  In a class action, the claims of many individuals can be resolved at the same time instead of requiring each member to sue separately over the same issue.  Because of the large number of possible claims that are in the case, not everyone in the class will testify.  The evidence at trial applies to all class members.  All members of the class will be bound by the result of this trial.

COURT'S CASE INTRODUCTION TO ALL JURORS

In this second case, the Plaintiffs' class consists of the following:

All civil immigration detainees who participated in the Voluntary Work Program at the Northwest Detention Center at any time between September 26, 2014, and the date of final judgment in this matter.

The Defendant in both cases is The GEO Group, Inc., a corporation also known as "GEO." GEO's lawyers are Jacqueline Arango, Wayne Calabrese, Adrienne Scheffey and Al Roundtree.

The parties have agreed on certain facts that will give you the background of the issues. The following facts are admitted by the parties:

1. GEO owns and operates the Northwest ICE Processing Center ("NWIPC"), which was known from 2005 to 2019 as the Northwest Detention Center ("NWDC"). It is located at 1623 East J Street, Tacoma, Washington.

2. Since October of 2005, GEO has contracted with U.S. Customs and Immigration Enforcement ("ICE") within the U.S. Department of Homeland Security ("DHS") to provide civil immigration detention management services at the Center for adults held in administrative custody as they await immigration status review by ICE and the federal judiciary.

3. GEO has expanded the capacity of the Center twice. The Center initially had the capacity to house between 500 to 800 individuals. In July 2006, GEO expanded the Center to house up to 1,000 individuals. In October 2009, GEO expanded the Center a second time so that it now has the capacity to house up to 1,575 individuals.

4. Pursuant to the Center contract between GEO and ICE, GEO provides detention services to ICE including, but not limited to: the building, management and administration, security, clean and vermin free facilities, food service with three nutritious meals per day, clean uniforms and bedding, and barbershop/grooming services.

COURT'S CASE INTRODUCTION TO ALL JURORS

5.    Pursuant to the Center contract between GEO and ICE, GEO is required to "perform in accordance with" specific "statutory, regulatory, policy, and operational" constraints, including the ICE/DHS Performance Based National Detention Standards as well as "all applicable federal, state, and local laws."

6.    The Performance Based National Detention Standards, and its predecessor the National Detention Standards, is a set of standards developed by ICE to ensure that all entities it contracts with provide safe and secure facilities.

7.    Performance Based National Detention Standard 5.8 requires that GEO offer detained persons an opportunity to work in a Voluntary Work Program.

8.    Since October of 2005, GEO has offered detainees positions in its Voluntary Work Program.

9.    On any given day, there could be as many as 470 positions for detainees in the Voluntary Work Program at the Center.

10.    While detained, detainees do not have the opportunity to leave the Center or work outside of the Center, unless explicitly authorized by ICE.

11.    GEO does not review whether detainee-workers have work authorization when reviewing their requests/applications to positions in the Voluntary Work Program.

12.    GEO maintains job descriptions for Voluntary Work Program positions.

13.    Positions that are available to detainees in the Voluntary Work Program are varied, including in the kitchen, in the laundry room, cleaning of common areas, and cutting hair in the barbershop.

14.    GEO provides detainees in Voluntary Work Program positions with all equipment, materials, supplies, uniforms, and personal protective equipment necessary to their Voluntary Work Program position.

COURT'S CASE INTRODUCTION TO ALL JURORS

15.    GEO has the option to pay more than $1/day to detainee-workers for work performed in the VWP at the Center.

16.    GEO has never paid detainees in the Voluntary Work Program the state minimum wage.

17.    GEO has paid and continues to pay detainees in VWP positions $1 per day.

18.    The Performance Based National Detention Standard 5.8 states: "Detainees shall receive monetary compensation for work completed in accordance with the facility's standard policy. The compensation is at least $1.00 (USD) per day."

19.    GEO employs non-detainee employees, including two or three janitors, at the Center.

20.    Washington's hourly minimum wage from 2005 to the present year has gone from $7.35 on January 1, 2005 to $13.69 on January 1, 2021.

21.    The Minimum Wage Act applies to all employment relationships that are not covered by a statutory exemption regardless of the profitability of the employer.

22.    Mr. Nwauzor is a citizen of Nigeria, and was granted asylum in the United States in January 2017.

23.    Mr. Nwauzor was held at the Center as a civil immigration detainee from approximately June 2016 until January 2017.

24.    Mr. Nwauzor held a Voluntary Work Program position during his detention at the Center.

25.    Mr. Nwauzor obtained lawful permanent residence status, commonly known as a "green card," in July 2018.

All parties agree that the first issues to be tried are whether GEO is required to pay the hourly minimum wage to detainees in the Voluntary Work Program at the Center under the State

COURT'S CASE INTRODUCTION TO ALL JURORS

of Washington's Minimum Wage Act; and does intergovernmental immunity render GEO immune from liability under the Minimum Wage Act?

The Plaintiff State of Washington brings the first case as an enforcement action, to require GEO to adhere to Washington State's Minimum Wage Act.  In the second case, the class Plaintiffs' claim is to recover money they claim is due, under the Minimum Wage Act, for work performed as part of the Voluntary Work Program.

Defendant denies the Plaintiffs' claims and affirmatively claims that GEO is immune from Plaintiffs' claims under the law.

Plaintiffs deny Defendant's claims.

The parties have the burden of proving any claim or affirmative defense by a preponderance of the evidence, which means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

GEO has been the subject of news reports on other subjects lately that are not directly relevant to these cases.  These cases are not about whether the government's contracting with private entities to operate detention facilities is a good or bad policy, nor is it about specific events at the Center, unrelated to the issue of minimum wage and the Voluntary Work Program.  These cases are also not about United States' immigration policy or border issues.

An important part of these cases is jury selection.  In order that the cases be tried before an impartial jury, the lawyers and I will ask you questions, not to embarrass you or to pry into your private affairs, but to determine if you are unbiased and without preconceived ideas which might affect the cases.  You should not withhold information in order to be seated on this particular jury.  You should be straightforward in your answers rather than answering in the way you feel the lawyers or I expect you to answer.  Your answers will be under oath.  It is presumed that when a jury has been selected and accepted by both sides, each of you will keep an open

COURT'S CASE INTRODUCTION TO ALL JURORS

mind until the cases are finally submitted, will accept the instructions of the Court, and will base any decision upon the law and the facts uninfluenced by any other considerations.  The purpose of the questions is to determine if you have that frame of mind.

The lawyers have the right and duty to challenge any jurors for cause.  They may also challenge a certain number of jurors without giving any reason as a guarantee to both parties that they may remove some jurors if they wish.  You should not take offense if you are challenged, because the challenges are not exercised as a personal reflection on you.

A number of witnesses may testify in these cases.  I have asked counsel to list the witnesses that are local, and I will read the list to you.  Make a mental or written note of anyone on the list of witnesses that you know, or know of, and we will ask you about that in the questioning.  Possible witnesses are: _____

We are going to divide you up into groups of _____ for inquiry into whether each of you can serve as fair and impartial jurors in these cases.

I ask each of you for your patience.  We will work as fast as we can.

COURT'S CASE INTRODUCTION TO ALL JURORS