**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UGOCHUKWU GOODLUCK NWAUZOR; FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated,<br>   *Plaintiffs-Appellees,*<br><br>v.<br><br>THE GEO GROUP, INC., a Florida corporation,<br>   *Defendant-Appellant.* | No. 21-36024<br><br>D.C. No. 3:17-cv-05769-RJB<br><br>ORDER CERTIFYING QUESTIONS TO WASHINGTON SUPREME COURT |
| STATE OF WASHINGTON,<br>   *Plaintiff-Appellee,*<br><br>v.<br><br>THE GEO GROUP, INC.,<br>   *Defendant-Appellant.* | No. 21-36025<br><br>D.C. No. 3:17-cv-05806-RJB |

Filed March 7, 2023

Before: Mary H. Murguia, Chief Judge, and William A. Fletcher and Mark J. Bennett, Circuit Judges.

# SUMMARY[*]

## Certification Order / Washington Law

In a case in which federal civil immigration detainees—who are held in the Northeast ICE Processing Center ("NWIPC"), a private detention center in Tacoma, Washington, operated by GEO Group—challenge GEO's practice of paying them less than the State's minimum wage to work at the detention center, the panel certified the following questions to the Washington Supreme Court:

1) In the circumstances of this case, are the detained workers at NWIPC employees within the meaning of Washington's Minimum Wage Act ("MWA")?

2) If the answer to the first question is yes, does the MWA apply to work performed in comparable circumstances by civil detainees confined in a private detention facility operating under a contract with the State?

3) If the answer to the first question is yes and the answer to the second question is no, and assuming that the damage award to the detained workers is sustained, is that damage award an adequate legal remedy that would foreclose equitable relief to the State in the form of an unjust enrichment award?

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# COUNSEL

Michael W. Kirk (argued), Charles J. Cooper, J. Joel Alicea, Joseph O. Masterman, and Tiernan B. Kane, Cooper and Kirk PLLC, Washington, D.C., for Defendant-Appellant.

Jennifer D. Bennett (argued) and Neil K. Sawhney, Gupta Wessler PLLC, San Francisco, California; Gregory A. Beck, Gupta Wessler PLLC, Washington, D.C.; Jamal N. Whitehead, Adam J. Berger, Lindsay L. Halm, and Rebecca J. Roe, Schroeter Goldmark & Bender, Seattle, Washington; Robert Andrew Free, Law Office of R. Andrew Free, Atlanta, Georgia; Meena Pallipamu, Meena Pallipamu Immigration Law PLLC, Seattle, Washington; Devin T. Theriot-Orr, Open Sky Law PLLC, Kent, Washington; for Plaintiffs Appellees Ugochukwu Goodluck Nwauzor and Fernando Aguirre-Urbina.

Marsha J. Chien (argued), Andrea Brenneke, and Lane Polozola, Assistant Attorneys General; Robert W. Ferguson, Attorney General of Washington State; Office of the Washington State Attorney General; Seattle, Washington; for Plaintiff-Appellee State of Washington.

Christopher J. Hajec and Gina M. D'Andrea, Immigration Reform Law Institute, Washington, D.C., for Amicus Curiae Immigration Reform Law Institute.

Catherine K. Ruckelshaus, National Employment Law Project, New York, New York, for Amicus Curiae National Employment Law Project Inc.

Kwi "Kat" Choi and Robin L. Goldfaden, Deputy Attorneys General; Vilma R. Palma-Solana and Marisa Hernandez-Stern, Supervising Deputy Attorneys General; Michael L. Newman and Satoshi Yanai, Senior Assistant Attorneys

General; Rob Bonta, Attorney General of California; California Department of Justice; Los Angeles, California; for Amici Curiae the States of California, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Rhode Island, and Vermont and the District of Columbia.

Hannah Woerner, Columbia Legal Services, Olympia, Washington; Jeremiah Miller, Fair Work Center, Seattle, Washington; for Amici Curiae La Resistencia, Fair Work Center, and Prof. Angelina Snodgrass Godoy.

Eunice Hyunhye Cho, American Civil Liberties Union, National Prison Project, Washington, D.C.; Aditi Shah, American Civil Liberties Union, National Prison Project, New York, New York; for Amici Curiae the American Civil Liberties Union (ACLU), the ACLU of Washington, and the National Immigrant Justice Center.

Matt Adams, Aaron Korthuis, Leila Kang, and Michael Hur, Northwest Immigrant Rights Project, Seattle, Washington, for Amicus Curiae the Northwest Immigrant Rights Project.

# ORDER

Plaintiffs-appellees are (1) a class of federal civil immigration detainees held in a private detention center in Tacoma, Washington, operated by defendant-appellant GEO Group ("GEO") pursuant to a contract with the federal government, and (2) the State of Washington ("State"). The detainees perform compensated essential work at GEO's detention center. The detained workers challenge GEO's practice of paying them less than the State's minimum wage to work at the detention center. GEO appeals from the district court's denial of GEO's motion for judgment as a matter of law; its award of damages to the class; and its award of unjust enrichment to the State. We have jurisdiction pursuant to 28 U.S.C. § 1291.

The class's damages claim under the State's Minimum Wage Act ("MWA") turns on two important and unresolved issues of Washington law. Stated briefly, those issues are: (1) whether plaintiffs are, in the circumstances of this case, "employees" under the MWA; and (2) whether the government-institutions exemption of the MWA extends to work performed by plaintiffs. The State's unjust enrichment claim depends on another important and unresolved issue of Washington law: whether the class's damages award on their MWA claim is an adequate legal remedy that forecloses an award to the State of equitable relief under the MWA in the form of restitution.

We respectfully ask the Washington Supreme Court to exercise its discretion to decide the certified questions as set forth below.

## I. Factual Background

GEO is a private, for-profit corporation that operates detention and correctional centers across the country. GEO acquired the Northwest ICE Processing Center ("NWIPC") located in Tacoma, Washington, in 2005. GEO operates NWIPC pursuant to a contract with Immigration and Customs Enforcement ("ICE") to provide "detention management services."

NWIPC confines noncitizen civil detainees of the federal government as they await determination of their immigration status. Detainees are confined at NWIPC until ordered deported ("removed") or released. They are not confined based on criminal convictions or pending criminal proceedings, nor are they confined as a penalty for immigration status violations. Some of the detainees are lawful permanent residents with work authorizations.

NWIPC has a capacity of up to 1,575 detainees. In 2015, GEO entered into a ten-year contract with ICE to operate NWIPC. Under the contract, GEO is to be paid a total of $700,292,089.08, or approximately $70,000,000 per year. Except for one aberrational year with a lower profit, GEO's annual profit at NWIPC between 2010 and 2018 ranged from $18,600,000 to $23,500,000.

GEO's 2015 contract with ICE requires it to "perform in accordance with specific statutory, regulatory, policy and operational constraints, including the ICE/DHS Performance Based National Detention Standards [("PBNDS")] as well as all applicable federal, state and local laws." The PBNDS incorporate "federal, state and local labor laws and codes." The contract specifies that if "a conflict exist[s] between [federal, state, and local laws and standards], the most stringent shall apply."

Under the contract, GEO must provide "nutritious, adequately varied meals." The facility must "be clean and vermin/pest free." GEO must "provide and distribute suitable linens," "launder and change linens," and comply with all applicable health and safety regulations and standards. GEO must "provide safe and secure facilities."

The contract requires GEO to offer detained individuals the opportunity to participate in a so-called Voluntary Work Program ("VWP"). PBNDS 5.8 states that the VWP provides detained individuals "opportunities to work and earn money while confined, subject to the number of work opportunities available and within the constraints of the safety, security[,] and good order of the facility." GEO has offered detained individuals positions in this program since 2005. During the period relevant to this suit, approximately 200 to over 400 detained workers have participated each day in the VWP at NWIPC.

PBNDS 5.8 specifies that "[t]he normal scheduled workday for a detainee employed full time is a maximum of 8 hours" and that "[d]etainees shall not be permitted to work in excess of 8 hours daily, 40 hours weekly." The standard lists the possible reasons a detained worker can be "removed from a work detail," including "unsatisfactory performance," "disruptive behavior, threats to security," and "physical inability to perform the essential elements of the job."

Section k of PBNDS 5.8 provides: "Detainees shall receive monetary compensation for work completed in accordance with the facility's standard policy. The compensation is at least $1.00 (USD) per day." During the relevant period, ICE reimbursed GEO one dollar per day for money paid to detained workers participating in the VWP

Case 3:17-cv-05769-RJB   Document 592   Filed 03/07/23   Page 8 of 17

8         Nwauzor v. The GEO Group, Inc.

program.  There is nothing in GEO's contract that prevents GEO from paying above the reimbursement amount, either voluntarily or if required to do so by state law.  GEO has never paid detained workers in VWP positions the State's hourly minimum wage.

Under its contract with ICE, GEO has responsibility for administrating the VWP, which included creating job descriptions, setting work schedules, providing training, and selecting workers.  During the relevant period, NWIPC's "classification officer" was a GEO employee responsible for managing detained workers and creating job assignments.  GEO employees had the authority to adjust the number of detained workers and the type of job they performed.  Under the contract, ICE was not required to review or sign off on GEO's job descriptions, training requirements, or work schedules, and it never did so.  ICE played no role in work assignments, training, or supervision, or in the day-to-day management of the VWP.  VWP workers performed work that was essential to the day-to-day operations of NWIPC, including meal preparation, janitorial services, and laundry services.  Detained workers were not permitted to work in non-secure areas of the facility.  GEO was responsible for dealing with complaints and grievances concerning working conditions.

GEO usually paid detained workers one dollar per day, the minimum prescribed in its contract with ICE.  Sometimes GEO paid up to five dollars per day to incentivize detained workers to perform the most difficult work.  GEO also occasionally raised wages when detained individuals quit or disease outbreaks at NWIPC caused shortages of available workers, but never paid more than five dollars a day.

On September 20, 2017, the State sued GEO in Pierce County Superior Court, alleging violations of the MWA and seeking equitable remedies including unjust enrichment. On September 26, 2017, detained workers filed a class action in federal district court, alleging violations of the MWA and seeking damages. On October 9, 2017, GEO removed the State's suit to the district court.

The district court consolidated the two cases for the purpose of determining liability. A jury trial was conducted in October 2021. The jury returned a unanimous verdict for the plaintiffs under the MWA in both cases. After the jury returned its verdict, the court held a damages trial in the class action and awarded $17.3 million in back pay. The court held a separate trial on the State's equitable claims. It enjoined GEO from employing detained individuals without paying Washington's minimum wage, and it awarded the State $5,950,340 based on unjust enrichment of GEO.

GEO timely appealed.

## II. Explanation of Certification

Washington law authorizes certification of a question from a federal court when in the opinion of that court "it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined." Wash. Rev. Code § 2.60.020.

### A. Question 1

In its appeal to us, GEO argues that the text of the MWA and Washington case law interpreting the MWA exclude from the MWA's coverage the detained workers participating in the VWP at NWIPC. Both the State and the class members argue that the detained workers are employees within the meaning of the MWA. *See* Wash.

Rev. Code § 49.46.010(3); *Anfinson v. FedEx Ground Package Sys., Inc.*, 281 P.3d 289, 297 (Wash. 2012).

Whether the MWA applies to the work performed by members of the plaintiff class in the circumstances of this case is a determinative threshold issue. If detained workers at NWIPC are not employees within the meaning of the MWA, they have no case. There is no direct and unambiguous controlling precedent telling us whether the MWA applies to essential work performed by civil detainees in a detention facility operated by a private company under a contract with the federal government when (1) the work performed by the detainees allows the facility operator to avoid hiring non-detainees to perform that same work, (2) the company's contract requires the operator to comply with "state and local labor laws and codes," and (3) the company's contract with the federal government allows the operator to pay more than one dollar per day.

Washington courts assess whether workers qualify as employees under the MWA using the "economic-dependence test." *Anfinson*, 281 P.3d at 297–99. This test, adopted from the federal Fair Labor Standards Act ("FLSA"), asks "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Id.* at 299 *(*citation omitted). The Washington Supreme Court first adopted this test in the context of determining whether a worker under the MWA was an "employee" or an independent contractor. *Id.* at 292. Washington courts have not addressed whether the economic-dependence test is applicable in a custodial setting under the circumstances presented in this case.

Case 3:17-cv-05769-RJB   Document 592   Filed 03/07/23   Page 11 of 17

NWAUZOR v. THE GEO GROUP, INC.                11

The MWA excludes from coverage "[a]ny resident, inmate, or patient of a *state, county, or municipal* correctional, detention, treatment or rehabilitative institution." Wash. Rev. Code § 49.46.010(3)(k) (emphasis added). The text of section k does not mention private detention institutions.

In its briefing to us, GEO argues that the MWA does not apply to work performed by individuals confined in any custodial institution. GEO cites *Hill v. Department of Labor & Industries*, 253 P.3d 430 (Wash. Ct. App. 2011), and *Calhoun v. State*, 193 P.3d 188 (Wash. Ct. App. 2008), in support of its argument. *Hill* and *Calhoun* were decided under section k, but the plaintiffs in both cases were confined in public institutions. The institution in *Hill* was a state-run prison. In *Calhoun*, the institution was a state civil commitment facility.

The Washington Supreme Court sometimes looks to the FLSA in ascertaining the scope of the MWA. *Anfinson*, 281 P.3d at 298; *but see Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 586 (Wash. 2000) ("[T]he MWA and FLSA are not identical and we are not bound by such authority."). Even if the Washington Supreme Court in this case were to look to the FLSA for assistance, the federal cases are in conflict. The Fourth Circuit has held that Congress meant to "protect" only "workers who operate within 'the traditional employment paradigm.'" *Ndambi v. CoreCivic, Inc.*, 990 F.3d 369, 372 (4th Cir. 2021) (quoting *Harker v. State Use Indus.*, 990 F.2d 131, 133 (4th Cir. 1993)). In the Fourth Circuit's view, the FLSA can never cover detained workers. *Id.* at 372–73. Our circuit disagrees, holding that the FLSA does not "categorically exclude all labor of any [incarcerated individual]." *Hale v. Arizona*, 993 F.2d 1387, 1392 (9th Cir. 1993) (en banc) ("Because Congress has specifically

exempted nine broad categories of workers from the minimum wage provisions of the FLSA but not prisoners, we are hard pressed to conclude that it nevertheless intended for all [incarcerated individuals] to be excluded." (internal citations omitted)), *abrogated on other grounds by Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996).

### B. Question 2

If the MWA applies, in the circumstances of this case, to work performed by civil detainees in a private detention center operated under a contract with the federal government, a second question arises: whether the MWA applies to work performed, in comparable circumstances, by civil detainees at a private detention facility operated under a contract with the State. If § 49.46.010(3)(k) does not apply to such work performed at a private detention facility operated under a contract with the State, but does apply to such work performed at private detention facilities operated under a contract with the federal government, the federal-law intergovernmental immunity doctrine may bar the MWA's application in the case before us. *See*, *e.g.*, *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010); *North Dakota v. United States*, 495 U.S. 423, 435 (1990).

The State and members of the plaintiff class argue that section k distinguishes between private and public institutions, thereby avoiding intergovernmental immunity concerns. GEO argues that Washington treats itself more favorably than a federal contractor in comparable circumstances, in violation of the intergovernmental immunity doctrine and the Supremacy Clause.[1] In support

---

[1] Although not a party in this case, in August 2019 the United States filed a statement of interest in the district court adopting GEO's

of its argument, GEO points to guidance promulgated by the Washington State Department of Labor and Industries. The guidance concerns the MWA's applicability to detainees in a "state, county or municipal correctional, detention, treatment or rehabilitative institution" who are "assigned by facility officials to work on facility premises for a private corporation at rates established and paid for by public funds." ES.A.1, Minimum Wage Act Applicability, last revised December 29, 2020. This guidance states that such detainees "are not employees of the private corporation and would not be subject to the MWA." *Id.* GEO argues that this guidance shows that if the MWA applies to the VWP at NWIPC, it impermissibly discriminates against the federal government because it singles out the federal government for differential and less favorable treatment.

The application and effect of this guidance are unclear.

First, it is not clear whether the guidance would treat the detainees in this case differently from detainees working in comparable circumstances in an private institution operating under contract with the state. The detainees in the guidance are held in a public institution, are employed by a private contractor performing a task in that public institution, and are paid at "rates established and paid for by public funds." The guidance may not apply to state detainees who are held in circumstances comparable to those in the case before us.

---

intergovernmental immunity arguments. The United States argued "that the intergovernmental immunity doctrine requires invalidation of otherwise generally applicable state laws that treat states and those with whom it deals better than the Federal Government and those with whom it deals." In a simultaneously filed order, we have invited the Department of Justice to file an amicus brief articulating its current views on GEO's federal constitutional defenses.

That is, the guidance may not apply to state detainees who are held in an institution of a private contractor, who are employed by that contractor at that institution, and who are paid at rates determined by the contractor. And it may not apply when the private contractor makes a substantial profit by using detained workers to perform essential tasks in the facility instead of using non-detained workers to whom it would be obliged to pay minimum wage under the MWA.

Second, even if the guidance were to apply in such a fashion as to treat the federal government less favorably than the State, the guidance is not a judicial interpretation of the MWA.

### C. Question 3

The district court awarded equitable monetary relief to the State, holding that GEO had been unjustly enriched by its violations of the MWA. The Washington Supreme Court has explained that equitable relief is unavailable when the party seeking relief has an adequate remedy at law. *Seattle Pro. Eng'g Emps. Ass'n v. Boeing Co.*, 991 P.2d 1126, 1134 (Wash. 2000).

GEO contends that the State is barred from seeking unjust enrichment because there is an adequate remedy at law. The State argues that the damages remedy under the MWA does not provide an adequate remedy to the non-detained community in the Tacoma area that has been adversely affected by GEO's reliance on its detained workforce to perform essential work at NWIPC. The State contends, and the district court agreed, that this essential work would have been performed by non-detained labor drawn from the community and paid according to the requirements of the MWA if GEO had not used its detained workforce to perform that work at rates far below those

specified in the MWA. Testimony at trial recounted that if GEO had not relied on detained workers to perform essential work at NWIPC, it would have been required to employ eighty five additional non-detained workers.

Washington's case law on unjust enrichment does not clearly answer the question whether the MWA damages award to the class is an adequate remedy that bars an unjust enrichment award to the State. An answer to this question is necessary to the disposition of the State's unjust enrichment claim. There may be other questions relevant to the award of unjust enrichment in this case that the Washington Supreme Court may also choose to address.

### D. Implications

Certification of questions to the Washington Supreme Court is particularly appropriate when questions of unsettled state law have "significant policy implications." *Centurion Props. III, LCC v. Chi. Title Ins. Co.*, 793 F.3d 1087, 1089 (9th Cir. 2015) (internal citation and quotation marks omitted); *see also Barlow v. Washington,* 38 F.4th 62, 66–67 (9th Cir. 2022) (considering the impact of certified questions on state universities). We believe that the above-discussed certified questions meet this standard. The resolution of these questions is likely to have a significant impact on how the federal government contracts with private detention facilities in the State.

### III. Certified Questions

We respectfully certify the following three questions to the Washington Supreme Court:

(1) In the circumstances of this case, are the detained workers at NWIPC employees within the meaning of Washington's MWA?

(2) If the answer to the first question is yes, does the MWA apply to work performed in comparable circumstances by civil detainees confined in a private detention facility operating under a contract with the State?

(3) If the answer to the first question is yes and the answer to the second question is no, and assuming that the damage award to the detained workers is sustained, is that damage award an adequate legal remedy that would foreclose equitable relief to the State in the form of an unjust enrichment award?

We do not intend the phrasing of our questions to restrict the Washington Supreme Court's deliberations. We recognize that the Washington Supreme Court may exercise its discretion and reformulate the questions. *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999).

The Clerk of Court is ordered to transmit to the Washington Supreme Court, under official seal of the Ninth Circuit, this order and request for certification along with all relevant briefs and excerpts of record pursuant to Wash. Rev. Code §§ 2.60.010 and 2.60.030 and Washington Rule of Appellate Procedure 16.16.

If the Washington Supreme Court accepts the certified questions, we designate GEO as the party to file the first brief pursuant to Washington Rule of Appellate Procedure 16.16(e)(1).

Further proceedings in this court are stayed pending the Washington Supreme Court's decision whether to accept review; and, if that Court accepts review, pending receipt of answers to the certified questions. This appeal is withdrawn from submission until further order. The Clerk is directed to administratively close the docket. The panel will resume control and jurisdiction upon the Washington Supreme Court's decision to not accept the certified questions or upon receipt of answers to the certified questions.

When the Washington Supreme Court decides whether to accept the certified questions, or orders additional briefing before deciding whether to accept the questions, the parties are directed to promptly file a joint status report informing us. If the Washington Supreme Court accepts the certified question, the parties are directed to file further joint status reports informing us when briefing has been completed and a date set for oral argument and when the Washington Supreme Court provides answers to the certified questions.

/s/ Mary H. Murguia
Chief Judge Mary H. Murguia
U.S. Court of Appeals for the Ninth Circuit